PAUL HASTINGS LLP
Steven A. Marenberg (Bar No. 101033)
stevenmarenberg@paulhastings.com
David P. Thoreson (Bar No. 305576)
davidthoreson@paulhastings.com
Kiaura Clark (Bar No. 336314)
kiauraclark@paulhastings.com
1999 Avenue of the Stars, 27th Floor,
Los Angeles, California 90071
Telephone: (310) 620-5710
Facsimile: (310) 620-5810

Attorneys for Defendants
JONATHAN MANNION and
JONATHAN MANNION PHOTOGRAPHY LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAWN CARTER, also known as JAY-Z, an individual,<br><br>Plaintiff,<br><br>v.<br><br>JONATHAN MANNION, an individual, and JONATHAN MANNION PHOTOGRAPHY LLC, a New York limited liability company,<br><br>Defendants. | Case No. 2:21-cv-4848<br><br>**DEFENDANTS' NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO CALIFORNIA'S ANTI-SLAPP STATUTE, AND MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6); SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Judge:  Hon. Percy Anderson<br>Date:  September 13, 2021<br>Time:  1:30 p.m.<br>Ctrm:  9A<br><br>[Notice of Motion and Motion and [Proposed] Order filed and served concurrently herewith] |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on September 13, 2021, at 1:30 p.m. or as soon thereafter as the matter may be heard in Courtroom 9A of the above-entitled Court, located at 350 West 1st Street, Los Angeles, California, 90012, Defendants Jonathan Mannion and Jonathan Mannion Photography LLC ("Mannion") will and hereby do move this Court, pursuant to California Code of Civil Procedure § 425.16 *et seq.* and Federal Rule of Civil Procedure 12(b)(6), for an order striking and dismissing with prejudice Plaintiff's First Amended Complaint ("FAC") and each of the causes of action brought by Plaintiff Shawn Carter, a/k/a "JAY-Z."

Plaintiff's lawsuit purports to arise from Mannion's dissemination of copies of original photographs of Plaintiff's likeness and/or image authored by Mannion. Although Plaintiff does not—and cannot—claim to own any copyright interest in the photographs, he claims that Mannion has violated his "publicity" rights under California law by displaying and reproducing copyrights to the photographs.  *E.g.*, ECF No. 15, FAC ¶¶ 20–25.  Based on these allegations, Plaintiffs have asserted claims for statutory misappropriation under California Civil Code § 3344 (*id.* ¶¶ 31–36) and common law misappropriation (*id.* ¶¶ 37–41).

Because each of these claims arise from Mannion's conduct in furtherance of the exercise of free speech about a matter of public interest, they fall within the scope of California Civil Procedure Code § 425.16 (the "Anti-SLAPP Statute"). Consequently, under that statute, the burden shifts to Plaintiff to establish a probability that he will prevail on each of his claims.  *See* Cal. Code Civ. P. § 425.16(b)(1); Memorandum of Points and Authorities, Section III.B.2.  Plaintiff cannot meet his burden for each of the following reasons:

1.    All of Plaintiff's claims are preempted by federal copyright law, because the photographs at issue clearly fall within the subject matter of the Copyright Act, and the rights Plaintiff seeks to control are equivalent to the rights

DEFENDANTS' MOTION TO STRIKE AND DISMISS
CASE NO. 2:21-CV-4848

granted to copyright holders under the Act. 17 U.S.C. §§ 102(a), 301(a); Memorandum of Points and Authorities, Section III.B.2.(a).

2.     All of Plaintiff's claims fail because Mannion's conduct in displaying, reproducing, and disseminating photographs  is protected by the First Amendment. Memorandum of Points and Authorities, Section  II.B.2.(b).

This Motion is based on this Notice; on the attached Memorandum of Points and Authorities; on the concurrently-filed Request for Judicial Notice; on any other matters of which this Court may take judicial notice; on all pleadings, files and records in this action; and on such argument as may be received by this Court at the hearing on this Motion.

For all of the reasons stated, Defendants Jonathan Mannion and Jonathan Mannion Photography LLC respectfully request that this Court strike and dismiss Plaintiff's First Amended Complaint in its entirety, with prejudice.

Dated:                                          August 5, 2021

Respectfully submitted,

PAUL HASTINGS LLP
Steven A. Marenberg
David P. Thoreson
Kiaura Clark

By:  /s/ *Steven A. Marenberg*

Steven A. Marenberg

Attorneys for Defendants

Jonathan Mannion and
Jonathan Mannion LLC

DEFENDANTS' MOTION TO STRIKE AND DISMISS
CASE NO. 2:21-CV-4848

# Table of Contents

**Page**

I.  INTRODUCTION ........................................................................... 1

II.  STATEMENT OF RELEVANT FACTS ........................................ 1

III.  PLAINTIFF'S RIGHT OF PUBLICITY CLAIMS FAIL AS A MATTER OF LAW AND MUST BE STRICKEN AND/OR DISMISSED—WITH PREJUDICE ............................................... 3

  A.  Legal Standard ................................................................... 3

    1.  Special Anti-SLAPP Motion to Strike ................... 3

    2.  Motion to Dismiss .................................................... 5

  B.  The Court Must Strike Plaintiff's First Amended Complaint Pursuant to California's Anti-SLAPP Statute ........................ 6

    1.  California's Anti-SLAPP Statute Governs Plaintiff's Claims Because Mannion's Alleged Activity Is Protected ........ 6

    2.  Plaintiff Cannot Demonstrate Any Probability of Prevailing on His Right of Publicity Claims ............ 10

      a.  Plaintiff Cannot Prevail on His Right of Publicity Claims Because They Are Preempted by Federal Copyright Law ................................. 10

        i)  Plaintiff's Right of Publicity Claims Are Within the Subject Matter of Copyright .............. 11

        ii)  Plaintiff's Right of Publicity Claims Are Equivalent to Copyright Infringement Claims ..... 16

      b.  Plaintiff Cannot Prevail on His Right of Publicity Claims Because They Are Precluded by the First Amendment As a Matter of Law ............ 17

        i)  Mannion's Photographs Utilizing Plaintiff's Likeness Are Transformative ............ 20

        ii)  The Slipmats Reproducing Photographs of Plaintiff's Likeness Are Transformative .......... 27

        iii)  The "Fame Wall" T-Shirts Are Transformative ............................ 28

  C.  Independently, the Court Must Dismiss Plaintiff's First Amended Complaint for Failure to State a Claim ............... 30

IV.  CONCLUSION ............................................................................ 30

DEFENDANTS' MOTION TO STRIKE AND DISMISS
CASE NO. 2:21-CV-4848

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Table of Authorities

**Page(s)**

## Cases

*Aldrin v. Topps Co.*,
  No. CV 10-09939 DDP, 2011 WL 4500013
  (C.D. Cal. Sept. 27, 2011) ................................................................. 8

*Animal Legal Def. Fund v. Wasden*,
  878 F.3d 1184 (9th Cir. 2018) ........................................................... 18

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................... 5

*Barrett v. Rosenthal*,
  40 Cal.4th 33 (Cal. 2006) .................................................................. 6

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................... 5

*Bery v. City of New York*,
  97 F.3d 689 (2d Cir. 1996) ................................................................ 18

*Burrow-Giles Lithographic v. Sarony*,
  111 U.S. 53 (1884) ............................................................................. 12

*Caldwell v. Caldwell*,
  No. 05-cv-4166-PJH, 2006 WL 618511 (N.D. Cal. Mar. 13, 2006).................. 23

*Comedy III Prods., Inc. v. Gary Saderup, Inc.*,
  25 Cal. 4th 387 (2001).................................................................*passim*

*Community for Creative Non-Violence v. Reid*,
  490 U.S. 730 (1989) ........................................................................... 3

*Daly v. Viacom, Inc.*,
  238 F. Supp. 2d 1118 (N.D. Cal. 2002).............................................. 15

*Del Madera Props. v. Rhodes & Gardner, Inc.*,
  820 F.2d 973 (9th Cir. 1987)............................................................. 17

*Disney Enters., Inc. v. VidAngel, Inc.*,
  869 F.3d 848 (9th Cir. 2017)............................................................. 12

-iv-   DEFENDANTS' MOTION TO STRIKE AND DISMISS
CASE NO. 2:21-CV-4848

1

2

**Table of Authorities**

Page(s)

3

4

*Downing v. Abercrombie & Fitch*,
   265 F.3d 994 (9th Cir. 2001) ............................................................................. 16

5

6

*Equilon Enters. v. Consumer Cause, Inc.*,
   29 Cal.4th 53 (2002) ............................................................................. 4, 5, 10

7

*ETW Corp. v. Jireh Publishing*,
   332 F.3d 915 (6th Cir. 2003) ............................................................. 18, 20, 23

8

9

*Fields v. City of Philadelphia*,
   862 F.3d 353 (3d Cir. 2017) ............................................................................. 18

10

11

*FilmOn.com Inc. v. DoubleVerify Inc.*,
   7 Cal. 5th 133 (2019) ........................................................................................... 9

12

13

*Fleet v. CBS, Inc.*,
   50 Cal. App. 4th 1911 (1996) ........................................................................... 14

14

15

*Four Navy Seals v. Associated Press*,
   413 F. Supp. 2d 1136 (S.D. Cal. 2005) ............................................................. 7

16

17

*Gionfriddo v. Major League Baseball*,
   94 Cal. App. 4th 400 (2001) ............................................................................. 15

18

*Estate of Graham v. Sotheby's, Inc.*,
   178 F. Supp. 3d 974 (C.D. Cal. 2016) ............................................................. 23

19

20

*Hilton v. Hallmark Cards*,
   599 F.3d 894 (9th Cir. 2010) ................................................................. *passim*

21

22

*In re Jackson*,
   972 F.3d 25 (2d Cir. 2020) ......................................................................... 14, 16

