WILLENKEN LLP
Paul J. Loh (Bar No. 160541)
ploh@willenken.com
Lika C. Miyake (Bar No. 231653)
lmiyake@willenken.com
Kenneth M. Trujillo-Jamison
   (Bar No. 280212)
ktrujillo-jamison@willenken.com
707 Wilshire Blvd., Suite 3850
Los Angeles, California 90017
Telephone:  (213) 955-9240

ROCKSTONE LEGAL
Sarah Hsia (pro hac vice)
sarah@rockstonelegal.com
229 W. 36th Street, 8th Floor
New York, NY 10018
Telephone: (876) 855-6676

Attorneys for Defendants
JONATHAN MANNION and
JONATHAN MANNION PHOTOGRAPHY LLC

PAUL HASTINGS LLP
Steven A. Marenberg (Bar No. 101033)
stevenmarenberg@paulhastings.com
Kiaura Clark (Bar No. 336314)
kiauraclark@paulhastings.com
1999 Avenue of the Stars, 27th Fl.
Los Angeles, California 90067
Telephone:  (310) 620-5710

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

SHAWN CARTER, also known as
JAY-Z, an individual,

                    Plaintiff,

v.

JONATHAN MANNION, an
individual, and JONATHAN
MANNION PHOTOGRAPHY LLC, a
New York limited liability company,

                    Defendants.

Case No.: 2:21-cv-04848-PA-KS

**[PROPOSED] ORDER FOR ENTRY
OF STIPULATION RE ESI
DISCOVERY PROTOCOL**

Judge: Hon. Percy Anderson
Magistrate Judge: Hon. Karen L.
Stevenson Ctrm: 9A

Trial Date:      July 19, 2022

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**[~~PROPOSED~~] ORDER**

Pursuant to the Stipulation re: Production of Electronically Stored Information and Hard Copy Discovery (the "Stipulated Order," attached hereto as Exhibit 1) submitted by Plaintiff Shawn Carter and Defendants Jonathan Mannion and Jonathan Mannion Photography LLC and good cause appearing therefor, IT IS HEREBY ORDERED that the Stipulated Order is entered.

**IT IS SO ORDERED.**

Dated:  December 6  , 2021

Karen L. Stevenson
United States Magistrate Judge

# EXHIBIT 1

WILLENKEN LLP
Paul J. Loh (Bar No. 160541)
ploh@willenken.com
Lika C. Miyake (Bar No. 231653)
lmiyake@willenken.com
Kenneth M. Trujillo-Jamison
(Bar No. 280212)
ktrujillo-jamison@willenken.com
707 Wilshire Blvd., Suite 3850
Los Angeles, California 90017
Telephone:  (213) 955-9240

ROCKSTONE LEGAL
Sarah Hsia (pro hac vice)
sarah@rockstonelegal.com
229 W. 36th Street, 8th Floor
New York, NY 10018
Telephone: (876) 855-6676

PAUL HASTINGS LLP
Steven A. Marenberg (Bar No. 101033)
stevenmarenberg@paulhastings.com
Kiaura Clark (Bar No. 336314)
kiauraclark@paulhastings.com
1999 Avenue of the Stars, 27th Fl.
Los Angeles, California 90067
Telephone:  (310) 620-5710

Attorneys for Defendants
JONATHAN MANNION and
JONATHAN MANNION PHOTOGRAPHY LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAWN CARTER, also known as JAY-Z, an individual, | Case No.: 2:21-cv-04848-PA-KS |
| Plaintiff, | **STIPULATION RE: PRODUCTION OF ELECTRONICALLY STORED INFORMATION AND HARD COPY DISCOVERY** |
| v. | |
| JONATHAN MANNION, an individual, and JONATHAN MANNION PHOTOGRAPHY LLC, a New York limited liability company, | Judge: Hon. Percy Anderson<br>Magistrate: Hon. Karen L. Stevenson<br>Ctrm: 9A |
| Defendants. | Trial Date:     July 19, 2022 |

Plaintiff Shawn Carter, also known as Jay-Z ("Plaintiff") and Defendants Jonathan Mannion and Jonathan Mannion Photography LLC (collectively, "Defendants") hereby stipulate and propose to the Court the following stipulated order ("Stipulated Order") governing the production of electronic and hard copy discovery in the above-captioned action.

