QUINN EMANUEL URQUHART
    & SULLIVAN, LLP
Alex Spiro (*pro hac vice*)
    alexspiro@quinnemanuel.com
Cory D. Struble (*pro hac vice*)
    corystruble@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone:   (212) 849-7000
Facsimile:   (212) 849-7100

Robert M. Schwartz (Bar No. 117166)
    robertschwartz@quinnemanuel.com
Dylan C. Bonfigli (Bar No. 317185)
    dylanbonfigli@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:   (213) 443-3000
Facsimile:   (213) 443-3100

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| SHAWN CARTER, also known as JAY-Z, an individual, | Case No.  2:21-cv-04848-PA-KS |
| Plaintiff, | **JOINT BRIEF RE: EVIDENTIARY ISSUES** |
| v. | The Honorable Percy Anderson |
| JONATHAN MANNION, an individual, and JONATHAN MANNION PHOTOGRAPHY LLC, a New York limited liability company, | Trial Date:   July 19, 2022 |
| Defendants. | |

**<u>Introductory Statement</u>**

On June 10, 2022, the parties met and conferred as directed by the Court. They considerably narrowed the areas of dispute on exhibits.  As noted below, most of the remaining disputes are tied to the outcome of the parties' motions in limine.

In an effort to reduce the number of exhibits in dispute, Defendants have withdrawn (a) 75 of Defendants' disputed exhibits and (b) all objections to 23 of Plaintiff's exhibits.

**<u>Plaintiff's Exhibits</u>**

1.    **<u>JX-2</u>**

**Description**:  Island Def Jam Photography / Illustration Agreement for Photoshoot Project Titled "Jay-Z," dated July 25, 2001 (UMG CONFIDENTIAL 000015).

**Purpose**:  If the Court denies Plaintiff's MIL No. 1 and permits Defendants to introduce evidence of copyright ownership and licensing, this work-for-hire agreement rebuts Defendants' assertions of copyright ownership. The agreement shows that Defendants had a pattern and practice of entering into agreements that assigned the copyright in photos of Plaintiff to Plaintiff's record label.  Otherwise, Plaintiff will not offer the document.  Defendants previously stated in their motion *in limine* meet-and-confer letter that copyright is a "different right entirely" from "Plaintiff's at-issue right of publicity."  But Defendants had since reversed course, forcing Plaintiff to move *in limine* to exclude evidence of copyright.

**Basis for Objection**:  Irrelevant, as this agreement does not pertain to any of the photographs at issue in this litigation. FRE 401, 402. Will cause unfair prejudice, confuse the issues, and/or mislead the jury. FRE 403.

**Response to Objection**:  If the Court denies Plaintiff's MIL No. 1 and permits Defendants to introduce evidence of copyright ownership and licensing, the document is relevant because it shows that Mannion and Plaintiff's record label, Def Jam, had a pattern and practice of entering into a standard form agreement when

Mannion was retained to photograph Plaintiff, in which Mannion agreed Def Jam owned the photos' copyright, which tends to disprove his claims of copyright ownership.

**Reply in Support of Objection:** Plaintiff recognizes that this agreement has nothing to do with the at-issue photographs. To be sure, there is no evidence of a "pattern and practice of entering into [other] agreements"—a contract either exists or does not. An irrelevant agreement cannot be offered in evidence simply because of Plaintiff's naked assertion that it might be similar to some other contract—that has never been found, and whose terms are not known and cannot be proven.

In addition, Defendants will only offer evidence of their copyrights in the at-issue photographs to rebut any assertion by Plaintiff that he owns them. Otherwise, Defendants do not intend to offer evidence of copyrights.

Moreover, this agreement between Jonathan Mannion Photography and a third party—not Plaintiff—has nothing to do with the licensing relationship between Defendants and Plaintiff (which shows Plaintiff's implied consent to Defendants' uses of the at-issue photographs). Allowing this irrelevant agreement in evidence will only confuse the jury and prejudice Defendants.

### 2.   __JX-3__

**Description**:  Island Def Jam Photography / Illustration Agreement for Photoshoot Project Titled "Jay-Z/R. Kelly," dated January 13, 2002 (UMG CONFIDENTIAL 000013)

**Purpose**:  Same as JX-2.

**Basis for Objection**:  Irrelevant, as this agreement does not pertain to any of the photographs at issue in this litigation. FRE 401, 402. Will cause unfair prejudice, confuse the issues, and/or mislead the jury. FRE 403.

**Response to Objection**:  If the Court denies Plaintiff's MIL No. 1 and permits Defendants to introduce evidence of copyright ownership and licensing, the document is relevant because it shows that Mannion and Plaintiff's record label, Def

Jam, had a pattern and practice of entering into a standard form agreement when Mannion was retained to photograph Plaintiff, in which Mannion agreed Def Jam owned the photos' copyright, which tends to disprove his claims of copyright ownership.

**Reply in Support of Objection:** Plaintiff recognizes that this agreement has nothing to do with the at-issue photographs. To be sure, there is no evidence of a "pattern and practice of entering into [other] agreements"—a contract either exists or does not. An irrelevant agreement cannot be offered in evidence simply because of Plaintiff's naked assertion that it might be similar to some other contract—that has never been found, and whose terms are not known and cannot be proven.

In addition, Defendants will only offer evidence of their copyrights in the at-issue photographs to rebut any assertion by Plaintiff that he owns them. Otherwise, Defendants do not intend to offer evidence of copyrights.

Moreover, this agreement between Jonathan Mannion Photography and a third party—not Plaintiff—has nothing to do with the licensing relationship between Defendants and Plaintiff (which shows Plaintiff's implied consent to Defendants' uses of the at-issue photographs). Allowing this irrelevant agreement in evidence will only confuse the jury and prejudice Defendants.

3. **JX-4**

**Description**: Island Def Jam Photography / Illustration Agreement for Photoshoot Project Titled "Jay-Z Blueprint 2," dated November 13, 2002 (UMG CONFIDENTIAL 000007).

**Purpose**: Same as JX-2.

**Basis for Objection**: Irrelevant, as this agreement does not pertain to any of the photographs at issue in this litigation. FRE 401, 402. Will cause unfair prejudice, confuse the issues, and/or mislead the jury. FRE 403.

**Response to Objection:** If the Court denies Plaintiff's MIL No. 1 and permits Defendants to introduce evidence of copyright ownership and licensing, the

document is relevant because it shows that Mannion and Plaintiff's record label, Def Jam, had a pattern and practice of entering into a standard form agreement when Mannion was retained to photograph Plaintiff, in which Mannion agreed Def Jam owned the photos' copyright, which tends to disprove his claims of copyright ownership.

**Reply in Support of Objection:** Plaintiff recognizes that this agreement has nothing to do with the at-issue photographs. To be sure, there is no evidence of a "pattern and practice of entering into [other] agreements"—a contract either exists or does not. An irrelevant agreement cannot be offered in evidence simply because of Plaintiff's naked assertion that it might be similar to some other contract—that has never been found, and whose terms are not known and cannot be proven.

In addition, Defendants will only offer evidence of their copyrights in the at-issue photographs to rebut any assertion by Plaintiff that he owns them. Otherwise, Defendants do not intend to offer evidence of copyrights.

Moreover, this agreement between Jonathan Mannion Photography and a third party—not Plaintiff—has nothing to do with the licensing relationship between Defendants and Plaintiff (which shows Plaintiff's implied consent to Defendants' uses of the at-issue photographs). Allowing this irrelevant agreement in evidence will only confuse the jury and prejudice Defendants.

4.   **JX-5**

**Description**:  Island Def Jam Photography / Illustration Agreement for Photoshoot Project Titled "Jay-Z Blueprint 2," dated November 19, 2002 (UMG CONFIDENTIAL 000010)

**Purpose**:  Same as JX-2.

**Basis for Objection**:  Irrelevant, as this agreement does not pertain to any of the photographs at issue in this litigation. FRE 401, 402. Will cause unfair prejudice, confuse the issues, and/or mislead the jury. FRE 403.

1  **Response to Objection:** If the Court denies Plaintiff's MIL No. 1 and permits

2  Defendants to introduce evidence of copyright ownership and licensing, the

3  document is relevant because it shows that Mannion and Plaintiff's record label, Def

4  Jam, had a pattern and practice of entering into a standard form agreement when

5  Mannion was retained to photograph Plaintiff, in which Mannion agreed Def Jam

6  owned the photos' copyright, which tends to disprove his claims of copyright

7  ownership.

8  **Reply in Support of Objection:** Plaintiff recognizes that this agreement has

9  nothing to do with the at-issue photographs. To be sure, there is no evidence of a

10  "pattern and practice of entering into [other] agreements"—a contract either exists

11  or does not. An irrelevant agreement cannot be offered in evidence simply because

12  of Plaintiff's naked assertion that it might be similar to some other contract—that

13  has never been found, and whose terms are not known and cannot be proven.

14  In addition, Defendants will only offer evidence of their copyrights in the at-

15  issue photographs to rebut any assertion by Plaintiff that he owns them. Otherwise,

16  Defendants do not intend to offer evidence of copyrights.

17  Moreover, this agreement between Jonathan Mannion Photography and a

18  third party—not Plaintiff—has nothing to do with the licensing relationship between

19  Defendants and Plaintiff (which shows Plaintiff's implied consent to Defendants'

20  uses of the at-issue photographs). Allowing this irrelevant agreement in evidence

21  will only confuse the jury and prejudice Defendants.

22  5.  **JX-6**

23  **Description**:  Island Def Jam Photography / Illustration Agreement for

24  Photoshoot Project Titled "Jay-Z The Blueprint 2," dated January 23, 2003 (UMG

25  CONFIDENTIAL 000004)

26  **Purpose**:  Same as JX-2.

27

28

1  **Basis for Objection**:  Irrelevant, as this agreement does not pertain to any of

2  the photographs at issue in this litigation. FRE 401, 402. Will cause unfair prejudice,

3  confuse the issues, and/or mislead the jury. FRE 403.

4  **Response to Objection:** If the Court denies Plaintiff's MIL No. 1 and permits

5  Defendants to introduce evidence of copyright ownership and licensing, the

6  document is relevant because it shows that Mannion and Plaintiff's record label, Def

7  Jam, had a pattern and practice of entering into a standard form agreement when

8  Mannion was retained to photograph Plaintiff, in which Mannion agreed Def Jam

9  owned the photos' copyright, which tends to disprove his claims of copyright

10  ownership.

11  **Reply in Support of Objection:** Plaintiff recognizes that this agreement has

12  nothing to do with the at-issue photographs. To be sure, there is no evidence of a

13  "pattern and practice of entering into [other] agreements"—a contract either exists

14  or does not. An irrelevant agreement cannot be offered in evidence simply because

15  of Plaintiff's naked assertion that it might be similar to some other contract—that

16  has never been found, and whose terms are not known and cannot be proven.

17  In addition, Defendants will only offer evidence of their copyrights in the at-

18  issue photographs to rebut any assertion by Plaintiff that he owns them. Otherwise,

19  Defendants do not intend to offer evidence of copyrights.

20  Moreover, this agreement between Jonathan Mannion Photography and a

21  third party—not Plaintiff—has nothing to do with the licensing relationship between

22  Defendants and Plaintiff (which shows Plaintiff's implied consent to Defendants'

23  uses of the at-issue photographs). Allowing this irrelevant agreement in evidence

24  will only confuse the jury and prejudice Defendants.

25  6.  **JX-7**

26  **Description**:  Island Def Jam Photography / Illustration Agreement for

27  Photoshoot Project Titled "Jay-Z The Black Album," dated September 30, 2003

28  (UMG CONFIDENTIAL 000001).

**Purpose**:  Same as JX-2.

**Basis for Objection**:  Irrelevant, as this agreement does not pertain to any of the photographs at issue in this litigation. FRE 401, 402. Will cause unfair prejudice, confuse the issues, and/or mislead the jury. FRE 403.

**Response to Objection:** If the Court denies Plaintiff's MIL No. 1 and permits Defendants to introduce evidence of copyright ownership and licensing, the document is relevant because it shows that Mannion and Plaintiff's record label, Def Jam, had a pattern and practice of entering into a standard form agreement when Mannion was retained to photograph Plaintiff, in which Mannion agreed Def Jam owned the photos' copyright, which tends to disprove his claims of copyright ownership.

**Reply in Support of Objection:** Plaintiff recognizes that this agreement has nothing to do with the at-issue photographs. To be sure, there is no evidence of a "pattern and practice of entering into [other] agreements"—a contract either exists or does not. An irrelevant agreement cannot be offered in evidence simply because of Plaintiff's naked assertion that it might be similar to some other contract—that has never been found, and whose terms are not known and cannot be proven.

In addition, Defendants will only offer evidence of their copyrights in the at-issue photographs to rebut any assertion by Plaintiff that he owns them. Otherwise, Defendants do not intend to offer evidence of copyrights.

Moreover, this agreement between Jonathan Mannion Photography and a third party—not Plaintiff—has nothing to do with the licensing relationship between Defendants and Plaintiff (which shows Plaintiff's implied consent to Defendants' uses of the at-issue photographs). Allowing this irrelevant agreement in evidence will only confuse the jury and prejudice Defendants.

7. **JX-22**

1    **Description**:  Island Def Jam Photography / Illustration Agreement for

2    Photoshoot Project Titled "Jay-Z/R. Kelly, dated January 13, 2002

3    (MANNION002477).

4    **Purpose**:  Same as JX-2.

5    **Basis for Objection**:  Irrelevant, as this agreement does not pertain to any of

6    the photographs at issue in this litigation. FRE 401, 402. Will cause unfair prejudice,

7    confuse the issues, and/or mislead the jury. FRE 403.

8    **Response to Objection:** If the Court denies Plaintiff's MIL No. 1 and permits

9    Defendants to introduce evidence of copyright ownership and licensing, the

10   document is relevant because it shows that Mannion and Plaintiff's record label, Def

11   Jam, had a pattern and practice of entering into a standard form agreement when

12   Mannion was retained to photograph Plaintiff, in which Mannion agreed Def Jam

13   owned the photos' copyright, which tends to disprove his claims of copyright

14   ownership.

15   **Reply in Support of Objection:** Plaintiff recognizes that this agreement has

16   nothing to do with the at-issue photographs. To be sure, there is no evidence of a

17   "pattern and practice of entering into [other] agreements"—a contract either exists

18   or does not. An irrelevant agreement cannot be offered in evidence simply because

19   of Plaintiff's naked assertion that it might be similar to some other contract—that

20   has never been found, and whose terms are not known and cannot be proven.

21   In addition, Defendants will only offer evidence of their copyrights in the at-

22   issue photographs to rebut any assertion by Plaintiff that he owns them. Otherwise,

23   Defendants do not intend to offer evidence of copyrights.

24   Moreover, this agreement between Jonathan Mannion Photography and a

25   third party—not Plaintiff—has nothing to do with the licensing relationship between

26   Defendants and Plaintiff (which shows Plaintiff's implied consent to Defendants'

27   uses of the at-issue photographs). Allowing this irrelevant agreement in evidence

28   will only confuse the jury and prejudice Defendants.

8. **JX-35**

**Description**:  Declaration of Plaintiff Shawn C. Carter in Opposition to Defendants' Motion to Strike and Motion to Dismiss Pursuant to Fed. R. Civ. P. 12 (b)(6), dated August 23, 2021 (ECF No. 35-1).

**Purpose**:  Plaintiff's damages expert relies on the declaration for foundation, so Plaintiff included the declaration on his exhibit list in the event the expert is questioned about the bases for his opinion.  It is up to Defendants to state that they do not intend to challenge this aspect of the foundation for Plaintiff's damage expert.  If Defendants insist on doing so, Plaintiff is entitled to show what his expert relied upon, which need not be admissible.

**Basis for Objection**:  Para. 7: Lack of foundation regarding whether Island of Def Jam Recording entered into a written agreement "for each photoshoot." FRE 602.  Paras. 8-12: Exhibits A-F are irrelevant. FRE 401, 402. Will cause unfair prejudice, confuse the issues, and/or mislead the jury. FRE 403. Para. 8: Lack of foundation regarding Island of Def Jam Recording's document retention and business records practices. FRE 602. Para. 15: Lack of foundation regarding intentions of any other person regarding use of photographs. FRE 602. Paras. 16 & 17: Legal conclusion concerning whether Mr. Mannion implied Plaintiff's endorsement. FRE 703.

**Response to Objection:**  If the Court denies Plaintiff's MIL No. 1 and permits Defendants to introduce evidence of copyright ownership and licensing, Exhibits A-F are relevant because they show that Mannion and Plaintiff's record label, Def Jam, had a pattern and practice of entering into a standard form agreement when Mannion was retained to photograph Plaintiff, in which Mannion agreed Def Jam owned the photos' copyright, which tends to disprove his claims of copyright ownership.  The challenged statements do not lack foundation.  And to the extent the document is offered, Plaintiff will be able to testify to establish further foundation for the statements to which Defendants object for lack of foundation.  Paragraphs 16

and 17 do not contain legal but rather factual statements as to what Plaintiff saw when he visited Defendants' website.

**Reply in Support of Objection:** Plaintiff concedes that his own declaration is not admissible. *See* Fed. R. Evid. 801 (hearsay). That his expert can rely on inadmissible evidence to render an opinion is not in dispute. But Plaintiff offers no authority for the notion that a challenge to the expert's opinion changes the inadmissibility of this document.

As to the irrelevant agreements (exhibits A-F of the declaration), Plaintiff recognizes that they have nothing to do with the at-issue photographs. To be sure, there is no evidence of a "pattern and practice of entering into [other] agreements"—a contract either exists or does not. An irrelevant agreement cannot be offered in evidence simply because of Plaintiff's naked assertion that it might be similar to some other contract—that has never been found, and whose terms are not known and cannot be proven.

In addition, Defendants will only offer evidence of their copyrights in the at-issue photographs to rebut any assertion by Plaintiff that he owns them. Otherwise, Defendants do not intend to offer evidence of copyrights.

Moreover, the agreements between Jonathan Mannion Photography and a third party—not Plaintiff—has nothing to do with the licensing relationship between Defendants and Plaintiff (which shows Plaintiff's implied consent to Defendants' uses of the at-issue photographs). Allowing the irrelevant agreements in evidence will only confuse the jury and prejudice Defendants.

There are exhibits that show the contents of Defendants' website. Plaintiff's statements based on what he purportedly saw on the website is barred by the best evidence rule. Fed. R. Evid. 1002.

### 9.   **JX-56**

**Description**:  Jonathan Mannion's Instagram post, dated June 28, 2016.

1   **Purpose**:  The document shows that Defendants sold magnets bearing
2   Plaintiff's likeness for $16 each.  Plaintiff seeks to prevent all such unauthorized
3   uses of his name, image, and likeness.

4   **Basis for Objection**:  Irrelevant, as Plaintiff does not challenge Defendants'
5   use of their photograph on the magnets depicted in this Instagram post. FRE 401,
6   402. Will cause unfair prejudice, confuse the issues, and/or mislead the jury. FRE
7   403.

8   **Response to Objection:** Plaintiff challenges Defendants use of his name,
9   image, and likeness on any product.  ECF No. 15 at 12 (requesting "[a] preliminary
10  and permanent injunction requiring Mannion and his agents, servants, and
11  employees, and all other persons with whom he is acting in concert, to refrain from
12  using JAY-Z's name, likeness, identity, or persona.").  The document shows one of
13  the ways in which Defendants have used Plaintiff's likeness without his consent.

14  **Reply in Support of Objection:** Whether Defendants offered magnets for
15  sale in June 2016 is irrelevant. Any alleged conduct that occurred before June 15,
16  2019, is barred by the two-year statute of limitations. *See Yeager v. Bowlin*, 693
17  F.3d 1076, 1081 (9th Cir. 2012) (two-year limitations period). There is no evidence
18  any magnet has been sold during the limitations period. Moreover, an injunction is
19  only a remedy, not an independent cause of action. *Parrott v. Porter*, 2016 WL
20  10957851, at *10 (C.D. Cal. Nov. 16, 2016). Plaintiff offers no authority for the
21  notion that he can obtain relief—here, equitable relief—for a time-barred claim.
22  Indeed, Plaintiff will not be able to show, with this 2016 exhibit, the "likelihood of
23  substantial and immediate irreparable injury" that is required for a permanent
24  injunction. *See Artichoke Joe's v. Norton*, 216 F. Supp. 2d 1084, 1100 (E.D. Cal.
25  2002), *aff'd sub nom. Artichoke Joe's Cal. Grand Casino v. Norton*, 353 F.3d 712
26  (9th Cir. 2003).

