QUINN EMANUEL URQUHART & SULLIVAN, LLP
Alex Spiro (*pro hac vice*)
alexspiro@quinnemanuel.com
Cory D. Struble (*pro hac vice*)
corystruble@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Robert M. Schwartz (Bar No. 117166)
robertschwartz@quinnemanuel.com
Dylan C. Bonfigli (Bar No. 317185)
dylanbonfigli@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

SHAWN CARTER, also known as JAY-Z, an individual,

Plaintiff,

v.

JONATHAN MANNION, an individual, and JONATHAN MANNION PHOTOGRAPHY LLC, a New York limited liability company,

Defendants.

Case No. 2:21-cv-04848-PA-KS

**PLAINTIFF'S OFFER OF PROOF FOR EXPERT WITNESSES**

The Honorable Percy Anderson

Trial Date: July 19, 2022

Pursuant to the Court's June 6, 2022 Order, Plaintiff submits the following offer of proof for his expert witnesses: Jon Albert and Megan Mahn Miller. A copy of Mr. Albert's expert report, including his CV, is attached as **Exhibit A**, and a copy of Ms. Miller's expert report, including her CV, is attached as **Exhibit B**.

## I. JON ALBERT'S EXPERT OPINIONS

1. Had Defendants obtained Plaintiff's permission to exploit Plaintiff's name, image, and likeness (NIL), for the uses Defendants made between June 15, 2019 (the relevant limitations period beginning two years before filing the lawsuit) and the present, Defendants would have had to: (a) pay Plaintiff between $5 million and $15 million as a guarantee against a percentage of gross revenue (ranging from 5 to 20 percent), and (b) give Plaintiff approval rights and other controls over Defendants' use of those images. (Albert Report [**Ex. A**] ¶ 31.) The midpoint of the two ranges—$10 million as a guarantee against 12.5 percent of gross revenue is a reasonable estimate of what Defendants would have had to pay Plaintiff for those rights. (*Id.* ¶ 31.)

The basis for this opinion is described in Mr. Albert's report and includes: (a) his experience in negotiating and obtaining price "quotes" for hundreds of transactions every year for the use of similar rights for similar entertainment, merchandising, and advertising uses (*id.* ¶ 6), (b) his examination of the details and extent of Defendants' use of Plaintiff's NIL (*id.* ¶ 7), (c) agreements pursuant to which Plaintiff granted the right to use his NIL to third parties (*id.* ¶ 7), (d) agreements under which other celebrities granted third parties the right to use their NIL (*id.* ¶¶ 27-29), and (e) deposition testimony and documents from this case. (*Id.* ¶ 8.)

This opinion is relevant to Plaintiff's damages because "the standard for measuring lost profits in a right of publicity case is the fair market value of the right to use plaintiff's name or likeness in the manner in which it was used by defendant." *Clark v. Am. Online Inc.*, 2000 WL 33535712, at *8 (C.D. Cal. Nov. 30, 2000).

"The use of [a] willing licensor-willing licensee framework is … 'the standard for measuring lost profits in a right of publicity case.'" *Ferriss v. All. Publ'g, Inc.*, 2016 WL 7116110, at *10 (N.D. Cal. Dec. 6, 2016).

Mr. Albert relied on the following documents:

(a) First Amended Complaint. (**Exhibit C** [JX-24].)

(b) May 11, 2021 email from Mannion to Leonard Santiago . (**Exhibit D** [JX-28].)

(c) Mannion's June 28, 2016 Instagram post. (**Exhibit E** [JX-56].)

(d) Mannion's July 7, 2016 Instagram post. (**Exhibit F** [JX-57].)

(e) Excel spreadsheets. (**Exhibit G** [JX-60], **H** [JX-62], **I** [JX-63], **J** [JX-64].)

(f) June 11, 2021 text messages between Uri Davidov and Mannion. (**Exhibit K** [JX-87].)

(g) Mannion's Instagram page. (**Exhibit L** [JX-99].)

(h) Mannion's November 15. 2018 Instagram post. (**Exhibit M** [JX-100].)

(i) Mannion's June 10, 2016 Instagram post. (**Exhibit N** [JX-101].)

(j) May 10, 2021 text messages between Leonard Santiago and Mannion. (**Exhibit O** [JX-105].)

(k) Defendants' Responses to Plaintiff's First Set of Interrogatories. (**Exhibit P** [JX-159].)

(l) Defendants' Responses to Plaintiff's Second Set of Interrogatories. (**Exhibit Q** [JX-161].)

(m) June 8, 2021 Tiffany & Co. Talent Agreement with between Tiffany & Co. and SC Branding, LLC. (**Exhibit R** [JX-189].)

(n) May 1, 2019 Brand Strategist Agreement between CMG Partners, Inc. and SC Branding, LLC. (**Exhibit S** [JX-190].)

