WILLENKEN LLP
Paul J. Loh (Bar No. 160541)
ploh@willenken.com
Lika C. Miyake (Bar No. 231653)
lmiyake@willenken.com
Kenneth M. Trujillo-Jamison
   (Bar No. 280212)
ktrujillo-jamison@willenken.com
Michelle K. Millard (Bar No. 298245)
mmillard@willenken.com
Kirby Hsu (Bar No. 312535)
khsu@willenken.com
707 Wilshire Blvd., Suite 3850
Los Angeles, California 90017
Telephone:  (213) 955-9240

PAUL HASTINGS LLP
Steven A. Marenberg (Bar No. 101033)
stevenmarenberg@paulhastings.com
1999 Avenue of the Stars, 27th Fl.
Los Angeles, California 90067
Telephone:  (310) 620-5710

ROCKSTONE LEGAL
Sarah Hsia (pro hac vice)
sarah@rockstonelegal.com
229 W. 36th Street, 8th Floor
New York, NY 10018
Telephone: (876) 855-6676

Attorneys for Defendants
JONATHAN MANNION and
JONATHAN MANNION PHOTOGRAPHY LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

SHAWN CARTER, also known as
JAY-Z, an individual,

                    Plaintiff,

v.

JONATHAN MANNION, an
individual, and JONATHAN
MANNION PHOTOGRAPHY LLC, a
New York limited liability company,

                    Defendants.

Case No.: 2:21-cv-04848-PA-KS

**DEFENDANTS JONATHAN
MANNION AND JONATHAN
MANNION PHOTOGRAPHY
LLC'S OFFERS OF PROOF RE:
EXPERT WITNESSES**

Assigned to the Hon. Percy Anderson

Pre-trial Conf.:  June 17, 2022, 1:30 pm
Trial Date:      July 19, 2022

1    Pursuant to the order of this Court dated June 6, 2022 [Dkt. 125],

2  Defendants Jonathan Mannion and Jonathan Mannion Photography LLC ("JMP")

3  (collectively, "Defendants") respectfully offer the following offer of proof

4  regarding Defendants' Expert Witnesses.[1]

5  **I.    PHOTOGRAPHY EXPERT, PROFESSOR JEFFREY SEDLIK**

6    Professor Sedlik is an experienced professional in the field of fine art

7  photography, and specifically fine art music photography.  Professor Sedlik will

8  testify about the fine-art photography and Mr. Mannion's place in it, and the

9  creative elements in Mr. Mannion's photographs at issue in this case (the

10  "Photographs").  If necessary, Professor Sedlik will also rebut the expert testimony

11  provided by Plaintiff's memorabilia market expert, Ms. Mahn Miller.

12    Attached hereto as **Exhibit A** is a true and correct copy of Professor Jeffrey

13  Sedlik's Preliminary Expert Report dated March 14, 2022 and his curriculum vitae

14  (Exhibit A to Expert Report).  Attached hereto as **Exhibit B** is a true and correct

15  copy of Professor Jeffrey Sedlik's Rebuttal Expert Report dated March 31, 2022.

16    **Opinion 1**: Defendant Mannion exercised a series of subjective creative

17  decisions in capturing the Photographs, and each of the Photographs demonstrate

18  the substantial, subjective, original creative expression of Defendant Mannion.  Ex.

19  1 at §V.A-C.

20    Relevance: Professor Sedlik's testimony is relevant because it will tend to

21  show that, in creating the Photographs and the physical products imprinted with

22  them, Mr. Mannion added new expression, meaning, or message to Plaintiff's

23  name, image, or likeness and/or that the value of the Photographs does not derive

24

25

26  [1] Pursuant to the Court's permission, to avoid the unnecessary waste of paper, and
to facilitate the Court's review of Defendants' offer of proof for their expert

27  witnesses, Defendants have provided the Court with an electronic version of the
exhibits submitted in support of their offer of proof for their expert witnesses in

28  lieu of paper copy.