23

24

*Jules Jordan Video, Inc. v. 144942 Canada, Inc.*,
   617 F.3d 1146 (9th Cir. 2010) ............................................................. 11, 14, 17

25

26

*Kabehie v. Zoland*,
   102 Cal. App. 4th 513 (2002) ........................................................................... 17

27

28

*Kaplan v. California*,
   413 U.S. 115 (1973) ........................................................................................... 18

DEFENDANTS' MOTION TO STRIKE AND DISMISS
CASE NO. 2:21-CV-4848

# Table of Authorities

**Page(s)**

*Kirby v. Sega of America, Inc.*,
144 Cal. App. 4th 47 (2006) ................................................................. 17, 19, 26

*Lacano Invs., LLC v. Balash*,
765 F.3d 1068 (9th Cir. 2014) ..................................................................... 3

*Laws v. Sony Music Entertainment, Inc.*,
448 F.3d 1134 (9th Cir. 2006) ........................................................ 14, 15, 17

*Lee v. City of Los Angeles*,
250 F.3d 668 (9th Cir. 2001) ...................................................................... 24

*M.G. v. Time Warner, Inc.*,
89 Cal. App. 4th 623 (2001) ......................................................................... 8

*Maloney v. T3Media, Inc.*,
94 F. Supp. 3d 1128 (C.D. Cal. 2015), *aff'd*, 853 F.3d 1004
(9th Cir. 2017) ...................................................................................... 7, 8

*Maloney v. T3Media, Inc.*,
853 F.3d 1004 (9th Cir. 2017) ............................................................. *passim*

*Mannion v. Coors Brewing Co.*,
377 F. Supp. 2d 444 (S.D.N.Y. 2005) .................................................. 22, 29

*Melchoir v. New Line Productions, Inc.*,
106 Cal. App. 4th 792 ............................................................................... 17

*Melendez v. Sirius XM Radio, Inc.*,
No. 1:20-cv-6620-PAC, 2021 WL 2593471
(S.D.N.Y. June 24, 2021) ............................................................. 11, 14, 15

*Monge v. Maya Magazines, Inc.*,
688 F.3d 1164 (9th Cir. 2012) .................................................................... 12

*Navellier v. Sletten*,
29 Cal.4th 82 (2002) ............................................................................... 4, 5

*In re NCAA Student-Athlete Name & Likeness Licensing Litig.*,
724 F.3d 1268 (9th Cir. 2013) ..................................................................... 4

1

## Table of Authorities

2

**Page(s)**

3

*No Doubt v. Activision Pub., Inc.*,

4

   192 Cal. App. 4th 1018 (2011)........................................................................ 21, 26

5

*Nygard, Inc. v. Uusi–Kerttula*,

   159 Cal. App. 4th 1027 (2008)............................................................................ 8

6

7

*Peckarsky v. Am. Broadcasting Co., Inc.*,

   603 F. Supp. 688 (D.D.C. 1984) ...................................................................... 10

8

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,

9

   890 F.3d 828 (9th Cir. 2018)............................................................................... 5

10

*Ray v. ESPN, Inc.*,

11

   783 F.3d 1140 (8th Cir. 2015)........................................................................... 14

12

*Reno v. ACLU*,

13

   521 U.S. 844 (1997) ............................................................................................ 6

14

*Rentmeester v. Nike, Inc.*,

15

   883 F.3d 1111 (9th Cir. 2018), *overruled on other grounds by*

   *Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*,

16

   952 F.3d 1051 (9th Cir. 2020)................................................................. 21, 22, 28

17

*Ross v. Roberts*,

18

   222 Cal. App. 4th 677 (2013)....................................................................... 25, 28

19

*Sarver v. Hurt Locker LLC*,

20

   No. 2:10-CV-09034-JHN, 2011 WL 11574477

   (C.D. Cal. Oct. 13, 2011), *aff'd sub nom. Sarver v. Chartier*,

21

   813 F.3d 891 (9th Cir. 2016)......................................................................... 21, 30

22

*Seelig v. Infinity Broadcasting Corp.*,

23

   97 Cal. App. 4th 798 (2002)................................................................................ 8

24

*Selby v. New Line Cinema*,

25

   96 F. Supp. 2d 1053 (C.D. Cal. 2000)............................................................... 17

26

*Sipple v. Found. for Nat'l Progress*,

   71 Cal. App. 4th 226 (1999)................................................................................ 8

27

28

   DEFENDANTS' MOTION TO STRIKE AND DISMISS
   CASE NO. 2:21-CV-4848

1

2

# Table of Authorities

**Page(s)**

3

4

*Smith v. California*,
   361 U.S. 147 (1959) ........................................................................... 20

5

6

*Stromback v. New Line Cinema*,
   384 F.3d 283 (6th Cir. 2004) ............................................................. 17

7

8

*VHT, Inc. v. Zillow Grp., Inc.*,
   918 F.3d 723 (9th Cir. 2019) ............................................................. 13

9

*Weinberg v. Feisel*,
   110 Cal. App. 4th 1122 (2003) ............................................................ 9

10

11

12

*West v. iHandy Ltd.*,
   No. CV1910877PSGJPRX, 2020 WL 1303889
   (C.D. Cal. Mar. 19, 2020) ................................................................... 16

13

14

*Whitaker v. Tesla Motors, Inc.*,
   985 F.3d 1173 (9th Cir. 2021) .............................................................. 2

15

*White v. City of Sparks*,
   500 F.3d 953 (9th Cir. 2007) ............................................................... 7

16

17

*Winter v. DC Comics*,
   30 Cal. 4th 881 (2003) ................................................................*passim*

18

**Statutes**

19

20

15 U.S.C. § 106(2) ................................................................................ 17

21

15 U.S.C. § 106(3) ................................................................................ 17

22

17 U.S.C. § 101 ................................................................................ 3, 12

23

17 U.S.C. § 101(1) ................................................................................. 3

24

17 U.S.C. § 101(2) ................................................................................. 3

25

17 U.S.C. § 102 ................................................................................... 11

26

27

17 U.S.C. § 102(a) ........................................................................... 12, 13

28

17 U.S.C. § 102(a)(5) ........................................................................ 12, 13

1

2

## Table of Authorities

Page(s)

17 U.S.C. § 106(1)-(3) ........................................................................... 10, 12

17 U.S.C. § 201(a) ................................................................................... 12

17 U.S.C. § 301(a) ............................................................................ 10, 11

Cal. Civ. Proc. Code § 425.16(a) ................................................................ 4

Cal. Civ. Proc. Code § 425.16(b)(1) ........................................................... 4

Cal. Civ. Proc. Code § 425.16(e)(3)–(4) .......................................... 4, 6, 7, 8

**Other Authorities**

Fed. R. Civ. P. R. 8 ................................................................................... 5

Fed. R. Civ. P. R. 12(b)(6) ................................................................. 5, 30

Fed. R. Civ. P. R. 56 ................................................................................. 5

Loren E. Mulraine, *A Global Perspective on Digital Sampling*, 52
AKRON L. REV. 697, 699 (2018) .......................................................... 27

## I.      **INTRODUCTION**

In his vitriolic complaint filled with false insinuations of exploitation, a billionaire rap artist, Shawn Carter, professionally known as "JAY-Z" ("JAY-Z" or "Plaintiff"), has sued an accomplished professional photographer, Defendant Jonathan Mannion ("Mannion"), for alleged infringements of his state law right of publicity.  The violations allegedly stem from Mannion's reproduction and distribution of his own photographs, which are iconic and known worldwide.

JAY-Z's claims improperly seek to restrict the dissemination of legitimate artistic expression in direct conflict with both federal copyright law and the U.S. Constitution.  Had those who prepared the complaint focused on research over rhetoric, they would know that under settled legal precedents JAY-Z's right of publicity claims are both: (1) preempted by federal copyright law, and (2) independently foreclosed by the First Amendment, which protects original, expressive works of art from precisely this type of suit.  The claims fail as *a matter of law* and should be dismissed *without leave to amend*.

The implications of Plaintiff's claims are staggering.  Plaintiff's right of publicity claims seek nothing less than a wholesale monopoly over the artistic expression and livelihoods of professional photographers and other visual artists. Taken to their logical conclusion, Plaintiff's right of publicity claims would permit powerful celebrities to constrain artists from selling or licensing their creative works simply because their names or likenesses appear therein.  Such a result offends not only federal copyright law, but also the First Amendment.  It is, in fact, both sobering and shocking that JAY-Z, a creative artist himself, has shamefully chosen to side with celebrity at the expense of creativity.

## II.     **STATEMENT OF RELEVANT FACTS**

The relevant facts, all drawn from Plaintiff's Complaint, are as follows: Jonathan Mannion and JAY-Z began their professional relationship in 1996 both as

DEFENDANTS' MOTION TO STRIKE AND DISMISS
CASE NO. 2:21-CV-4848

relatively unknown artists,[1] when Mannion helped "realize" a vision for the album art accompanying JAY-Z's debut album, *Reasonable Doubt.*  ECF No. 15, First Am. Compl. ("FAC") ¶ 20.  Plaintiff paid Mannion in exchange for "us[ing] some of the photographs for his album covers."  FAC ¶ 21.  In the decades to follow, Mannion has "developed a business for himself" through "obtain[ing] photo-shoot assignments from many other rap and hip hop artists."  FAC ¶¶ 22–23.  Mannion sells prints of photographs he has taken throughout his career on his website (www.jonathanmannion.com).  He has also sold those images on a few dozen slipmats (the circular piece of slippery cloth or synthetic material that disk jockeys place on a turntable platter).  FAC ¶ 23.  In addition, Mannion recently debuted "Fame Wall" t-shirts that contain an image of contact sheet boxes in his New Jersey studio from photoshoots displaying the name of well-known artists that Mannion has photographed.  FAC ¶ 22.