I. **DEFINITIONS.**

    A. "Custodian" means the Parties to the Litigation and any employee or agent of any Party reasonably likely to have possession, custody, or control over documents potentially relevant to the claims and defenses in the case or responsive to Requests for Production served in this case.

    B. "Document" carries the meaning consistent with <u>Federal Rules of Civil Procedure 26</u> and 34, and includes both electronically stored information ("ESI") and paper documents.

    C. "Electronically Stored Information" or "ESI" carries the meaning consistent with <u>Federal Rules of Civil Procedure 26(b)</u> and 34, and Federal Rule of Evidence 1001.

    D. "Format" means the internal structure of a file, which defines the way it is stored and its intended use.

    E. "Hard Copy Discovery" means any Document or thing discoverable under <u>Federal Rules of Civil Procedure 26(b)(1)</u> and 34 that is not ESI.

    F. "Litigation" means the above-captioned case.

    G. "Native Format" means the underlying file(s) containing the ESI at issue in the file system in which such ESI was originally created.

    H. "Party" or "Parties" means Plaintiff and Defendants.

    I. "Producing Party" means a Party that produces Documents.

    J. "Receiving Party" means a Party to whom Documents are produced.

K. "Responsive Document" means any Document that is responsive to any Request for Production served on the Producing Party in the Litigation that the Producing Party has agreed to produce or that the Court has ordered the Producing Party to produce.

L. "Tagged Image File Format" or "TIFF" refers to the CCITT Group IV graphic file format for storing bit-mapped images, with multiple compression formats and resolutions.

II.     **SCOPE**. The procedures and protocols set forth in this Stipulated Order shall govern the production of Responsive Documents between the Parties in the Litigation. Any practice or procedure set forth herein may be varied only by further written agreement of all the Parties.

III.    **COOPERATION**. The Parties shall conduct all production of ESI and Hard Copy Discovery in a cooperative manner, including without limitation, by producing ESI and Hard Copy Discovery responsive to Requests for Production in accordance with the Federal Rules of Civil Procedure; and by meeting and conferring in good faith on topics such as the identification of custodians of relevant ESI, potentially relevant data sources, search methodologies, cost of production and allocation, and such other issues as may arise during the course of discovery.

IV.     **PRESERVATION**. The Parties shall, during the pendency of this Litigation, take all reasonable steps to preserve Documents, ESI, and other tangible objects in their possession, custody, or control that may be relevant to the Litigation. The Producing Party shall also take reasonable steps to collect and process Documents using methods that avoid spoliation of data, including but not limited to Document metadata.

V.      **HARD COPY DISCOVERY**. Hard Copy Discovery shall be produced in the format provided in "Appendix A: Production Format Protocol," attached hereto.

VI.  **ELECTRONICALLY STORED INFORMATION.** The Parties agree to the following procedures about ESI and production formats:

A.  <u>ESI That Is Not Reasonably Accessible</u>. If a Producing Party contends that any responsive ESI is not reasonably accessible within the meaning of Rule 26(b)(2)(B), that Party shall identify such ESI with reasonable particularity and provide the Receiving Party with the basis for declining to produce such ESI. If necessary, the Parties shall meet and confer in good faith concerning the production of any ESI with such limited accessibility.

B.  <u>Sources</u>.

1. The Parties shall not be obligated under this Stipulated Order to attempt to retrieve, or recreate any ESI that is no longer within their possession, custody, or control (*i.e.*, lost or deleted) as a result of the routine, good-faith operation of an electronic information system occurring before this Litigation, unless the Receiving Party establishes that there is good cause to believe that the Producing Party intentionally failed to preserve, deleted, or destroyed the ESI while under an obligation to retain it, and the Court so determines.