27      10.   **JX-65**

28

1    **Description**:  Handwritten note on Jonathan Mannion Photography LLC

2    letterhead (MANNION001847).

3    **Purpose**:  If the Court denies Plaintiff's MIL No. 1 and permits Defendants to

4    introduce evidence of copyright ownership and licensing, the document is relevant

5    because it is a handwritten note on Defendants' letterhead stating that Plaintiff's

6    record label, Island Def Jam, "own[s]" the *Reasonable Doubt* cover photo.

7    **Basis for Objection**:  Irrelevant. FRE 401, 402. Will cause unfair prejudice,

8    confuse the issues, and/or mislead the jury. FRE 403. Legal conclusion by

9    layperson. FRE 701. Note author's lack of foundation concerning creation and

10   ownership of photo. FRE 602.

11   **Response to Objection:** To the extent evidence of copyright ownership and

12   licensing is permitted, the document is relevant because it states that "Def Jam"

13   "own[s]" the "cover of Reasonable Doubt," which tends to disprove Defendants'

14   assertion that Mannion is the copyright owner.

15   **Reply in Support of Objection:** Defendants will only offer evidence of their

16   copyrights in the at-issue photographs to rebut any assertion by Plaintiff that he

17   owns them. Otherwise, Defendants do not intend to offer evidence of copyrights.

18   Moreover, not only has Plaintiff conceded at deposition that no agreement

19   governs the Reasonable Doubt cover photograph, Island Def Jam was not the record

20   label for that album, as Plaintiff knows. Further, an out-of-context, short note

21   concerning Jonathan Mannion Photography's dealing with a third party—not

22   Plaintiff—has nothing to do with the licensing relationship between Defendants and

23   Plaintiff (which shows Plaintiff's implied consent to Defendants' uses of the at-issue

24   photographs). Allowing this irrelevant note in evidence will only confuse the jury

25   and prejudice Defendants.

26       11.   **<u>JX-86</u>**

27   **Description**:  Text messages between U. Davidov and J. Mannion, dated June

28   10, 2021 (MANNION010086).

1   **Purpose**:  If the Court denies Plaintiff's MIL No. 3 and evidence of

2   negotiations between Plaintiff and Defendants in May and June 2021 is permitted,

3   the document is relevant because it shows that Mannion believed the *Reasonable*

4   *Doubt* cover photo was worth $10 million and that all of the photos from the session

5   were worth $22.2 million.  If that evidence is excluded, Plaintiff will not offer the

6   document.  Defendants stated in their motion *in limine* meet-and-confer letter that

7   "[t]he pre-litigation negotiations between representatives for Plaintiff and

8   representatives for Defendants are not relevant and not admissible."  But Defendants

9   have since reversed course, forcing Plaintiff to move *in limine* to exclude that

10  evidence.

11      **Basis for Objection**:  Irrelevant. FRE 401, 402. Will cause unfair prejudice,

12  confuse the issues, and/or mislead the jury. FRE 403.

13      **Response to Objection:** If the Court denies Plaintiff's MIL No. 3 and permits

14  evidence regarding the negotiations in May and June 2021 to be offered, the

15  document is relevant because it shows Mannion's strategy for the negotiations,

16  including the value that he believed he could obtain from Plaintiff for certain

17  photographs.

18      **Reply in Support of Objection:** Mr. Mannion's belief about the fair price for

19  him to sell the copyrights in certain photographs and any strategy he used to get the

20  price he wanted are irrelevant. Plaintiff's requested damages are for (1) the

21  commercial value of the use of his name and likeness "in the manner in which it was

22  used by [D]efendants" (*Clark v. America Online Inc.*, 2000 WL 33535712, at *8

23  (C.D. Cal. Nov. 30, 2000) and (2) "any profits from the unauthorized use that are

24  attributable to the use and are not taken into account in computing the actual

25  damages" (California Civil Code § 3344(a)). The prices of the copyrights in the

26  Reasonable Doubt cover photograph and of all photographs from the Reasonable

27  Doubt photoshoot have nothing to do with Plaintiff's requested damages or any

28

other issue to be determined at trial. This exhibit will only prejudice Defendants and confuse the jury about the proper measure of damages.

12. **JX-87**

**Description**:  Text messages between U. Davidov and J. Mannion, dated June 11, 2021 (MANNION010093).

**Purpose**:  The document is relevant to establishing the fair market value of Plaintiff's name and likeness, as used by Defendants, because Mannion states that he could "make 1M off print sales from a single image."  If the Court denies Plaintiff's MIL No. 3 and permits evidence regarding the negotiations in May and June 2021 to be offered, the document is also relevant because it shows Mannion's strategy for the negotiations, including the value that he believed he could obtain from Plaintiff for certain photographs.

**Basis for Objection**:  Irrelevant. FRE 401, 402. Will cause unfair prejudice, confuse the issues, and/or mislead the jury. FRE 403.

**Response to Objection:** The document is relevant to Plaintiff's damages because it shows that Mannion believed he could make $1 million "off print sales from a single image" of Plaintiff.  To the extent evidence regarding the negotiations in May and June 2021 is permitted, the document is also relevant because it shows Mannion's strategy for the negotiations, including the value that he believed he could obtain from Plaintiff for certain photographs.

**Reply in Support of Objection:** Mr. Mannion's belief about the *future* revenue he could make "over time" (i.e., during the lifetime of his copyright in the image) is not relevant. Plaintiff's requested damages are for (1) the commercial value of the use of his name and likeness "in the manner in which it was used by [D]efendants" (*Clark v. America Online Inc.*, 2000 WL 33535712, at *8 (C.D. Cal. Nov. 30, 2000) and (2) "any profits from the unauthorized use that are attributable to the use and are not taken into account in computing the actual damages" (California Civil Code § 3344(a)). Hypothetical future revenue has nothing to do with

Plaintiff's alleged harm. This exhibit will only prejudice Defendants and confuse the jury about the proper measure of damages.

13. **JX-91**

**Description**:  Jonathan Mannion Photography LLC Usage Agreement between Staple Design and Jonathan Mannion Photography LLC, dated May 11, 2012 (MANNION002545).

**Purpose**:  If the Court denies Plaintiff's MIL No. 1 and permits Defendants to introduce evidence of copyright ownership and licensing, the licensing agreement is relevant because Defendants were indemnified against any lawsuit alleging a violation of a third party's right of publicity.  That also tends to prove that Defendants did not have Plaintiff's consent to use his right of publicity.

**Basis for Objection**:  Irrelevant, as Plaintiff does not challenge Defendants' licensing generally or this license in particular. FRE 401, 402. Will cause unfair prejudice, confuse the issues, and/or mislead the jury. FRE 403.

**Response to Objection:** To the extent evidence regarding the negotiations in May and June 2021 is permitted, the document is relevant because it shows Mannion's pattern and practice of licensing the copyright to photos of Plaintiff but not Plaintiff's right of publicity.

**Reply in Support of Objection:** The terms of this 2012 license between Jonathan Mannion Photography and a third party are irrelevant. As to Defendants' licensing activity, Defendants seek only to introduce evidence of the licensing relationship between Defendants and Plaintiff, including his affiliated companies, for the use of the at-issue photographs. The licensing relationship shows Plaintiff's implied consent to Defendants' use of the at-issue photographs, as Plaintiff needed Defendants' permission to use the images. That licensing relationship continued with the May and June 2021 negotiation, in which Plaintiff first sought another license before seeking to buy the copyrights in certain photographs. Moreover, Plaintiff contends he learned about the at-issue uses of his name and likeness in May

2021, yet he did not object during the negotiation, tending to show his implicit consent. This 2012 license, to which Plaintiff was not a party, has nothing to do with those issues and would confuse the jury.

14. **JX-93**

**Description**:  Text messages between Clark Kent and Mannion, dated August 1, 2013 (MANNION001708).

**Purpose**:  The document shows that Mannion asked one of Plaintiff's colleagues to ask Plaintiff if Esquire TV to use a photograph of Plaintiff taken by Mannion.  That tends to prove that Mannion did not have, and knew he did not have, Plaintiff's consent to use Plaintiff's name, image, and likeness.

**Basis for Objection**:  Irrelevant. FRE 401, 402. Will cause unfair prejudice, confuse the issues, and/or mislead the jury. FRE 403.

**Response to Objection:** The document is relevant because it shows that Mannion asked one of Plaintiff's colleagues to ask Plaintiff if Mannion could allow Esquire TV to use a photograph of Plaintiff taken by Mannion.  That tends to prove that Mannion did not have, and knew he did not have, Plaintiff's consent to use Plaintiff's name, image, and likeness.

**Reply in Support of Objection:** This exhibit is irrelevant to whether Plaintiff consented to Defendants' use of his name, image, or likeness. As Plaintiff concedes, this exhibit concerns whether third-party Esquire TV had Plaintiff's consent, and Mr. Mannion was merely asking on Esquire TV's behalf. Also, there is no evidence showing this exhibit concerns any of the at-issue photographs. In short, there is no basis to impute onto Defendants a third party's use or request for consent as to an unknown photograph, and this exhibit will prejudice Defendants and confuse the jury.

15. **JX-104**

**Description**:  Emails between J. Mannion and DoesitEvenMatter, dated June and July, 2016 (MANNION002741).

1    **Purpose**:  The document shows that Defendants have used Plaintiff's likeness

2    to advertise, because the document shows that Mannion acknowledged that using a

3    photo of Plaintiff on a website functions "as a marketing / press & publicity tool."

4    **Basis for Objection**:  Irrelevant. FRE 401, 402. Will cause unfair prejudice,

5    confuse the issues, and/or mislead the jury. FRE 403.

6    **Response to Objection:** The document is relevant to showing that

7    Defendants have used Plaintiff's likeness to advertise, because the document shows

8    that Mannion acknowledged that using a photograph of Plaintiff on a website

9    functions "as a marketing / press & publicity tool."  This tends to prove that

10   Mannion has used Plaintiff's name, image, and likeness in a manner that is "directly

11   connected" with a "commercial purpose," by displaying Plaintiff's image on his

12   website.

13   **Reply in Support of Objection:** These emails are irrelevant because they

14   concern the use of a photograph of Plaintiff by third-party Does It Even Matter

15   (DIEM)—not Defendants. To be sure, Plaintiff does not have any evidence about

16   the manner that the Does It Even Matter used the photograph that Mr. Mannion

17   called a marketing tool. Plaintiff's intended purposes of imputing the uncertain use

18   by a third party onto Defendants would be prejudicial and confuse the jury.

19        16.   **JX-107**

20   **Description**:  Island Def Jam Photography / Illustration Agreement for

21   Photoshoot Project Titled "Jay-Z," dated July 25, 2001 (MANNION008348).

22   **Purpose**:  Same as JX-2.

23   **Basis for Objection**:  Irrelevant, as this agreement does not pertain to any of

24   the photographs at issue in this litigation. FRE 401, 402. Will cause unfair prejudice,

25   confuse the issues, and/or mislead the jury. FRE 403. Incomplete. FRE 106. Failure

26   to authenticate. FRE 901.

27   **Response to Objection:** To the extent evidence of copyright ownership and

28   licensing is permitted, the document is relevant because it shows that Mannion and

Plaintiff's record label, Def Jam, had a pattern and practice of entering into a standard form agreement when Mannion was retained to photograph Plaintiff, in which Mannion agreed Def Jam owned the photos' copyright, which tends to disprove his claims of copyright ownership.

**Reply in Support of Objection:** Plaintiff recognizes that this agreement has nothing to do with the at-issue photographs. To be sure, there is no evidence of a "pattern and practice of entering into [other] agreements"—a contract either exists or does not. An irrelevant agreement cannot be offered in evidence simply because of Plaintiff's naked assertion that it might be similar to some other contract—that has never been found, and whose terms are not known and cannot be proven.

In addition, Defendants will only offer evidence of their copyrights in the at-issue photographs to rebut any assertion by Plaintiff that he owns them. Otherwise, Defendants do not intend to offer evidence of copyrights.

Moreover, this agreement between Jonathan Mannion Photography and a third party—not Plaintiff—has nothing to do with the licensing relationship between Defendants and Plaintiff (which shows Plaintiff's implied consent to Defendants' uses of the at-issue photographs). Allowing this irrelevant agreement in evidence will only confuse the jury and prejudice Defendants.

### 17. __JX-149__

**Description**:  Compact disc and packaging for JAY-Z's album *Vol. 2 Hard Knock Life*, released September 29, 1998 (CARTER0004553)

**Purpose**:  The CD shows that the photos of Plaintiff that Mannion took were used to promote Plaintiff's music.  That is relevant to at least one of the factors of Defendants' "transformative use" defense:  whether Mannion's "skill and talent [were] manifestly subordinated to the overall goal of creating a conventional portrait of [Plaintiff] so as to commercially exploit his … fame." *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 724 F.3d 1268, 1274 (9th Cir. 2013).

1   **Basis for Objection**:  Irrelevant. FRE 401, 402. Will cause unfair prejudice,
2   confuse the issues, and/or mislead the jury. FRE 403.

3   **Response to Objection:** The exhibit is relevant because it shows that Plaintiff
4   and his record companies hired Mannion to perform a service: taking photographs of
5   Plaintiff that could be used for album packaging.  That tends to prove that
6   Mannion's skill and talent was subordinated to the overall goal of creating
7   conventional portraits of Plaintiff, undermining his First Amendment defense.

8   **Reply in Support of Objection:** The packaging for this album does not
9   contain any of the at-issue photographs. (Defendants are not objecting to the
10  exhibits that are the packaging for other albums that do contain the at-issue
11  photographs.) This exhibit is therefore irrelevant to whether Defendants created the
12  at-issue photographs to promote Plaintiff's music and is also irrelevant to whether
13  Mr. Mannion's skill and talent in creating those photographs was subordinated to
14  the goal of creating conventional portraits of Plaintiff. This exhibit would only
15  confuse the jury about the photographs that are at issue.

16      18.  **JX-150**

17  **Description**:  Compact disc and packaging for JAY-Z's album *Vol. 3 – Life*
18  *and Times Of S. Carter*, released December 28, 1999 (CARTER0004554)

19  **Purpose**:  The CD shows that the photos of Plaintiff that Mannion took were
20  used to promote Plaintiff's music.  That is relevant to at least one of the factors of
21  Defendants' "transformative use" defense:  whether Mannion's "skill and talent
22  [were] manifestly subordinated to the overall goal of creating a conventional portrait
23  of [Plaintiff] so as to commercially exploit his … fame." *In re NCAA Student-*
24  *Athlete Name & Likeness Licensing Litig.*, 724 F.3d 1268, 1274 (9th Cir. 2013).

25  **Basis for Objection**:  Irrelevant. FRE 401, 402. Will cause unfair prejudice,
26  confuse the issues, and/or mislead the jury. FRE 403.

27  **Response to Objection:** The exhibit is relevant because it shows that Plaintiff
28  and his record companies hired Mannion to perform a service: taking photographs of

1   Plaintiff that could be used for album packaging.  That tends to prove that

2   Mannion's skill and talent was subordinated to the overall goal of creating

3   conventional portraits of Plaintiff, undermining his First Amendment defense.

4       **Reply in Support of Objection:** The packaging for this album does not

5   contain any of the at-issue photographs. (Defendants are not objecting to the

6   exhibits that are the packaging for other albums that do contain the at-issue

7   photographs.) This exhibit is therefore irrelevant to whether Defendants created the

8   at-issue photographs to promote Plaintiff's music and is also irrelevant to whether

9   Mr. Mannion's skill and talent in creating those photographs was subordinated to

10  the goal of creating conventional portraits of Plaintiff. This exhibit would only

11  confuse the jury about the photographs that are at issue.

12      19.   **JX-151**

13      **Description**:  Compact disc and packaging for JAY-Z's album *The Dynasty:*

14  *Roc La Familia*, released October 31, 2000 (CARTER0004555)

15      **Purpose**:  The CD shows that the photos of Plaintiff that Mannion took were

16  used to promote Plaintiff's music.  That is relevant to at least one of the factors of

17  Defendants' "transformative use" defense:  whether Mannion's "skill and talent

18  [were] manifestly subordinated to the overall goal of creating a conventional portrait

19  of [Plaintiff] so as to commercially exploit his … fame." *In re NCAA Student-*

20  *Athlete Name & Likeness Licensing Litig.*, 724 F.3d 1268, 1274 (9th Cir. 2013).

21      **Basis for Objection**:  Irrelevant. FRE 401, 402. Will cause unfair prejudice,

22  confuse the issues, and/or mislead the jury. FRE 403.

23      **Response to Objection:** The exhibit is relevant because it shows that Plaintiff

24  and his record companies hired Mannion to perform a service: taking photographs of

25  Plaintiff that could be used for album packaging.  That tends to prove that

26  Mannion's skill and talent was subordinated to the overall goal of creating

27  conventional portraits of Plaintiff, undermining his First Amendment defense.

28

**Reply in Support of Objection:** The packaging for this album does not contain any of the at-issue photographs. (Defendants are not objecting to the exhibits that are the packaging for other albums that do contain the at-issue photographs.) This exhibit is therefore irrelevant to whether Defendants created the at-issue photographs to promote Plaintiff's music and is also irrelevant to whether Mr. Mannion's skill and talent in creating those photographs was subordinated to the goal of creating conventional portraits of Plaintiff. This exhibit would only confuse the jury about the photographs that are at issue.

20. **JX-152**

**Description**: Compact disc and packaging for JAY-Z's album *The Blueprint*, released September 11, 2001 (CARTER0004556).

**Purpose**: The CD shows that the photos of Plaintiff that Mannion took were used to promote Plaintiff's music. That is relevant to at least one of the factors of Defendants' "transformative use" defense: whether Mannion's "skill and talent [were] manifestly subordinated to the overall goal of creating a conventional portrait of [Plaintiff] so as to commercially exploit his … fame." *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 724 F.3d 1268, 1274 (9th Cir. 2013).

**Basis for Objection**: Irrelevant. FRE 401, 402. Will cause unfair prejudice, confuse the issues, and/or mislead the jury. FRE 403.

**Response to Objection:** The exhibit is relevant because it shows that Plaintiff and his record companies hired Mannion to perform a service: taking photographs of Plaintiff that could be used for album packaging. That tends to prove that Mannion's skill and talent was subordinated to the overall goal of creating conventional portraits of Plaintiff, undermining his First Amendment defense.

**Reply in Support of Objection:** The packaging for this album does not contain any of the at-issue photographs. (Defendants are not objecting to the exhibits that are the packaging for other albums that do contain the at-issue photographs.) This exhibit is therefore irrelevant to whether Defendants created the

1   at-issue photographs to promote Plaintiff's music and is also irrelevant to whether
2   Mr. Mannion's skill and talent in creating those photographs was subordinated to
3   the goal of creating conventional portraits of Plaintiff. This exhibit would only
4   confuse the jury about the photographs that are at issue.

5       21.   **JX-153**

6       **Description**:  Compact disc and packaging for JAY-Z's album *The Blueprint*
7   *2: The Gift & The Curse*, released November 12, 2002 (CARTER0004557)

8       **Purpose**:  The CD shows that the photos of Plaintiff that Mannion took were
9   used to promote Plaintiff's music.  That is relevant to at least one of the factors of
10  Defendants' "transformative use" defense:  whether Mannion's "skill and talent
11  [were] manifestly subordinated to the overall goal of creating a conventional portrait
12  of [Plaintiff] so as to commercially exploit his … fame." *In re NCAA Student-*
13  *Athlete Name & Likeness Licensing Litig.*, 724 F.3d 1268, 1274 (9th Cir. 2013).

14      **Basis for Objection**:  Irrelevant. FRE 401, 402. Will cause unfair prejudice,
15  confuse the issues, and/or mislead the jury. FRE 403.