(o) November 1, 2020 Creative Services Agreement between PUMA SE and SC Branding, LLC. (**Exhibit T** [JX-191].)

  (p) May 21, 2021 Email from Uri Davidov to Sarah Hsia re Use of Jay-Z Photograph.  (**Exhibit U** [JX-204].)

  (q) June 12, 2021 Email from D. Perez to U. Davidov re Reasonable Doubt Shoot.  (**Exhibit V** [JX-205].)

  (r) June 13, 2021 Email from L. Santiago to S. Hsia re CONFIDENTIAL WORK PRODUCT.  (**Exhibit W** [JX-207].)

  (s) Relevant excerpts from the deposition transcript for Uri Davidov. (**Exhibit X**.)

  (t) Relevant excerpts from the deposition transcript for Marjoriet Matute. (**Exhibit Y**.)

## II. MEGAN MAHN MILLER'S OPINIONS

1. The marketability and economic value of the photographs of Plaintiff at issue derive primarily from his fame and celebrity.  (Mahn Miller Report [**Ex. B**] ¶ 15.)

  This opinion is relevant to Defendants' First Amendment "transformative use" defense.  *See, e.g.*, *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 724 F.3d 1268, 1274 (9th Cir. 2013) (one of "five factors to consider in determining whether a work is sufficiently transformative to obtain First Amendment protection" is "whether 'the marketability and economic value of the challenged work derive primarily from the fame of the celebrity depicted'").

  The basis for this opinion is described in Ms. Mahn Miller's report and includes: (a) her 16 years of experience in appraising thousands of pieces of personal property, including archives full of celebrity photographs (Mahn Miller Report [**Ex. B**] ¶ 1), (b) her review of Defendants' online store (*id.* ¶ 5), (c) her review of the photographs at issues (*id.*), (d) her review of sales records produced by Defendants (*id.* ¶¶ 7, 21), (e) her investigation into markets where Mr. Mannion's photographic prints are sold (*id.* ¶¶ 8-11), (f) her knowledge and experience regarding "open edition" and "limited edition" prints (*id.* ¶¶ 12-14), (g) her

knowledge and experience regarding persons considered to be "fine art" photographers (*id.* ¶ 23), and (h) her investigation into the prices at which photographic prints from photographers considered to be "fine art" photographers have sold. (*Id.* ¶¶ 24-25.)

Ms. Mahn Miller relied on the following documents:

(a) **Exhibit Z** is intentionally omitted.

(b) Excel spreadsheets. (**Exhibit G** [JX-60], **H** [JX-62], **I** [JX-63], **J** [JX-64].)

(c) Sketch produced by Defendants. (**Exhibit AA** [JX-96.)

(d) Jay Z "Chess Not Checkers" photograph. (**Exhibit BB** [JX-98].)

(e) Defendants' Responses to Plaintiff's Second Set of Interrogatories. (**Exhibit Q** [JX-161].)

(f) BET July 11, 2016 article, "20 Years Later: Behind the Lens of Jay Z's 'Reasonable Doubt.'" (**Exhibit CC** [JX-164].)

(g) Jay-Z "New Blue Yankee" Print. (**Exhibit DD** [JX-226].)

(h) Jay-Z Print. (**Exhibit EE** [JX-227].)

2. Jonathan Mannion has not risen to the level of renown to where members of the public purchase prints of photographs he has taken because he was the photographer. (*Id.* ¶ 23.)

This opinion is relevant to Defendants' First Amendment "transformative use" defense. *See, e.g.*, *Comedy III Prods.*, 25 Cal. 4th at 407 ("When the value of the work comes principally from some source other than the fame of the celebrity—from the creativity, skill, and reputation of the artist—it may be presumed that sufficient transformative elements are present to warrant First Amendment protection.").

The basis for this opinion is described in Ms. Mahn Miller's report and includes: (a) her 16 years of experience in appraising thousands of pieces of personal property, including archives full of celebrity photographs (Mahn Miller

Report [**Ex. B**] ¶ 1), (b) her review of sales records produced by Defendants (*id.* ¶¶ 7, 21), her investigation into markets where Mr. Mannion's photographic prints are sold (*id.* ¶¶ 8-11), her knowledge and experience regarding persons considered to be "fine art" photographers (*id.* ¶ 23), her investigation into the prices at which photographic prints from photographers considered to be "fine art" photographers have sold (*id.* ¶¶ 24-25).

The documents on which Ms. Mahn Miller relied for this opinion are the same ones identified above for her first opinion.

DATED: June 14, 2022

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By /s/ Robert M. Schwartz
Alex Spiro (*pro hac vice*)
Robert M. Schwartz
Cory D. Struble
Dylan C. Bonfigli
*Attorneys for Plaintiff*