212261.1

1  primarily from Plaintiff's fame, such that the works are transformative in nature.

2  This goes to an important element of Defendants' First Amendment affirmative

3  defense to Plaintiff's claims.

4         Basis:  Professor Sedlik examined the creative and technical elements and

5  choices employed by Defendant Mannion in capturing the photos, as well as the

6  subjective creative decisions made by Defendant Mannion in connection therewith,

7  to opine that the Photographs are unique, original, and expressive works of

8  Defendant Mannion's authorship.

9         Documents Relied Upon: In addition to testimony that may be offered at

10  trial that differs from the witnesses' testimony at deposition, Professor Sedlik's

11  opinions are based on:

12    •  his experience in the field of professional photography, with an emphasis on

13       music photography (Ex. 1 at § I);

14    •  Plaintiff's First Amended Complaint in this matter dated June 21, 2021

15       [**Exhibit A-1**];

16    •  "About" page of Defendant Mannion's website, located at

17       https://www.jonathanmannion.com/about [**Exhibit A-2**];

18    •  Professor Sedlik's telephonic interview with Jonathan Mannion, March 10,

19       2022, in which Mr. Mannion 1) informed Professor Sedlik that JMP was

20       engaged in activities such as offering photographic services, selling prints

21       and other reproductions of photographs, and licensing photography

22       copyrights; 2) confirmed that, in connection with capturing the Photographs

23       in this action, Mr. Mannion planned each shoot, choosing the locations for

24       their light, textures, storytelling potential and use as backgrounds, and

25       selected equipment necessary to achieve the photographs he previsualized;

26       3) confirmed that he anticipated and responded dynamically to the subject

27       matter and shooting environment, exercised control over the visual rendition

28       of the scene, decided which elements to include or exclude, and where to

DEFENDANTS' OFFERS OF PROOF RE: EXPERT WITNESSES

212261.1

place those elements within the frame; 4) confirmed that he determined how to juxtapose people, objects, and other compositional elements for desired effect, controlled the placement and interplay of color, tone, contrast, light, and shade, controlled perspective, distortion, and selective focus to guide the viewer's eye through the Photograph, and selected the precise moment at which to capture the ultimate photograph (Ex. 1 at 18).

- the deposition testimony of Jonathan Mannion, 56:1-5; 175:12-14; 242:18-243:2, Ex. 106 [**Exhibit A-3**];

- Log of negatives from photoshoots captured by JMP as of July 18, 2019, created by JMP employee (MANNION0005943) [**Exhibit A-4**];

- List of JMP's clients as of July 25, 2018, compiled by JMP employee (MANNION0009676) [**Exhibit A-5**];

- List of gallery websites referenced by Professor Sedlik as of March 17, 2022 (Ex. 1 at 13, fn. 13)

- Figure A-01 created by Professor Sedlik displaying examples of Defendant Mannion's photographs, dated March 14, 2022 (Ex. 1 at 14);

- Figure A-02 created by Professor Sedlik displaying examples of licensed reproduction of Defendant Mannion's photographs, dated March 14, 2022 (Ex. 1 at 14);

- Figure A-02 created by Professor Sedlik displaying examples of licensed reproduction of Defendant Mannion's photographs, dated March 14, 2022 (Ex. 1 at 14);

- Figure B-01 created by Professor Sedlik displaying examples of Defendant Mannion's photographs of Plaintiff, dated March 14, 2022 (Ex. 1 at 17);

- Figure C-01 created by Professor Sedlik displaying examples of depictions of Plaintiff's likeness in photographs created by various photographers with citations listed in fn. 20, dated March 14, 2022 (Ex. 1 at 24).

DEFENDANTS' OFFERS OF PROOF RE: EXPERT WITNESSES

212261.1

**Opinion 2**: Defendants' use of the Photographs, including the publication of such Photographs on Defendants' social media and websites and sale of fine art prints, is consistent with standard practice in the photography industry concerning photographers' uses of their photographs.  Ex. 1 §§ V.D-J.