   Plaintiff alleges that Mannion violated his right of publicity under California statutory and common law.  FAC ¶¶ 31–41.  The Complaint is premised on the sale and licensing[2] of Mannion's original photographs of Plaintiff, as well as the slipmats and "Fame Wall" t-shirts featuring reproductions of Mannion's

---

[1] As noted, the Complaint contains inaccurate and offensive suggestions that Mannion has exploited images of Plaintiff images, and indeed Plaintiff himself, presumably for tactical purposes and to increase publicity for this suit in the tabloid press, to whom the pleading was apparently immediately leaked.  For example, the pleading alleges that it is "ironic" that Mannion "would treat the image of a formerly-unknown Black *teenager* . . . as property to be squeezed for every dollar in can produce.  FAC ¶ 3 (emphasis added).  What is "ironic" is that JAY-Z was born in 1969, and was at least twenty-six years old (one year older than Mannion, and certainly not a teenager) when the famous *Reasonable Doubt* shoot occurred.

[2] Plaintiff does not allege a *single* specific instance of *any* licensing of Plaintiff's image or name by Mannion, including any offer to license Plaintiff's image or name on Mannion's website or elsewhere.  The Court can and should reject Plaintiff's "conclusory assertions" of Mannion's licensing, which are "without factual allegations that plausibly gave rise to an entitlement of relief."  *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1176 (9th Cir. 2021).

photographic works.  FAC ¶¶ 22–23.  While the Complaint spends considerable time describing Plaintiff's many achievements—impressive, yet not central to the present case—it offers no factual support to explain why Plaintiff would have any rights to the photographs,[3] nor why he has now raised an issue with Mannion's conduct, 25 years after the original photoshoot.  *See* FAC ¶¶ 11–19.  As shown below, both Plaintiff's demands and his claims are unfounded as a matter of law.

## III.  PLAINTIFF'S RIGHT OF PUBLICITY CLAIMS FAIL AS A MATTER OF LAW AND MUST BE STRICKEN AND/OR DISMISSED—WITH PREJUDICE

### A.  Legal Standard

#### 1.  Special Anti-SLAPP Motion to Strike

Under California law, a cause of action against any person arising from any act of that person in furtherance of his or her right of free speech in connection with a public issue is subject to a special motion to strike, unless the Court determines

---

[3] The Complaint alleges on several occasions that Mannion took the photographs in question.  FAC ¶¶ 1, 21.  Those allegations are sufficient to establish that Mannion, and not Plaintiff, is the author and copyright owner of the photographs.  *Cmty for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989) (Copyright Act vests copyright ownership in the author of the work, and the "author is the party who actually creates the work").  Yet, on several occasions, the Complaint nakedly asserts that Mannion has no right to sell or distribute them or requires Plaintiff's permission to do so.  These legal conclusions, rather than allegations of fact, are not controlling on this motion and need not be accepted as true.  Indeed, they must be ignored by the Court.  *Lacano Invs., LLC v. Balash*, 765 F.3d 1068, 1071 (9th Cir. 2014) ("While we do accept all of the *factual* allegations in the complaint as true, . . . we do not accept *legal conclusions* in the complaint as true, even if 'cast in the form of factual allegations.'" (quoting *Doe v. Holy See,* 557 F.3d 1066, 1073 (9th Cir. 2009))).  Plaintiff's allegation that Mannion was and is a "full-time photographer" hired by Plaintiff to take the photographs, FAC ¶ 20, also confirms Mannion's copyright ownership.  Plaintiff does not, because he cannot, allege that the photographs were a "work for hire," as the requirements for such listed in 17 U.S.C. § 101 cannot be met; Mannion was never an employee of Plaintiff nor does any "written instrument signed by [the parties]" exist.  17 U.S.C. § 101(1) & (2); *Reid*, 490 U.S. at 752–53.

DEFENDANTS' MOTION TO STRIKE AND DISMISS
CASE NO. 2:21-CV-4848

that Plaintiff has established a probability that he will prevail on the merits of his claims. Cal. Civ. Proc. Code § 425.16(b)(1). The California Legislature enacted § 425.16—commonly known as the "anti-SLAPP" (strategic lawsuit against public participation) statute—to discourage litigation that masquerades as an ordinary lawsuit but is brought to deter common citizens from exercising their legal rights or punish them for doing so. *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 724 F.3d 1268, 1272 (9th Cir. 2013). Because "it is in the public interest to encourage continued participation in matters of public significance, and [because] this participation should not be chilled through abuse of the judicial process," the anti-SLAPP statute is construed broadly. Cal. Civ. Proc. Code § 425.16(a).

The anti-SLAPP statute sets forth a two-step process for determining whether a claim must be stricken. First, the Court evaluates "whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity." *Equilon Enters, LLC. v. Consumer Cause, Inc.*, 29 Cal.4th 53, 67 (2002). The defendant need not show that the plaintiff's suit was brought with the intention to chill the defendant's speech—indeed, the plaintiff's "intentions are ultimately beside the point." *Id.* Similarly, the defendant need not show that any speech was actually chilled. *Id.* at 58. For the defendant to make the requisite *prima facie* showing, he must demonstrate only that the alleged conduct "underlying the plaintiff's cause [of action] fits one of the categories spelled out . . . in section 425.16, subdivision (e)" of the Civil Procedure Code. *Navellier v. Sletten*, 29 Cal.4th 82, 88 (2002). Those categories include, among others:

> any written or oral statement or writing made in . . . a public forum in connection with an issue of public interest; or . . . any other conduct in furtherance of the exercise of the constitutional right . . . of free speech in connection with a public issue or an issue of public interest.

Cal. Civ. Proc. Code § 425.16(e).

Second, if the Court determines such a showing has been made, it then determines "whether the plaintiff has demonstrated a probability of prevailing on the claim." *Equilon*, 29 Cal.4th at 67.  Where, as here, Plaintiff cannot carry this burden, his claims must be stricken.  *Navellier*, 29 Cal.4th at 89.

A motion brought on anti-SLAPP grounds can either be analogous to a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) or a motion for summary judgment pursuant to Rule 56.  If, as here, the defendant moves to strike/dismiss based on purely legal arguments, the Court analyzes the motion under the standards set out in Federal Rule of Civil Procedure 8 and 12(b)(6).  *See Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833–34 (9th Cir. 2018).[4]

## 2. Motion to Dismiss

To survive a motion to dismiss pursuant Rule 12(b)(6), the complaint must provide sufficient grounds upon which a claim is "plausible on its face" and "enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).  Notably, a plaintiff must allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citation omitted).  The Court need not accept as true legal conclusions, unwarranted factual inferences, or "[t]hreadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Where, as here, the plaintiff fails to meet this standard alleging claims under the right of publicity, dismissal with prejudice is appropriate.  *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1011 (9th Cir. 2017) (affirming dismissal of California right of publicity claims with prejudice due to preemption under federal copyright law).

---

[4] If a defendant makes a factual challenge to a complaint, including by providing alternate facts to challenge the allegations in a complaint, this Court treats the motion to strike/dismiss as a motion for summary judgment. *See Planned Parenthood*, 890 F.3d at 833–34.  That is not the case here.

As detailed below, in the event the Court does not strike Plaintiff's First Amended Complaint pursuant to California's anti-SLAPP statute, it should dismiss the Complaint for failure to state a claim upon which relief can be granted because, in either event, Plaintiff's claims are (1) preempted by federal copyright law; and (2) Mannion's activities are protected by the First Amendment, which shields original, expressive works from Plaintiff's suit.  For those reasons, Plaintiff's claims should be dismissed with prejudice.

**B.      The Court Must Strike Plaintiff's First Amended Complaint Pursuant to California's Anti-SLAPP Statute**

**1.      California's Anti-SLAPP Statute Governs Plaintiff's Claims Because Mannion's Alleged Activity Is Protected**

As a threshold matter, California's anti-SLAPP statute governs Plaintiff's right of publicity claims because Mannion's complained-of activity is inherently communicative, and thus protected by the statute.  *See Maloney*, 853 F.3d at 1009 (publication and distribution of photos over the Internet are acts of free speech).

Indeed, Plaintiff's claims arise from Mannion's reproduction and display of photographs he has taken throughout his career, reproduced as prints and slipmats, and from Mannion's "Fame Wall" t-shirts, which feature an original image of the contact sheet boxes in Mannion's New Jersey studio from Mannion's ten favorite photoshoots from his illustrious career.  Mannion's conduct plainly falls within the protections of subsections 425.16(e)(3) and 425.16(e)(4).

First, Mannion's display of photographs of Plaintiff's name and likeness on his personal website is protected by subsection 425.16(e)(3), which applies to publications made in a public forum in connection with a matter of public interest. As the Supreme Court has recognized, websites are public fora because they "provide[] relatively unlimited, low-cost capacity for communication of all kinds." *Reno v. ACLU*, 521 U.S. 844, 870 (1997); *see also Barrett v. Rosenthal*, 40 Cal.4th 33, 41 n.4 (2006) ("Web sites accessible to the public . . . are public forums for

purposes of the anti-SLAPP statute.").  Photographs posted on websites thus constitute protected activity and fall within Section 425.16(e)(3).  *Four Navy Seals v. Associated Press*, 413 F. Supp. 2d 1136, 1146 (S.D. Cal. 2005); *Maloney v. T3Media, Inc.*, 94 F. Supp. 3d 1128, 1134 (C.D. Cal. 2015) (though defendant controls the content of the website with no ability for members of the public to express their viewpoint, the website is part of the Internet at-large, and defendant's sales of photos were made in a public forum), *aff'd*, 853 F.3d 1004 (9th Cir. 2017).