2. The Parties will meet and confer and attempt in good faith to reach agreement regarding the following issues: (1) the identity of custodians whose ESI should be searched; (2) the search terms or phrases to be employed in searching custodian ESI; (3) the date ranges for which potentially discoverable ESI will be searched; (4) the identity of databases that may have potentially discoverable ESI (if any so exist) (including, but not limited to, any file servers (whether on a local network, through cloud providers, or otherwise) that are used to share documents

and files); and (5) the search terms, phrases, or parameters to be used in searching databases (if any so exist) for potentially discoverable ESI. As an initial step, the Producing Party shall identify custodians and databases (if any) that may have potentially discoverable ESI. Thereafter, the Parties shall meet and confer in good faith to reach agreement with regard to searching discoverable ESI.

3. With respect to section 2 of this Stipulated Order, the Requesting Party does not waive its right to request, in good faith, that a search be enlarged to uncover additional potentially discoverable ESI, and the Producing Party does not waive its right to request that that a search be narrowed because it believes, in good faith, that a review and/or production of ESI pursuant to the search would not be relevant to any party's claim or defense, is not proportional to the needs of the case, or both.

4. With respect to section 2 of this Stipulated Order, if the Parties meet and confer in good faith about the terms of an ESI search but reach an impasse and are unable to resolve the dispute, the Requesting Party may seek resolution of the dispute under Federal Rule of Civil Procedure 37; Local Rules 37-1 through 37-4; Section 3(a) of the Court's Standing Order, Dkt. 12 (entered June 16, 2021 in this Litigation); Section I.A. of the Court's Civil Trial Scheduling Order, Dkt. 52 (entered Nov. 4, 2021 in this Litigation); and any other applicable Court rule, individual practice, or both.

5. The Parties may use one or more search methodologies, including but without limitation the use of advanced search and

retrieval technologies and/or technology-assisted review technologies, to identify potentially discoverable ESI.  If any Party elects to use technology-assisted review, that Party shall, at the request of any other Party, provide the confidence level, margin of error, and recall rate associated with the technology assisted review.

C. **Deduplication**. In producing ESI, the Parties shall make reasonable efforts to remove duplicate ESI. ESI may be deduplicated based on either SHA-1 or MD5 checksum at the family parent level. De-duplication will be performed globally across data sets. Parties shall make reasonable efforts to maintain duplicate custodian data, which shall be identified in relevant load files and/or privilege and redaction logs.

D. **Email Threading**. In order to reduce the volume of entirely duplicative content within email threads, the Parties may, but are not required to, use "email thread suppression." As used in this ESI Protocol, "email thread suppression" means reducing duplicative production of email threads by producing the most recent email containing the thread of emails, as well as all attachments within the thread, and excluding emails constituting exact duplicates of emails within the produced string. For purposes of this paragraph, only email messages in which the parent document and all attachments are exactly the same will be considered duplicates. If an email thread splits into two separate threads, then both threads shall be included in the production. If an email has an attachment and subsequent replies omit that attachment, then the original email with the attachment shall also be included in the production, relevant logs. or both. Duplicative emails suppressed under this paragraph do not need to be listed on a

Party's privilege and redaction logs.  For the sake of clarity, if a Producing Party withholds the most recent email in a thread based on the grounds of privilege, immunity, privacy, or any similar claim, that party must nevertheless produce the most recent, wholly inclusive non-privileged email in the thread.

E. **Production Format and Metadata Protocols**. ESI shall be produced in the format provided in "Appendix A: Production Format Protocol," attached hereto.

F. **Specificity of Response**. Documents do not have to be marked to identify the specific document request to which they respond.

VII. **PRIVILEGE LOG AND TREATMENT OF PRIVILEGED MATERIALS**

A. **Privilege Log**. Consistent with the Federal Rules of Civil Procedure, a Party withholding or redacting any responsive Document on the grounds of privilege, immunity, privacy, or any similar claim shall provide to the Receiving Party a privilege log, except that:

1. The Parties shall have no obligation to log information for Documents generated on or after the filing of the Complaint (June 15, 2021); and

2. Activities undertaken in compliance with the duty to preserve information (including, but not limited to, litigation hold notices) are protected from disclosure under Federal Rule of Civil Procedure 26(b)(3)(A)-(B) and need not be included in the privilege log.