16      **Response to Objection:** The exhibit is relevant because it shows that Plaintiff
17  and his record companies hired Mannion to perform a service: taking photographs of
18  Plaintiff that could be used for album packaging.  That tends to prove that
19  Mannion's skill and talent was subordinated to the overall goal of creating
20  conventional portraits of Plaintiff, undermining his First Amendment defense.

21      **Reply in Support of Objection:** The packaging for this album does not
22  contain any of the at-issue photographs. (Defendants are not objecting to the
23  exhibits that are the packaging for other albums that do contain the at-issue
24  photographs.) This exhibit is therefore irrelevant to whether Defendants created the
25  at-issue photographs to promote Plaintiff's music and is also irrelevant to whether
26  Mr. Mannion's skill and talent in creating those photographs was subordinated to
27  the goal of creating conventional portraits of Plaintiff. This exhibit would only
28  confuse the jury about the photographs that are at issue.

1    22.  **JX-154**

2    **Description**:  Compact disc and packaging for JAY-Z's album *The Black*

3    *Album*, released November 14, 2003 (CARTER0004558)

4    **Purpose**:  The CD shows that the photos of Plaintiff that Mannion took were

5    used to promote Plaintiff's music.  That is relevant to at least one of the factors of

6    Defendants' "transformative use" defense:  whether Mannion's "skill and talent

7    [were] manifestly subordinated to the overall goal of creating a conventional portrait

8    of [Plaintiff] so as to commercially exploit his … fame." *In re NCAA Student-*

9    *Athlete Name & Likeness Licensing Litig.*, 724 F.3d 1268, 1274 (9th Cir. 2013).

10    **Basis for Objection**: Irrelevant. FRE 401, 402. Will cause unfair prejudice,

11    confuse the issues, and/or mislead the jury. FRE 403.

12    **Response to Objection:** The exhibit is relevant because it shows that Plaintiff

13    and his record companies hired Mannion to perform a service: taking photographs of

14    Plaintiff that could be used for album packaging.  That tends to prove that

15    Mannion's skill and talent was subordinated to the overall goal of creating

16    conventional portraits of Plaintiff, undermining his First Amendment defense.

17    **Reply in Support of Objection**: The packaging for this album does not

18    contain any of the at-issue photographs. (Defendants are not objecting to the

19    exhibits that are the packaging for other albums that do contain the at-issue

20    photographs.) This exhibit is therefore irrelevant to whether Defendants created the

21    at-issue photographs to promote Plaintiff's music and is also irrelevant to whether

22    Mr. Mannion's skill and talent in creating those photographs was subordinated to

23    the goal of creating conventional portraits of Plaintiff. This exhibit would only

24    confuse the jury about the photographs that are at issue.

25    23.  **JX-162**

26    **Description**:  Letter from K. Yiengst to A. Bobbitt re: Four Jay-Z images for

27    DECODED Published by Spiegel and Grau, dated September 10, 2010

28    (MANNION001811).

1    **Purpose**:  If the Court denies Plaintiff's MIL No. 1 and permits Defendants to

2    introduce evidence of copyright ownership and licensing, the document is relevant

3    because it shows that Defendants sought express permission from Island Def Jam

4    before authorizing the use of photographs of Plaintiff.  Mannion has not sought

5    express permission from Plaintiff before using his name, image, and likeness, which

6    tends to disprove Mannion's argument that he had Plaintiff's consent.

7    **Basis for Objection**:  Irrelevant. FRE 401, 402. Will cause unfair prejudice,

8    confuse the issues, and/or mislead the jury. FRE 403. Incomplete, because it is

9    missing the second page of the document. FRE 106.

10   **Response to Objection:** If the Court denies Plaintiff's MIL No. 1 and permits

11   Defendants to introduce evidence of copyright ownership and licensing, the

12   document is relevant because it shows that Defendants sought express permission

13   from Island Def Jam before authorizing the use of photographs of Plaintiff.

14   Mannion has not sought express permission from Plaintiff before using his name,

15   image, and likeness, which tends to disprove Mannion's argument that he had

16   Plaintiff's consent.

17   **Reply in Support of Objection:**

18   This 2010 letter from third-party Island Def Jam is irrelevant. There is no

19   indication that it concerns any of the at-issue photographs, and Defendants are not

20   introducing evidence about the subject of this letter, Spiegel & Grau's publication of

21   the *Decoded* book.

22   To be clear, Defendants seek only to introduce evidence of the licensing

23   relationship between Defendants and Plaintiff, including his affiliated companies,

24   for the use of the at-issue photographs. The licensing relationship shows Plaintiff's

25   implied consent to Defendants' use of the at-issue photographs, as Plaintiff needed

26   Defendants' permission to use the images. This 2010 letter about unidentified

27   photographs would confuse the jury.

28   24.   **JX-163**

**Description**:  Text messages between Clark Kent and Mannion, dated August 1, 2013 (MANNION001708).

**Purpose**:  The document is relevant because it shows that Mannion asked one of Plaintiff's colleagues to ask Plaintiff if Esquire TV could use a photograph of Plaintiff taken by Mannion.  Mannion stated that there was a "likeness" situation and that he told Esquire TV "that they had to get these clearances."  That tends to prove that Mannion did not have, and knew he did not have, Plaintiff's consent to use Plaintiff's NIL.

**Basis for Objection**:  Irrelevant. FRE 401, 402. Will cause unfair prejudice, confuse the issues, and/or mislead the jury. FRE 403.

**Response to Objection:**  The document is relevant because it shows that Mannion asked one of Plaintiff's colleagues to ask Plaintiff if Esquire TV to use a photograph of Plaintiff taken by Mannion.  That tends to prove that Mannion did not have, and knew he did not have, Plaintiff's consent to use Plaintiff's name, image, and likeness.

**Reply in Support of Objection:** This exhibit is irrelevant to whether Plaintiff consented to Defendants' use of his name, image, or likeness. As Plaintiff concedes, this exhibit concerns whether third-party Esquire TV had Plaintiff's consent, and Mr. Mannion was merely asking on Esquire TV's behalf. Also, there is no evidence showing this exhibit concerns any of the at-issue photographs. In short, there is no basis to impute onto Defendants a third party's use or request for consent as to an unknown photograph, and this exhibit will prejudice Defendants and confuse the jury.

25.  **JX-165**

**Description**:  Email from Diem Service to J. Mannion re: Cease & Desist, dated July 14, 2016 (MANNION002716).

**Purpose**:  The document is relevant because it shows that Mannion admitted that using a photograph of Plaintiff on a website functions "as a marketing / press &

publicity tool." This tends to prove that Mannion has used Plaintiff's name, image, and likeness in a manner that is "directly connected" with a "commercial purpose," by displaying Plaintiff's image on his website. CACI 1804A

**Basis for Objection**: Irrelevant. FRE 401, 402. Will cause unfair prejudice, confuse the issues, and/or mislead the jury. FRE 403.

**Response to Objection:** The document is relevant because it shows that Mannion admitted that using a photograph of Plaintiff on a website functions "as a marketing / press & publicity tool." This tends to prove that Mannion has used Plaintiff's name, image, and likeness in a manner that is "directly connected" with a "commercial purpose," by displaying Plaintiff's image on his website. CACI 1804A.

**Reply in Support of Objection:** These emails are irrelevant because they concern the use of a photograph of Plaintiff by third-party Does It Even Matter (DIEM)—not Defendants. To be sure, Plaintiff does not have any evidence about the manner that the Does It Even Matter used the photograph that Mr. Mannion called a marketing tool. Plaintiff's intended purposes of imputing the uncertain use by a third party onto Defendants would be prejudicial and confuse the jury

26.  **JX-173**

**Description**: Text messages between Clark Kent and Mannion, dated August 6, 2013 (MANNION010586).

**Purpose**: The document is relevant because it shows that Mannion asked one of Plaintiff's colleagues to ask Plaintiff if Esquire TV could use a photograph of Plaintiff taken by Mannion. Mannion stated that "despite owning the copyright to the image," the "issue is 'likeness.'" He further stated that the "Jay clearance is needed from any rep of his." That tends to prove that Mannion did not have, and knew he did not have, Plaintiff's consent to use Plaintiff's NIL.

**Basis for Objection**: Irrelevant. FRE 401, 402. Will cause unfair prejudice, confuse the issues, and/or mislead the jury. FRE 403.

1   **Response to Objection:** The document is relevant because it shows that
2   Mannion asked one of Plaintiff's colleagues to ask Plaintiff if Mannion could allow
3   Esquire TV to use a photograph of Plaintiff taken by Mannion.  That tends to prove
4   that Mannion did not have, and knew he did not have, Plaintiff's consent to use
5   Plaintiff's name, image, and likeness.

6   **Reply in Support of Objection:** This exhibit is irrelevant to whether Plaintiff
7   consented to Defendants' use of his name, image, or likeness. As Plaintiff concedes,
8   this exhibit concerns whether third-party Esquire TV had Plaintiff's consent, and
9   Mr. Mannion was merely asking on Esquire TV's behalf. Also, there is no evidence
10  showing this exhibit concerns any of the at-issue photographs. In short, there is no
11  basis to impute onto Defendants a third party's use or request for consent as to an
12  unknown photograph, and this exhibit will prejudice Defendants and confuse the
13  jury.

14      27.   **JX-182**

15      **Description**:  Email from M. Matute to J. Mannion re: Potential Print Pricing,
16  dated May 28, 2021 (MANNION012203).

17      **Purpose**:  The document is relevant because it shows pricing for Jay-Z prints
18  and the revenue Mannion believed he could make from selling those prints, which is
19  relevant to damages.

20      **Basis for Objection**:  Irrelevant. FRE 401, 402. Will cause unfair prejudice,
21  confuse the issues, and/or mislead the jury. FRE 403. Failure to authenticate. FRE
22  901.

23      **Response to Objection:** The document is relevant because it shows potential
24  pricing for prints of photographs of Plaintiff, and the revenue Mannion believed he
25  could achieve from selling those prints, which is relevant to damages.  Plaintiff
26  intends to elicit testimony from Mannion or Matute to authenticate the document if
27  it is offered.

28

**Reply in Support of Objection:** Mr. Mannion's belief about the *future* revenue he could make if he sold all prints for certain photographs is not relevant. Plaintiff's requested damages are for (1) the commercial value of the use of his name and likeness "in the manner in which it was used by [D]efendants" (*Clark v. America Online Inc.*, 2000 WL 33535712, at *8 (C.D. Cal. Nov. 30, 2000) and (2) "any profits from the unauthorized use that are attributable to the use and are not taken into account in computing the actual damages" (California Civil Code § 3344(a)). Hypothetical future revenue has nothing to do with Plaintiff's alleged harm. This exhibit will only prejudice Defendants and confuse the jury about the proper measure of damages.

28.   **JX-184**

**Description**: 2021 Internal Strategy for Mannion (MANNION007336)

**Purpose**: The document is relevant because it tends to show that Mannion knew he needed to seek a recording artist's permission before using the recording artist's likeness on products.  The document is also relevant because it shows that Mannion planned to propose partnering with one of Plaintiff's companies, Roc Nation, to use photos of Plaintiff.  That tends to prove that Mannion did not have Plaintiff's consent to exploit photos of Plaintiff.  That also tends to prove that Mannion understood that the commercial value of Plaintiff's name, image, and likeness are substantial.

**Basis for Objection**: Irrelevant. FRE 401, 402. Will cause unfair prejudice, confuse the issues, and/or mislead the jury. FRE 403. Hearsay. FRE 801, 802. Failure to authenticate. FRE 901.

**Response to Objection:** To the extent evidence of Mannion's subjective beliefs are permitted, the document is relevant because it tends to show that Mannion knew he needed to seek a recording artist's permission before using the recording artist's likeness on products.

1    **Reply in Support of Objection:** The parties have agreed that Defendants'

2    subjective belief about whether they can use the at-issue photographs without

3    Plaintiff's consent is irrelevant, so this exhibit is irrelevant too. Also, there is no

4    indication this exhibit shows that Mr. Mannion believed he needed Plaintiff's

5    consent. Indeed, the exhibit shows Defendants' contemplating that Roc Nation

6    needs Mr. Mannion's consent, because of his copyrights, and a strategy to

7    collaborate with Roc Nation and other businesses for the purpose of driving sales.

8    This exhibit is irrelevant and would confuse the jury.

9        29.   **JX-185**

10    **Description**:  Handwritten Notes on a Mannion stationery

11    (MANNION003728).

12    **Purpose**:  If the Court denies Plaintiff's MIL No. 1 and permits Defendants to

13    introduce evidence of copyright ownership and licensing, the document is relevant

14    because it shows that Mannion admitted that use of photos depicting Plaintiff

15    needed to be "cleared through [the] label[]."  This also tends to disprove Mannion's

16    argument that he had Plaintiff's consent to use his name, image, and likeness,

17    because Mannion never "cleared" that with Plaintiff.

18    **Basis for Objection**:  Irrelevant. FRE 401, 402. Will cause unfair prejudice,

19    confuse the issues, and/or mislead the jury. FRE 403. Hearsay. FRE 801, 802.

20    Failure to authenticate. FRE 901.

21    **Response to Objection:** If the Court denies Plaintiff's MIL No. 1 and permits

22    Defendants to introduce evidence of copyright ownership and licensing, the

23    document is relevant because it shows that Mannion admitted that use of photos

24    depicting Plaintiff needed to be "cleared through [the] label[]."  This also tends to

25    disprove Mannion's argument that he had Plaintiff's consent to use his name, image,

26    and likeness, because Mannion never "cleared" that with Plaintiff.

27    **Reply in Support of Objection:** TBA

28        30.   **JX-186**

1    **Description**:  Handwritten Notes on Mannion stationery (MANNION002613)

2    **Purpose**:  If the Court denies Plaintiff's MIL No. 1 and permits Defendants to

3  introduce evidence of copyright ownership and licensing, the document is relevant

4  because it shows that Mannion admitted that he could not license the right to use

5  Plaintiff's likeness.  The document also contains a note that Mannion is "not

6  responsible for likeness of artist."  That tends to disprove Mannion's assertion that

7  he had Plaintiff's consent to use his name, image, and likeness.

8    **Basis for Objection**:  Irrelevant. FRE 401, 402. Will cause unfair prejudice,

9  confuse the issues, and/or mislead the jury. FRE 403. Hearsay. FRE 801, 802.

10  Failure to authenticate. FRE 901.

11    **Response to Objection:** If the Court denies Plaintiff's MIL No. 1 and permits

12  Defendants to introduce evidence of copyright ownership and licensing, the

13  document is relevant because it shows that Mannion admitted that he could not

14  license the right to use Plaintiff's likeness.  The document contains a note that

15  Mannion is "not responsible for likeness of artist."  Plaintiff intends to authenticate

16  the document with testimony from Mannion if it is offered.

17    **Reply in Support of Objection:** Defendants will only offer evidence of their

18  copyrights in the at-issue photographs to rebut any assertion by Plaintiff that he

19  owns them. Otherwise, Defendants do not intend to offer evidence of copyrights.

20    Moreover, this exhibit is not about any of the at-issue photographs. And this

21  out-of-context note contains a list of several different faxes that Jonathan Mannion

22  Photography needed to respond to. Plaintiff without basis tries to connect a bullet

23  point at the bottom of this note about one fax from an unknown sender about artist

24  likeness, which has nothing to do with Plaintiff, to a bullet point near the top about

25  an unrelated, different fax regarding Plaintiff. Allowing this irrelevant note in

26  evidence will only confuse the jury and prejudice Defendants.

27    31.   **JX-189**

28

**Description**:  Tiffany & Co. Talent Agreement, between Tiffany and Company and SC Branding, LLC dated June 8, 2021 (CARTER0004372)

**Purpose**:  The document is relevant to Plaintiff's damages because it shows the value associated with Plaintiff's NIL.  Plaintiff's damages expert relies on the document for his analysis.

**Basis for Objection**:  Irrelevant. FRE 401, 402. Will cause unfair prejudice, confuse the issues, and/or mislead the jury. FRE 403.

**Response to Objection:** The document is relevant to Plaintiff's damages because it shows the value associated with Plaintiff's name, image, and likeness.

**Reply in Support of Objection:** Plaintiff's requested damages are for (1) the commercial value of the use of his name and likeness "in the manner in which it was used by [D]efendants" (*Clark v. America Online Inc.*, 2000 WL 33535712, at *8 (C.D. Cal. Nov. 30, 2000) and (2) "any profits from the unauthorized use that are attributable to the use and are not taken into account in computing the actual damages" (California Civil Code § 3344(a)). This endorsement agreement requiring Plaintiff to spend time participating in a photography and video shoot for a new advertising campaign by Tiffany & Co., one of the largest and most famous jewelry companies in the country, is not irrelevant to the uses at issue here. That is, this agreement is not probative of the potential damages Plaintiff can obtain from a small photography business's using photographs they created long ago to sell prints and other items to generate less than $45,000 in revenue during the limitations period. Allowing this agreement in evidence would prejudice Defendants and mislead the jury about the proper measure of damages.

32. **JX-190**

**Description**:  Brand Strategist Agreement between SC Branding and CMG Partners, Inc., dated May 1, 2019 (CARTER0004400).

1   **Purpose**:  The document is relevant to Plaintiff's damages because it shows

2   the value associated with Plaintiff's NIL.  Plaintiff's damages expert relies on the

3   document for his analysis.

4   **Basis for Objection**:  Irrelevant. FRE 401, 402. Will cause unfair prejudice,

5   confuse the issues, and/or mislead the jury. FRE 403.

6   **Response to Objection:** The document is relevant to Plaintiff's damages

7   because it shows the value associated with Plaintiff's name, image, and likeness.

8   **Reply in Support of Objection:** Plaintiff's requested damages are for (1) the

9   commercial value of the use of his name and likeness "in the manner in which it was

10  used by [D]efendants" (*Clark v. America Online Inc.*, 2000 WL 33535712, at *8

11  (C.D. Cal. Nov. 30, 2000) and (2) "any profits from the unauthorized use that are

12  attributable to the use and are not taken into account in computing the actual

13  damages" (California Civil Code § 3344(a)). This endorsement agreement requiring

14  Plaintiff to work as "brand strategist" (which requires participating in "in-person

15  strategy meetings," allowing promotions be made at Plaintiff's concerts, making

16  personal appearances twice annually, recruiting other high-profile parties for

17  promotion, and other personal services) for a cannabis company is not irrelevant to

18  the uses at issue here. That is, this agreement is not probative of the potential

19  damages Plaintiff can obtain from a small photography business's using

20  photographs they created long ago to sell prints and other items to generate less than

21  $45,000 in revenue during the limitations period. Allowing this agreement in

22  evidence would prejudice Defendants and mislead the jury about the proper measure

23  of damages.

24  33.   **JX-191**

25  **Description**:  Creative Services Agreement betweem Puma SE and Puma

26  North America, dated November 1, 2020 (CARTER0004436)

27

28

**Purpose**:  The document is relevant to Plaintiff's damages because it shows the value associated with Plaintiff's NIL.  Plaintiff's damages expert relies on the document for his analysis.

**Basis for Objection**:  Irrelevant. FRE 401, 402. Will cause unfair prejudice, confuse the issues, and/or mislead the jury. FRE 403.

**Response to Objection:** The document is relevant to Plaintiff's damages because it shows the value associated with Plaintiff's name, image, and likeness.

**Reply in Support of Objection:** Plaintiff's requested damages are for (1) the commercial value of the use of his name and likeness "in the manner in which it was used by [D]efendants" (*Clark v. America Online Inc.*, 2000 WL 33535712, at *8 (C.D. Cal. Nov. 30, 2000) and (2) "any profits from the unauthorized use that are attributable to the use and are not taken into account in computing the actual damages" (California Civil Code § 3344(a)). This endorsement agreement requiring Plaintiff to provide various creative services (which include reviewing and consulting marketing strategy; recruiting and maintaining relationships with athletes, musicians, fashion designers, and celebrities; designing products; attending various meetings and events; and other personal services) to Puma, a multinational athleticwear corporation based in Germany, is not irrelevant to the uses at issue here. That is, this agreement is not probative of the potential damages Plaintiff can obtain from a small photography business's using photographs they created long ago to sell prints and other items to generate less than $45,000 in revenue during the limitations period. Allowing this agreement in evidence would prejudice Defendants and mislead the jury about the proper measure of damages.