Relevance:  This evidence tends to show that Plaintiff had constructive notice that photographers openly and publicly sell photographs of Plaintiff.  These facts and testimony are relevant to show Plaintiff's constructive and actual notice of Defendants' uses of the Photographs upon which Plaintiff's claims are based, and Plaintiff's subsequent inaction manifests implied consent thereto. *Jones v. Corbis Corp.*, 815 F. Supp. 2d 1108, 1113 (C.D. Cal. 2011), aff'd, 489 F. App'x 155 (9th Cir. 2012).

Basis:  Professor Sedlik opines that this testimony is supported by his experience in the field of professional photography and his observations with respect to photographers' common methods of displaying and distributing their works to the public, together with his observations and understanding of the ways in which Defendants have used the Photographs. Ex. 1 §§ V.D-J.

Documents Relied Upon: In addition to testimony that may be offered at trial that differs from the witnesses' testimony at deposition, Professor Sedlik's opinions are based on:

- his experience in the field of professional photography, with an emphasis on music photography (Ex. 1 at § I);

- Plaintiff's First Amended Complaint in this matter dated June 21, 2021 [**Exhibit A-1**];

- "About" page of Defendant Mannion's website, located at https://www.jonathanmannion.com/about [**Exhibit A-2**];

- Professor Sedlik's telephonic interview with Jonathan Mannion, March 10, 2022, in which Defendant Mannion informed Professor Sedlik that 1) his company offered photography licenses on a case-by-case basis, that he

DEFENDANTS' OFFERS OF PROOF RE: EXPERT WITNESSES

212261.1

1    intends to continue to monetize his copyrights throughout the copyright life

2    of his photographs by offering licenses for all manner of usages and media,

3    including those for which he has not yet sold licenses; and 2) that he intends

4    to create and sell fine art prints of his photographs.

5  • Figure G-01 created by Professor Sedlik displaying examples of the

6    commercial exploitation of Defendant Mannion's photographs and

7    copyrights by Plaintiff and his record labels, dated March 14, 2022 (Ex. 1 at

8    32);

9  • Figure H-01 created by Professor Sedlik displaying examples of the public

10    display of photographs of Plaintiff's likeness by photographers with citations

11    listed in fn. 20, dated March 14, 2022 (Ex. 1 at 34);

12  • Invoice from JMP To Stardust Visions for S. Carter Enterprises – Jay Z

13    Rocawear 10th Anniversary – Image Usage Fee, dated August 3, 2009 (JX

14    232, MANNION000866) [**Exhibit A-6**];

15  • Photo release between Shawn Carter and Defendant Mannion re: Blueprint

16    promotional use of photographs, dated August 24, 2009 (JX 45 –

17    CARTER0004466) [**Exhibit A-7**];

18  • Random House – Bertelsmann letter re permission to use photograph for

19    Decoded book, dated August 23, 2010 (JX 46 – MANNION000940)

20    [**Exhibit A-8**];

21  • Invoice from JMP to Stardust Visions re: Jay X DJ Hero by Shepard Fairey,

22    dated August 3, 2009 (MANNION001771) [**Exhibit A-9**].

23

24    **Opinion 3**:  Ms. Mahn Miller's testimony that the value of the Photographs

25  derives primarily from the presence of Plaintiff is incorrect.  The primary value-

26  driver of the Photographs is not their subject matter; Defendant Mannion's original

27  authorship and expression contributes substantially to the value of a photograph.

28  *See generally* Ex. 2.

DEFENDANTS' OFFERS OF PROOF RE: EXPERT WITNESSES

212261.1

1    Relevance:  The question of whence the primary value of a photograph
2    derives is relevant to the question of whether the work is transformative, and thus
3    supports Defendants' First Amendment defense.  Ms. Mahn Miller is testifying that
4    Plaintiff is the primary value-driver of the photograph in order for Plaintiff to argue
5    that the work is not transformative.  Professor Sedlik's rebuttal testimony will
6    show how the photographs are transformative.