Second, Plaintiff's claims object to Mannion's conduct falling under Section 425.16(e)(4), which applies to "conduct in furtherance of the exercise of the . . . constitutional right of free speech in connection with a public issue or an issue of public interest."  As the Ninth Circuit, affirming this Court, recognized in *Hilton v. Hallmark Cards,* the types of conduct encompassed by this statutory provision are expansive.  *See* 599 F.3d 894, 904 (9th Cir. 2010).  In *Hilton*, Hallmark had published a greeting card that included an image of Paris Hilton's head superimposed over a cartoon body wearing a waitress's uniform to invoke an episode of Hilton's reality television program, *The Simple Life.  Id.* at 899.  The court found Hilton's claims arose from protected conduct under Section 425.16(e)(4).[5]

Consistent with this conclusion, numerous state and federal courts in California have determined the display of a photograph is an act in furtherance of free speech.  *See, e.g.*, *White v. City of Sparks*, 500 F.3d 953, 956 (9th Cir. 2007) ("[P]hotographs . . . always communicate some idea or concept to those who view [them], and as such are entitled to full First Amendment protection" (quoting *Bery v. City of New York*, 97 F.3d 689, 696 (2d Cir. 1996))); *Comedy III Prods., Inc. v. Gary Saderup, Inc*., 25 Cal. 4th 387, 398 (2001) (the fact that expression takes a

---

[5] The Court ultimately determined Hilton could meet the substantive elements of her claim and Hallmark's defenses would not be successful—and thus Hallmark could not satisfy the second prong of the anti-SLAPP analysis. *Id.* at 908.

form of nonverbal, visual representation does not remove it from the ambit of First Amendment protection).  Further, although some of Mannion's photographs of Plaintiff's name and likeness appear in "less conventional avenue[s] of communication," such as slipmats and t-shirts, they are not subject to "reduced First Amendment protection."  *Id.* at 399; *Aldrin v. Topps Co.,* No. CV 10-09939 DDP (FMOx), 2011 WL 4500013, at *3 (C.D. Cal. Sept. 27, 2011) (use of a photograph on a trading card was an act in furtherance of free speech); *M.G. v. Time Warner, Inc.*, 89 Cal. App. 4th 623, 629 (2001) (using a photograph to illustrate an article in a magazine and a television report is an act in furtherance of free speech).[6]

Section 425.16 does not define "an issue of public interest," but courts have considered the anti-SLAPP statute's explicit provision that it "shall be construed broadly" and have concluded that "an issue of public interest . . . is any issue in which the public is interested."  *See e.g., Nygard, Inc. v. Uusi–Kerttula*, 159 Cal. App. 4th 1027, 1042 (2008); *Maloney*, 94 F. Supp. 3d at 1134.  Courts have held that a statement about a "person or entity in the public eye may be sufficient" to establish the statement is free speech in connection with a public issue or an issue of public interest.  *See Hilton*, 599 F.3d at 906–07 (greeting card featuring an image of Paris Hilton was a public issue because Hilton's career was "something of concern to a substantial number of people").[7]

The photographs at issue in the Complaint, which depict Plaintiff's name or likeness, fall within the broad definition of "public interest" under Sections

---

[6] The fact that Mannion has profited from the photographs of Plaintiff's name and likeness does not render his conduct unprotected commercial speech or preclude his free speech protections.  *See, e.g., Comedy III*, 25 Cal.4th at 396 (an expressive activity does not lose its constitutional protection because it is profitable).

[7] *See also Seelig v. Infinity Broad. Corp.*, 97 Cal. App. 4th 798, 807 (2002) (comments about a contestant on a popular, reality-style television program was an issue of public interest); *Sipple v. Found. for Nat'l Progress*, 71 Cal. App. 4th 226, 239–40 (1999) (article about the personal life of a nationally known political consultant was an issue of public interest).

425.16(e)(3) and 425.16(e)(4).  Plaintiff does not and cannot dispute that he is a public figure in the public eye and a person of widespread public interest.  *See Weinberg v. Feisel*, 110 Cal. App. 4th 1122, 1131 (2003) (a public figure is a person who has assumed a role of special prominence in the affairs of society and occupies a position of persuasive power and influence).  Plaintiff admits as much when he alleges that he "has attained an extraordinary level of popularity and fame in the United States and around the world," FAC ¶ 11, and that he is an internationally famous performing artist and songwriter as well as a successful businessman and philanthropist, *id.* ¶ 3.

Independently, the photographs in question are iconic images Mannion took of Plaintiff that have become a matter of public interest.  Furthermore, some of the photographs in question are the very photographs that were integral to Plaintiff's initial catapult into fame, such as the photo used on the cover of his debut album, *Reasonable Doubt.  Id.* ¶ 12.  These photographs are all issues of public interest.[8]

---

[8] The California Supreme Court recently articulated a two-part test to determine what constitutes a "public issue."  *See FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal. 5th 133, 149–50 (2019) ("First, we ask what public issue or [ ] issue of public interest the speech in question implicates—a question we answer by looking to the content of the speech.  Second, we ask what functional relationship exists between the speech and the public conversation about some matter of public interest." (internal quotation marks omitted) (internal citation omitted)).  The context of the protected action—the purpose, the speaker, and the audience—are useful considerations under the second prong.  *Id.* at 149.  Whether this test is controlling or replaces prior tests remains unclear.  But even if the Court applies *FilmOn.com*'s two-step analysis to this case, Mannion's distribution of his photos of Plaintiff are still a matter of public interest.  First, for the reasons discussed above, the dissemination of the photographs of Plaintiff are a matter of public interest.  Second, the relationship between Mannion's dissemination of the photographs and the public interest are inherently related.  The purpose of taking and using the photos was to "realize JAY-Z's vision of himself as a rap artist" to the public and transform him into a famous artist through sharing the photos with the public.  FAC ¶ 20.  The photographs thus were always intended to be widely broadcasted and received.  *FilmOn.com,* 7 Cal. 5th at 146 (courts should consider whether the statements "were private or widely broadcast[] and received, and for what

- 9 -

### 2.    Plaintiff Cannot Demonstrate Any Probability of Prevailing on His Right of Publicity Claims

Because Mannion has carried his burden of showing that his alleged conduct is protected expression under California's anti-SLAPP statute, the burden next shifts to Plaintiff to demonstrate that he is likely to prevail on the merits of his right of publicity claims. *Equilon*, 29 Cal.4th at 67.  As detailed below, Plaintiff cannot carry that burden.  As a result, his claims must be stricken.  And because Plaintiff cannot carry his burden under any plausible set of facts, Plaintiff's claims should be dismissed with prejudice.

### a.    Plaintiff Cannot Prevail on His Right of Publicity Claims Because They Are Preempted by Federal Copyright Law

The federal Copyright Act expressly preempts all state law claims that are "equivalent to" ownership rights under copyright law.  17 U.S.C. § 301(a).  Certain exclusive rights are bestowed on the owner of a copyrighted work, including the right to reproduction, creation of derivative works, and distribution.  17 U.S.C. §§ 106(1)–(3).  As a result, Section 301(a) of the Copyright Act "preempt[s] and abolish[es] any rights under the common law or statutes of a state that are equivalent to copyright"—including the reproduction, creation of derivative works, and distribution—"that extend to works coming within the scope of the Federal copyright law."  H.R. Rep. No. 94-1476 at 30 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5746.  This "broad statutory preemption scheme" promotes uniformity and the free flow of ideas.  *Peckarsky v. Am. Broad. Co.*, 603 F. Supp. 688, 695 (D.D.C. 1984).

---

purpose.").  Irrespective of whether the Court applies a broader definition or the more recent and narrower interpretation of "public interest," Mannion's protected actions constitute free speech in connection with a public issue or an issue of public interest.  Thus, Plaintiff's claims arising from Mannion's dissemination of the photos are governed by the anti-SLAPP statute.

DEFENDANTS' MOTION TO STRIKE AND DISMISS
CASE NO. 2:21-CV-4848

The Ninth Circuit has held that a state law claim is preempted by Section 301(a) where (1) "the work that would be affected by the plaintiff's exercise of a state-created right" "come[s] within the subject matter of copyright as specified by sections 102 and 103" of the Copyright Act; and (2) the rights plaintiff asserts are "equivalent" to a copyright owner's exclusive rights to use or authorize the use of, reproduce, or otherwise distribute the work. *Maloney,* 853 F.3d at 1010.[9] Where, as here, both elements are met, a plaintiff's claims must be dismissed with prejudice. *See id.* at 1011 (affirming dismissal of California right of publicity claims with prejudice due to preemption under federal copyright law).

>           i)          **Plaintiff's Right of Publicity Claims Are Within the Subject Matter of Copyright**

The assessment of whether a "work that would be affected by the plaintiff's exercise of a state-created right" "come[s] within the subject matter of copyright" is twofold.  17 U.S.C. § 102; *Maloney,* 853 F.3d at 1010.  The analysis first requires the work itself be worthy of copyright protection.  Next, courts evaluate whether the plaintiff's claim is directed at controlling the copyrighted work, or merely an individual likeness or persona.  *Maloney*, 853 F.3d at 1010.

First, Mannion's photographs, including "Reasonable Doubt," "Chess Not Checkers," "Beyond a Reasonable Doubt," and "New York Yankee," each fall

---

[9] Plaintiff's Complaint does not allege whether Mannion owns the copyrights in the photographs referenced therein.  But Mannion "need not be a copyright holder or licensee to invoke statutory preemption."  *Melendez v. Sirius XM Radio, Inc.*, No. 1:20-cv-6620-PAC, 2021 WL 2593471, at *4 (S.D.N.Y. June 24, 2021) (citing *In re Jackson*, 972 F.3d 25, 42–43 & n.16, n.54 (2d Cir. 2020); *Jules Jordan Video, Inc. v. 144942 Canada, Inc.*, 617 F.3d 1146, 1154–55 (9th Cir. 2010) ("Whether a claim is preempted under Section 301 does not turn on what rights the alleged infringer possesses, but on whether the rights asserted by the plaintiff are equivalent to any of the exclusive rights within the general scope of the copyright. . . . [Thus], if a plaintiff asserts a claim that is the equivalent of a claim for infringement of a copyrightable work, that claim is preempted, regardless of what legal rights the defendant might have acquired.").