B. **Privilege Log Contents.** For each Document withheld or redacted, the privilege log shall contain the following information, if available:

1. the date of the Document;

6

STIPULATION RE: ESI AND HARD COPY DISCOVERY

2.  the identity of all custodians and duplicate custodians of the Document;

3.  the identity of all persons who authored and/or sent the Document;

4.  the identity of all persons designated as addressees or CC recipients;

5.  a description of the contents of the Document that, without revealing information itself privileged or protected, is sufficient to understand the subject matter of the Document and the basis of the claim of privilege or immunity;

6.  the type or nature of the privilege asserted (e.g., attorney-client privilege, work-product doctrine, etc.); and

7.  for redacted Documents only, the Bates numbers corresponding to the first and last page of any Document redacted.

For all individuals listed on a log whose role as an attorney is the basis for a claim of privilege, the privilege log shall indicate that the individual is an attorney.

C.  **Protocols for Logging Email Chains.** Any email chain (*i.e.*, a series of emails linked together by email responses and forwarding) that is withheld or redacted on the grounds of privilege, immunity, or any similar claim shall be logged as one Document and shall be identified by the top-most email in the chain that is withheld or redacted. The Parties shall not be required to log identical copies of an email that are included in a chain that has been logged in accordance with this Paragraph.

1.  **Protocols for Partially Privileged or Protected Documents**. If the Producing Party claims that only a portion of a Responsive Document is privileged or protected from disclosure, the

7

STIPULATION RE: ESI AND HARD COPY DISCOVERY

Producing Party shall furnish a redacted version of the Responsive Document, redacting only the part(s) thereof claimed to be privileged or protected from disclosure. The Producing Party shall also provide a redaction log, which sets forth the specific bases of any applicable privilege, immunity, or protection against disclosure, so that the Receiving Party may evaluate redactions and assertions of privilege as to such partially redacted Documents.

2. **Protocols for Logging "Families."** Each member of a family (*i.e.*, email attaching memorandum) that is withheld or redacted on the grounds of privilege, immunity, or any similar claim shall be identified on the log separately.

3. **502(d) Order and Clawback Procedure**. This Stipulated Order is entered under Federal Rule of Evidence 502(d). Subject to the provisions of this Stipulated Order, if the Producing Party inadvertently discloses information in connection with the Litigation that the Producing Party thereafter claims to be privileged or protected by the attorney-client privilege or work-product protection ("Protected Information"), the disclosure of that Protected Information will not constitute or be deemed a waiver or forfeiture—in this or any other action—of any claim of privilege or work-product protection that the Producing Party would otherwise be entitled to assert with respect to the Protected Information and its subject matter. A Producing Party must notify the Party receiving the Protected Information, in writing, that it has disclosed that Protected Information without intending a waiver by the disclosure. Upon receipt of notification, the Receiving Party shall immediately take all

reasonable steps to destroy, return, or sequester all copies, electronic or otherwise, of such Document or other information, and shall provide a certification that it will cease further review, dissemination, and use of the Protected Information.

4. **Contesting Claim of Privilege or Work-Product Protection**. Nothing in this Stipulated Order shall limit the Receiving Party's right to challenge the Producing Party's claim that Protected Information is protected from disclosure by the attorney-client privilege or work-product doctrine. If, after undertaking an appropriate meet-and-confer process, the Parties are unable to resolve any dispute they have concerning the protection of Documents for which a claim of disclosure has been asserted, the Receiving Party may seek resolution of the dispute under Federal Rule of Civil Procedure 37; Local Rules 37-1 through 37-4; Section 3(a) of the Court's Standing Order, Dkt. 12 (entered June 16, 2021 in this Litigation); Section I.A. of the Court's Civil Trial Scheduling Order, Dkt. 52 (entered Nov. 4, 2021 in this Litigation); and any other applicable Court rule, individual practice, or both. Any Protected Information submitted to the Court in connection with a challenge to the Producing Party's claim of attorney-client privilege or work-product protection shall not be filed in the public record, but rather shall be redacted, filed under seal, or submitted to the Court for in camera review.