34.  **JX-192**

**Description**:  Email from M. Matute to A. Goodwin re: Updated Morrison Agreement, dated June 22, 2018 (MANNION004495).

**Purpose**:  The document is relevant because it shows the terms on which Mannion sold prints of photos of Plaintiff through the Morrison Hotel Gallery, and

the photos of Plaintiff that Mannion has offered for sale through the Morrison Hotel Gallery.  The document also shows that Mannion believes that photos of Plaintiff would sell for hundreds of dollars more than Mannion's "Standard Images."  That tends to prove that Mannion understood that the commercial value of Plaintiff's name, image, and likeness are substantial.  That also tends to rebut Mannion's "transformative use" defense by showing that Mannion's pictures of Plaintiff derive their value from Plaintiff's celebrity, rather than the "creativity, skill, and reputation of" Mannion.  *Comedy III Prods., Inc. v. Gary Saderup, Inc.*, 25 Cal. 4th 387, 407 (2001).

**Basis for Objection**:  Irrelevant. FRE 401, 402. Will cause unfair prejudice, confuse the issues, and/or mislead the jury. FRE 403.

**Response to Objection:** The document is relevant because it shows the terms on which Mannion sold prints of photos of Plaintiff through the Morrison Hotel Gallery, and the photos of Plaintiff that Mannion has offered for sale through the Morrison Hotel Gallery.

**Reply in Support of Objection:** This exhibit is subject to Defendants' forthcoming Motion in Limine to Exclude Internal Communications Regarding Generating Revenue. It is irrelevant to Plaintiff's claims and concerns only internal discussions at Jonathan Mannion Photography about revenue that can be earned by exploiting the copyrights in Mr. Mannion's photographs. Moreover, the ironic manner in which the colleagues at Jonathan Mannion Photography expressed a desire to grow the business would likely create an "emotional response" that reflects adversely on Defendants, causing prejudice. *Boyd v. City & Cnty. of San Francisco*, 576 F.3d 938, 947 (9th Cir. 2009) (excluding prejudicial evidence).

To the extent Plaintiff intends to offer JX-192 with its attached June 18, 2018 consignment agreement, the terms of this agreement are also irrelevant. Mr. Mannion's belief about the *future* revenue he could make is not relevant to Plaintiff's requested damages are for (1) the commercial value of the use of his

name and likeness "in the manner in which it was used by [D]efendants" (*Clark v. America Online Inc.*, 2000 WL 33535712, at *8 (C.D. Cal. Nov. 30, 2000) and (2) "any profits from the unauthorized use that are attributable to the use and are not taken into account in computing the actual damages" (California Civil Code § 3344(a)). Hypothetical future revenue has nothing to do with Plaintiff's alleged harm. This exhibit will only prejudice Defendants and confuse the jury about the proper measure of damages.

Finally, these documents are irrelevant to First Amendment defense for transformative use. It merely shows different pricing between (a) prints of Mr. Mannion's photographs of Plaintiff and of Notorious B.I.G. (Biggie Smalls), a different recording artist, from (b) prints of Mr. Mannion's photographs of certain other recording artists. They are not probative of whether the value of the at-issue photographs primary derive from Plaintiff's fame or from Mr. Mannion's creativity, skill, and reputation. *Comedy III Prods., Inc. v. Gary Saderup, Inc.*, 25 Cal. 4th 387, 406-07 (2001).

### 35. **JX-193**

**Description**:  Email from M. Matute to Jonathan Mannion re: Chasing the bag today, dated July 25, 2019 (MANNION008647).

**Purpose**:  The document is relevant because it shows that Defendants profited off of Plaintiff's name, image, and likeness by selling a print of Plaintiff and another recording artist for $7961.90.

**Basis for Objection**: Irrelevant. FRE 401, 402. Will cause unfair prejudice, confuse the issues, and/or mislead the jury. FRE 403.

**Response to Objection:** The document is relevant because it shows that Defendants sought to profit from selling prints of photographs of recording artists, such as Plaintiff, tending to prove that Defendants have used Plaintiff's name, image, and likeness in a manner that is "directly connected" to a "commercial purpose." CACI 1804A.

**Reply in Support of Objection:** This exhibit is subject to Defendants' forthcoming Motion in Limine to Exclude Internal Communications Regarding Generating Revenue. It is irrelevant to Plaintiff's claims and concerns only internal discussions at Jonathan Mannion Photography about revenue that can be earned by exploiting the copyrights in Mr. Mannion's photographs. Moreover, the ironic manner in which the colleagues at Jonathan Mannion Photography expressed a desire to grow the business would likely create an "emotional response" that reflects adversely on Defendants, causing prejudice. *Boyd v. City & Cnty. of San Francisco*, 576 F.3d 938, 947 (9th Cir. 2009) (excluding prejudicial evidence).

Moreover, the email shows Defendants needed to obtain payment for a print depicting Plaintiff and another print depicting Slick Rick, a different recording artist, that were sold. The email is irrelevant because Plaintiff cannot establish (1) whether the print features an at-issue photograph or (2) what portion of the $7961.90 was the unpaid portion for the print depicting Plaintiff. In fact, Plaintiff will offer in evidence an exhibit, which Defendants do not object to, showing the actual revenue that Jonathan Mannion Photography received in the limitations period from sales of prints of the at-issue photographs. It is clear that Plaintiff seeks to use this exhibit either to obtain additional damages that he is not entitled to or for the prejudicial effect of the ironic language used in the subject line.

36. **JX-195**

**Description**:  Fax from Alexis to Kyra re Contract, dated October 18, 2002 (MANNION003733).

**Purpose**:  If the Court denies Plaintiff's MIL No. 1 and permits Defendants to introduce evidence of copyright ownership and licensing, the document is relevant because it shows that Defendants sought express clearance from Island Def Jam before allowing third parties to use photographs of Plaintiff.  But Defendants have not sought express clearance from Plaintiff, which tends to disprove their argument that they had Plaintiff's consent.

**Basis for Objection**: Irrelevant. FRE 401, 402. Will cause unfair prejudice, confuse the issues, and/or mislead the jury. FRE 403. Incomplete. FRE 106. Failure to authenticate. FRE 901. Legal conclusion by layperson. FRE 701.

**Response to Objection:** The document is relevant because it shows that Defendants sought express clearance from Island Def Jam before allowing third parties to use photographs of Plaintiff. But Defendants have not sought express clearance from Plaintiff, which tends to disprove their argument that they had Plaintiff's consent.

**Reply in Support of Objection:** Defendants will only offer evidence of their copyrights in the at-issue photographs to rebut any assertion by Plaintiff that he owns them. Otherwise, Defendants do not intend to offer evidence of copyrights.

Moreover, not only has Plaintiff conceded at deposition that no agreement governs the at-issue photographs from the Reasonable Doubt photoshoot, and Island Def Jam was not the record label for that album, as Plaintiff knows. Further, an out-of-context, short note by a former employee of Jonathan Mannion Photography in 2002 regarding a third party's use is irrelevant to whether Plaintiff consented to Defendants' uses. In any case, the parties have agreed that Defendants' subject belief about whether they can use the at-issue photographs is not relevant.

37. **JX-196**

**Description**: Text messages between M. Gueche, J. Mannion, and Greg Alders, dated February 13, 2020 (MANNION010645).

**Purpose**: The document shows that Mannion admitted that Plaintiff's NIL has "appeal." That is relevant to Plaintiff's damages, and it also shows that Defendants used Plaintiff's likeness to advertise. The document also tends to prove that Mannion's pictures of Plaintiff derive their value from Plaintiff's celebrity, rather than the "creativity, skill, and reputation of" Mannion. *Comedy III Prods., Inc. v. Gary Saderup, Inc.*, 25 Cal. 4th 387, 407 (2001). That tends to disprove Mannion's "transformative use" defense.

1   **Basis for Objection**:  Irrelevant. FRE 401, 402. Will cause unfair prejudice,
2   confuse the issues, and/or mislead the jury. FRE 403.

3   **Response to Objection:** The document is relevant to Plaintiff's damages and
4   to show that Defendants used Plaintiff's likeness to advertise, because it shows that
5   Mannion admitted that Plaintiff's image and likeness have "appeal."

6   **Reply in Support of Objection:** These messages have nothing to do with the
7   at-issue photographs or the uses of those photographs that are the subject of
8   Plaintiff's claims. There is no basis for Plaintiff's assertion that this exhibit has
9   anything to do with advertising. And whether Mr. Mannion thought Plaintiff has
10  "gangsta appeal" is not only irrelevant to the value of the uses of Plaintiff's likeness,
11  but also highly prejudicial given the race-related concerns the term is likely to raise.

12  38.  **<u>JX-197</u>**

13  **Description**:  Letter from K. Yiengst to A. Bobbitt re Four Jay-Z Images for
14  Decoded Published by Spiegel and Grau, dated September 10, 2010
15  (MANNION003871)

16  **Purpose**:  If the Court denies Plaintiff's MIL No. 1 and permits Defendants to
17  introduce evidence of copyright ownership and licensing, the document shows that
18  Mannion sought express clearance from Island Def Jam before allowing third parties
19  to use photographs of Plaintiff.  The document also tends to disprove Mannion's
20  assertion that he has Jay-Z's consent to use his NIL, because Mannion never sought
21  express permission to do so.

22  **Basis for Objection**:  Irrelevant. FRE 401, 402. Will cause unfair prejudice,
23  confuse the issues, and/or mislead the jury. FRE 403.

24  **Response to Objection:** The document is relevant because it shows that
25  Defendants sought express clearance from Island Def Jam before allowing third
26  parties to use photographs of Plaintiff.  But Defendants have not sought express
27  clearance from Plaintiff, which tends to disprove their argument that they had
28  Plaintiff's consent.

1     **Reply in Support of Objection:**

2     This 2010 letter from third-party Island Def Jam is irrelevant. The letter

3 clearly shows it does not concern any of the at-issue photographs, and Defendants

4 are not introducing evidence about the subject of this letter, Spiegel & Grau's

5 publication of the *Decoded* book.

6     To be clear, Defendants seek only to introduce evidence of the licensing

7 relationship between Defendants and Plaintiff, including his affiliated companies,

8 for the use of the at-issue photographs. The licensing relationship shows Plaintiff's

9 implied consent to Defendants' use of the at-issue photographs, as Plaintiff needed

10 Defendants' permission to use the images. This 2010 letter about irrelevant

11 photographs would confuse the jury.

12     39.   **JX-198**

13     **Description**:  Email from J. Mannion to licensing@jonathanmannion.com re

14 The Black Album-Jay Z, dated November 8, 2018 (MANNION009753)

15     **Purpose**:  If the Court denies Plaintiff's MIL No. 1 and permits Defendants to

16 introduce evidence of copyright ownership and licensing, the email chain shows that

17 Mannion and Island Def Jam had a pattern and practice of entering into work-for-

18 hire agreements that assigned the copyright of photos of Plaintiff to Island Def Jam,

19 not Mannion.  That tends to rebut Mannion's assertions of copyright ownership.

20     **Basis for Objection**:  Irrelevant, as this document does not pertain to any of

21 the photographs at issue in this litigation. FRE 401, 402. Will cause unfair prejudice,

22 confuse the issues, and/or mislead the jury. FRE 403. Hearsay. FRE 801, 802.

23 Portion consisting of email by Xilonen Oreshnick on Nov. 8, 2018 at 1:50 p.m. EST

24 contains legal conclusion by layperson. FRE 701.

25     **Response to Objection:** If the Court denies Plaintiff's MIL No. 1 and permits

26 Defendants to introduce evidence of copyright ownership and licensing, the

27 document is relevant because it shows that Mannion and Plaintiff's record label, Def

28 Jam, had a pattern and practice of entering into a standard form agreement when

Mannion was retained to photograph Plaintiff, in which Mannion agreed Def Jam owned the photos' copyright, which tends to disprove his claims of copyright ownership.

**Reply in Support of Objection:** TBA

40.   **JX-199**

**Description**:  Email from J. Mannion to licensing@jonathanmannion.com re The Black Album- Jay Z, dated November 8, 2018 (MANNION009755)

**Purpose**:  If the Court denies Plaintiff's MIL No. 1 and permits Defendants to introduce evidence of copyright ownership and licensing, the email chain shows that Mannion and Island Def Jam had a pattern and practice of entering into work-for-hire agreements that assigned the copyright of photos of Plaintiff to Island Def Jam, not Mannion.

**Basis for Objection**:  Irrelevant, as this document does not pertain to any of the photographs at issue in this litigation. FRE 401, 402. Will cause unfair prejudice, confuse the issues, and/or mislead the jury. FRE 403. Hearsay. FRE 801, 802. Portion consisting of email by Xilonen Oreshnick on Nov. 8, 2018 at 1:50 p.m. EST contains legal conclusion by layperson. FRE 701.

**Response to Objection:** If the Court denies Plaintiff's MIL No. 1 and permits Defendants to introduce evidence of copyright ownership and licensing, the document is relevant because it shows that Mannion and Plaintiff's record label, Def Jam, had a pattern and practice of entering into a standard form agreement when Mannion was retained to photograph Plaintiff, in which Mannion agreed Def Jam owned the photos' copyright, which tends to disprove his claims of copyright ownership.

**Reply in Support of Objection**: TBA

This exhibit concerns irrelevant photographs for an irrelevant album of Plaintiff. Indeed, Plaintiff recognizes that none of the Island Def Jam agreement produced in discovery is relevant to the at-issue photographs. To be sure, there is no

evidence of a "pattern and practice of entering into [other] agreements"—a contract either exists or does not. An irrelevant agreement, such as the Island Def Jam contracts that Plaintiff separately seeks to use as exhibits, cannot be offered in evidence simply because of Plaintiff's naked assertion that it might be similar to some other contract—that has never been found, and whose terms are not known and cannot be proven.

In addition, Defendants will only offer evidence of their copyrights in the at-issue photographs to rebut any assertion by Plaintiff that he owns them. Otherwise, Defendants do not intend to offer evidence of copyrights.

Moreover, this exhibit between Jonathan Mannion Photography and a third party—not Plaintiff—has nothing to do with the licensing relationship between Defendants and Plaintiff (which shows Plaintiff's implied consent to Defendants' uses of the at-issue photographs). Allowing this exhibit in evidence will only confuse the jury and prejudice Defendants.

41. **JX-200**

**Description**:  Island Def Jam Photography / Illustration Agreement for Photoshoot Project Titled "JayZ The Black Album," dated September 30, 2003 (MANNION008346).

**Purpose**:  Same as JX-2.

**Basis for Objection**:  Irrelevant, as this document does not pertain to any of the photographs at issue in this litigation. FRE 401, 402. Will cause unfair prejudice, confuse the issues, and/or mislead the jury. FRE 403. Incomplete. FRE 106. Failure to authenticate. FRE 901.

**Response to Objection:** If the Court denies Plaintiff's MIL No. 1 and permits Defendants to introduce evidence of copyright ownership and licensing, the document is relevant because it shows that Mannion and Plaintiff's record label, Def Jam, had a pattern and practice of entering into a standard form agreement when Mannion was retained to photograph Plaintiff, in which Mannion agreed Def Jam

owned the photos' copyright, which tends to disprove his claims of copyright ownership.

     **Reply in Support of Objection:** Plaintiff recognizes that this agreement has nothing to do with the at-issue photographs. To be sure, there is no evidence of a "pattern and practice of entering into [other] agreements"—a contract either exists or does not. An irrelevant agreement cannot be offered in evidence simply because of Plaintiff's naked assertion that it might be similar to some other contract—that has never been found, and whose terms are not known and cannot be proven.

     In addition, Defendants will only offer evidence of their copyrights in the at-issue photographs to rebut any assertion by Plaintiff that he owns them. Otherwise, Defendants do not intend to offer evidence of copyrights. Moreover, this agreement between Jonathan Mannion Photography and a third party—not Plaintiff—has nothing to do with the licensing relationship between Defendants and Plaintiff (which shows Plaintiff's implied consent to Defendants' uses of the at-issue photographs). Allowing this irrelevant agreement in evidence will only confuse the jury and prejudice Defendants.

     42.  **<u>JX-220</u>**

     **Description**:  Aaliyah – JONATHAN MANNION (MANNION000213).

     **Purpose**:  The document shows Mannion's online store and that Mannion enters into licensing agreements with certain recording artist before selling products bearing their NIL.  But Mannion has not done so with respect to Plaintiff.  That tends to disprove Mannion's argument that he had Plaintiff's consent.

     **Basis for Objection**:  Irrelevant. FRE 401, 402. Will cause unfair prejudice, confuse the issues, and/or mislead the jury. FRE 403.

     **Response to Objection:** The document is relevant because it shows Mannion's online store and that Mannion enters into licensing agreements with certain recording artist before selling products bearing their name or likeness, but he

has not done so with respect to Plaintiff.  That tends to disprove Mannion's argument that he had Plaintiff's consent.

**Reply in Support of Objection:** Whether Defendants entered agreements with Aaliyah, who was a recording artist, for the use of photographs that do not depict Plaintiff is not relevant whatsoever. Moreover, if this exhibit is allowed in evidence, Defendants may need to testify about the agreements voluntarily entered with Aaliyah's estate to collaborate on selling items specially marked as "officially licensed." This exhibit would only confuse the jury and inject irrelevant issues into trial.

**Defendants' Exhibits**

1.    **Exhibit 10**

**Description:** Video of Apt. 4B pop-up event by Fourth of November

**Purpose:** This video shows that Plaintiff attended the Apt. 4B pop-up event, that prints using at-issue photographs licensed from Defendants were prominently on display, and that shirts featuring at-issue photographs licensed from Defendants were sold. Defendants intend to use this exhibit as part of showing that Plaintiff impliedly consented to the uses of name, image, and likeness in the at-issue photographs.

**Plaintiff's Basis for Objection:** Fed. R. Evid. 401, 402. Evidence concerning Defendants' licensing of copyright to photographs of Plaintiff, including in connection with the Apartment 4B event, is not relevant to any of the claims or defenses. Fed. R. Evid. 403.

**Defendants' Response to Objection:** Evidence about the Apt. 4B pop-up event is relevant. Through that evidence, Defendants will establish that Plaintiff attended the event and did not express any objection to Defendants for their licensing of the at-issue photos for use in prints that were prominently on display and in shirts that were sold, at the event. Whether Plaintiff objected to Defendants' licensing or to the prints and shirts tends to show that Plaintiff, either personally or through the knowledge of his agents, knew or should have known that Mr. Mannion was using photographs of Plaintiff as early as 2016. And that is relevant to whether Plaintiff can establish lack of consent, a required element of his claims. The probative value of such evidence outweighs any of the dangers outlined in Fed. R. Evid. 403.

**Plaintiff's Reply in Support of Objection:**  Evidence of the Apartment 4B pop-up event is not relevant.  Mr. Burke, not Defendants, hosted the event and sold t-shirts with pictures of Plaintiff at the event.  Mr. Burke was one of the founders of Plaintiff's record label, Roc-A-Fella Records.  That Plaintiff did not object to

1   Mr. Burke's sale of t-shirts does not tend to prove that Plaintiff consented to

2   Defendants use of his name, image, and likeness (NIL).

3        Moreover, that Defendants licensed Mr. Burke the copyright to the photos he

4   used for the t-shirts is irrelevant because Defendants' copyright licensing activities

5   do not tend to prove that Plaintiff consented to Defendants' use of his NIL.  Plaintiff

6   will move in limine to exclude evidence of Defendants' copyright licensing

7   activities.  As **Defendants** have recognized, "Plaintiff's at-issue right of publicity" is

8   a "different right entirely" from their copyrights, and there is a "significant risk that

9   the jury would confuse" the two.

10

11        2.    **Exhibit 14**

12        **Description:** Confidential Settlement and License Agreement between Circle

13   of Success, LLC and Jonathan Mannion, dated November 2018

14   (MANNION003284)

15        **Purpose:** Through this agreement, Defendants licensed several of the at-issue

16   photographs to Kareem Burke. This exhibit is probative of the lack-of-consent

17   element of Plaintiff's claims.