7    Basis:  Professor Sedlik opines that (a) Ms. Mahn Miller's background in
8    celebrity memorabilia is ill-suited to determining the value of the fine-art
9    photography that Defendant Mannion creates (Ex. 2 § IV.A); (b) Defendant
10   Mannion made significant creative contributions to the photographs (Ex. 2 § VI.B-
11   C); (d) Ms. Mahn Miller's testimony is based on misinterpreting quotations from
12   famous photographers, who in fact support the opinion that a photographer such as
13   Defendant Mannion adds significant value to the photograph (Ex. 2 § VI.D); (d)
14   that the use of Plaintiff's name in the titles of the photographs is for descriptive
15   purposes and has no bearing on the value of the photographs (Ex. 2 § VI.E); (e)
16   that the sale of Defendants' photographs as open edition prints does not mean their
17   purchasers are unsophisticated (Ex. 2 § VI.F); (f) that Ms. Mahn Miller's focus on
18   the auction market, rather than gallery market, for photography is incorrect (Ex. 2
19   § VI.G); and (g) Ms. Mahn Miller is incorrect to compare the current value of the
20   photographs with much older photographs from Gordon Parks and Milton Greene
21   (Ex. 2 § VI.H).

22   Documents Relied Upon: In addition to testimony that may be offered at
23   trial that differs from the witnesses' testimony at deposition, Professor Sedlik's
24   opinions are based on:

25   • his experience in the field of professional photography, with an emphasis on
26     music photography (Ex. 1 at § I);

27   • Plaintiff's First Amended Complaint in this matter dated June 21, 2021
28     [**Exhibit A-1**];

DEFENDANTS' OFFERS OF PROOF RE: EXPERT WITNESSES

212261.1

1

- Expert Witness Report of Meghan Mahn Miller dated March 18, 2022

2

  [**Exhibit B-1**];

3

- "About" page of Defendant Mannion's website, located at

4

  https://www.jonathanmannion.com/about [**Exhibit A-2**];

5

- Professor Sedlik's telephonic interview with Jonathan Mannion, March 10,

6

  2022, in which Mr. Mannion informed Professor Sedlik that, 1) in

7

  connection with capturing the Photographs in this action, Mr. Mannion

8

  planned each shoot, choosing the locations for their light, textures,

9

  storytelling potential and use as backgrounds, and selected equipment

10

  necessary to achieve the photographs he previsualized; 2) that he anticipated

11

  and responded dynamically to the subject matter and shooting environment,

12

  exercised control over the visual rendition of the scene, decided which

13

  elements to include or exclude, and where to place those elements within the

14

  frame; 4) that he determined how to juxtapose people, objects, and other

15

  compositional elements for desired effect, controlled the placement and

16

  interplay of color, tone, contrast, light, and shade, controlled perspective,

17

  distortion, and selective focus to guide the viewer's eye through the

18

  Photograph, and selected the precise moment at which to capture the

19

  ultimate photograph (Ex. 1 at 18);

20

- the deposition testimony of Marjoriet Matute, 115:5-116:25 [**Exhibit B-2**];

21

- Statement from Amelia Davis, owner of estate of Jim Marshall, as recorded

22

  in email correspondence with Professor Sedlik dated March 31, 2022.  Ex. 2

23

  at Ex. B pgs. 1-3;

24

- Statement from Bob Gruen, as recorded in email correspondence with

25

  Professor Sedlik dated March 31, 2022.  Ex. 2 at Ex. B pgs. 4-5;

26

- Statement from Henry Diltz, as recorded in email correspondence with

27

  Professor Sedlik dated March 31, 2022.  Ex. 2 at Ex. B pgs. 6-7;

28

- Statement from Timothy White, as recorded in email correspondence with

7

212261.1

1    Professor Sedlik dated March 31, 2022.  Ex. 2 at Ex. B pg. 8.

2

3    **II.   DAMAGES EXPERT, WESTON ANSON**

4         Weston Anson is an experienced professional in the fields of licensing and

5    branding and the valuation of intellectual property.  Mr. Anson is expected testify

6    in Defendants' rebuttal case to rebut the expert damages opinion provided by

7    Plaintiff's damages expert, Jon Albert-Levy, if necessary.

8         Attached hereto as **Exhibit C** is a true and correct copy of Defendants'

9    damages expert Weston Anson's preliminary and Expert Report dated March 31,

10   2022 and curriculum vitae (Appendix A ("Qualifications") to Expert Report).