DEFENDANTS' MOTION TO STRIKE AND DISMISS
CASE NO. 2:21-CV-4848

squarely within the subject matter of copyright.  Mannion's photographs are "pictorial" works of authorship, fixed in a "tangible medium of expression," and "sufficiently permanent" to permit them to be perceived "for more than transitory duration."  17 U.S.C. §§ 102(a), (a)(5); *see also, e.g., Burrow-Giles Lithographic Co. v. Sarony*, 111 U.S. 53, 60 (1884) (posed photograph of Oscar Wilde was original work of authorship protected by copyright); *Maloney*, 853 F.3d at 1011 (photographs of NCAA athletes fell within the subject matter of copyright); *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1177 (9th Cir. 2012) (photographs of a secret celebrity wedding were creative and entitled to copyright protection).  Because copyright in a work "vests initially in the author" of the work, Mannion presumably owned the copyright to his photographs at inception.  17 U.S.C. § 201(a).  And as Plaintiff merely paid Mannion to "use some of the photographs for his album covers," FAC ¶ 21, Mannion retains the right to "reproduction, creation of derivative works, and distribution."  17 U.S.C. §§ 201(a), 106(1)–(3).

Second, the slipmats upon which the aforementioned photographs were printed fall within the subject matter of copyright.  The photographs printed onto the slipmats clearly are copyrightable works.  And "[c]opyright owners have the exclusive right 'to reproduce the copyrighted work in copies.'"  *Disney Enters., Inc. v. VidAngel, Inc*., 869 F.3d 848, 856 (9th Cir. 2017) (citing 17 U.S.C. § 106(1)).  The Copyright Act further defines "copies" as "material objects . . . in which a work is fixed by any method now known or later developed, and from which the work can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device."  17 U.S.C. § 101.  Here, the slipmats reproduce copies of the photographs printed upon this new medium, and therefore remain within the subject matter of copyright.

Third, the photograph depicting ten of Mannion's contact sheet boxes, printed onto his "Fame Wall" t-shirts, falls within the subject matter of copyright.  Just like the photographs of Plaintiff's likeness, the image on these t-shirts is a

DEFENDANTS' MOTION TO STRIKE AND DISMISS
CASE NO. 2:21-CV-4848

"pictorial" work of authorship, fixed in a "tangible medium of expression," and "sufficiently permanent" to permit them to be perceived "for more than transitory duration." 17 U.S.C. § 102(a), (a)(5). And like the copies of the photographs printed on slipmats, the copies of the photograph depicting contact sheet boxes printed on the "Fame Wall" t-shirts fall within the subject matter of copyright. *See, e.g., VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 737 (9th Cir. 2019) ("The Copyright Act grants copyright holders the exclusive right to reproduce the copyrighted work in copies[.]" (internal quotation marks and citation omitted)).

The second step in the subject-matter analysis determines whether the focus of the claim is the copyrighted work itself—here, Mannion's photographs—as opposed to the mere "'likeness' or 'persona'" exhibited in those photographs. *Maloney*, 853 F.3d at 1011. Courts have repeatedly found that a plaintiff's claim is preempted when it is based on the use or distribution of a particular copyrightable work, rather than plaintiff's likeness or persona featured in the work, even where the latter are featured prominently.

In *Maloney*, for example, the defendant faced a right of publicity claim for selling consumers digital thumbnail images and a non-exclusive license to download photographs from the NCAA Photo Library containing images of athletes from various collegiate sporting events. At issue was a series of photographs depicting the plaintiffs, Catholic University basketball players. Defendant's website provided search functions and described the athletes in the photographs using their names. *Maloney*, 853 F.3d at 1007. Addressing the subject-matter requirement, the Ninth Circuit held that where a likeness has been captured in a copyrighted artistic visual work and the work itself is being distributed, a publicity-right claim based on that distribution was little more than a thinly disguised copyright claim because it sought to hold a copyright holder liable for exercising its exclusive rights under the Copyright Act. *Id.* at 1016. Because plaintiffs

challenged the use and control of the artistic work itself, the subject matter of the claims fell exclusively within the subject matter of copyright. *Id.* So too, it is here.

The outcome has been the same in numerous other cases in this circuit, California \ courts, and sister circuits. *See, e.g., Jules Jordan Video,* 617 F.3d at 1135 (publicity right claim preempted where the plaintiff actor's assertion that defendants "misappropriated his name and persona" was based entirely on the unauthorized sale of the copyrighted DVDs and the actor's performance therein); *Laws v. Sony Music Entm't, Inc.*, 448 F.3d 1134, 1140 (9th Cir. 2006) (publicity right claim preempted where defendant released a music video and sold compact discs incorporating samples of plaintiff's voice because subject matter of publicity claim was based on the use of plaintiff's voice embedded within a copyrighted sound recording); *Fleet v. CBS, Inc.*, 50 Cal. App. 4th 1911, 1919–20 (1996) (right of publicity claim by actors seeking to prevent a film-distribution company from airing and distributing a copyrighted film in which they appeared was preempted); *see also In re Jackson*, 972 F.3d at 52 (concluding that plaintiff's claim was preempted because it was based on the use of a sample of the song "In Da Club"—a copyrighted work—and not the use of plaintiff's voice or identity in that song); *Ray v. ESPN, Inc.*, 783 F.3d 1140, 1143 (8th Cir. 2015) (concluding that plaintiff athlete's right of publicity claim was preempted because the "focal point" of the case was defendant ESPN's public display of wrestling match films, in which athlete appeared, not the athlete's uncopyrightable likeness embodied within those films); *Melendez,* 2021 WL 2593471, at *1 (question was "whether the focus of [Plaintiff]'s claim is the recognizable sound and sight of his Attributes (which are not within the subject matter of copyright) or the copyright[able] work in which those Attributes are embodied (which, of course, is within the subject matter of copyright)," and concluding that the right of publicity claim was preempted because the latter was the focus of the plaintiff's claim (alterations and internal citation omitted)).

Under the enormous weight of this precedent, Plaintiff's publicity claims are clearly based on Mannion's reproduction and distribution of copyrightable photographic works, *not* of Plaintiff's "'likeness' or 'persona'" exhibited in those works. *Maloney*, 853 F.3d at 1011.  Whether Plaintiff's objection is to Mannion's distribution of photographic reprints, or the slipmats or t-shirts onto which the photographs have been printed, "the entirety of the allegedly misappropriated" use of Plaintiff's image, name, and likeness is "contained within [a] copyrighted medium." *Laws*, 448 F.3d at 1141.  Plaintiff is not attempting to stop Mannion from distributing photographic paper, slipmats, or t-shirts.  He seeks to stop Mannion from distributing the copyrightable photographs that appear thereon.  In other words, Plaintiff's right of publicity claims seek to control Mannion's art and its reproduction, not merely Plaintiff's image or persona contained therein.

Case law further asks whether a right of publicity claim "seeks to vindicate misuse of an individual's likeness," *e.g.*, by implying a false endorsement of the defendant's products, or instead "merely interfer[es] with the distribution, display, or performance" of the work.  *Maloney*, 853 F.3d at 1012–13.  This important distinction in determining whether a claim is preempted turns on whether or not defendant uses plaintiff's likeness for advertising for *collateral products* or to *suggest an endorsement*.  *Laws*, 448 F.3d at 1141; *Gionfriddo v. Major League Baseball*, 94 Cal. App. 4th 400, 413 (2001) ("[A]dvertisements are actionable when the plaintiff's identity is used, without consent, to promote an unrelated product.").  Here, Mannion in no way seeks to advertise collateral products, but merely reproductions and sales of his own works.  *See, e.g., Daly v. Viacom, Inc.*, 238 F. Supp. 2d 1118, 1123 (N.D. Cal. 2002) (use of snippets or trailers for advertising is permitted when they are used to accurately advertise the performers in a performance to be exhibited); *Melendez*, 2021 WL 2593471, at *4 (use of guest's clips to advertise the Howard Stern show did not remove the work from the subject matter of copyright because it merely advertised the work itself).

- 15 -

In *Downing v. Abercrombie & Fitch*, 265 F.3d 994 (9th Cir. 2001), by contrast, the misappropriation of name and likeness was egregious.  There, clothing retailer Abercrombie used images of well-known surfers in connection with a broad surf-themed advertising campaign of its own apparel, identified the plaintiffs by name, and designed and offered for sale the same shirts worn by plaintiffs in the photograph, thereby suggesting that the surfers endorsed Abercrombie's clothing. *Id.* at 1003.  Similarly, in *West v. iHandy Ltd*., No. CV 19-10877 PSG (JPRx), 2020 WL 1303889 (C.D. Cal. Mar. 19, 2020), the defendant used a photograph of the plaintiff without her permission in its photo-editing application and then used the photograph to advertise that application.  *Id.* at *5.  Both *Downing* and *West* involved the use of plaintiffs' likenesses in advertisements of separate, collateral products in a manner that falsely implied the plaintiffs' endorsement of those products "with which the plaintiff[s] ha[d] no relevant connection." *Jackson*, 972 F.3d at 48; *see also Downing*, 265 F.3d at 1003–05; *West*, 2020 WL 1303889, at *5–7.  Nothing of the sort is alleged here; nor could any such allegation be made.

Based on the foregoing, Mannion's reprints, slipmats, and t-shirts all fall within the subject matter of federal copyright law.

### ii)  Plaintiff's Right of Publicity Claims Are Equivalent to Copyright Infringement Claims

The second element of the preemption analysis—the so-called "equivalence element"—is also satisfied here.  Indeed, the determination of equivalence is easy and straightforward.  According to the Complaint, Mannion's "Wrongful Conduct" is "selling *copies of photographs* of JAY-Z on Mannion's website and store, and by licensing JAY-Z's image to others."  FAC ¶¶ 1, 23 (emphasis added).