D. **MEET AND CONFER.**

1. The Parties will endeavor to produce Documents in a reasonably timely manner and in accordance with the timelines set forth in the Federal Rules of Civil Procedure. The Parties recognize,

however, that strict adherence to those requirements may not be possible in all situations and with all data. The Parties agree to produce Documents on a rolling basis, and to make reasonable efforts to expedite the process. If either Party feels production has been unreasonably delayed, the Parties agree to meet and confer in good faith to seek resolution of the dispute before involving the Court.

2. To the extent a Receiving Party believes that a Producing Party's production is deficient in any respect, it shall meet and confer with the Producing Party to resolve such issue or dispute. If the Parties cannot reach agreement on any dispute, the Receiving Party may seek resolution of the dispute under Federal Rule of Civil Procedure 37; Local Rules 37-1 through 37-4; Section 3(a) of the Court's Standing Order, Dkt. 12 (entered June 16, 2021 in this Litigation); Section I.A. of the Court's Civil Trial Scheduling Order, Dkt. 52 (entered Nov. 4, 2021 in this Litigation); and any other applicable Court rule, individual practice, or both.

E. **PROTECTIVE ORDER**. This Stipulated Order incorporates the provisions of the Protective Order Concerning Confidential Information (the "Protective Order," Dkt. No. 51) in this Litigation. No provision of this Stipulated Order shall be interpreted as inconsistent with the Protective Order, and if there is a conflict between any provision of this Stipulated Order and the Protective Order, the provision of the Protective Order shall prevail.

1    **ACCEPTED AND AGREED** to this 3rd day of December, 2021

2

3    Dated:  December 3, 2021               WILLENKEN LLP

4

5                                          By: */s/ Kenneth M. Trujillo-Jamison*
                                              Paul J. Loh
6                                             Lika C. Miyake
                                              Kenneth M. Trujillo-Jamison
7

8                                          ROCKSTONE LEGAL
                                           Sarah Hsia (*pro hac vice*)
9

10                                         PAUL HASTINGS LLP
                                           Steven A. Marenberg
11                                         *Attorneys for Defendants*

12

13   Dated:  December 3, 2021               QUINN EMANUEL URQUHART &
                                           SULLIVAN, LLP
14

15

16                                         By: */s/ Robert M. Schwartz*
                                              Alex Spiro (*pro hac vice*)
17                                            Robert M. Schwartz
                                              Dylan C. Bonfigli
18                                         *Attorneys for Plaintiff*

19

20

21

22

23

24

25

26

27

28

**APPENDIX A**
**PRODUCTION FORMAT PROTOCOL**

I.   **PRODUCTION OF ELECTRONICALLY STORED**

**INFORMATION (ESI)**

A. **Load Files**. Except where noted in section (L) below, all ESI is to
be produced in electronic format, with files suitable for loading into
a compatible litigation support review database. All productions
will include both image and metadata load files, as described below
in Section III, "Requested Load File Format for ESI."

B. **Metadata Fields and Processing.** Each of the metadata and coding
fields set forth in Section IV, "Requested Metadata Fields," that can
be extracted from a Document shall be produced for that Document.
The Parties are not obligated to populate manually any of the fields
in Section IV if such fields cannot be extracted from a Document.

C. **System Files**. Common system and program files need not be
processed, reviewed, or produced.

D. **Email**. Email shall be collected in a manner that maintains reliable
email metadata and structure.

E. **TIFFs**. Single-page Group IV TIFF images shall be provided using
at least 300 DPI print setting. Each image shall have a unique file
name, which is the Bates/control number of the Document. Original
Document orientation shall be maintained (*i.e.*, portrait to portrait
and landscape to landscape). TIFFs will show any and all text and
images which would be visible to the reader using the native
software that created the Document. Documents containing color
need not be produced in color in the first instance. If an original
Document contains color necessary to understand the meaning or
content of the Document, however, the Producing Party will honor

reasonable requests for a color image of the Document. PowerPoint Documents shall be processed with hidden slides and all speaker notes unhidden, and shall be processed to show both the slide and the speaker's notes on the TIFF image. If PowerPoint versions are not produced as native files, then the Requesting Party may request a color PDF from the Producing Party.