18        **Plaintiff's Basis for Objection:** Fed. R. Evid. 401, 402. Evidence concerning

19   Defendants' licensing of copyright to photographs of Plaintiff is not relevant. Fed.

20   R. Evid. 403.

21        **Defendants' Response to Objection:** Defendants intend to establish that

22   Plaintiff, either personally or through the knowledge of his agents, knew or should

23   have known that Kareem Burke obtained a license from Mr. Mannion for

24   photographs from the Reasonable Doubt shoot to be used on clothing, but that

25   Plaintiff did not express any objection to that use to Defendants, directly or

26   indirectly. Such evidence of consent (or at least implied consent) is relevant to a

27   required element of Plaintiff's claims—lack of consent. The probative value of such

28   evidence outweighs any of the dangers outlined in Fed. R. Evid. 403.

**Plaintiff's Reply in Support of Objection:**  Through this agreement, Defendants licensed Circle of Success, LLC the copyright to photos of Plaintiff. The agreement states that the license was "limited to the Images and not any subject depicted in the Image."  The agreement states that "CoS shall be responsible for clearing the necessary third-party rights to make use of the Images in connection with the Goods" contemplated by the agreement.  Because the agreement did not license the right to use Plaintiff's NIL, it has no probative value as to whether Plaintiff consented to Defendants' use of his NIL.  Plaintiff will move in limine to exclude evidence of Defendants' copyright licensing activities.  As ***Defendants*** have recognized, "Plaintiff's at-issue right of publicity" is a "different right entirely" from their copyrights, and there is a "significant risk that the jury would confuse" the two.

3.    **Exhibit 18**

**Description:** Text messages between Kareem Burke and Jonathan Mannion - 7/5/16 (MANNION003471).

**Purpose:** These text messages show that Mr. Burke informed Plaintiff that Mr. Mannion created silkscreen prints of photographs of Plaintiff from the Reasonable Doubt photoshoot for a 2016 event, and that Plaintiff wanted two of them. This exhibit is probative of the lack-of-consent element of Plaintiff's claims.

**Plaintiff's Basis for Objection:** Fed. R. Evid. 401, 402. Evidence concerning Defendants' gifting of photographs of Plaintiff to Plaintiff is not relevant. Fed. R. Evid. 403; Fed. R. Evid. 602; Fed. R. Evid. 802.

**Defendants' Response to Objection:** This document tends to show that prints displayed by Mr. Mannion at the 2016 New York gallery show—including ones imprinted with Mr. Mannion's photographs of Plaintiff—were offered for sale at the event. That tends to show that Plaintiff, either personally or through the knowledge of his agents, knew or should have known of Defendants' creation and sale of prints of Mr. Mannion's photographs of Plaintiff, which is relevant to

whether Plaintiff impliedly consented to Defendants' uses of Mr. Mannion's photographs of Plaintiff about which he complains. The probative value of such evidence outweighs any of the dangers outlined in Fed. R. Evid. 403.

As for Plaintiff's hearsay objection, Defendants offer it not to prove the truth of the matters asserted in the document, but to corroborate evidence that Mr. Mannion's photographs and prints bearing Plaintiff's image were openly displayed and offered for sale at the 2016 New York gallery exhibition. It is also subject to the business record exception to hearsay. Fed. R. Evid. 803(6).

**Plaintiff's Reply in Support of Objection:**  The text messages are hearsay because they are being offered to prove the truth of the matter asserted (i.e., that "Mr. Burke informed Plaintiff that Mr. Mannion created silkscreen prints of photographs of Plaintiff from the Reasonable Doubt photoshoot for a 2016 event"). The business-record exception does not apply, including because there is no evidence that sending these types of text messages were made as part of "a regular practice" of Defendants' business or "kept in the course of a regularly conducted activity of a business."  Fed. R. Evid. 803(6).

The text messages are also not relevant because they do not show that Defendants sold any of the silkscreen prints, or that Plaintiff was told by Mr. Burke that Defendants sold any of the silkscreen prints.  Rather, the text messages show that Mannion offered to gift two of the silkscreen prints to Plaintiff.  Thus, the text messages do not tend to prove that Plaintiff consented to Defendants' use of his NIL on products or for advertising—which is the basis for this lawsuit.


4.  **<u>Exhibit 26</u>**

**Description:** 20 Year Anniversary flyer for Marlborough Chelsea exhibition – 6/28/16 (MANNION007114).

**Purpose:** This flyer shows that three companies affiliated with Plaintiff sponsored Defendants' 2016 event where silkscreen prints of photographs from the

Reasonable Doubt photoshoot, including at-issue photographs, were displayed and offered for sale. This exhibit is probative of the lack-of-consent element of Plaintiff's claims.

**Plaintiff's Basis for Objection:** Fed. R. Evid. 401, 402; Fed. R. Evid. 403; Fed. R. Evid. 802.

**Defendants' Response to Objection:** This document tends to show that business entities owned and associated with Plaintiff—Tidal, Armand de Brignac Champagne, and D'usse—supported the 2016 New York gallery show, at which the evidence will show Mr. Mannion's photographs of Plaintiff were offered for sale at the event. This evidence tends to show that Plaintiff, either personally or through the knowledge of his agents, knew or should have known of Defendants' creation and sale of prints imprinted with Mr. Mannion's photographs of Plaintiff, relevant to whether Plaintiff impliedly consented to Defendants' uses of Mr. Mannion's photographs of Plaintiff about which he complains. The probative value of such evidence outweighs any of the dangers outlined in Fed. R. Evid. 403.

As for Plaintiff's hearsay objection, Defendants offer it not to prove the truth of the matters asserted in the document, but to show the fact that entities associated with Plaintiff were listed as supporters for the event. It is also subject to the business record exception to hearsay. Fed. R. Evid. 803(6).

**Plaintiff's Reply in Support of Objection:** The flyer is hearsay because it is being offered to prove the truth of the matter asserted (i.e., "that three companies affiliated with Plaintiff sponsored Defendants' 2016 event"). The business records exception does not apply, including because there is no evidence that this flyer was made as part of "a regular practice" of Defendants' business or "kept in the course of a regularly conducted activity of a business." Fed. R. Evid. 803(6).

The flyer is also not relevant because there is no evidence that any person from the companies that sponsored the event knew that the silkscreen prints were "offered for sale." Nor is there any evidence that Plaintiff knew there were

silkscreen prints of him "offered for sale" at the gallery event.  To the extent the flyer has any probative value, that value is outweighed by the risk of "confusing the issues, misleading the jury, undue delay, [and] wasting time."

5.   **Exhibit 31**

**Description:** Email from Uri Davidov to Jonathan Mannion and Sara Hsia re Fwd: Reasonable Doubt Shoot - 6/22/2021 (MANNION001515).

**Purpose:** This email shows that Plaintiff, through his agents Lenny Santiago and Desiree Perez, sought to purchase Defendants' rights in the photographs from the Reasonable Doubt photoshoot, including several of the at-issue photographs, after the period when Plaintiff contends he learned about Defendants' uses of his name, image, and likeness.  During the negotiation, Plaintiff never objected to the uses.  This exhibit is probative of the lack-of-consent element of Plaintiff's claims.

**Plaintiff's Basis for Objection:** Fed. R. Evid. 401, 402. Evidence concerning negotiations between Plaintiff and Defendants that took place in May and June 2021 is not relevant. Fed. R. Evid. 403; Fed. R. Evid. 408.

**Defendants' Response to Objection:** This document tends to show that Plaintiff, either personally or through the knowledge of his agents attributable to him, knew that Defendants do not need Plaintiff's permission to use the at-issue photographs, as Plaintiff sought to first license then purchase the photographs from Defendants. It also shows tends to show that Plaintiff, despite knowing about Defendants' uses of the photographs at the time of the negotiation, did not object. Thus, this document is relevant to whether Plaintiff impliedly consented to Defendants' uses of the photographs at issue. The probative value of such evidence outweighs any of the dangers outlined in Fed. R. Evid. 403.

Regarding Plaintiff's objection under Fed. R. Evid. 408, these communications were in the context of negotiations over a business transaction under which Plaintiff would potentially license or acquire the photographs of

Plaintiff created and/or maintained in and taken by Mr. Mannion, and were not in the context of a settlement negotiation.

**Plaintiff's Reply in Support of Objection:**  Plaintiff will move in limine to exclude evidence of the parties' pre-litigation negotiations, including this document. As **Defendants** stated in their motion *in limine* meet-and-confer letter "[t]he pre-litigation negotiations … are not relevant," because they concerned "copyrights" and "[t]he parties were not negotiating a license for Defendants to use [Jay-Z's] [NIL]."  And **Defendants** further stated that "[t]here is a serious risk that the jury would confuse Defendants' copyrights that were the subject of the negotiations with Plaintiff's at-issue right of publicity, a different right entirely."  The copyright negotiations do not tend to prove that Plaintiff consented to Defendants' use of his NIL.  As set forth in Plaintiff's forthcoming motion in limine, evidence concerning the negotiations is also barred by Rule 408 because the statements made by the parties during the negotiations were made in connection with Plaintiff offering "valuable consideration" to "compromise [a] claim."  Fed. R. Evid. 408.

6.   **Exhibit 33**

**Description:** Text messages between Lenny Santiago and Plaintiff re "final counter" – 6/11/21 (CARTER0004545)

**Purpose:** This text message exchange shows that Plaintiff sought to purchase Defendants' rights in the photographs from the Reasonable Doubt photoshoot, including several of the at-issue photographs, after the period when Plaintiff contends he learned about Defendants' uses of his name, image, and likeness. During the negotiation, Plaintiff never objected to the uses. This exhibit is probative of the lack-of-consent element of Plaintiff's claims.

**Plaintiff's Basis for Objection:** Fed. R. Evid. 401, 402. Evidence concerning negotiations between Plaintiff and Defendants that took place in May and June 2021 is not relevant. Fed. R. Evid. 403; Fed. R. Evid. 408.

**Defendants' Response to Objection:** This document tends to show that Plaintiff, either personally or through the knowledge of his agents attributable to him, knew that Defendants do not need Plaintiff's permission to use the at-issue photographs, as Plaintiff sought to first license then purchase the photographs from Defendants. It also shows tends to show that Plaintiff, despite knowing about Defendants' uses of the photographs at the time of the negotiation, did not object. Thus, this document is relevant to whether Plaintiff impliedly consented to Defendants' uses of the photographs at issue. The probative value of such evidence outweighs any of the dangers outlined in Fed. R. Evid. 403.

Regarding Plaintiff's objection under Fed. R. Evid. 408, these communications were in the context of negotiations over a business transaction under which Plaintiff would potentially license or acquire the photographs of Plaintiff created and/or maintained in and taken by Mr. Mannion, and were not in the context of a settlement negotiation.

**Plaintiff's Reply in Support of Objection:**  Plaintiff will move in limine to exclude evidence of the parties' pre-litigation negotiations, including this document. As ***Defendants*** stated in their motion *in limine* meet-and-confer letter "[t]he pre-litigation negotiations … are not relevant," because they concerned "copyrights" and "[t]he parties were not negotiating a license for Defendants to use [Jay-Z's] [NIL]."  And ***Defendants*** further stated that "[t]here is a serious risk that the jury would confuse Defendants' copyrights that were the subject of the negotiations with Plaintiff's at-issue right of publicity, a different right entirely."  The copyright negotiations do not tend to prove that Plaintiff consented to Defendants' use of his NIL.

As set forth in Plaintiff's forthcoming motion in limine, evidence concerning the negotiations is barred by Rule 408 because the statements made by the parties during the negotiations were made in connection with Plaintiff offering "valuable consideration" to "compromise [a] claim."  Fed. R. Evid. 408.

7.     **Exhibit 34**

**Description:** Text messages between Lenny Santiago and Desiree Perez re entire shoot negotiations (CARTER0004529).

**Purpose:** This text message exchange shows that Plaintiff, through his agents Lenny Santiago and Desiree Perez, sought to purchase Defendants' rights in the photographs from the Reasonable Doubt photoshoot, including several of the at-issue photographs, after the period when Plaintiff contends he learned about Defendants' uses of his name, image, and likeness. During the negotiation, Plaintiff never objected to the uses. This exhibit is probative of the lack-of-consent element of Plaintiff's claims.

**Plaintiff's Basis for Objection:** Fed. R. Evid. 401, 402. Evidence concerning negotiations between Plaintiff and Defendants that took place in May and June 2021 is not relevant. Fed. R. Evid. 403; Fed. R. Evid. 408.

**Defendants' Response to Objection:** This document tends to show that Plaintiff, either personally or through the knowledge of his agents attributable to him, knew that Defendants do not need Plaintiff's permission to use the at-issue photographs, as Plaintiff sought to first license then purchase the photographs from Defendants. It also shows tends to show that Plaintiff, despite knowing about Defendants' uses of the photographs at the time of the negotiation, did not object. Thus, this document is relevant to whether Plaintiff impliedly consented to Defendants' uses of the photographs at issue. The probative value of such evidence outweighs any of the dangers outlined in Fed. R. Evid. 403.

Regarding Plaintiff's objection under Fed. R. Evid. 408, these communications were in the context of negotiations over a business transaction under which Plaintiff would potentially license or acquire the photographs of Plaintiff created and/or maintained in and taken by Mr. Mannion, and were not in the context of a settlement negotiation.

**Plaintiff's Reply in Support of Objection:**  Plaintiff will move in limine to exclude evidence of the parties' pre-litigation negotiations, including this document. As *Defendants* stated in their motion *in limine* meet-and-confer letter "[t]he pre-litigation negotiations … are not relevant," because they concerned "copyrights" and "[t]he parties were not negotiating a license for Defendants to use [Jay-Z's] [NIL]."  And *Defendants* further stated that "[t]here is a serious risk that the jury would confuse Defendants' copyrights that were the subject of the negotiations with Plaintiff's at-issue right of publicity, a different right entirely."  The copyright negotiations do not tend to prove that Plaintiff consented to Defendants' use of his NIL.

As set forth in Plaintiff's forthcoming motion in limine, evidence concerning the negotiations is barred by Rule 408 because the statements made by the parties during the negotiations were made in connection with Plaintiff offering "valuable consideration" to "compromise [a] claim."  Fed. R. Evid. 408.

8.    <u>Exhibit 43</u>

**Description:** Letter re draft license between Stardust/Jonathan Mannion Photograph and S. Carter Enterprises for Jay Z images - 4/28/08 (MANNION000887)

**Purpose:** This letter shows that in 2008, S. Carter Enterprises, a company that handles Plaintiff's personal affairs, sought a license from Defendants to use several of the at-issue photographs. This exhibit shows that Plaintiff recognized Defendants did not need his consent to use the photographs, rather Plaintiff needed Defendants' permission, and is probative of the lack-of-consent element of Plaintiff's claims.

**Plaintiff's Basis for Objection:** Fed. R. Evid. 401, 402. Evidence concerning Defendants' potential licensing of copyright to photographs of Plaintiff is not relevant. Fed. R. Evid. 403.

1    **Defendants' Response to Objection:** Evidence about Defendants' licensing

2    of the photographs of Plaintiff is relevant to whether Plaintiff expressly or impliedly

3    consented to Defendants' uses of Mr. Mannion's photographs of Plaintiff. That is

4    relevant to a required element of Plaintiff's claims—lack of consent. The probative

5    value of such evidence outweighs any of the dangers outlined in Fed. R. Evid. 403.

6    **Plaintiff's Reply in Support of Objection:**  Plaintiff will move *in limine* to

7    exclude evidence of Defendants' copyright licensing activities, including this

8    exhibit.  These activities do not tend to prove that Plaintiff consented to Defendants'

9    use of his NIL on products and to advertise—which is the basis for this lawsuit.  As

10   ***Defendants*** have recognized, "Plaintiff's at-issue right of publicity" is a "different

11   right entirely" from their copyrights, and there is a "significant risk that the jury

12   would confuse" the two.

13

14       9.    **Exhibit 45**

15   **Description:** Photo Release between Plaintiff and Jonathan Mannion re

16   Blueprint promotional use of photographs - 8/24/09 (CARTER0004466)

17   **Purpose:** This agreement shows that in 2009, Plaintiff obtained a license

18   from Defendants to use the Reasonable Doubt cover photograph that is at issue. This

19   exhibit shows that Plaintiff recognized Defendants did not need his consent to use

20   the photographs, rather Plaintiff needed Defendants' permission, and is probative of

21   the lack-of-consent element of Plaintiff's claims.

22   **Plaintiff's Basis for Objection:** Fed. R. Evid. 401, 402. Evidence concerning

23   Defendants' licensing of copyright to photographs of Plaintiff is not relevant. Fed.

24   R. Evid. 403.

25   **Defendants' Response to Objection:** Evidence about Defendants' licensing

26   of the photographs of Plaintiff is relevant to whether Plaintiff expressly or impliedly

27   consented to Defendants' uses of Mr. Mannion's photographs of Plaintiff. That is

28

relevant to a required element of Plaintiff's claims—lack of consent. The probative value of such evidence outweighs any of the dangers outlined in Fed. R. Evid. 403.

**Plaintiff's Reply in Support of Objection:**  Plaintiff will move in limine to exclude evidence of Defendants' copyright licensing activities, including this exhibit.  These activities do not tend to prove that Plaintiff consented to Defendants' use of his NIL on products and to advertise—which is the basis for this lawsuit.  As ***Defendants*** have recognized, "Plaintiff's at-issue right of publicity" is a "different right entirely" from their copyrights, and there is a "significant risk that the jury would confuse" the two.

### 10.   Exhibit 47

**Description:** Email from April Khalsa to Jonathan Mannion and Marjoriet Matute re FWD: Jonathan Mannion Photography Jay-Z Tour Merchandise - thread with Todd Mumford of Roc Nation negotiations re usage - 11/15/17 (MANNION000987)

**Purpose:** This email exchange shows that in 2017, Plaintiff, through his management company Roc Nation, requested a license from Defendants to use the Reasonable Doubt cover photograph that is at issue. This exhibit shows that Plaintiff recognized Defendants did not need his consent to use the photographs, rather Plaintiff needed Defendants' permission, and is probative of the lack-of-consent element of Plaintiff's claims.

**Plaintiff's Basis for Objection:** Fed. R. Evid. 401, 402. Evidence concerning Fed. R. Evid. 403. Defendants' licensing of copyright to photographs of Plaintiff is not relevant. Fed. R. Evid. 403.

**Defendants' Response to Objection:** Evidence about Defendants' licensing of the photographs of Plaintiff is relevant to whether Plaintiff expressly or impliedly consented to Defendants' uses of Mr. Mannion's photographs of Plaintiff. That is

relevant to a required element of Plaintiff's claims—lack of consent. The probative value of such evidence outweighs any of the dangers outlined in Fed. R. Evid. 403.

**Plaintiff's Reply in Support of Objection:**  Plaintiff will move in limine to exclude evidence of Defendants' copyright licensing activities, including this exhibit.  These activities do not tend to prove that Plaintiff consented to Defendants' use of his NIL on products and to advertise—which is the basis for this lawsuit.  As **Defendants** have recognized, "Plaintiff's at-issue right of publicity" is a "different right entirely" from their copyrights, and there is a "significant risk that the jury would confuse" the two.

11.   **Exhibit 50**

**Description:** Image from video taken at Apt. 4B event, showing Plaintiff and Kareen Burke

**Purpose:** This image shows Plaintiff speaking to Mr. Burke while Mr. Burke wore a shirt with a photograph of Plaintiff from the Reasonable Doubt photoshoot, a photograph licensed from Defendants. Defendants intend to use this exhibit as part of showing that Plaintiff impliedly consented to the uses of name, image, and likeness in the at-issue photographs.

**Plaintiff's Basis for Objection:** Fed. R. Evid. 401, 402. Evidence concerning Defendants' licensing of copyright to photographs of Plaintiff, including in connection with the Apartment 4B event, is not relevant to any of the claims or defenses. Fed. R. Evid. 403.