11        **Opinion 1**: Mr. Albert-Levy's calculation of damages in the amount of $10

12   million, representing Mr. Albert-Levy's estimation of the fair market value of

13   Plaintiff's name, image, and likeness for the sale of slipmats and prints during the

14   relevant period (*viz.*, June 15, 2019 through present), is unreasonable. (Ex. 4 at §§

15   I.C., IV).

16        Relevance: This testimony is relevant because it is in rebuttal to the

17   testimony that is expected to be given by Plaintiff's damages expert, Mr. Albert-

18   Levy.  Specifically, the calculation of fair market value of Plaintiff's image is

19   relevant because this an action concern common-law and statutory right of

20   publicity claims, and damages for violation of the right of publicity are based upon

21   the "*Clark v. Am. Online Inc*., No. CV-98-5650 CAS (CWX), 2000 WL 33535712,

22   at *8 (C.D. Cal. Nov. 30, 2000).

23        Basis: Mr. Anson opines that Mr. Albert-Levy's calculation of damages is

24   unreasonable because it is based upon three inapposite licensing agreements with

25   major brands that also involved comprehensive personal services, whereas the

26   relevant inquiry should focus on the uses that Defendants actually made of the

27   Photographs.  (Ex 4 at 10-14).  In addition, Mr. Anson notes that while Mr. Albert-

28   Levy presents $10 million as the fair market value if the parties had engaged in

DEFENDANTS' OFFERS OF PROOF RE: EXPERT WITNESSES

212261.1

arms-length negotiations, based on JMP's actual revenues, JMP would never have agreed to a license on such terms because it would be financially unsound.  (Ex. 4 at 14).

Documents Relied Upon:  In addition to testimony that may be offered at trial that differs from the witnesses' testimony at deposition, Mr. Anson's opinions are based on:

- his experience as a licensing and branding expert and in the field of intellectual-property valuation (Ex. 4 at § I.B.);
- Plaintiff's First Amended Complaint in this matter dated June 21, 2021 [**Exhibit C-1**];
- "About" page of Defendant Mannion's website, located at https://www.jonathanmannion.com/about [**Exhibit C-2**];
- Plaintiff's biography on the website TheFamousPeople.com, located at https://www.thefamouspeople.com/profiles/shawn-corey-carter-1772.php [**Exhibit C-3**];
- Page titled "Jay Z Net Worth" on the website TheRichest.com, located at https://www.therichest.com/celebnetworth/celeb/rappers/jay-z-net-worth/ [**Exhibit C-4**];
- Plaintiff Shawn Carter's Initial Disclosure of Expert Witnesses, dated March 18, 2022 [**Exhibit C-5**];
- the Creative Services Agreement dated January 1, 2021 between PUMA and SC Branding LLC dated January 1, 2021 (JX-45, CARTER0004436) [**Exhibit C-6**];
- Financial Income Statement for PUMA SE for 2019-2021, generated by S&P Capital IQ [**Exhibit C-7**],
- the Brand Strategist Agreement between SC Branding, LLC and CMG Partners, Inc. dated May 1, 2019 (JX-190, CARTER0004400) [**Exhibit C-8**];

DEFENDANTS' OFFERS OF PROOF RE: EXPERT WITNESSES

212261.1

- article titled "An Exclusive Interview With a California Cannabis Colossus Going Public in an Unconventional Manner" by Carrie Pallardy for *New Cannabis Ventures*, dated December 3, 2020 and currently located at https://www.newcannabisventures.com/an-exclusive-interview-with-a-california-cannabis-colossus-going-public-in-an-unconventional-manner-the-parent-company/ [**Exhibit C-9**];