These allegations directly correspond to the exclusive rights of copyright holders delineated in Section 106 of the Copyright Act, including the right to reproduce the holder's works, *see* 15 U.S.C. § 106(2), and the right to distribute copies of the holder's works by sale or other transfer, *see id.* § 106(3).  Thus, it is

precisely Mannion's exercise of such rights—by selling copies of photographs—that JAY-Z contends violates his right of publicity.  FAC ¶¶ 1, 23.  Because the rights JAY-Z seeks to control are equivalent to copyright rights, Plaintiff's claims satisfy the second part of the preemption test.  *Jules Jordan Video*, 617 F.3d at 1155; *Laws,* 448 F.3d at 1144; *see also Del Madera Props. v. Rhodes & Gardner, Inc.,* 820 F.2d 973, 977 (9th Cir. 1987) (to survive preemption, claim "must protect rights which are qualitatively different from . . . copyright rights").[10]  Because Plaintiff's right of publicity claims are inherently preempted by copyright law, Plaintiff cannot prevail on the merits of his claims, and the Court should strike and dismiss them with prejudice.  *See, e.g.*, *Maloney*, 853 F.3d at 1011 (affirming dismissal with prejudice where plaintiff had an opportunity to amend, but could not avoid preemption).

> **b.    Plaintiff Cannot Prevail on His Right of Publicity Claims Because They Are Precluded by the First Amendment As a Matter of Law**

In addition to being preempted by federal copyright law, Plaintiff's right of publicity claims fail as a matter of law for the independent reason that they are barred by the First Amendment.  *See Kirby v. Sega of Am., Inc.*, 144 Cal. App. 4th 47, 58 (2006) ("The First Amendment is an affirmative defense to a right of publicity claim.").   Thus, he cannot show the requisite "probability of prevailing" under the anti-SLAPP statute on this independent ground requiring dismissal.

---

[10] Where the only conduct by the copyright holder is the exercise of rights afforded it under copyright law, state law claims are preempted. *See, e.g., Selby v. New Line Cinema Corp.*, 96 F. Supp. 2d 1053, 1062 (C.D. Cal. 2000) (breach of implied contract claim based on ideas embodied within a screenplay preempted); *Melchoir v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 792 (2003) (conversion and unjust enrichment claims preempted); *Stromback v. New Line Cinema*, 384 F.3d 283, 306–07 (6th Cir. 2004) (interference claim preempted); *Kabehie v. Zoland*, 102 Cal. App. 4th 513, 520 (2002) (same).

It is well settled that the First Amendment provides broad protection for visual expression, including photographs.  *See, e.g.*, *Kaplan v. California*, 413 U.S. 115, 119–20 (1973) ("[P]ictures, films, paintings, drawings, and engravings . . . have First Amendment protection."); *Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184, 1203 (9th Cir. 2018) ("[D]ecisions about content, composition, lighting, volume, and angles, among others, are expressive in the same way as the written word or a musical score."); *see also Fields v. City of Philadelphia*, 862 F.3d 353, 358 (3d Cir. 2017) ("The First Amendment protects actual photos, videos, and recordings."); *ETW Corp. v. Jireh Publ'g, Inc.*, 332 F.3d 915, 924 (6th Cir. 2003) ("The protection of the First Amendment is not limited to written or spoken words, but includes other mediums of expression, including music, pictures, films, photographs, paintings, drawings, engravings, prints, and sculptures."); *Bery v. City of New York*, 97 F.3d 689, 696 (2d Cir. 1996) ("[P]aintings, photographs, prints and sculptures . . . always communicate some idea or concept to those who view it, and as such are entitled to full First Amendment protection.").

Right of publicity claims, however, are particularly ripe with potential to interfere with the First Amendment's protection of visual expression.  Indeed, the right of publicity "threatens two purposes of the First Amendment," including "preserving an uninhibited marketplace of ideas" and "furthering the individual right of self-expression."  *Winter v. DC Comics*, 30 Cal.4th 881, 887 (2003).  Those purposes are particularly relevant to photographs of celebrities and other public figures.  As the California Supreme Court has recognized, the "very importance of celebrities in society means that the right of publicity has the potential of censoring significant expression[.]"  *Comedy III*, 25 Cal.4th at 397; *see also ETW Corp.*, 332 F.3d at 937–38 ("[T]hrough their pervasive presence in the media, sports and entertainment celebrities have come to symbolize certain ideas and values in our society and have become a valuable means of expression.").

DEFENDANTS' MOTION TO STRIKE AND DISMISS
CASE NO. 2:21-CV-4848

Under California law, "when an artist is faced with a right of publicity challenge to his or her work, . . . he or she may raise as an affirmative defense that the work is protected by . . . the First Amendment inasmuch as it contains significant transformative elements, or that the value of the work does not derive primarily from the celebrity's fame." *Comedy III*, 25 Cal.4th at 389.  This defense poses "what is essentially a balancing test between the First Amendment and the right of publicity." *Winter*, 30 Cal.4th at 885 (internal quotation marks and citation omitted).  "It continues to shield celebrities from literal depictions or imitations for commercial gain by works which do not add significant new expression." *Kirby*, 144 Cal. App. 4th at 58.

Accordingly, the Court weighs the merits of a right of publicity claim in light of the supreme constitutional value of freedom of expression.  *Comedy III*, 25 Cal. 4th at 404.  When, on balance, the work "adds significant creative elements so as to be transformed into something more than a mere celebrity likeness," the expression is constitutionally protected and the right of publicity claim is defeated.  *Comedy III*, 25 Cal.4th at 391; *Winter*, 30 Cal.4th at 885; *see also Hilton*, 599 F.3d at 909.

The Court considers five non-exclusive factors to determine whether a work is sufficiently transformative.  The first four factors predominate, and include whether: (1) the "celebrity likeness" is "the very sum and substance of the work in question" or rather "one of the 'raw materials' from which [the] original work [wa]s synthesized;" (2) the product is "primarily the defendant's own expression" such that a purchaser of the work is primarily motivated by obtaining the expressive work of that artist rather than reproduction of the celebrity; (3) "creative elements predominate" over the "literal and imitative" elements; and (4) "the overall goal" is to "creat[e] a conventional portrait of a celebrity so as to commercially exploit his or her fame," and the "artist's skill and talent is manifestly subordinated to" that goal.  *Comedy III*, 25 Cal.4th at 406–oh 08.  In close cases, the court may also consider whether "the marketability and economic value of the challenged work

derive *primarily* from the fame of the celebrity depicted." *Id*. at 409 (emphasis added).  Relevant too is what the Court does *not* consider.  That the creator sought profit is entirely irrelevant for purposes of the transformative use test.  *See, e.g.*, *Hilton*, 599 F.3d at 909; *see also Smith v. California*, 361 U.S. 147, 150 (1959) ("It is of course no matter that the dissemination takes place under commercial auspices."); *ETW Corp.*, 332 F.3d at 924-25 ("Speech is protected even though it is carried in a form that is sold for profit. . . . The fact that expressive materials are sold does not diminish the degree of protection to which they are entitled under the First Amendment.").  Applying these factors, Mannion's photographic reprints, slipmats, and t-shirts are all entitled to First Amendment protection from Plaintiff's right of publicity claims.

### i)    Mannion's Photographs Utilizing Plaintiff's Likeness Are Transformative

Plaintiff's Complaint identifies several of Mannion's photographic prints featuring Plaintiff's likeness, including "Reasonable Doubt," "Chess Not Checkers," "Beyond a Reasonable Doubt," and "New York Yankee."  *See* FAC ¶ 24.  None of those photographs, however, utilize Plaintiff's likeness as "the very sum and substance of the work in question."  *Comedy III*, 25 Cal.4th at 406.  Instead, Plaintiff's likeness is the "raw material" from which these original works of art were "synthesized," and the "creative elements" of the works plainly "predominate" over elements that are "literal and imitative" of Plaintiff's mere likeness.  *Id.* at 407.[11]  Accordingly, Mannion's reprints are transformative of Plaintiff's likeness and entitled to First Amendment protection.[12]

---

[11] The mere fact that Plaintiff's actual likeness is the primary subject of each photograph does not defeat Mannion's First Amendment defense.  As courts have noted, even mere "reproductions" of a celebrity's likeness "are equally entitled to First Amendment protection."  *Comedy III*, 25 Cal.4th at 391.

[12] Because Plaintiff includes or references the works in question in the Complaint, *see* FAC ¶¶ 22–23 & 25, the Court can resolve this question as a matter of law on a

- 20 -

While in some cases photography may *appear* literal to the oblivious or untrained eye, the product of the art form is far from a mere display of conventional identity, chiefly due to photography's ability to depict ideas, concepts and emotions.  When crafting a portrait image of a particular subject, professional photographers like Mannion do not simply memorialize random or speechless images of their subjects' likenesses.  Such results may be the common byproduct of opportunistic paparazzi flicks or smartphone "selfies."  Not so here.

In each of the photos depicting Plaintiff, Mannion has placed Plaintiff's visage into new, expressive contexts, and utilized his own artistic skill and uncanny eye to create original works of art far beyond Plaintiff's mere likeness.  Such actions transformed Mannion's depictions of Plaintiff's likeness and name into new, expressive works worthy of First Amendment protection.  *See No Doubt v. Activision Publ'g., Inc.*, 192 Cal. App. 4th 1018, 1034 (2011) ("when the context into which a literal celebrity depiction is placed creates something new, with a further purpose or different character, altering the" subject's likeness "with new expression, meaning, or message, the depiction is protected by the First Amendment" (internal quotation marks omitted)); *see also Sarver v. Hurt Locker LLC*, No. 2:10-CV-09034-JHN, 2011 WL 11574477, at *7 (C.D. Cal. Oct. 13, 2011) (the writing, producing, and directing of a movie about plaintiff's life added expressive content that sufficiently transformed the work), *aff'd sub nom. Sarver v. Chartier*, 813 F.3d 891 (9th Cir. 2016).