F. **Embedded Objects**. Non-image files embedded within Documents, such as spreadsheets within a PowerPoint, will be extracted as separate Documents and treated like attachments to the Document in which they were embedded. Graphic objects embedded within Documents or emails, such as logos, signature blocks, and backgrounds shall not be extracted as separate Documents.

G. **Compressed Files**. Compression file types (*e.g.*, .CAB, .GZ, .TAR, .Z, .ZIP) shall be decompressed in a manner that ensures a container within a container is decompressed into the lowest uncompressed element resulting in individual files. The container file itself shall not be produced.

H. **Text Files**. For each Document, a single text file shall be provided along with the image files and metadata. The text file name shall be the same as the Bates/control number of the first page of the Document. Electronic text must be extracted directly from the native electronic file unless the Document was redacted, an image file, or a physical file. In these instances, a text file created using OCR will be produced in lieu of extracted text.

I. **Redaction**. If a file that originates in ESI needs to be redacted before production, the file will be rendered in TIFF, and the TIFF will be redacted and produced. The Producing Party will provide

searchable text for those portions of the Document that have not been redacted.

J. **Native Files**. Various types of files, including, but not limited to, spreadsheets, media files, Documents with embedded media files, Document with "macros," etc., lose significant information and meaning when produced as an image. Unless redacted or for some other good cause, these types of Documents shall be produced as a native Document file. Any files that are produced in Native Format shall be produced with a Bates-numbered TIFF image slip-sheet stating the Document has been produced in Native Format, as well as all extracted text and applicable metadata set forth in Section IV.

   1. **Spreadsheets**. Excel spreadsheets shall be produced as a native Document file along with the extracted text and relevant metadata identified in Section IV for the entire spreadsheet, plus a Bates-numbered TIFF image slip-sheet stating the Document has been produced in Native Format.

   2. **Multimedia Files**. Video files (*e.g.*, MPEG, AVI) and audio files (*e.g.*, MP3) shall be produced natively.

K. **Other ESI that is Impractical to Produce in Traditional Formats (also known as "Structured Data**." The Parties understand and acknowledge that certain categories of ESI are structurally complex and do not lend themselves to production as Native Format or other traditional formats.  To the extent a response to discovery requires production of discoverable electronic information contained in a database, the Parties agree to confer to define appropriate parameters for querying the database for discoverable information and generating a report in a reasonably

usable and exportable electronic file (*e.g.*, Excel, CSV, or SQL format).

L. **Endorsements**. The Producing Party will brand all TIFF images in the lower right-hand corner with the corresponding Bates/control numbers, using a consistent font type and size. The Bates number must not obscure any part of the underlying data. The Producing Party will brand all TIFF images in the lower left-hand corner with all confidentiality designations, as needed, in accordance with confidentiality definitions as agreed to by the Parties.

M. **Password-Protected Files**. To the extent any produced Documents are password-protected, the Producing Party must either unlock the Document prior to production or provide passwords in order to allow access by the Receiving Party. If the Producing Party is unable to process a Document because of unknown passwords or other encryption that cannot be cracked using reasonably standard means, the Producing Party shall retain a listing of such Documents in an exception report.

II. **PRODUCTION OF HARD COPY DISCOVERY**

A. **TIFFs**. Hard Copy Discovery shall be scanned as single page, Group IV compression TIFF images using a print setting of at least 300 dots per inch (DPI). Each image shall have a unique file name, which is the Bates/control number of the Document.   Original Document orientation shall be maintained (i.e., portrait to portrait and landscape to landscape).