**Defendants' Response to Objection:** Evidence about the Apt. 4B pop-up event is relevant. Through that evidence, Defendants will establish that Plaintiff attended the event and did not express any objection to Defendants for their licensing of the at-issue photos for use in prints that were prominently on display and in shirts that were sold, at the event. Whether Plaintiff objected to Defendants' licensing or to the prints and shirts tends to show that Plaintiff, either personally or

1    through the knowledge of his agents, knew or should have known that Mr. Mannion

2    was using photographs of Plaintiff as early as 2016. And that is relevant to whether

3    Plaintiff can establish lack of consent, a required element of his claims. The

4    probative value of such evidence outweighs any of the dangers outlined in Fed. R.

5    Evid. 403.

6         **Plaintiff's Reply in Support of Objection:**  Evidence concerning the

7    Apartment 4B pop-up event is not relevant.  Mr. Burke, not Defendants, hosted the

8    event and sold t-shirts with pictures of Plaintiff at the event.  Mr. Burke was one of

9    the founders of Plaintiff's record label, Roc-A-Fella Records.  That Plaintiff did not

10   object to Mr. Burke's sale of t-shirts does not tend to prove that Plaintiff consented

11   to Defendants use of his name, image, and likeness (NIL).

12        Moreover, that Defendants licensed Mr. Burke the copyright to the photos

13   that he used for the t-shirts is irrelevant because Defendants' copyright licensing

14   activities do not tend to prove that Plaintiff consented to Defendants' use of his NIL.

15   Plaintiff will move in limine to exclude evidence of Defendants' copyright licensing

16   activities.

17

18        12.   **<u>Exhibit 51</u>**

19        **Description:** Image from video taken at Apt. 4B event, showing room

20        **Purpose:** This image shows that prints of photographs of from the

21   Reasonable Doubt photoshoot, including the Reasonable Doubt cover photograph

22   that is at issue in this lawsuit, were prominently on display at the Apt. 4b Event.

23   Defendants intend to use this exhibit as part of showing that Plaintiff impliedly

24   consented to the uses of name, image, and likeness in the at-issue photographs.

25        **Plaintiff's Basis for Objection:** Fed. R. Evid. 401, 402. Evidence concerning

26   Defendants' licensing of copyright to photographs of Plaintiff, including in

27   connection with the Apartment 4B event, is not relevant to any of the claims or

28   defenses. Fed. R. Evid. 403.

**Defendants' Response to Objection:** Evidence about the Apt. 4B pop-up event is relevant. Through that evidence, Defendants will establish that Plaintiff attended the event and did not express any objection to Defendants for their licensing of the at-issue photos for use in prints that were prominently on display and in shirts that were sold, at the event. Whether Plaintiff objected to Defendants' licensing or to the prints and shirts tends to show that Plaintiff, either personally or through the knowledge of his agents, knew or should have known that Mr. Mannion was using photographs of Plaintiff as early as 2016. And that is relevant to whether Plaintiff can establish lack of consent, a required element of his claims. The probative value of such evidence outweighs any of the dangers outlined in Fed. R. Evid. 403.

**Plaintiff's Reply in Support of Objection:** Evidence concerning the Apartment 4B pop-up event is not relevant. Mr. Burke, not Defendants, hosted the event and sold t-shirts with pictures of Plaintiff at the event. Mr. Burke was one of the founders of Plaintiff's record label, Roc-A-Fella Records. That Plaintiff did not object to Mr. Burke's sale of t-shirts does not tend to prove that Plaintiff consented to Defendants use of his name, image, and likeness (NIL).

Moreover, that Defendants licensed Mr. Burke the copyright to the photos that he used for the t-shirts is irrelevant because Defendants' copyright licensing activities do not tend to prove that Plaintiff consented to Defendants' use of his NIL. Plaintiff will move in limine to exclude evidence of Defendants' copyright licensing activities.

### 13.   **Exhibit 78**

**Description:** Getty Images - Jay-Z images page from Getty site

**Purpose:** These Getty images of Plaintiff that are taken by other professional photographers, when contrasted with the at-issue photographs taken by Mr. Mannion, are probative of Defendants' First Amendment defense. Unlike these

Getty images that also feature Plaintiff as the subject, the at-issue photographs have more artistic qualities. This helps shows the "transformative elements" of the at-issue photographs and that the value of the at-issue photographs does not result primarily from Plaintiff's fame. *See Comedy III Prods., Inc. v. Gary Saderup, Inc.*, 25 Cal. 4th 387, 407 (2001).

**Plaintiff's Basis for Objection:** Fed. R. Evid. 401, 402. Evidence concerning the availability of photographs of Plaintiff for editorial use, but not for use on merchandise, is not relevant. Fed. R. Evid. 403; Fed. R. Evid. 802.

**Defendants' Response to Objection:** Evidence of the public availability photographs of Plaintiff available for use is relevant because it tends to show that Plaintiff failed to mitigate damages by failing to institute a monitoring program to identify and stop any objectionable uses of his name, image, or likeness, or to instruct any of his employees or agents to take any measures to mitigate his purported harm. The probative value of such evidence outweighs any of the dangers outlined in Fed. R. Evid. 403.

As for Plaintiff's hearsay objection, Defendants offer them to show that the images and text were found on the website, and thus "they are not statements at all—and thus fall outside the ambit of the hearsay rule." *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 213 F. Supp. 2d 1146, 1155 (C.D. Cal. 2002) (printouts of the website are admissible under the best evidence rule).

**Plaintiff's Reply in Support of Objection:** There is no merit to Defendants' assertion that the jury should compare the at-issue photos of Plaintiff with random photos Defendants found on a website to determine which are more creative. Defendants' "transformative use" can be resolved "simply by viewing the work in question and, if necessary, comparing it to an actual likeness of the person or persons portrayed." *Winter v. DC Comics*, 30 Cal. 4th 881, 891-92 (2003). Many of the random photos of Plaintiff in the exhibit are "candid" photos of Plaintiff taken at concerts or events. So they are not comparable to the photos Mannion took of

1   Plaintiff at planned photoshoots.

2       The exhibit is also not relevant to showing that Plaintiff failed to mitigate

3   damages because the photos in the exhibit were being licensed by Getty Image for

4   "editorial" use—not for use on products or advertising, which are the types of uses

5   at issue in this case.  Nor is there any evidence that the photos in the exhibit were

6   taken by Mannion, further undermining any assertion that the document shows that

7   Plaintiff failed to mitigate damages caused by Mannion's unauthorized uses.

8       Any probative value to these random photos that Defendants dredged up on

9   the internet is substantially outweighed by the danger of unfair prejudice, confusing

10  the issues, misleading the jury, undue delay, and wasting time.  The exhibit is also

11  highly prejudicial because one of the photos appears to be a mugshot.

12      Moreover, the document is hearsay to the extent it is offered to show that the

13  photos of Plaintiff were being licensed by Getty Image for "editorial" use, such that

14  the photos were, in Defendants' words, "available for use."

15

16      14.   **Exhibit 85**

17      **Description:** Email from Uri Davidov to Ryan Klarberg re Use of Jay- Z

18  Photograph - 5/24/21 (MANNION010305).

19      **Purpose:** This email exchange shows that Plaintiff, through his lawyer Ryan

20  Klarberg, sought to license photographs from the Reasonable Doubt photoshoot,

21  including several of the at-issue photographs, during the period when Plaintiff

22  contends he learned about Defendants' uses of his name, image, and likeness.

23  During the negotiation, Plaintiff never objected to the uses. This exhibit is probative

24  of the lack-of-consent element of Plaintiff's claims.

25      **Plaintiff's Basis for Objection:** Fed. R. Evid. 401, 402. Evidence concerning

26  negotiations between Plaintiff and Defendants that took place in May and June 2021

27  is not relevant. Fed. R. Evid. 403; Fed. R. Evid. 408.

28

1    **Defendants' Response to Objection:** This document tends to show that

2    Plaintiff, either personally or through the knowledge of his agents attributable to

3    him, knew that Defendants do not need Plaintiff's permission to use the at-issue

4    photographs, as Plaintiff sought to first license then purchase the photographs from

5    Defendants. It also shows tends to show that Plaintiff, despite knowing about

6    Defendants' uses of the photographs at the time of the negotiation, did not object.

7    Thus, this document is relevant to whether Plaintiff impliedly consented to

8    Defendants' uses of the photographs at issue. The probative value of such evidence

9    outweighs any of the dangers outlined in Fed. R. Evid. 403.

10   Regarding Plaintiff's objection under Fed. R. Evid. 408, these

11   communications were in the context of negotiations over a business transaction

12   under which Plaintiff would potentially license or acquire the photographs of

13   Plaintiff created and/or maintained in and taken by Mr. Mannion, and were not in

14   the context of a settlement negotiation.

15   **Plaintiff's Reply in Support of Objection:**  Plaintiff will move in limine to

16   exclude evidence of the parties' pre-litigation negotiations, including this document.

17   As ***Defendants*** stated in their motion *in limine* meet-and-confer letter "[t]he pre-

18   litigation negotiations … are not relevant," because they concerned "copyrights"

19   and "[t]he parties were not negotiating a license for Defendants to use [Jay-Z's]

20   [NIL]."  And ***Defendants*** further stated that "[t]here is a serious risk that the jury

21   would confuse Defendants' copyrights that were the subject of the negotiations with

22   Plaintiff's at-issue right of publicity, a different right entirely."  The copyright

23   negotiations do not tend to prove that Plaintiff consented to Defendants' use of his

24   NIL.

25   As set forth in Plaintiff's forthcoming motion in limine, evidence concerning

26   the negotiations is barred by Rule 408 because the statements made by the parties

27   during the negotiations were made in connection with Plaintiff offering "valuable

28   consideration" to "compromise [a] claim."  Fed. R. Evid. 408.

1

2      15.   **Exhibit 96**

3      **Description:** Jonathan Mannion's handwritten notes regarding Reasonable

4 Doubt shoot - 6/1996 (MANNION000013).

5      **Purpose:** These notes that Mr. Mannion made in preparation for the

6 Reasonable Doubt photoshoot are probative of Defendants' First Amendment

7 defense. They show some of the transformative elements of the at-issue photographs

8 from the Reasonable Doubt photoshoot, including that Plaintiff's likeness was but a

9 raw material for the photographs. *See Comedy III Prods., Inc. v. Gary Saderup, Inc.*,

10 25 Cal. 4th 387, 407 (2001).

11      **Plaintiff's Basis for Objection:** Fed. R. Evid. 401, 402. A sketch that

12 Mannion made before a photoshoot is not relevant. Fed. R. Evid. 403; Fed. R. Evid.

13 802.

14      **Defendants' Response to Objection:** This document is relevant, among

15 other things, to Defendants' First Amendment defense, namely, that Mr. Mannion's

16 photographs of Plaintiff during the *Reasonable Doubt* shoot contained significantly

17 transformative elements sufficient to establish entitlement to the defense. The

18 probative value of such evidence outweighs any of the dangers outlined in Fed. R.

19 Evid. 403.

20      As for Plaintiff's hearsay objection, the document is not hearsay under Fed.

21 R. Evid. 801(d)(1)(B), and is subject to the hearsay exceptions set forth in Fed. R.

22 Evid. 803(3) and 803(6).

23      **Plaintiff's Reply in Support of Objection:** These handwritten notes are not

24 relevant to Defendants' "transformative use" defense. That defense can be resolved

25 "simply by viewing the work in question and, if necessary, comparing it to an actual

26 likeness of the person or persons portrayed." *Winter v. DC Comics*, 30 Cal. 4th 881,

27 891-92 (2003). There is no probative value to sketches that Mannion created before

28 taking the at-issue photos, and even if there were, it is outweighed by the danger of

unfair prejudice, confusing the issues, misleading the jury, undue delay, and wasting time.

Moreover, the sketches are hearsay because they are offered to prove that Mannion's pictures at the *Reasonable Doubt* photoshoot were consistent with the sketches. The "prior consistent statement" exception in Fed. R. Evid. 801(d)(1)(B) does not apply. Nor do are the sketches "business records" (Fed. R. Evid. 803(6)) or statements of a "then-existing mental, emotional, or physical condition" (Fed. R. Evid. 803(3)).

16. **Exhibit 234**

**Description:** July 18, 2016 paid Jonathan Mannion Photography invoice to Champagne Armand de Brignac re: "Prophecy" Show (MANNION000904)

**Purpose:** This invoice shows that Champagne Armand de Brignac, a company affiliated with Plaintiff, sponsored Defendants' 2016 event by offering monetary support. At the event, silkscreen prints of photographs from the Reasonable Doubt photoshoot, including at-issue photographs, were displayed and offered for sale. This exhibit is probative of the lack-of-consent element of Plaintiff's claims.

**Plaintiff's Basis for Objection:** Fed. R. Evid. 401, 402. Evidence concerning a gallery event hosted by Defendants in 2016 is not relevant. Fed. R. Evid. 403.

**Defendants' Response to Objection:** This document tends to show that Armand de Brignac, a business entity owned and associated with Plaintiff, financially supported the 2016 New York gallery show, at which the evidence will show Mr. Mannion's photographs of Plaintiff were offered for sale at the event. This evidence tends to show that Plaintiff, either personally or through the knowledge of his agents, knew or should have known of Defendants' creation and sale of prints imprinted with Mr. Mannion's photographs of Plaintiff, relevant to whether Plaintiff impliedly consented to Defendants' uses of Mr. Mannion's photographs of Plaintiff

about which he complains. The probative value of such evidence outweighs any of the dangers outlined in Fed. R. Evid. 403.

**Plaintiff's Reply in Support of Objection:**  There is no evidence that anyone from Plaintiff's companies knew that the silkscreen prints were "offered for sale."  Nor is there any evidence that Plaintiff knew that there were silkscreen prints of him "offered for sale" at the gallery event.  Therefore, the document does not tend to prove that Plaintiff consented to Defendants' use of his NIL.

17.   **Exhibit 235**

**Description:** July 18, 2016 paid Jonathan Mannion Photography invoice to D'usse re: "Prophecy" Show (MANNION000906)

**Purpose:** This invoice shows that D'usse, a company affiliated with Plaintiff, sponsored Defendants' 2016 event by offering monetary support. At the event, silkscreen prints of photographs from the Reasonable Doubt photoshoot, including at-issue photographs, were displayed and offered for sale. This exhibit is probative of the lack-of-consent element of Plaintiff's claims.

**Plaintiff's Basis for Objection:** Fed. R. Evid. 401, 402. Evidence concerning a gallery event hosted by Defendants in 2016 is not relevant. Fed. R. Evid. 403.

**Defendants' Response to Objection:** This document tends to show that D'usse, a business entity owned and associated with Plaintiff, financially supported the 2016 New York gallery show, at which the evidence will show Mr. Mannion's photographs of Plaintiff were offered for sale at the event. This evidence tends to show that Plaintiff, either personally or through the knowledge of his agents, knew or should have known of Defendants' creation and sale of prints imprinted with Mr. Mannion's photographs of Plaintiff, relevant to whether Plaintiff impliedly consented to Defendants' uses of Mr. Mannion's photographs of Plaintiff about which he complains. The probative value of such evidence outweighs any of the dangers outlined in Fed. R. Evid. 403.

**Plaintiff's Reply in Support of Objection:**  There is no evidence that anyone from Plaintiff's companies knew that the silkscreen prints were "offered for sale."  Nor is there any evidence that Plaintiff knew that there were silkscreen prints of him "offered for sale" at the gallery event.  Therefore, the document does not tend to prove that Plaintiff consented to Defendants' use of his NIL.

18.   **Exhibit 236**

**Description:** Invoice from Jonathan Mannion Photography to Roc Nation re: Reasonable Doubt 20 Years Art/Gallery Show (MANNION000909)

**Purpose:** This invoice shows that Roc Nation, a company affiliated with Plaintiff, sponsored Defendants' 2016 event by offering monetary support. At the event, silkscreen prints of photographs from the Reasonable Doubt photoshoot, including at-issue photographs, were displayed and offered for sale. This exhibit is probative of the lack-of-consent element of Plaintiff's claims.

**Plaintiff's Basis for Objection:** Fed. R. Evid. 401, 402. Evidence concerning a gallery event hosted by Defendants in 2016 is not relevant. Fed. R. Evid. 403.

**Defendants' Response to Objection:** This document tends to show that business entities owned and associated with Plaintiff financially supported the 2016 New York gallery show, at which the evidence will show Mr. Mannion's photographs of Plaintiff were offered for sale at the event. This evidence tends to show that Plaintiff, either personally or through the knowledge of his agents, knew or should have known of Defendants' creation and sale of prints imprinted with Mr. Mannion's photographs of Plaintiff, relevant to whether Plaintiff impliedly consented to Defendants' uses of Mr. Mannion's photographs of Plaintiff about which he complains. The probative value of such evidence outweighs any of the dangers outlined in Fed. R. Evid. 403.

**Plaintiff's Reply in Support of Objection:**  There is no evidence that anyone from Plaintiff's companies knew that the silkscreen prints were "offered for

sale."  Nor is there any evidence that Plaintiff knew that there were silkscreen prints of him "offered for sale" at the gallery event.  Therefore, the document does not tend to prove that Plaintiff consented to Defendants' use of his NIL.

19.  **Exhibit 237**

**Description:** Invoices to Plaintiff's record labels (MANNION000915)

**Purpose:** If Plaintiff offers the Island Def Jam agreements (Exhibit 2-7, 22, 107, and 200) to assert that Defendants had a pattern and practice of transferring their copyrights in photographs, or if Plaintiff offers evidence or testimony to claim he owns the photographs, Defendants will offer the invoices to Plaintiff's record labels in this exhibit to show that Defendants retained the copyrights. Otherwise, Defendants do not intend to use this exhibit.

**Plaintiff's Basis for Objection:** Fed. R. Evid. 401, 402. Invoices issued by Defendants for photoshoots are not relevant. Fed. R. Evid. 403.

**Defendants' Response to Objection:** If Plaintiff seeks to offer evidence that he owns the copyrights in the at-issue photographs or that Defendants transferred away their copyrights, Defendants should be permitted to offer contrary evidence.

**Plaintiff's Reply in Support of Objection:**  Plaintiff will move in limine to exclude all evidence of copyright ownership and licensing, including this document. As ***Defendants*** have recognized, "Plaintiff's at-issue right of publicity" is a "different right entirely" from their copyrights, and there is a "significant risk that the jury would confuse" the two.

20.  **Exhibit 239**

**Description:** Wayback machine capture of Special Edition Prints from Jonathan Mannion Photograph's website - 12/22/16 (MANNION001054)

**Purpose:** This capture of Defendants' website shows that prints certain of the at-issue photographs were offered for sale to the general public before June 15,

2019. It is probative of Defendants' statute of limitations defense. *See Yeager v. Bowlin*, 693 F.3d 1076, 1081 (9th Cir. 2012) (two-year limitations period).

**Plaintiff's Basis for Objection:** Fed. R. Evid. 401, 402. This exhibit showing a prior version of Defendants' website is not relevant. Fed. R. Evid. 403; Fed. R. Evid. 901. Defendants have not offered evidence sufficient to support a finding that the document is what it purports to be. The exhibit is also incomplete and improperly rendered.

**Defendants' Response to Objection:** The date on which prints were offered for sale Jonathan Mannion Photography's website and/or online store is relevant to Defendants' statute of limitations defense. The probative value of such evidence outweighs any of the dangers outlined in Fed. R. Evid. 403.

As for Plaintiff's authenticity objection under Fed. R. Evid. 901, a witness will authenticate the document at trial.

**Plaintiff's Reply in Support of Objection:** The exhibit is a document from a third-party website that purports to show what Defendants' website looked like on a certain date. That is hearsay because the document is being offered to prove the truth of the matter asserted (i.e. "that the at-issue 'Chess Not Checkers' photograph was first displayed on the website landing page at least by May 2014").

Moreover, Defendants will not be able to authenticate the document at trial, and their response to the objection does not explain how they intend to do so. *See, e.g.*, *Doe v. Xytex Corp.*, 2016 WL 3902577, at *1 n.1 (N.D. Cal. July 19, 2016) (declining to take judicial notice of a screenshot from the "Wayback Machine" when the "record offer[ed] no indication of the accuracy of the Wayback Machine's records"). The document is also hearsay to the extent Defendants will offer it to prove the truth of the matter asserted (i.e., "that prints certain of the at-issue photographs were offered for sale to the general public before June 15, 2019").