- Financial Income Statement for TIffany & Co. for 2019-2021, generated by S&P Capital IQ [**Exhibit C-10**],

- the Tiffany & Co. Talent Agreement between Tiffany and Company and SC Branding, LLC dated June 8, 2021 (JX-189, CARTER0004372) [**Exhibit C-11**]; and

- the License Agreement Analysis prepared by Weston Anson attached as Exhibit 1 to the Expert Report dated March 31, 2022 (Ex. C at Ex. 1).

**Opinion 2**: If any liability is found against any or all of Defendants, the maximum amount of damages is $44,425, which represents JMP's gross revenues for sales of slipmats and prints as reported by Mr. Albert-Levy.  (Ex. 4 at §§ I.C, V.A.).

Relevance: This testimony is relevant to rebutting the damages estimate given by Mr. Albert-Levy.

Basis:  Mr. Anson's testimony is based upon JMP's gross revenue for sales of slipmats and prints during the relevant period (*viz.*, $43,495 for prints and $480 for slipmats) which Mr. Anson opines should be the maximum amount of any damages given that this is the amount that JMP actually earned.  (Ex. 4 at § V.A.).

Documents Relied Upon:  In addition to testimony that may be offered at trial that differs from the witnesses' testimony at deposition, Mr. Anson's opinions are based on:

- his experience as a licensing and branding expert and in the field of

212261.1

1       intellectual-property valuation (Ex. 4 at § I.B.);

2       •  Plaintiff's First Amended Complaint in this matter dated June 21, 2021

3          [**Exhibit C-1**];

4       •  Plaintiff Shawn Carter's Initial Disclosure of Expert Witnesses, dated March

5          18, 2022 [**Exhibit C-5**].

6

7       **Opinion 3**: The more appropriate measure of damages, if liability is found,

8 is the "reasonable royalty" that Plaintiff would have received on JMP's actual

9 sales.  Based on a royalty rate of 12.5%, this amounts to $5,553 in damages.  (Ex. 4

10 at §§ I.C., V.B.).

11       <u>Relevance</u>: This testimony is relevant to rebutting the damages estimate

12 given by Mr. Albert-Levy.

13       <u>Basis:</u>  Mr. Anson's testimony is based upon the rate that Mr. Albert-Levy

14 described in his report as a "reasonable royalty" rate (*viz.* 12.5%) applied against

15 what Mr. Albert-Levy reported to be the revenues received by JMP for the sale of

16 prints and slipmats during the statutory period (*viz.*, $44,425).

17       <u>Documents Relied Upon</u>:  In addition to testimony that may be offered at

18 trial that differs from the witnesses' testimony at deposition, Mr. Anson's opinions

19 are based on:

20       •  his experience as a licensing and branding expert and in the field of

21          intellectual-property valuation (Ex. 4 at § I.B.);

22       •  Plaintiff's First Amended Complaint in this matter dated June 21, 2021

23          [**Exhibit C-1**];

24       •  Plaintiff Shawn Carter's Initial Disclosure of Expert Witnesses, dated March

25          18, 2022 [**Exhibit C-5**].

26

27

28

DEFENDANTS' OFFERS OF PROOF RE: EXPERT WITNESSES

212261.1

1

Respectfully submitted,

2

Dated:  June 14, 2022

3

WILLENKEN LLP

4

5

By: */s/ Paul J. Loh*

6

Paul J. Loh
Attorneys for Defendants
JONATHAN MANNION and

7

JONATHAN MANNION
PHOTOGRAPHY LLC

8

9

ROCKSTONE LEGAL

10

Sarah Hsia (*pro hac vice*)

11

PAUL HASTINGS LLP

12

Steven A. Marenberg
*Attorneys for Defendants*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' OFFERS OF PROOF RE: EXPERT WITNESSES

212261.1