As part of Mannion's photoshoots, his subjects—including Plaintiff—are transformed by expressive decisions regarding composition, lighting, angles,

---

motion to dismiss.  *See, e.g.*, *Winter*, 30 Cal.4th at 891–92 ("As in *Comedy III*, courts can often resolve the question as a matter of law simply by viewing the work in question and, if necessary, comparing it to an actual likeness of the person or persons portrayed.  Because of these circumstances, an action presenting this issue is often properly resolved on summary judgment or, if the complaint includes the work in question, even demurrer.  This is one of those cases.").

exposure, contrast, color, costume, accessories, posture, direction, shutter speed, and background, among other contextual elements. *See, e.g.*, *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1120 (9th Cir. 2018) (recognizing, with respect to a professional photograph of basketball legend Michael Jordan, that "[t]he range of creative choices open to [the photographer] in producing his photo was exceptionally broad" and "very few of those choices were dictated by convention or subject matter"), *overruled on other grounds by Skidmore as Tr. for Randy Craig Wolfe Tr. v. Zeppelin*, 952 F.3d 1051, 1058 (9th Cir. 2020) (en banc).  Each facet of Mannion's photographs are the product of his original art: a translation of message, purpose, and meaning through the power of his personal expression.  *See id.* at 1121 (holding, on a motion to dismiss, that a photographer's "creative choices" with respect to the contextual elements of a photograph of Jordan, including "choices . . . made with respect to lighting, camera angle, depth of field, and selection of foreground and background elements [] resulted in a photo with many non-standard elements," and produced an "image entitled to the broadest protection a photograph can receive" under federal copyright law); *Maloney,* 853 F.3d at 1011 n.4 ("[P]hotographers use their tools and artistic judgment by manipulating lighting, angle, positioning, and timing."); *Mannion v. Coors Brewing Co.*, 377 F. Supp. 2d 444, 455 (S.D.N.Y. 2005) ("Mannion indisputably orchestrated the scene, even if he did not plan every detail before he met [Kevin] Garnett, and then made the decision to capture it. . . . [T]he originality of the photograph extends beyond the individual clothing, jewelry, and pose viewed in isolation. It is the entire image— depicting man, sky, clothing, and jewelry in a particular arrangement—that is at issue here, not its individual components.").  The California Supreme Court has acknowledged that a creator's "careful manipulation of [the] context" in which a celebrity's literal likeness appears is sufficiently transformative to bring the resulting image within the protection of the First Amendment, thereby barring a right of publicity claim.  *See Comedy III*, 25 Cal.4th at 408.  Such is the case here.

Indeed, Mannion's photographs are akin to other visual works that courts have deemed "transformative" for purposes of First Amendment protection.  As in *ETW*, for example, the court, which applied the California Supreme Court's test in *Comedy III*, *see* 332 F.3d at 936, examined a painting that included the likeness of famous golfer Tiger Woods.  The court concluded that the work was sufficiently transformative to bring it within the protection of the First Amendment because it "consist[ed] of much more than a mere literal likeness of Woods.  It is a panorama of Woods's victory at the 1997 Masters Tournament, with all of the trappings of that tournament in full view, including the Augusta clubhouse, the leader board, images of Woods's caddy, and his final round partner's caddy.  These elements in themselves are sufficient to bring [plaintiff]'s work within the protection of the First Amendment."  As in *ETW*, Mannion's photographs consist of "much more than a mere literal likeness" of Plaintiff, and instead place his likeness and his name into diverse, original, and expressive new contexts—including alongside other subjects, just like the painting at issue in *ETW*.  *See, e.g.*, FAC ¶ 24 ("Chess, Not Checkers").[13]  Indeed, even Mannion's photographs featuring Plaintiff alone contain highly original expressive contexts.[14]  *Compare* FAC ¶ 24 ("Reasonable

---

[13] *See also* JONATHAN MANNION, *Mannion Fame Wall Black Short Sleeve Tee*, https://shop.jonathanmannion.com/collections/merch/products/mannion-fame-wall-black-short-sleeve-tee (last visited Aug. 2, 2021) (including the name "JAY-Z" alongside other artists).

[14] The transformative nature of Mannion's photographs of JAY-Z was confirmed by JAY-Z himself, when he commissioned and sold at Sotheby's a non-transferable token ("NFT") consisting of a work derived from three of Mannion's photographs that was created by the "critically admired" American artist Derrick Adams. SOTHEBY'S, *Heir to the Throne: An NFT in Celebration of JAY's Reasonable Doubt 25th Anniversary by Derrick Adams*, https://www.sothebys.com/en/digital-catalogues/heir-to-the-throne (last visited Aug. 2, 2021).  These too, are matters of which the Court can take judicial notice.  *See Estate of Graham v. Sotheby's, Inc.*, 178 F. Supp. 3d 974, 998 (C.D. Cal. 2016) (taking judicial notice of auction house's website); *Caldwell v. Caldwell*, No. 05-cv-4166-PJH, 2006 WL 618511, at *4 (N.D. Cal. Mar. 13, 2006) ("[A]s a general matter, websites and their contents may

Doubt" and "Beyond A Reasonable Doubt") (black-and-white depiction of Plaintiff in a coal-colored suit, accessorized with a cream silk scarf around his neck and hat, looking away from the camera, including with a cigar between his fingers) *with id.* ("New York Yankee") (color depiction of Plaintiff in a New York Yankees jacket and jersey, holding a Yankees hat, and looking directly into the camera).  These unique and original expressive contexts are more than sufficient to sweep Mannion's photographs into the First Amendment's protective ambit.  *See Winter*, 30 Cal. 4th at 891 ("The distinction between parody and other forms of literary expression is irrelevant to the . . . transformative test.  It does not matter what precise literary category the work falls into.  What matters is whether the work is transformative, not whether it is parody or satire or caricature or serious social commentary *or any other specific form of expression*." (emphasis added)).

Further, Plaintiff's own Complaint confirms that Mannion's photographs of Plaintiff are transformative.  Any person can find literally *thousands* of images depicting Jay-Z on the Internet in a variety of ways, such as searching for his name on Google and clicking the "Images" tab.  But the Complaint affirmatively alleges that Mannion is able to sell prints of his photographs of Plaintiff for "thousands of dollars per copy."  FAC ¶ 25.  Plaintiff's own allegations therefore show that consumers who purchase Mannion's prints depicting Plaintiff are motivated by the artistry in Mannion's works, as opposed to some generic, literal, or fungible depiction of Plaintiff devoid of original artistic expression.  And that conclusion is reinforced by the fact that Mannion's considerably expensive prints depicting Plaintiff are *signed by Mannion*, not by Plaintiff or anyone else.[15]  *See Comedy III*,

---

be proper subjects for judicial notice.").  In fact, this lawsuit was likely filed as a preemptive strike to protect Plaintiff's plan to auction this NFT at Sotheby's, which may well constitute copyright infringement of Mannion's works.

[15] *See, e.g.*, JONATHAN MANNION, *Jay-Z "Beyond A Reasonable Doubt" Print*, https://shop.jonathanmannion.com/collections/saturday-special-edition-prints/products/jay-z-print-1?variant=31780136353892 (last visited Aug. 2, 2021)

25 Cal. \4th at 406 (considering a depiction of plaintiff's likeness to be "primarily the defendant's own expression'" and transformative if a purchaser of the work is motivated by obtaining the expressive work of the defendant, rather than a merely literal reproduction of the plaintiff's likeness).

Finally, in close cases, courts evaluate whether the marketability and economic value of the work are primarily derived from the artist's skill and renown. Here, this factor weighs strongly in favor of First Amendment protection, with the proof found in Mannion's website repeatedly referenced in the FAC.  *See Ross v. Roberts*, 222 Cal. App. 4th 677, 688 (2013) ("[E]conomic value of defendant's work is reflected to a large extent by the number of CD's and records he sells."). Three of the portraits at challenged in the Complaint are offered for sale on Mannion's website under the "Saturday Edition Prints" section.[16]  These prints, even though they are very modestly sized at 5" × 7", sell for $50 each.  However, there are currently thirty other 5" × 7" "Saturday Edition Prints" that *do not* contain Plaintiff's likeness, but the likenesses of other rap artists, that still sell for the *same price*.  The fourth portrait in question, "Chess Not Checkers," is one of among eight "Special Edition Prints" available on Mannion's site featuring rap and hip hop artists.[17]  Seven of the eight prints *do not feature Plaintiff at all*, yet each of these prints costs at least $1,000, and up to $10,000.[18]  Plainly, therefore, the value of

_____

(noting that each print is signed).  Mannion's website and the objects offered for sale thereon are referenced in Plaintiff's Complaint, *see, e.g.*, FAC ¶ 24, and thus the contents of the website are judicially noticeable.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001) (permitting judicial notice of material which is necessarily relied upon by the complaint).

[16] Jonathan Mannion *Saturday Edition Prints*, https://shop.jonathanmannion.com/collections/saturday-special-edition-prints (last visited Aug. 2, 2021).

[17] Jonathan Mannion, *Special Edition Prints*, https://shop.jonathanmannion.com/collections/prints (last visited Aug. 2, 2021).

[18] *See, e.g.*, Jonathan Mannion *Ol' Dirty Bastard*, https://shop.jonathanmannion.com/collections/prints/products/odb?variant=331594

Mannion's photographs depicting Plaintiff derives *not* merely from "the fame of the celebrity depicted," *Comedy III*, 25 Cal. 4th at 407, but rather from *Mannion's* own skill and talent as a photographer.