B. **OCR Acquired Text Files**. When subjecting physical Documents to an OCR process, the settings of the OCR software shall maximize text quality over process speed. Any settings such as

"auto-skewing," "auto-rotation," and the like should be turned on when Documents are run through the process.

C. **Database Load Files/Cross-Reference Files**. Documents shall be provided with (a) a delimited metadata file (.dat or .txt) and (b) an image load file (.opt), as detailed in Section III.

D. **Unitizing of Documents**. In scanning paper Documents, distinct Documents shall not be merged into a single record, and single Documents shall not be split into multiple records (*i.e.*, paper Documents should be logically unitized). In the case of an organized compilation of separate Documents—for example, a binder containing several separate Documents behind numbered tabs—the Document behind each tab should be scanned separately, but the relationship among the Documents in the binder should be reflected in proper coding of the beginning and ending Document and attachment fields.  The Parties will make their best efforts to unitize Documents correctly.

III. **LOAD FILE FORMAT FOR ESI**

A. Delimited Text File: A delimited text file (.DAT or .CSV) containing the fields listed in Section IV should be provided. The delimiters for the file can be Concordance defaults, but defined delimiters are acceptable:

1. Comma - ASCII character 20 ( )
2. Quote - ASCII character 254 (þ)
3. Newline - ASCII character 174 (®)

B. Image Cross-Reference File (Load File): The Image cross-reference file (.OPT) is a comma delimited file consisting of six fields per line. There must be a line in the cross-reference file for every image

16

STIPULATION RE: ESI AND HARD COPY DISCOVERY

in the database. The format for the file is as follows:

ImageID,VolumeLabel,ImageFilePath,DocumentBreak,PageCount

1. ImageID: The unique designation used to identify an image. This should be the Bates number of the Document.

2. VolumeLabel: The name of the volume.

3. ImageFilePath: The full path to the image file.

4. DocumentBreak: If this field contains the letter "Y," then this is the first page of a Document. If this field is blank, then this page is not the first page of a Document.

5. PageCount: Number of pages in the Document.

## IV. METADATA FIELD MAP FOR ESI

The following table contains the agreed-upon metadata field map for ESI.

[The remainder of this page is intentionally left blank.]

| FIELD NAME | DESCRIPTION | EXAMPLE / FORMAT |
|---|---|---|
| **Begin Bates** | The production Bates number associated with the first page of a Document. | ABC0000001 |
| **End Bates** | The production Bates number associated with last page of a Document. | ABC0000003 |
| **Begin Family** | The production Bates number associated with the first page of the parent Document. | ABC0000001 |
| **End Family** | The production Bates number associated with the last page of the last attachment in the Document family. | ABC0000008 |
| **NativePath** | The full path to a native copy of a Document. | \natives\001\ABC0000001.h tm |
| **Pages** | Total number of pages for a Document. | 00006 |
| **Filename** | The file name of a Document. | Document Name.xls |
| **File Path** | The system file path of the Document. | C:\Documents\Document.d oc |
| **From** | The name of the person in the FROM field of every email. | John Doe <jdoe@acme.com> |
| **To** | Recipients of the email. Multiple email addresses should be separated by semicolons. | Jane Smith <jsmith@acme.com |

STIPULATION RE: ESI AND HARD COPY DISCOVERY

| | | |
|---|---|---|
| **Cc** | Recipients in the cc: field of the email. Multiple email addresses should be separated by semicolons. | Bob Johnson <bjohnson@acme.com>; Sally May <smay@acme.com> |
| **Bcc** | Recipients in the bcc: field of the email. Multiple email addresses should be separated by semicolons. | John Doe <jdoe@acme.com> |
| **Subject** | Subject of an email. | Re: resume |
| **Date Sent** | Date when an email was sent. | MM/DD/YYYY HH:MM:SS |
| **Author** | The author of a Document from extracted metadata. | John Doe |
| **Title** | The extracted Document title for a loose file or attachment. | Resume.docx |
| **Date Modified** | The date a Document was last modified. | MM/DD/YYYY HH:MM:SS |
| **Custodian** | The name of the primary person the files belong to. This field should be populated as last name, first name. | Doe, John |
| **File Extension** | The file extension of a Document. | docx |
| **DateCreated** | The date the Document was created. | MM/DD/YYYY HH:MM:SS |
| **Hash** | The MD5 or SHA-1 Hash value or "de-duplication key" assigned to a Document. | 9CE469B8DFAD1058C3B1 E745001158EA |