21.    **Exhibit 240**

1    **Description:** Email from Ali at Jonathan Mannion Photography to English cc

2    Matute, Ohneswere, Davis, lauren@tidal.com re Roc Nation Guest List - 6/30/16

3    (MANNION001256)

4    **Purpose:** This email exchange shows that numerous employees of Roc

5    Nation—whose employees help to discover uses of Plaintiff's name, image, and

6    likeness—attended Defendants' 2016 event. At the event, silkscreen prints of

7    photographs from the Reasonable Doubt photoshoot, including at-issue photographs,

8    were displayed and offered for sale. This exhibit is probative of the lack-of-consent

9    element of Plaintiff's claims.

10    **Plaintiff's Basis for Objection:** Fed. R. Evid. 401, 402. Evidence concerning

11    a gallery event hosted by Defendants in 2016 is not relevant. Fed. R. Evid. 403.

12    **Defendants' Response to Objection:** Evidence tending to show that many

13    employees of Roc Nation, a business owned and affiliated with Plaintiff, attended

14    the 2016 New York gallery show at which prints of Mr. Mannion's photographs of

15    Plaintiff were offered for sale is relevant because it tends to show that Plaintiff,

16    either personally or through the knowledge of his agents, knew or should have

17    known of Defendants' creation and sale of prints imprinted with Mr. Mannion's

18    photographs of Plaintiff, relevant to whether Plaintiff impliedly consented to

19    Defendants' uses of Mr. Mannion's photographs of Plaintiff about which he

20    complains. The probative value of such evidence outweighs any of the dangers

21    outlined in Fed. R. Evid. 403.

22    **Plaintiff's Reply in Support of Objection:**  The exhibit is not relevant

23    because there is no evidence that any person from the companies that sponsored the

24    event knew that the silkscreen prints were "offered for sale."  Nor is there any

25    evidence that Plaintiff knew that there were silkscreen prints of him "offered for

26    sale" at the gallery event.  To the extent the exhibit has any probative value, that

27    value is outweighed by the risk of confusing the issues, misleading the jury, undue

28    delay, wasting time.

1

2
    22.   **Exhibit 241**

3
   **Description:** Email from Morris to ab@jonathanmannion.com re Jonathan

4
Mannion FTP download information - Rocawear Ad/Reasonable Doubt - 5/17/06

5
(MANNION001712)

6
   **Purpose:** This email shows that in 2006, Rocawear, a company affiliated with

7
Plaintiff, sought a license from Defendants to use the at-issue Reasonable Doubt

8
cover photograph. This exhibit shows that Plaintiff recognized Defendants did not

9
need his consent to use the at-issue photographs, rather Plaintiff needed Defendants'

10
permission, and is probative of the lack-of-consent element of Plaintiff's claims.

11
   **Plaintiff's Basis for Objection:** Fed. R. Evid. 401, 402. Evidence concerning

12
Defendants' licensing of copyright to photographs of Plaintiff is not relevant. Fed.

13
R. Evid. 403; Fed. R. Evid. 802, including as to the statement "[p]er Jonathan

14
Mannion's conversation with John Meneilly …."

15
   **Defendants' Response to Objection:** Evidence about Defendants' licensing

16
of the photographs of Plaintiff is relevant to whether Plaintiff expressly or impliedly

17
consented to Defendants' uses of Mr. Mannion's photographs of Plaintiff. That is

18
relevant to a required element of Plaintiff's claims—lack of consent. The probative

19
value of such evidence outweighs any of the dangers outlined in Fed. R. Evid. 403.

20
   As for Plaintiff's hearsay objection, Defendants offer this document not for

21
the truth of the matter asserted, but to establish that Plaintiff impliedly consented to

22
Defendants' uses of Mr. Mannion's photographs of Plaintiff about which he

23
complains.

24
   It is also subject to the business record exception to hearsay. Fed. R. Evid.

25
803(6).

26
   **Plaintiff's Reply in Support of Objection:** Plaintiff will move in limine to

27
exclude evidence of Defendants' copyright licensing activities, including this

28
exhibit. These activities do not tend to prove that Plaintiff consented to Defendants'

use of his NIL on products and to advertise—which is the basis for this lawsuit.  As *Defendants* have recognized, "Plaintiff's at-issue right of publicity" is a "different right entirely" from their copyrights, and there is a "significant risk that the jury would confuse" the two.

The document is hearsay because it is being offered to prove the truth of the matter asserted: "[p]er Jonathan Mannion's conversation with John Meneilly …." The business-records exception to the hearsay rule does not apply, including because there is no evidence that these types of emails were sent as "a regular practice" of Defendants' business or "kept in the course of a regularly conducted activity of a business."  Fed. R. Evid. 803(6).

23.   **Exhibit 246**

Description: Jonathan Mannion Photography invoice re: Jay Z - BLUEPRINT with check stub (MANNION002481)

**Purpose:** If Plaintiff offers the Island Def Jam agreements (Exhibit 2-7, 22, 107, and 200) to assert that Defendants had a pattern and practice of transferring their copyrights in photographs, Defendants will offer invoices to Island Def Jam, such as this one, showing that Defendants retained the copyrights. Otherwise, Defendants do not intend to use this exhibit.

**Plaintiff's Basis for Objection:** Fed. R. Evid. 401, 402. Invoices for photoshoots are not relevant. Fed. R. Evid. 403.

**Defendants' Response to Objection:** If Plaintiff seeks to offer evidence that Defendants transferred away their copyrights, Defendants should be permitted to offer contrary evidence.

**Plaintiff's Reply in Support of Objection:**  Plaintiff will move in limine to exclude all evidence of copyright ownership and licensing, including this document. As *Defendants* have recognized, "Plaintiff's at-issue right of publicity" is a "different right entirely" from their copyrights, and there is a "significant risk that

the jury would confuse" the two.

### 24.  **Exhibit 247**

**Description:** Jonathan Mannion Photography invoice re: JAY Z - BLACK ALBUM with check stub (MANNION002530)

**Purpose:** If Plaintiff offers the Island Def Jam agreements (Exhibit 2-7, 22, 107, and 200) to assert that Defendants had a pattern and practice of transferring their copyrights in photographs, Defendants will offer invoices to Island Def Jam, such as this one, showing that Defendants retained the copyrights. Otherwise, Defendants do not intend to use this exhibit.

**Plaintiff's Basis for Objection:** Fed. R. Evid. 401, 402. Invoices for photoshoots are not relevant. Fed. R. Evid. 403.

**Defendants' Response to Objection:** If Plaintiff seeks to offer evidence that Defendants transferred away their copyrights, Defendants should be permitted to offer contrary evidence.

**Plaintiff's Reply in Support of Objection:**  Plaintiff will move in limine to exclude all evidence of copyright ownership and licensing, including this document. As **_Defendants_** have recognized, "Plaintiff's at-issue right of publicity" is a "different right entirely" from their copyrights, and there is a "significant risk that the jury would confuse" the two.

### 25.  **Exhibit 253**

**Description:** Letter from Brad Rose to Daniel Bellizio re Infringement of Shawn "Jay Z" Carter's Right of Publicity and Other Violations - 9/25/19 (CARTER0004361.)

**Purpose:** This letter from Plaintiff's lawyer to Kareem Burke's attorney shows that Plaintiff had received a copy of a license through which Defendants licensed several of the at-issue photographs to Kareem Burke. The letter further

1  shows that Plaintiff did not object to the uses of the at-issue photographs and

2  objected only to an irrelevant image. This exhibit is probative of the lack-of-consent

3  element of Plaintiff's claims.

4          **Plaintiff's Basis for Objection:** Fed. R. Evid. 401, 402. A cease-and-desist

5  letter Plaintiff sent to Kareem Burke regarding the unauthorized use of a photograph

6  taken by a photographer other than Mannion is not relevant. Fed. R. Evid. 403.

7          **Defendants' Response to Objection:** That Plaintiff sent a cease-and-desist

8  letter in 2019 challenging the unauthorized use of a photograph used in

9  merchandise, but did not do so with respect to Defendants, despite having

10 knowledge that Defendants had licensed photographs of Plaintiff taken by Mr.

11 Mannion, is relevant to whether Plaintiff expressly or impliedly consented to

12 Defendants' uses of Mr. Mannion's photographs of Plaintiff. That is relevant to a

13 required element of Plaintiff's claims—lack of consent. The probative value of such

14 evidence outweighs any of the dangers outlined in Fed. R. Evid. 403.

15         **Plaintiff's Reply in Support of Objection:**  Defendants fail to explain how a

16 cease-and-desist letter relating to a photograph taken by someone other than

17 Mannion is relevant.

18         Defendants licensed Circle of Success, LLC the copyright to certain photos of

19 Plaintiff.  But the agreement states that the license was "limited to the Images and

20 not any subject depicted in the Image."  And the agreement states that "CoS shall be

21 responsible for clearing the necessary third-party rights to make use of the Images in

22 connection with the Goods" contemplated by the agreement.  Because the agreement

23 did not purport to license the right to use Plaintiff's NIL, it has no probative value as

24 to whether Plaintiff consented to Defendants' use of his NIL.  Plaintiff will move in

25 limine to exclude evidence of Defendants' copyright licensing activities.

26

27         26.   **<u>Exhibit 254</u>**

28

1   **Description:** Nov. 2, 2015 invoice from Slipmats.Online.com
2   (MANNION000003).

3   **Purpose:** This exhibit shows some of the expenses Defendants incurred in
4   creating the at-issue slipmats and is therefore relevant to Plaintiff's requested
5   damages, which include Defendants' profits. The exhibit also shows that slipmats
6   were offered for sale well before June 15, 2019, and is probative of Defendants'
7   statute of limitations defense.

8   **Plaintiff's Basis for Objection:** Fed. R. Evid. 401, 402; Fed. R. Evid. 403;
9   Fed. R. Evid. 802; Fed. R. Evid. 901. Defendants have not offered evidence
10  sufficient to support a finding that the document is what it purports to be.

11  **Defendants' Response to Objection:** Evidence that slipmats were offered for
12  sale in November 2015 is relevant to Defendants' statute of limitations defense, and
13  evidence of expenses is relevant to profit-based damages.

14      As for Plaintiff's hearsay objection, Defendants offer it not to prove the truth
15  of the matters asserted in the document but to show that slipmats were offered for
16  sale in November 2015. It is also subject to the business record exception to hearsay.
17  Fed. R. Evid. 803(6).

18      As for Plaintiff's authenticity objection under Fed. R. Evid. 901, the proffered
19  document is a business record created and/or maintained in the ordinary course of
20  Jonathan Mannion Photography's business, and if necessary, a witness will
21  authenticate the document at trial.

22  **Plaintiff's Reply in Support of Objection:** Defendants should be precluded
23  from presenting any evidence as to their "deductible expenses." Civ. Code § 3344
24  ("In establishing such profits, the injured party or parties are required to present
25  proof only of the gross revenue attributable to such use, and the person who violated
26  this section is required to prove his or her deductible expenses."). The Rule 30(b)(6)
27  witness that Defendants designated to testify as to Defendants' profits from using
28  Plaintiff's name, image, and likeness was not prepared to do so. (Matute Tr. 23:3-7

["Q.  Okay.  So today, you're prepared to testify as to the revenue generated by each of the three items in that list, but not the—the profits generated by JMP?  A. Yes."].) And Defendants' damages expert had "no understanding as to … Jonathan Mannion Photography LLC's provable costs," so he "didn't take Jonathan Mannion Photography LLC's provable costs into account in forming [his] opinions for th[e] case."  (Anson Tr. 30:19-31:2.)  Rather, he opined that, if there is a finding of liability, damages could be calculated based on "the gross revenues earned by JMP from the sales of the JMP Products," which he determined to be $44,425.  (Anson Report at 15.)

The document is also not relevant to Defendants' "statute of limitations" defense because the document does not purport to show when any slipmats were first offered for sale by Defendants.

Moreover, the document is hearsay because it is being offered to prove the truth of the matter asserted (i.e., "that slipmats were offered for sale in November 2015").  Nor is there evidence that the document is a "business record."

Contrary to Defendants' assertions regarding authenticity, this document created by a third-party does not appear to be "a business record created and/or maintained in the ordinary course of Jonathan Mannion Photography's business."

27.  **Exhibit 255**

**Description:** Wayback Machine capture of Jonathan Mannion Photography's website, landing page - 5/17/14 (MANNION000023).

**Purpose:** This exhibit shows that the at-issue "Chess Not Checkers" photograph was first displayed on the website landing page at least by May 2014 and is therefore probative of Defendants' statute of limitations defense.

**Plaintiff's Basis for Objection:** Fed. R. Evid. 401, 402; Fed. R. Evid. 403; Fed. R. Evid. 802; Fed. R. Evid. 901. Defendants have not offered evidence sufficient to support a finding that the document is what it purports to be.

**Defendants' Response to Objection:** The date on which a photograph of Plaintiff was first displayed on Jonathan Mannion Photography's website is relevant to Defendants' statute of limitations defense. The probative value of such evidence outweighs any of the dangers outlined in Fed. R. Evid. 403.

As for Plaintiff's hearsay objection, Defendants offer them to show that the images and text were found on the website, and thus "they are not statements at all—and thus fall outside the ambit of the hearsay rule." *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 213 F. Supp. 2d 1146, 1155 (C.D. Cal. 2002) (printouts of the website are admissible under the best evidence rule).

As for Plaintiff's authenticity objection under Fed. R. Evid. 901, a witness will authenticate the document at trial.

**Plaintiff's Reply in Support of Objection:**  The exhibit is a document from a third-party website that purports to show what Defendants' website looked like on a certain date.  That is hearsay because the document is being offered to prove the truth of the matter asserted (i.e. "that the at-issue 'Chess Not Checkers' photograph was first displayed on the website landing page at least by May 2014").

Moreover, Defendants will not be able to authenticate the document at trial, and their response to the objection does not explain how they intend to do so.  *See, e.g.*, *Doe v. Xytex Corp.*, 2016 WL 3902577, at *1 n.1 (N.D. Cal. July 19, 2016) (declining to take judicial notice of a screenshot from the "Wayback Machine" when the "record offer[ed] no indication of the accuracy of the Wayback Machine's records").

28.   **Exhibit 256**

**Description:** Wayback Machine capture of Mannion site, slipmats at online store - 12/12/15 (MANNION000032)

**Purpose:** This exhibit shows that the at-issue slipmats were offered for sale to the general public at least by December 2015 and is therefore probative of

Defendants' statute of limitations defense.

**Plaintiff's Basis for Objection:** Fed. R. Evid. 401, 402. This exhibit showing a prior version of Defendants' website is not relevant. Fed. R. Evid. 403; Fed. R. Evid. 802; Fed. R. Evid. 901. Defendants have not offered evidence sufficient to support a finding that the document is what it purports to be.

**Defendants' Response to Objection:** The date on which slipmats were offered for sale Jonathan Mannion Photography's online store is relevant to Defendants' statute of limitations defense. The probative value of such evidence outweighs any of the dangers outlined in Fed. R. Evid. 403.

As for Plaintiff's hearsay objection, Defendants offer them to show that the images and text were found on the website, and thus "they are not statements at all—and thus fall outside the ambit of the hearsay rule." *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 213 F. Supp. 2d 1146, 1155 (C.D. Cal. 2002) (printouts of the website are admissible under the best evidence rule).

As for Plaintiff's authenticity objection under Fed. R. Evid. 901, a witness will authenticate the document at trial.

**Plaintiff's Reply in Support of Objection:**  The exhibit is a document from a third-party website that purports to show what Defendants' website looked like on a certain date.  That is hearsay because the document is being offered to prove the truth of the matter asserted (i.e. "that the at-issue slipmats were offered for sale to the general public at least by December 2015").

Moreover, Defendants will not be able to authenticate the document at trial, and their response to the objection does not explain how they intend to do so.  *See, e.g.*, *Doe v. Xytex Corp.*, 2016 WL 3902577, at *1 n.1 (N.D. Cal. July 19, 2016) (declining to take judicial notice of a screenshot from the "Wayback Machine" when the "record offer[ed] no indication of the accuracy of the Wayback Machine's records").

1    29.    **Exhibit 259**

2        **Description:** Screen capture of Contact page from jonathanmannion.com -

3    11/30/21 (MANNION000093)

4        **Purpose:** This exhibit shows that Defendants were openly taking inquiries to

5    license the at-issue photographs and is probative of the lack-of-consent element of

6    Plaintiff's claims.

7        **Plaintiff's Basis for Objection:** Fed. R. Evid. 401, 402; Fed. R. Evid. 403;

8    Fed. R. Evid. 802.

9        **Defendants' Response to Objection:** Evidence about Defendants' licensing

10   of the copyrights to his photographs of Plaintiff is relevant to whether Plaintiff

11   expressly or impliedly consented to Defendants' uses of Mr. Mannion's photographs

12   of Plaintiff. That is relevant to a required element of Plaintiff's claims—lack of

13   consent. The probative value of such evidence outweighs any of the dangers

14   outlined in Fed. R. Evid. 403.

15       As for Plaintiff's hearsay objection, Defendants offer them to show that the

16   images and text were found on the website, and thus "they are not statements at

17   all—and thus fall outside the ambit of the hearsay rule." *Perfect 10, Inc. v. Cybernet*

18   *Ventures, Inc.*, 213 F. Supp. 2d 1146, 1155 (C.D. Cal. 2002) (printouts of the

19   website are admissible under the best evidence rule).

20       **Plaintiff's Reply in Support of Objection:**  Plaintiff will move in limine to

21   exclude evidence of Defendants' copyright licensing activities.  The document does

22   not tend to prove that Plaintiff consented to Defendants' use of his NIL.  As

23   ***Defendants*** have recognized, "Plaintiff's at-issue right of publicity" is a "different

24   right entirely" from their copyrights, and there is a "significant risk that the jury

25   would confuse" the two.

26       Moreover, the document is hearsay because it is being offered to prove the

27   truth of the matter asserted (i.e., "that Defendants were openly taking inquiries to

28   license the at-issue photographs").

1

2       30.   **Exhibit 262**

3       **Description:** Screen capture of MUSIC page from jonathanmannion.com -

4   11/30/21 (MANNION000112)

5       **Purpose:** This exhibit helps show that an overwhelming majority of

6   photographs on Defendants' website do not depict Plaintiff. It is probative of

7   Defendants' incidental use defense.

8       **Plaintiff's Basis for Objection:** Fed. R. Evid. 401, 402. This exhibit showing

9   the display of photographs of persons other than Plaintiff on Defendants' website is

10  not relevant. Fed. R. Evid. 403.

11      **Defendants' Response to Objection:** This document is relevant, among

12  other things, to Defendants' incidental use defense, as it tends to show the limited

13  use of photographs of Plaintiff on Jonathan Mannion Photography's website. The

14  probative value of such evidence outweighs any of the dangers outlined in Fed. R.

15  Evid. 403.

16      **Plaintiff's Reply in Support of Objection:**  The document showing one of

17  the pages on Defendants' website that does not display pictures of Plaintiff is not

18  relevant.  "Incidental use" is not a recognized defense under California law. *Davis v.*

19  *Elec. Arts Inc.*, 775 F.3d 1172, 1180 n.5 (9th Cir. 2015) ("California courts have not

20  yet held that the incidental use defense applies to right-of-publicity claims.").

21

22      31.   **Exhibit 265**

23      **Description:** Screen capture of EDITORIAL page from

24  jonathanmannion.com - 11/30/21 (MANNION000156)

25      **Purpose:** This exhibit helps show that an overwhelming majority of

26  photographs on Defendants' website do not depict Plaintiff. It is probative of

27  Defendants' incidental use defense.

28

1    **Plaintiff's Basis for Objection:** Fed. R. Evid. 401, 402. This exhibit showing
2    the display of photographs of persons other than Plaintiff on Defendants' website is
3    not relevant. Fed. R. Evid. 403.

4    **Defendants' Response to Objection:** This document is relevant, among
5    other things, to Defendants' incidental use defense, as it tends to show the limited
6    use of photographs of Plaintiff on Jonathan Mannion Photography's website. The
7    probative value of such evidence outweighs any of the dangers outlined in Fed. R.
8    Evid. 403.