Ultimately, Plaintiff cannot point to a single case in which a court has deemed an original, photographic work of art by a celebrated, professional photographer that depicts a celebrity, like the artistic works at issue here, to lack the "transformative use" of personal likeness necessary to prevail on a First Amendment defense against a right of publicity claim. The reason is simple: no such case exists. As California courts have succinctly concluded, "[a] work is transformative if it adds new expression." *Kirby*, 144 Cal. App. 4th at 60 (internal quotation marks omitted). Each of Mannion's photographs of Plaintiff add substantial new expression to Plaintiff's mere likeness.[19] The First Amendment thus bars Plaintiff's right of publicity claims against Mannion's use of those photos.

---

62222 (last visited Aug. 2, 2021) (indicating that a 50" × 60" signed print costs $10,000.00 USD).

[19] Mannion's photographs of Plaintiff's name and likeness stand in stark contrast to *any* visual depictions of celebrities which courts have held *not* to be transformative. *See, e.g.*, *Comedy III*, 25 Cal.4th at 407–09 ("lithographs and T-shirts" depicting the likenesses of the Three Stooges, "which [were] not original . . . works of art," were not transformative because the creator's "skill [was] manifestly subordinated to the overall goal of creating *literal*, *conventional* depictions . . . so as to exploit their fame" (emphasis added)); *Hilton*, 599 F.3d at 911 (despite minor "differences" between a greeting card image of Hilton and her likeness in a television episode, defendant's use was not transformative because "the basic setting is the same," namely, "we see Paris Hilton, born to privilege, working as a waitress"); *No Doubt*, 192 Cal. App. 4th at 1033–34 (defendant's "use of No Doubt's avatars [was] not 'transformative' because the avatars [were] simply precise computer-generated reproductions of the band members that do not meld with the other elements of [video game] to become, in essence, [defendant's] *own* artistic expression) (emphasis added)).

1
2

### ii)      The Slipmats Reproducing Photographs of Plaintiff's Likeness Are Transformative

3

The foregoing analysis applies with at least equal force to Mannion's

4

slipmats, which feature the same iconic photographs depicting Plaintiff as the

5

photographic reprints.  FAC ¶ 23.  As noted above, the slipmats are "copies" of

6

Mannion's photographs depicting Plaintiff, and therefore entitled to the same First

7

Amendment protection as the photographs themselves.

8

Moreover, the slipmats are *doubly* Mannion's "own expression"—first by

9

arranging and taking the photo, and then by synthesizing the image onto the

10

slipmat.  Indeed, the "creative elements predominate" in Mannion's selection of the

11

very medium on which the image is transposed, and the new meaning and purpose

12

that the slipmat brings.  *Comedy III*, 25 Cal.4th at 407.  A slipmat is a circular piece

13

of cloth that DJs place on turntables to enhance mixing and scratching, a technique

14

pioneered by Joseph Saddler, popularly known by his stage name Grandmaster

15

Flash, a Barbadian-American DJ and rapper and part of the first rap group inducted

16

into the Rock n Roll Hall of Fame.  Loren E. Mulraine, *A Global Perspective on*

17

*Digital Sampling*, 52 AKRON L. REV. 697, 699 (2018).  Slipmats thereby facilitate

18

"remixing and [] creating a new piece of music by playing vinyl records and

19

turntables as if they were musical instruments."  *Id.* at 700 n.5.  By printing

20

Mannion's photographs depicting Plaintiff onto the surface most associated with

21

transforming old songs into new works, Mannion makes his own statement about

22

both music and Plaintiff as an artist.  Moreover, like the DJs who use slipmats,

23

Mannion effectively "adds something new, with a further purpose or different

24

character, altering the first with new expression, meaning, or message."  *Comedy*

25

*III*, 25 Cal.4th at 404.  Mannion's reproduction of photographs depicting Plaintiff

26

on slipmats are therefore doubly protected by the First Amendment, which

27

precludes Plaintiff's claims.

28

DEFENDANTS' MOTION TO STRIKE AND DISMISS
CASE NO. 2:21-CV-4848

### iii)    The "Fame Wall" T-Shirts Are Transformative

As noted above, Plaintiff finally objects to Mannion's sale of t-shirts featuring an original photograph[20] of what Mannion terms his "Fame Wall."  FAC ¶ 22 ("Mannion is selling what he refers to as 'Fame Wall' t-shirts, which display [Plaintiff's] name at the top of Mannion's 'Fame Wall,' above other well-known artists that Mannion has photographed.").  This "Fame Wall" photograph depicts a stack of archival boxes of contact sheets that are housed in Mannion's New Jersey studio from photo shoots with hundreds of recording artists that Mannion has captured during his storied career.  As Plaintiff correctly observes, the name JAY-Z appears at the top of the stack.  FAC ¶ 22.  But Plaintiff is only one of ten such names—the others are Eminem, DMX, Aaliyah, Biggie, Mos Def, Lauryn Hill, Snoop Dogg, Outkast, and Nas.

The fact that Mannion's "Fame Wall" photograph depicts Plaintiff's name, rather than his likeness, has no bearing on his First Amendment defense to Plaintiff's right of publicity claim.  *Ross*, 222 Cal. App. 4th at 687.  Like Mannion's photographic reprints and slipmats, his "Fame Wall" t-shirts are protected by the First Amendment for several reasons.

First, the t-shirt image is an original work of art that merely displays Plaintiff's name as one of many raw materials to create further purpose, meaning, and message.  *Comedy III,* 25 Cal.4th at 404.  As in *Ross*, where defendant's work "reli[ed] to some extent on plaintiff's name and persona," Plaintiff's name is one of ten others that each compose the final product.  *See Ross*, 222 Cal. 4th at 687-88 (rapper's "creat[ion of] a celebrity identity" using "the name and certain details of an infamous criminal's life as basic elements" transformative when rapper added "new expression" to create "original artistic works").  The use of Plaintiff's name inscribed on one of many contact sheet boxes representing Mannion's favorite

---

[20] Plaintiff does not dispute that the "Fame Wall" photograph is an original work of Mannion's authorship.

shoots "added creative elements to create new expression." *Comedy III*, 25 Cal.4th at 408–09; *see also Rentmeester*, 883 F.3d at 1119 (noting that under federal copyright law, the original "combination of subject matter, pose, camera angle, etc." in a photograph, as selected by the photographer, "receives protection" as original expression).

Second, the photograph on the "Fame Wall" t-shirts is indisputably Mannion's own expression.  The image is, quite literally, a portrayal of Mannion's own work product.  Called the "Fame Wall" for a reason, the image celebrates a career built over decades through demand for Mannion's artistry as a photographer. Representing his storied career, the image depicts a stack of ten boxes of contact sheets from Mannion's previous photoshoots with well-known artists.  FAC ¶ 22. The photo therefore represents Mannion's process and livelihood as an artist.

Third, "creative elements predominate" over the "literal and imitative elements" of the photo for the reasons described above.  *Comedy III*, 25 Cal.4th at 407.  Mannion's careful selection and arrangement of contact sheet boxes, and even his decision to represent his career with them, make it "readily ascertain[able]" that the image is not a "conventional depiction" of Plaintiff or Plaintiff's name.  Rather, the work "contain[s] significant expressive content other than plaintiff['s] mere likenes[s]." *Winter*, 30 Cal.4th at 890.   The design is not a reproduction of Plaintiff's celebrity, as Plaintiff's name takes on new meaning alongside those of other artists: it represents the career Mannion has built as a photographer who worked to brand himself and as the preeminent photographer for hip hop and rap artists' cover art.  *See Comedy III*, 25 Cal.4th at 397 (acknowledging that celebrities' images are "important expressive and communicative resources" that are "widely used  . . . to symbolize individual aspirations").

Fourth, the use of Plaintiff's name on the t-shirt cannot reasonably be found to appropriate Plaintiff's economic value or exploit Plaintiff's fame.  *See Winter*, 30 Cal.4th at 888.  The purpose of the t-shirt is not to advertise these artists or their

- 29 -

albums.  The t-shirt is not about Jay Z, or Eminem, or DMX.  The labels on the boxes were created and applied at the time of the shoots for archival purposes.  The boxes were organized for the image as a celebration of the masterful photographs *Mannion* produced over the course of his career.  The shirt is a conceptualized self-portrait of Mannion's celebrated career, and no one else's.

Finally, the "value of the work" does not derive from Plaintiff's fame. Rather, as in *Sarver*, 2011 WL 11574477, at *7, where the value of the film "unquestionably derived from the creativity and skill of the writers, directors, and producers who conceived, wrote, directed, edited, and produced it," the value of the "Fame Wall" t-shirt derives from its creative source—Mannion himself.  *See id.*

### C.   Independently, the Court Must Dismiss Plaintiff's First Amended Complaint for Failure to State a Claim

If the Court concludes that Plaintiff's claims are not subject to the California anti-SLAPP statute, it should nevertheless dismiss the Complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted.  The same reasons, detailed above, that demonstrate Plaintiff cannot show a "probability of prevailing" on his claims requiring dismissal under the anti-SLAPP statute—copyright preemption and the First Amendment bar—are equally applicable to a traditional motion to dismiss under Rule 12(b)(6).

## IV.   CONCLUSION

For the foregoing reasons, Defendants Jonathan Mannion and Jonathan Mannion Photography LLC respectfully ask the Court to both strike and dismiss Plaintiff's First Amended Complaint with prejudice, as any further attempt to amend would be futile.

DEFENDANTS' MOTION TO STRIKE AND DISMISS
CASE NO. 2:21-CV-4848

1   Dated:                          August 5, 2021

2

3   Respectfully submitted,

4                                   PAUL HASTINGS LLP
                                    Steven A. Marenberg
5                                   David P. Thoreson
                                    Kiaura Clark
6
                                    By: /s/ *Steven A. Marenberg*
7
                                    _____
8                                     Steven A. Marenberg

9                                   Attorneys for Defendants

10                                  Jonathan Mannion and
                                    Jonathan Mannion LLC

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION TO STRIKE AND DISMISS
                                                                     CASE NO. 2:21-CV-4848