| | | |
|---|---|---|
| **TextPath** | The path to the full extracted OCR text of the Document. Text files should be named per control number or Bates number if the Document is produced. | \TEXT\ABC000001.txt |
| **Redaction** | Identifies documents that bear redactions | Yes |
| **Confidentiality** | Confidentiality designation applied to the document | Confidential |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ATTESTATION STATEMENT**

I, Kenneth M. Trujillo-Jamison, the filer of this Stipulated Order, attest under Civil L.R. 5-4.3.4(a)(2) that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Dated: December 3, 2021                    WILLENKEN LLP

                                    By: */s/ Kenneth M. Trujillo-Jamison*
                                        Kenneth M. Trujillo-Jamison
                                        *Attorneys for Defendants*

STIPULATION RE: ESI AND HARD COPY DISCOVERY

1

## PROOF OF SERVICE

2

**STATE OF CALIFORNIA**

3

**COUNTY OF LOS ANGELES**

4

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 707 Wilshire Boulevard, Suite 3850, Los Angeles, CA 90017.

5

6

On the date below, I served the foregoing document(s), described as

7

**(1) STIPULATION RE: PRODUCTION OF ELECTRONICALLY STORED INFORMATION AND HARD COPY DISCOVERY**

8

9

**(2) [PROPOSED] ORDER FOR ENTRY OF STIPULATION RE ESI DISCOVERY PROTOCOL**

10

☒ By placing ☐ the original ☒ true copies thereof enclosed in sealed envelopes addressed as follows:

11

12

## SEE ATTACHED SERVICE LIST

13

☒ **(VIA ELECTRONIC SERVICE)**  The document was served via electronic transfer upon the parties listed using their e-mail addresses as shown in the service list.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

14

15

16

☒ **(FEDERAL***)*  I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

17

18

Executed on **December 3, 2021**, at Los Angeles, California.

19

20

Lisa S. Gibbons

(Type or Print Name)                          Signature

21

22

23

24

25

26

27

28

1

# <u>SERVICE LIST</u>

2

*Shawn Carter, also known as Jay-Z vs. Jonathan Mannion, et al.*
USDC Central District Case No. 2:21-cv-04848-PA-KS

3

4

5   Alex Spiro (*Pro Hac Vice*)                    *Attorneys for Plaintiff*
    Quinn Emanuel Urquhart & Sullivan, LLP
6   51 Madison Avenue, 22nd Floor
    New York, NY 10010
7   alexspiro@quinnemanuel.com
    Tel:  (212) 849-7000
8   Fax:  (212) 849-7100

9   Robert M. Schwartz                              *Attorneys for Plaintiff*
    Dylan C. Bonfigli
10  Quinn Emanuel Urquhart & Sullivan, LLP
    865 South Figueroa Street, 10th Floor
11  Los Angeles, California 90017-2543
    robertschwartz@quinnemanuel.com
12  dylanbonfigli@quinnemanuel.com
    Tel:  (213) 443-3000
13  Fax:  (213) 443-3100

14

15  Steven A. Marenberg                             *Attorneys for Defendants*
    Kiaura Clark
16  Paul Hastings LLP
    1999 Avenue of the Stars, 27th Fl.
17  Los Angeles, California 90067
    stevenmarenberg@paulhastings.com
18  kiauraclark@paulhastings.com
    Tel:  (310) 620-5710
19  Fax: (310) 620-5810

20

21  Sarah Hsia                                       *Attorneys for Defendants*
    Rockstone Legal
22  229 W. 36th Street, 8th Floor
    New York, NY 10018
23  sarah@rockstonelegal.com
    Tel: (876) 855-6676

24

25

26

27

28