9    **Plaintiff's Reply in Support of Objection:**  The document showing one of
10   the pages on Defendants' website that does not display pictures of Plaintiff is not
11   relevant.  "Incidental use" is not a recognized defense under California law. *Davis v.*
12   *Elec. Arts Inc.*, 775 F.3d 1172, 1180 n.5 (9th Cir. 2015) ("California courts have not
13   yet held that the incidental use defense applies to right-of-publicity claims.").

14

15   32.   **Exhibit 268**

16   **Description:** Screen capture of PORTRAIT page from jonathanmannion.com
17   - 11/30/21 (MANNION000188)

18   **Purpose:** This exhibit helps show that an overwhelming majority of
19   photographs on Defendants' website do not depict Plaintiff. It is probative of
20   Defendants' incidental use defense.

21   **Plaintiff's Basis for Objection:** Fed. R. Evid. 401, 402. This exhibit showing
22   the display of photographs of persons other than Plaintiff on Defendants' website is
23   not relevant. Fed. R. Evid. 403.

24   **Defendants' Response to Objection:** This document is relevant, among
25   other things, to Defendants' incidental use defense, as it tends to show the limited
26   use of photographs of Plaintiff on Jonathan Mannion Photography's website. The
27   probative value of such evidence outweighs any of the dangers outlined in Fed. R.
28   Evid. 403.

1     **Plaintiff's Reply in Support of Objection:**  The document showing one of

2     the pages on Defendants' website that does not display pictures of Plaintiff is not

3     relevant.  "Incidental use" is not a recognized defense under California law. *Davis v.*

4     *Elec. Arts Inc.*, 775 F.3d 1172, 1180 n.5 (9th Cir. 2015) ("California courts have not

5     yet held that the incidental use defense applies to right-of-publicity claims.").

6

7

8     33.   **Exhibit 270**

9     **Description:** Screen capture of WORK page from jonathanmannion.com -

10    11/30/21 (MANNION000202)

11    **Purpose:** This exhibit helps show that an overwhelming majority of

12    photographs on Defendants' website do not depict Plaintiff. It is probative of

13    Defendants' incidental use defense.

14    **Plaintiff's Basis for Objection:** Fed. R. Evid. 401, 402. This exhibit showing

15    the display of photographs of persons other than Plaintiff on Defendants' website is

16    not relevant. Fed. R. Evid. 403.

17    **Defendants' Response to Objection:** This document is relevant, among

18    other things, to Defendants' incidental use defense, as it tends to show the limited

19    use of photographs of Plaintiff on Jonathan Mannion Photography's website. The

20    probative value of such evidence outweighs any of the dangers outlined in Fed. R.

21    Evid. 403.

22    **Plaintiff's Reply in Support of Objection:**  The document showing one of

23    the pages on Defendants' website that does not display pictures of Plaintiff is not

24    relevant.  "Incidental use" is not a recognized defense under California law. *Davis v.*

25    *Elec. Arts Inc.*, 775 F.3d 1172, 1180 n.5 (9th Cir. 2015) ("California courts have not

26    yet held that the incidental use defense applies to right-of-publicity claims.").

27

28    34.   **Exhibit 276**

1    **Description:** May 10, 2016 invoice from Fridgedoor, Inc. to Jonathan

2    Mannion Photography for custom button style magnets (MANNION003623)

3    **Purpose:** This exhibit shows some of the expenses Defendants incurred in

4    selling the at-issue magnets and is therefore relevant to Plaintiff's requested

5    damages, which include Defendants' profits. The exhibit also shows that magnets

6    were offered for sale well before June 15, 2019, and is probative of Defendants'

7    statute of limitations defense.

8    **Plaintiff's Basis for Objection:** Fed. R. Evid. 401, 402; Fed. R. Evid. 403;

9    Fed. R. Evid. 802; Fed. R. Evid. 901. Defendants have not offered evidence

10   sufficient to support a finding that the document is what it purports to be.

11   **Defendants' Response to Objection:** Evidence of when Jonathan Mannion

12   Photography caused to be created magnets imprinted with Mr. Mannion's

13   photograph of Plaintiff is relevant to Defendants' statute of limitations defense. And

14   evidence of expenses is relevant to profit-based damages.

15   As for Plaintiff's hearsay objection, Defendants offer it not to prove the truth

16   of the matters asserted in the document, but to establish that magnets imprinted with

17   Mr. Mannion's photographs of Plaintiff were created before June 15, 2019. It is also

18   subject to the business record exception to hearsay. Fed. R. Evid. 803(6).

19   As for Plaintiff's authenticity objection under Fed. R. Evid. 901, the proffered

20   document is a business record created and/or maintained in the ordinary course of

21   Jonathan Mannion Photography's business, and if necessary, a witness will

22   authenticate the document at trial.

23   **Plaintiff's Reply in Support of Objection:** Defendants should be precluded

24   from presenting any evidence as to their "deductible expenses." Civ. Code § 3344

25   ("In establishing such profits, the injured party or parties are required to present

26   proof only of the gross revenue attributable to such use, and the person who violated

27   this section is required to prove his or her deductible expenses."). The Rule 30(b)(6)

28   witness that Defendants designated to testify as to Defendants' profits from using

Plaintiff's name, image, and likeness was not prepared to do so.  (Matute Tr. 23:3-7 ["Q.  Okay.  So today, you're prepared to testify as to the revenue generated by each of the three items in that list, but not the—the profits generated by JMP?  A. Yes."].) And Defendants' damages expert had "no understanding as to … Jonathan Mannion Photography LLC's provable costs," so he "didn't take Jonathan Mannion Photography LLC's provable costs into account in forming [his] opinions for th[e] case."  (Anson Tr. 30:19-31:2.)  Rather, he opined that, if there is a finding of liability, damages could be calculated based on "the gross revenues earned by JMP from the sales of the JMP Products," which he determined to be $44,425.  (Anson Report at 15.)

Moreover, the document is hearsay because it is being offered to prove the truth of the matter asserted (i.e., "the expenses Defendants incurred in selling the at-issue magnets").  Nor is there evidence that the document is a "business record."

Contrary to Defendants' assertions regarding authenticity, this document created by a third-party does not appear to be "a business record created and/or maintained in the ordinary course of Jonathan Mannion Photography's business."

35.  **Exhibit 277**

**Description:** Reasonable Doubt Copyright Registration (unpublished) VAu 1-118-350 (MANNION003505), plus Copy of Deposit (MANNION012212).

**Purpose:** If Plaintiff offers testimony or evidence that he owns the at-issue photographs, Defendants will offer this copyright registration to rebut Plaintiff's assertion. Otherwise, Defendants do not intend to use this exhibit.

**Plaintiff's Basis for Objection:** Fed. R. Evid. 401, 402. Evidence of copyright ownership is not relevant in this right-of-publicity case. Fed. R. Evid. 403.

**Defendants' Response to Objection:** If Plaintiff seeks to offer evidence that Defendants transferred away their copyrights or that Plaintiff owns the at-issue photographs, Defendants should be permitted to offer contrary evidence.

**Plaintiff's Reply in Support of Objection:**  Plaintiff does not intend to offer testimony or evidence that he holds the copyright to the at-issue photos.  And Plaintiff will move to exclude all evidence of copyright ownership and licensing. As ***Defendants*** have recognized, "Plaintiff's at-issue right of publicity" is a "different right entirely" from their copyrights, and there is a "significant risk that the jury would confuse" the two..

36.   **Exhibit 278**

**Description:** Reasonable Doubt Copyright Registration (published) VA 1-834-519 (MANNION003511), plus Copy of Deposit (MANNION012248)

**Purpose:** If Plaintiff offers testimony or evidence that he owns the at-issue photographs, Defendants will offer this copyright registration to rebut Plaintiff's assertion. Otherwise, Defendants do not intend to use this exhibit.

**Plaintiff's Basis for Objection:** Fed. R. Evid. 401, 402. Evidence of copyright ownership is not relevant in this right-of-publicity case. Fed. R. Evid. 403.

**Defendants' Response to Objection:** If Plaintiff seeks to offer evidence that Defendants transferred away their copyrights or that Plaintiff owns the at-issue photographs, Defendants should be permitted to offer contrary evidence.

**Plaintiff's Reply in Support of Objection:**  Plaintiff does not intend to offer testimony or evidence that he holds the copyright to the at-issue photos.  And Plaintiff will move to exclude all evidence of copyright ownership and licensing. As ***Defendants*** have recognized, "Plaintiff's at-issue right of publicity" is a "different right entirely" from their copyrights, and there is a "significant risk that the jury would confuse" the two.

37.   **Exhibit 291**

**Description:** Landing page screenshot (showing carousel from main website landing page) (MANNION000014)

1  **Purpose:** This exhibit helps show that an overwhelming majority of
2  photographs on Defendants' website, including the landing page, do not depict
3  Plaintiff. It is probative of Defendants' incidental use defense.

4      **Plaintiff's Basis for Objection:** Fed. R. Evid. 403.

5      **Defendants' Response to Objection:** This document is relevant, among
6  other things, to Defendants' incidental use defense, as it tends to show the limited
7  use of photographs of Plaintiff on Jonathan Mannion Photography's website. The
8  probative value of such evidence outweighs any of the dangers outlined in Fed. R.
9  Evid. 403.

10     **Plaintiff's Reply in Support of Objection:**  The document is misleading
11  because it does not accurately portray the "carousel" on Defendants' website.
12  "Incidental use" is not a recognized defense under California law. *Davis v. Elec.*
13  *Arts Inc.*, 775 F.3d 1172, 1180 n.5 (9th Cir. 2015) ("California courts have not yet
14  held that the incidental use defense applies to right-of-publicity claims.").

15

16     38.  **Exhibit 292**

17     **Description:** Landing page screenshot (showing carousel from store website
18  landing page) (MANNION000040)

19     **Purpose:** This exhibit helps show that an overwhelming majority of
20  photographs on Defendants' website, including the online store's landing page, do
21  not depict Plaintiff. It is probative of Defendants' incidental use defense.

22     **Plaintiff's Basis for Objection:** Fed. R. Evid. 403.

23     **Defendants' Response to Objection:** This document is relevant, among
24  other things, to Defendants' incidental use defense, as it tends to show the limited
25  use of photographs of Plaintiff on Jonathan Mannion Photography's online store.
26  The probative value of such evidence outweighs any of the dangers outlined in Fed.
27  R. Evid. 403.

28     **Plaintiff's Reply in Support of Objection:**  The document is misleading

1   because it does not accurately portray the "carousel" on Defendants' website.

2   "Incidental use" is not a recognized defense under California law. *Davis v. Elec.*

3   *Arts Inc.*, 775 F.3d 1172, 1180 n.5 (9th Cir. 2015) ("California courts have not yet

4   held that the incidental use defense applies to right-of-publicity claims.").

5

6       39.   **Exhibit 296**

7       **Description:** Email from B. Johnson to Sarah Hsia re FM/Mannion Merch

8   Store – Conclusion of Agreement, dated March 29, 2022 (MANNION012279), with

9   attachment (MANNION012286).

10      **Purpose:** This exhibit shows some of the expenses Defendants incurred in

11  selling the at-issue shirts and is therefore relevant to Plaintiff's requested damages,

12  which include Defendants' profits.

13      **Plaintiff's Basis for Objection:** Fed. R. Evid. 401, 402; Fed. R. Evid. 403;

14  Fed. R. Evid. 802.

15      **Defendants' Response to Objection:** This document is relevant, among

16  other things, to show Defendants' expenses incurred in generating revenue from

17  uses that allegedly violate Plaintiff's right of publicity. The probative value of such

18  evidence outweighs any of the dangers outlined in Fed. R. Evid. 403.

19      This document is subject to the business record exception to hearsay. Fed. R.

20  Evid. 803(6).

21      **Plaintiff's Reply in Support of Objection:** Defendants should be precluded

22  from presenting any evidence as to their "deductible expenses." Civ. Code § 3344

23  ("In establishing such profits, the injured party or parties are required to present

24  proof only of the gross revenue attributable to such use, and the person who violated

25  this section is required to prove his or her deductible expenses."). The Rule 30(b)(6)

26  witness that Defendants designated to testify as to Defendants' profits from using

27  Plaintiff's name, image, and likeness was not prepared to do so. (Matute Tr. 23:3-7

28  ["Q. Okay. So today, you're prepared to testify as to the revenue generated by each

of the three items in that list, but not the—the profits generated by JMP?  A. Yes."].)
And Defendants' damages expert had "no understanding as to … Jonathan Mannion
Photography LLC's provable costs," so he "didn't take Jonathan Mannion
Photography LLC's provable costs into account in forming [his] opinions for th[e]
case."  (Anson Tr. 30:19-31:2.)  Rather, he opined that, if there is a finding of
liability, damages could be calculated based on "the gross revenues earned by JMP
from the sales of the JMP Products," which he determined to be $44,425.  (Anson
Report at 15.)

Moreover, the document is hearsay because it is being offered to prove the
truth of the matter asserted (i.e., "expenses Defendants incurred in selling the at-
issue shirts").  The "business records" exception to the hearsay rule does not apply,
including because there is not evidence that the email and spreadsheet were made as
part of a regular practice of Defendants' activities.

40.   **<u>Exhibit 299</u>**

**Description:** Photo of Global Spin DJ booth (MANNION000869)

**Purpose:** This exhibit shows that the at-issue slipmats were created and
publicly displayed in 2015 and is therefore probative of Defendants' statute of
limitations defense.

**Plaintiff's Basis for Objection:** Fed. R. Evid. 401, 402. Evidence showing
Defendants' display of slipmats at an event is not relevant. Fed. R. Evid. 403.

**Defendants' Response to Objection:** Evidence of Defendants' display of
slipmats is relevant to Defendants' statute of limitations defense, *i.e.*, when the
slipmats were first published to the public. It is also relevant to Defendants' First
Amendment defense as to the slipmats. It is also relevant to whether Plaintiff
expressly or impliedly consented to Defendants' uses of Mr. Mannion's photographs
of Plaintiff. That is relevant to a required element of Plaintiff's claims—lack of

consent. The probative value of such evidence outweighs any of the dangers outlined in Fed. R. Evid. 403.

**Plaintiff's Reply in Support of Objection:**  The document is not relevant to Defendants' statute of limitations defense because, even if the document shows when the "slipmats were created and publicly displayed," the document does not show when the slipmats were first offered for sale.  Moreover, any probative value is substantially outweighed by the risk of "confusing the issues, misleading the jury, undue delay, [and] wasting time."

41.   **Exhibit 300**

**Description:** Wayback Machine capture – online store landing page - 5/17/14 (MANNION000036).

**Purpose:** This exhibit shows that the at-issue "Chess Not Checkers" photograph was first displayed on the website landing page at least by May 2014 and is therefore probative of Defendants' statute of limitations defense.

**Plaintiff's Basis for Objection:** Fed. R. Evid. 401, 402. This exhibit showing a prior version of Defendants' website is not relevant. Fed. R. Evid. 403; Fed. R. Evid. 802; Fed. R. Evid. 901. Defendants have not offered evidence sufficient to support a finding that the document is what it purports to be.

**Defendants' Response to Objection:** The date on which a photograph of Plaintiff was first displayed on Jonathan Mannion Photography's online store is relevant to Defendants' statute of limitations defense. The probative value of such evidence outweighs any of the dangers outlined in Fed. R. Evid. 403.

As for Plaintiff's hearsay objection Defendants offer this document to show that the images and text were found on the website, and thus "they are not statements at all—and thus fall outside the ambit of the hearsay rule." *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 213 F. Supp. 2d 1146, 1155 (C.D. Cal. 2002) (printouts of the website are admissible under the best evidence rule).

1    As for Plaintiff's authenticity objection under Fed. R. Evid. 901, a witness

2 will authenticate the document at trial.

3    **Plaintiff's Reply in Support of Objection:**  The exhibit is a document from

4 a third-party website that purports to show what Defendants' website looked like on

5 a certain date.  That is hearsay because the document is being offered to prove the

6 truth of the matter asserted (i.e. "that the at-issue "Chess Not Checkers' photograph

7 was first displayed on the website landing page at least by May 2014").

8    Moreover, Defendants will not be able to authenticate the document at trial,

9 and their response to the objection does not explain how they intend to do so.  *See,*

10 *e.g.*, *Doe v. Xytex Corp.*, 2016 WL 3902577, at *1 n.1 (N.D. Cal. July 19, 2016)

11 (declining to take judicial notice of a screenshot from the "Wayback Machine" when

12 the "record offer[ed] no indication of the accuracy of the Wayback Machine's

13 records").

14

15    42.   **<u>Exhibit 301</u>**

16    **Description:** Image from video taken at Apt. 4B event, showing shirts on

17 rack (MSJ RJN Ex. I)

18    **Purpose:** This image shows that shirts featuring the Reasonable Doubt cover

19 photograph, which is at issue in this lawsuit, were sold at the Apt. 4B event that

20 Plaintiff attended. Defendants intend to use this exhibit as part of showing that

21 Plaintiff impliedly consented to the uses of name, image, and likeness in the at-issue

22 photographs.

23    **Plaintiff's Basis for Objection:** Fed. R. Evid. 401, 402. Evidence concerning

24 Defendants' licensing of copyright to photographs of Plaintiff, including in

25 connection with the Apartment 4B event, is not relevant. Fed. R. Evid. 403.

26    **Defendants' Response to Objection:** Evidence about the Apt. 4B pop-up

27 event is relevant. Through that evidence, Defendants will establish that Plaintiff

28 attended the event and did not express any objection to Defendants for their

licensing of the at-issue photos for use in prints that were prominently on display and in shirts that were sold, at the event. Whether Plaintiff objected to Defendants' licensing or to the prints and shirts tends to show that Plaintiff, either personally or through the knowledge of his agents, knew or should have known that Mr. Mannion was using photographs of Plaintiff as early as 2016. And that is relevant to whether Plaintiff can establish lack of consent, a required element of his claims. The probative value of such evidence outweighs any of the dangers outlined in Fed. R. Evid. 403.

**Plaintiff's Reply in Support of Objection:**  Evidence concerning the Apartment 4B pop-up event is not relevant.  Mr. Burke, not Defendants, hosted the event and sold t-shirts bearing pictures of Plaintiff at the event.  Mr. Burke was one of the founders of Plaintiff's record label, Roc-A-Fella Records.  That Plaintiff did not object to Mr. Burke's sale of those t-shirts does not tend to prove that Plaintiff consent to Defendants use of his name, image, and likeness (NIL).  Moreover, that Defendants licensed Mr. Burke the copyright to the photos that he used for the t-shirts is irrelevant because Defendants' copyright licensing activities do not tend to prove that Plaintiff consented to Defendants' use of his NIL.  Plaintiff will move in limine to exclude evidence of Defendants' copyright licensing activities.

1  DATED:  June 14, 2022          QUINN EMANUEL URQUHART
2                                          & SULLIVAN, LLP

3                                   By /s/ Robert M. Schwartz
4                                      Alex Spiro (*pro hac vice*)
5                                      Robert M. Schwartz
                                       Cory D. Struble
6                                      Dylan C. Bonfigli
                                       *Attorneys for Plaintiff*
7

8  DATED:  June 14, 2022          WILLENKEN LLP
9

10                                  By /s/ Paul J. Loh
11                                     Paul J. Loh
                                       Lika C. Miyake
12                                     Kenneth M. Trujillo-Jamison
13
                                       ROCKSTONE LEGAL
14                                     Sarah Hsia (*pro hac vice*)
15
                                       PAUL HASTINGS LLP
16                                     Steven A. Marenberg
17                                     *Attorneys for Defendants*
18
19
20
21
22
23
24
25
26
27
28

## **ATTESTATION STATEMENT**

I, Robert M. Schwartz, the filer of this Joint Brief Re: Evidentiary Issues, attest pursuant to Civil L.R. 5-4.3.4(a)(2) that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

DATED:  June 14, 2022

QUINN EMANUEL URQUHART
& SULLIVAN, LLP


By /s/ Robert M. Schwartz
Robert M. Schwartz
*Attorneys for Plaintiff*