QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
Alex Spiro (*pro hac vice*)
   alexspiro@quinnemanuel.com
Cory D. Struble (*pro hac vice*)
   corystruble@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone:  (212) 849-7000
Facsimile:   (212) 849-7100

Robert M. Schwartz (Bar No. 117166)
   robertschwartz@quinnemanuel.com
Dylan C. Bonfigli (Bar No. 317185)
   dylanbonfigli@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:  (213) 443-3000
Facsimile:   (213) 443-3100

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

|  |  |
|---|---|
| SHAWN CARTER, also known as JAY-Z, an individual,<br><br>Plaintiff,<br><br>v.<br><br>JONATHAN MANNION, an individual, and JONATHAN MANNION PHOTOGRAPHY LLC, a New York limited liability company,<br><br>Defendants. | Case No.  2:21-cv-04848-PA-KS<br><br>**PLAINTIFF'S MOTION IN LIMINE NO. 4 (DEFENDANT MANNION'S BELIEF ABOUT THE LEGALITY OF HIS CONDUCT); DECLARATION OF DYLAN C. BONFIGLI**<br><br>The Honorable Percy Anderson<br><br>Date:       July 11, 2022<br>Time:       1:30 p.m.<br>Courtroom: 9A<br><br>Trial Date:  July 19, 2022 |

## REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on July 11, 2022, at 1:30 p.m. or as soon as the matter may be heard, in Courtroom 9A of the above-titled Court, located at 350 W. 1st Street, Los Angeles, California 90012, Plaintiff Shawn Carter will, and hereby does, move *in limine* for an order excluding all evidence regarding Jonathan Mannion's claimed belief that his sale of prints and other products depicting persons, including Plaintiff, was lawful.

This motion is based on this notice; the memorandum of points and authorities; the declaration of Dylan C. Bonfigli; all pleadings, records, and papers on file in this action; such other matters of which this Court may take judicial notice; and upon such other evidence and oral argument as may be considered by the Court before or at the hearing on this application.

This motion is made following a conference of counsel pursuant to Local Rule 7-3 and Section II.B of this Court's Civil Trial Scheduling Order (ECF No. 52), which took place on May 20, 2022.

DATED:  June 17, 2022          QUINN EMANUEL URQUHART
                                                 & SULLIVAN, LLP


By /s/ Robert M. Schwartz
          Alex Spiro (*pro hac vice*)
          Robert M. Schwartz
          Cory D. Struble
          Dylan C. Bonfigli
          *Attorneys for Plaintiff*

# **TABLE OF CONTENTS**

**Page**

I.     PRELIMINARY STATEMENT................................................................... 1

II.    BACKGROUND..................................................................................... 1

III.   EVIDENCE OF MANNION'S BELIEF THAT HIS ACTS WERE LAWFUL IS NOT RELEVANT TO ANY CLAIM OR DEFENSE ............ 2

IV.    EVIDENCE OF MANNION'S BELIEF THAT HIS ACTS WERE LAWFUL WILL MISLEAD AND WASTE TIME.................................... 3

V.     CONCLUSION.................................................................................... 5

DEFENDANTS' OPPOSITION ......................................................................... 6

I.     INTRODUCTION................................................................................ 6

II.    RELEVANT BACKGROUND ............................................................ 6

III.   ARGUMENT...................................................................................... 8

IV.    CONCLUSION .................................................................................. 11

PLAINTIFF'S REPLY ................................................................................... 13

CONCLUSION............................................................................................... 15

DECLARATION OF DYLAN C. BONFIGLI................................................ 16

ATTESTATION STATEMENT...................................................................... 18

## TABLE OF AUTHORITIES

**Page**

## Cases

*Beech Aircraft Corp. v. Rainey*,
488 U.S. 153, 109 S. Ct. 439, 102 L. Ed. 2d 445 (1988) ..................................8

*Jones v. Corbis Corp.*,
815 F. Supp. 2d 1108 (C.D. Cal. 2011) ..........................................................3

*Keller v. Elec. Arts Inc.*,
724 F.3d 1268 (9th Cir. 2013)...........................................................................3

*Nguyen v. Sw. Leasing & Rental Inc.*,
282 F.3d 1061 (9th Cir. 2002)......................................................................8, 9

*Ryan v. Editions Ltd. W., Inc.*,
786 F.3d 754 (9th Cir. 2015)........................................................................4, 7

*Shared Med. Res., LLC V. Histologics*, 2012 WL 5570213, at *2 (C.D. Cal.
Nov. 14, 2012)..................................................................................................4

*Shuler v. City of L.A.*,
849 F. App'x 671 (9th Cir. 2021) ....................................................................3

## Statutory Authorities

Cal. Civ. Code § 3344 ..........................................................................................3

## Rules and Regulations

Fed. R. Evid. 401 ............................................................................................2, 3

Fed. R. Evid. 402 ................................................................................................2

Fed. R. Evid. 403 ................................................................................................3

Case No. 2:21-cv-04848-PA-KS
PLAINTIFF'S MOTION IN LIMINE NO. 4

## I.     PRELIMINARY STATEMENT

Plaintiff Shawn Carter, p/k/a Jay-Z, moves to exclude all evidence regarding Jonathan Mannion's claimed belief that his sale of prints and other products depicting people, including Plaintiff, was lawful.  To prevail on his right-of-publicity claims, Jay-Z need not show that Mannion knew that his conduct was unlawful.  Nor is Mannion's belief that his conduct was lawful relevant to any of his defenses—such as transformative use or statute of limitations.

Nevertheless, Mannion intends to testify that he believed he acted within his legal rights when he plastered Jay-Z's name, image, and likeness ("NIL") on merchandise and his online store.  That testimony is irrelevant.  And it poses a danger of unfair prejudice, confusing the issues, and misleading the factfinder because, among other reasons, they may be led to believe that Mannion's belief that his actions were lawful is a valid defense.  It is not.

## II.    BACKGROUND

Starting in 1996, Plaintiff and his record companies hired Mannion to take photos of Jay-Z for use on album covers and for other commercial purposes.  While doing so, Mannion took thousands of photos.  (Mannion Tr. [Bonfigli Dec. Ex. A] at 243:3-6.)  Mannion understood that the purpose of shoots was to take photos of Jay-Z that would be used to promote Jay-Z.  (*Id.* 166:10-15.)  Nevertheless, years after those shoots, Mannion registered the copyright to some of the Jay-Z photos and asserts that he owns the copyright to them.  (*Id.* 61:2-15.)

At his deposition, Mannion conceded that he never received permission from Jay-Z to sell products bearing Jay-Z's NIL.  (*Id.* 97:17-20.)  But Mannion testified that he "thought [he] had the right to do it."  (*Id.* 97:5-16.)  Mannion opined that "it's within a photographer's right to be able to sell fine art prints" "by nature of being the copyright holder."  (*Id.* 97:21-98:19.)  Mannion testified that this understanding is based on advice from an attorney at Loeb & Loeb, who told him that "when you create a [photo] and you own the copyright, you're able to sell fine

1   art prints." (*Id.* 98:20-101:5.)  Mannion also testified that this understanding was

2   "reinforced with a number of different attorneys along the way," including one of

3   the attorneys that represents him in this case.  (*Id.* 100:16-101:23, 102:11-15.)

4          Mannion also opined that he believed he had the right to sell magnets, pins,

5   and slipmats depicting Jay-Z, without "bring[ing] them to [Jay-Z's] attention,"

6   because doing so "commemorated a moment that was a fine art kind of celebration."

7   (*Id.* 97:21-98:12].)  However, Mannion qualified his position when he testified that

8   "moving into merch brings up another layer of conversation that should be had."

9   (*Id.* 102:20-103:6.)  And he testified that if he was going to sell products in

10  "massive quantities," such as "a number of … garments with a person's face on

11  [them]," he would seek permission.  (*Id.* 103:21-104:23.)  But, according to

12  Mannion, the way he "utilized" Jay-Z's NIL on merchandise is "sort of" within his

13  rights because he did not have "the intention of … mass producing" the products

14  and sold them as part of "a fine art execution." (*Id.* 103:21-104:23].)

15         After Mannion's deposition, the parties' counsel discussed whether Mannion

16  had waived the attorney-client privilege on this issue by testifying about the legal

17  advice he received.  (Bonfigli Dec. Ex. B.)  Mannion's counsel responded:

18  "Defendants have not asserted an advice of counsel defense and will not otherwise

19  rely on evidence about privileged communications." (*Id.*)  When the parties met and

20  conferred on May 20, 2022, Mannion's counsel again said that Mannion would not

21  testify about advice he received from counsel.  (*Id.* ¶ 6.)  But his counsel said that

22  Mannion intended to testify that he believed his actions were lawful.  (*Id.*)  That is a

23  classic "sword and shield" abuse of the attorney-client privilege.

24  **III.   EVIDENCE OF MANNION'S BELIEF THAT HIS ACTS WERE**

25  **        LAWFUL IS NOT RELEVANT TO ANY CLAIM OR DEFENSE**

26         Only relevant evidence is admissible.  Fed. R. Evid. 402.  "Evidence is

27  relevant if: (a) it has any tendency to make a fact more or less probable than it

28  would be without the evidence; and (b) the fact is of consequence in determining the

1    action." Fed. R. Evid. 401.  "The elements of a right-of-publicity claim under

2    California common law are: '(1) the defendant's use of the plaintiff's identity; (2)

3    the appropriation of plaintiff's name or likeness to defendant's advantage,

4    commercially or otherwise; (3) lack of consent; and (4) resulting injury.'" *Keller v.*

5    *Elec. Arts Inc.*, 724 F.3d 1268, 1273 (9th Cir. 2013).  "The same claim under

6    California Civil Code § 3344 requires a plaintiff to prove 'all the elements of the

7    common law cause of action' plus 'a knowing use by the defendant [and] a direct

8    connection between the alleged use and the commercial purpose.'" *Id.*

9         Mannion's belief that his conduct was lawful is not relevant to any claim or

10   defense.  To prevail on his claims, Jay-Z need not prove that Mannion knew that his

11   actions were unlawful.  *See* Civ. Code § 3344.  Nor are Mannion's "subjective

12   beliefs" somehow relevant to the question whether he had Jay-Z's consent, because

13   "consent is measured from Plaintiff's manifested action or inaction." *Jones v.*

14   *Corbis Corp.*, 815 F. Supp. 2d 1108, 1114 (C.D. Cal. 2011).  And Mannion's

15   subjective beliefs are not relevant to any of his defenses—such as transformative use

16   or statute of limitations.  Thus, Mannion's testimony that he believed his actions

17   were lawful is not relevant and should be excluded.  *See* Fed. R. Evid. 401, 402.

18   **IV.    EVIDENCE OF MANNION'S BELIEF THAT HIS ACTS WERE**

19          **LAWFUL WILL MISLEAD AND WASTE TIME**

20        "The court may exclude relevant evidence if its probative value is

21   substantially outweighed by a danger of … unfair prejudice, confusing the issues,

22   [and] misleading the jury." Fed. R. Evid. 403.  Unfair prejudice "means an undue

23   tendency to suggest decision on an improper basis." *Shuler v. City of L.A.*, 849 F.

24   App'x 671, 673 (9th Cir. 2021).  The Court should apply this rule here.

25        First, allowing Mannion to testify that he believed his actions were lawful will

26   pose a substantial risk that the factfinder will be misled into incorrectly believing

27   that Jay-Z is required to show that Mannion knew his actions were unlawful, or that

28   Mannion's belief that his actions were lawful is a valid defense.

1    Second, Mannion will confuse the issues and mislead by testifying that he
2   believed he had the right to sell prints "by nature of being the copyright holder."
3   This belief appears to be based on advice—valid or not—that Mannion received
4   about copyright preemption.  But "[w]hether copyright preemption applies is a
5   question of law."  *Ryan v. Editions Ltd. W., Inc.*, 786 F.3d 754, 759 (9th Cir. 2015).
6   Allowing Mannion to introduce this concept to the jury poses a substantial risk that
7   the jury may decide the case "on an improper basis," resulting in unfair prejudice to
8   Jay-Z.  *Shuler*, 849 F. App'x at 673.

9    Third, Mannion will confuse the issues and mislead with his testimony that he
10   believed he had the right to sell merchandise bearing Jay-Z's image because there
11   was an "incredibly small quantity in conjunction with a fine art execution."
12   (Mannion Tr. [Bonfigli Dec. Ex. A] at 103:21-104:23.)  There is no "small quantity"
13   or "fine art" exception to the California common law or statutory right of publicity
14   claims.  Allowing Mannion to introduce these beliefs will pose a substantial risk that
15   the jury may decide the case "on an improper basis."  *Shuler*, 849 F. App'x at 673.

16    Defendants have stated that they are not relying on the advice of counsel and
17   for that reason argued that they had not waived the privilege as to all
18   communications between Defendants and their attorneys about the advice given on
19   this subject, whether it applied to Defendants' specific, actual conduct in this case,
20   or otherwise.  At the same time, Mannion's belief about the supposed lawfulness of
21   his conduct is based on that advice.  He cannot be allowed to testify about his belief,
22   while at the same time foreclosing inquiry into its basis.  *See, e.g.*, *Shared Med.*
23   *Res., LLC V. Histologics*, 2012 WL 5570213, at *2 (C.D. Cal. Nov. 14, 2012) (a
24   party may not use the attorney-client privilege "as both a sword and shield" by
25   "selectively disclos[ing] fragments helpful to its cause [and] entomb[ing] other
26   (unhelpful) fragments, … in that way kidnap the truthseeking process").

27
28

And regardless, any probative value of Mannion's belief that his actions were lawful is substantially outweighed by a risk that the testimony will confuse the issues and mislead the jury, resulting in unfair prejudice to Jay-Z.

## V. <u>CONCLUSION</u>

The Court should exclude all evidence regarding Mannion's claimed belief that his actions were lawful.

**DEFENDANTS' OPPOSITION**

## I.   INTRODUCTION

Defendants Jonathan Mannion and Jonathan Mannion Photography LLC (collectively, "Defendants") hereby submit this opposition to Plaintiff Shawn Carter's ("Plaintiff") motion in limine seeking to exclude "all evidence regarding Jonathan Mannion's claimed belief that his sale of prints and other products depicting people, including Plaintiff, was lawful." Plaintiff's request for exclusion is improper because Plaintiff plans to introduce numerous exhibits at trial to purportedly show that Defendant Mannion knew or should have known his conduct was unlawful—*i.e.*, evidence relating to the same "subjective belief" that is the subject of this motion. While Defendants would agree that such evidence is not relevant, Defendants should not be unilaterally precluded from presenting their own testimony on a topic that Plaintiff has put at issue. Accordingly, Defendant would agree to a mutual exclusion that also prohibits Plaintiff from introducing evidence relating to Defendant Mannion's subjective belief—*i.e.*, what he knew or should have known about the lawfulness of his conduct concerning his sale of prints and other products depicting people, such as Plaintiff—including exclusion of the documents identified below. Otherwise, both the rule of completeness and the rule of curative admissibility require that Defendants be able to introduce their own evidence as to subjective belief. On this basis, Plaintiff's requested relief should be denied—evidence of subjective belief must either all be excluded, or all be admissible.

## II.   RELEVANT BACKGROUND

### A.   The Claims at Issue

Plaintiff asserts claims arising from Defendant Jonathan Mannion Photography LLC's ("JMP") use of eight photographs shot by Defendant Jonathan Mannion ("Mannion") and featuring Plaintiff (the "Disputed Photographs"). First Amended Complaint ("FAC") at ¶ 20-21; PTCO § VI.A. Specifically, Plaintiff

brings right-of-publicity claims over Defendants' licensing of photographs, use of Plaintiff's name, image, and likeness on JMP's website, and sale of fine art prints and other physical items imprinted with the photographs through JMP's own online store and, for the photographic prints, through a photography gallery.  *Id.* ¶ 23.

### B.    Plaintiff's Evidence of Subjective Intent

On or about June 3, 2022, the parties filed their Joint Pre-Trial Exhibit List. Plaintiff's exhibits contain several documents that go to the issue of Defendant Mannion's subjective belief as to the lawfulness of his use of the Disputed Photographs, as well as photographs depicting other artists:  Specifically, these exhibits involve Defendant Mannion's discussions and correspondence concerning obtaining permission or clearance in connection with his photographs:

- JX-54 (Declaration of Lika Miyake ("Miyake Decl.") at Ex. U) – ███ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████ ;

- JX-65 (*Id.* at Ex. V) – Post-it note from JMP employee discussing obtaining approval from record label for use of one of the Photographs;

- JX-93 (*Id.* at Ex. X), 173 (*Id.* Ex. Y)  – August 2013 text message chain between Defendant Mannion and client discussing clearing an image with Plaintiff;

- JX-162 (*Id.* at Ex. Z)  – a September 20, 2010 letter to Defendant Mannion from record label stating it had no objection to use of certain of Plaintiff's album shoots that are not the subject of this case;

- JX-184 (*Id.* at Ex. AA) – 2021 internal strategy memorandum for JMP discussing use of "legally cleared" images;

- JX-185 (*Id.* at Ex. BB) – ██████████████████████████ ████████████████████████████████████

- JX-186 (*Id.* at Ex. CC) – handwritten note on JMP stationery referencing contractual cause and artist likenesses; and

- JX-195 (*Id.* at Ex. DD) –handwritten note from JMP employee seeking clearance for use of images relating to *Reasonable Doubt*.

It appears that Plaintiff will use these documents to argue that Defendant Mannion knew, or should have known, that he was not permitted to make the uses of the Disputed Photographs that are at issue in this action without Plaintiff's consent.

## III.   **ARGUMENT**

### A.    **Evidence Regarding Defendant Mannion's Subjective Belief Is Admissible Because Plaintiff Has Put It at Issue**

Plaintiff seeks to prevent Defendants from presenting evidence as to Defendant Mannion's subjective belief regarding the lawfulness of his conduct on the basis that such evidence is allegedly irrelevant.  But regardless of relevance, because Plaintiff himself intends to broach this subject matter at trial, the evidentiary doctrines of completeness and curative admissibility both require that Defendants be able to testify on this topic.  *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 155, 109 S. Ct. 439, 442, 102 L. Ed. 2d 445 (1988) (common-law rule of completeness requires that "when a party has introduced part of a writing, an adverse party may require the introduction of any other part which ought in fairness to be considered contemporaneously"); *Nguyen v. Sw. Leasing & Rental Inc.*, 282 F.3d 1061, 1067 (9th Cir. 2002) ("the introduction of inadmissible evidence by one party allows an opponent, in the court's discretion, to introduce evidence on the same issue to rebut any false impression that might have resulted from the earlier admission.").

As described above, Plaintiff has indicated his intent to present numerous exhibits which relate to Defendants' clearance of images.  In his responses to Defendants' evidentiary objections, Plaintiff makes clear that this evidence will be

used to show Defendant Mannion's purported awareness that he was obligated to obtain such licenses:

- JX-53: "The document tends to show that ***Defendants…knew*** they were required to seek Plaintiff's consent." Miyake Decl. Ex. JJ (6/3/22 Joint Pre-Trial Exhibit Stipulations) (emphasis added);

- JX-93: The document "tends to prove that Mannion did not have, and ***knew he did not have***, Plaintiff's consent to use Plaintiff's name, image, and likeness." *Id.* (emphasis added);

- JX-173: The document "tends to prove that Mannion did not have, ***and knew he did not have***, Plaintiff's consent to use Plaintiff's name, image, and likeness." *Id.* (emphasis added); and

- JX-184: "To the extent evidence of Mannion's subjective beliefs are permitted, the document is relevant because it tends to show that Mannion ***knew he needed*** to seek a recording artist's permission before using the recording artist's likeness on products." *Id.* (emphasis added).

In short, Plaintiff has signaled his plan to put evidence before the jury indicating, in Plaintiff's interpretation, that Defendant Mannion knew he was not permitted to use the Disputed Photographs without Plaintiff' consent. But if Plaintiff truly believed Defendant Mannion's "subjective belief" is irrelevant to any claims or defenses, then he should not be putting on this evidence. As things stand, Plaintiff is seeking to put on one-sided evidence showing only that Defendant knew or should have known his conduct was unlawful. Regardless of whether or not the topic is relevant, if Plaintiff will be presenting such evidence, then Defendants must also be able to present evidence regarding subjective belief to paint a complete picture and "to rebut any false impression." It would be grossly prejudicial if Plaintiff were able to introduce the above correspondence to the jury, and Defendants had no opportunity to speak to Defendant Mannion's subjective belief

1 and state of mind, which goes to the meaning and context behind the statements

2 upon which Plaintiff would rely.

3       Because Plaintiff has put in evidence regarding Defendant Mannion's

4 subjective belief, Plaintiff cannot simultaneously exclude Defendants' own evidence

5 on this topic.  In light of the evidence which Plaintiff intends to present at trial,

6 Plaintiff's present motion must be denied.

7       **B.**     **Evidence of Defendant Mannion's Subjective Belief Would Not**

8                 **Prejudice the Jury**

9       Permitting Defendants to offer evidence on Defendant Mannion's subjective

10 belief after Plaintiff has already introduced the subject would result in de minimis

11 prejudice.  With respect to Plaintiff's argument that such evidence is misleading

12 because the jury might believe Plaintiff is required to show that Defendant Mannion

13 knew his actions were unlawful, any such confusion will already have been created

14 by Plaintiff's own evidence of Defendant Mannion's subjective belief.  There is no

15 additional confusion in permitting Defendants to present evidence on the same

16 subject—hearing Defendant's side of the argument may clarify issues for the jury.

17       Next, Plaintiff argues the jury may be confused because Defendant Mannion

18 might testify that he had the right to sell prints "by nature of being the copyright

19 holder."  The issue of evidence regarding copyright ownership is addressed in a

20 separate motion in limine brought by Plaintiff and has no bearing upon whether or

21 not Defendants should be permitted to introduce testimony regarding Defendant

22 Mannion's subjective belief as to the lawfulness of his actions.

23       Plaintiff also argues that the jury may be confused if Defendant Mannion

24 were to a repeat a statement made in his deposition testifying that he thought he had

25 the right to sell merchandise because he was only selling a small quantity of fine art,

26 and jurors might believe this was an actual legal exception.  Mot. 4:9-15.  This

27 objection is absurd.  If jurors were inclined to believe that every utterance by a lay

28 witness was a statement of some legal doctrine, then it would be virtually impossible

to have any trials by jury as the risk of confusion would be omnipresent.  The Court will instruct the jury as to the correct legal standards to which they should adhere, and there is no risk of confusion meriting exclusion of Defendants' testimony.

Finally, Plaintiff complains that Defendants are taking a sword-and-shield position by refusing to waive attorney-client privilege as to Defendant Mannion's conversations with counsel upon which his subjective beliefs as to the lawfulness of his conduct were based.  These communications have no relevance whatsoever.  As Plaintiff acknowledges, Defendants are not asserting an advice-of-counsel defense, and will not be putting into evidence any advice from any lawyer.  The substance of these communications is not at issue and there is no basis for waiver of privilege.

**C.     At Minimum, Any Evidentiary Exclusion Must Be Mutual**

To be clear, Defendants have no need to introduce evidence of Defendant Mannion's subjective belief other than to respond to evidence that Plaintiff has put in.  If the Court is inclined to grant Plaintiff's motion in limine, then Defendants respectfully request that the Court impose a similar restriction upon Plaintiff in the interest of fairness—namely, that the Court prohibit all evidence regarding Defendant Mannion's alleged subjective belief regarding the lawfulness of his sale of prints and other products depicting people, including Plaintiff.[1]

**IV.    <u>CONCLUSION</u>**

For the foregoing reasons, Defendants respectfully request that Plaintiff's motion to exclude all evidence regarding Jonathan Mannion's claimed belief that his sale of prints and other products depicting persons, including Plaintiff, was lawful,

---

[1] Such an exclusion would encompass all of the documents cited herein (*viz.*, JX-54, JX-65, JX-93, JX-162, JX-173, JX-184, JX-185, JX-186, JX-195).  While Plaintiff's responses to evidentiary objections indicate that he would be agreeable to a mutual exclusion with respect to certain exhibits (*e.g.*, JX-184, JX-210), this list is underinclusive.

1   be denied.  In the alternative, any exclusionary order should be mutual and prevent
2   both Plaintiff and Defendants from introducing evidence on this topic.

3

4

5   DATED:  June 17, 2022          WILLENKEN LLP

6

7                                          By /s/ Paul J. Loh
8                                             Paul J. Loh
                                              Lika C. Miyake
9                                             Kenneth M. Trujillo-Jamison

10                                         ROCKSTONE LEGAL
11                                         Sarah Hsia (*pro hac vice*)

12                                         PAUL HASTINGS LLP
13                                         Steven A. Marenberg
                                           *Attorneys for Defendants*
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S REPLY**

Defendants' opposition confirms that Plaintiff's motion should be granted.

**A.     Defendants agree that Mannion's subjective beliefs are irrelevant.**

In the first paragraph of their opposition, Defendants concede that Mannion's testimony that he believed his actions were lawful "is not relevant." *Supra* at 6.  To that end, Defendants recently said that Mannion will not testify that he believed his conduct was lawful, and Plaintiff withdrew the documents on the exhibit list related solely to that issue.  Bonfigli Dec. ¶¶ 7-9.  That is all the Court needs to know to grant Plaintiff's motion to ensure that the testimony has been excluded.  Defendants should not have opposed this motion.  The Court need not address any other issue.

**B.     Defendants confuse subjective belief with consent.**

Defendants object to 8 exhibits that they say go to Mannion's subjective beliefs.  *Supra* at 7-8.  In effect, Defendants attempt to hijack Plaintiff's motion to turn it into their own fifth motion in limine.  The Court should reject Defendants' attempt to do so: It violates the Court's order that parties "must obtain the Court's permission" before filing more than four motions in limine.  ECF No. 52 at 8.

In any event, Defendants' list is defective.  The documents are relevant to issues other than whether Mannion believed his conduct was lawful.  Many show that Defendants did not have Plaintiff's consent to use his name, image, and likeness (NIL).  That is an element of Plaintiff's claims.  CACI 1803, 1804A.  Indeed, Defendants ignore clear statements from Plaintiff that certain exhibits show that "Mannion did not have … Plaintiff's consent." *Supra* at 9.  The other exhibits rebut Defendants' assertions of copyright ownership.  As shown below, the exhibits that Plaintiff has not withdrawn are relevant to issues in this case and should not be excluded:

1.     **Consent Documents (Joint Ex. Nos. 54, 93, 184, 186).** ████████

███████████████████████████████████████████████████████████

████████████████████████████████████, Miyake Dec. Ex. U

-13-

1   at '695-96, ████████████████████████████████████████████████

2   ████████████████████. JX-93 shows Mannion asked one of Plaintiff's friends to

3   "clear an image with Jay to be used on … Esquire TV" because there was "a

4   'likeness' situation." Miyake Dec. Ex. X at '709.  And Mannion told Esquire TV it

5   "had to get … clearance[]." *Id.*  JX-184 shows Mannion planned to propose a

6   partnership with Plaintiff's company, Roc Nation, to sell garments bearing

7   Plaintiff's likeness. Miyake Dec. Ex. AA at '337.  JX-186 is a handwritten note on

8   Mannion letterhead that references Jay-Z photos and states, "clause in contract – not

9   responsible for likeness of artist – my disclaimer to usage." Miyake Dec. Ex. CC.

10  These exhibits show that Defendants did not have Plaintiff's consent to use his NIL.

11       2.     **Copyright Documents (Joint Ex. Nos. 65, 162, 195).**  JX-65 is a

12  handwritten note on Mannion letterhead that states Plaintiff's record label, Def Jam,

13  "own[s]" the "cover [photo] of Reasonable Doubt." Miyake Dec. Ex. V.  JX-162

14  shows Mannion sought approval from Def Jam before allowing a book publisher to

15  use photos of Plaintiff. Miyake Dec. Ex. Z. ████████████████████████████

16  ████████████████████████████████████████████████████████████████████

17  ████████████████████████████ Miyake Dec. Ex. BB.  JX-195 is a handwritten

18  note on Mannion letterhead showing that Defendants sought clearance from Def

19  Jam before using Jay-Z photos. Miyake Dec. Ex. DD.  As explained in Plaintiff's

20  MIL No. 1, this Court should exclude all evidence of copyright ownership and

21  licensing because it is irrelevant.  But if that evidence is allowed, these exhibits

22  rebut Mannion's assertions of ownership.

23       C.     <u>**Mannion's "belief" would confuse the jury.**</u>

24       Defendants concede that testimony from Mannion about his subjective beliefs

25  will result in "de minimis prejudice." *Supra* at 10.  Thus, the danger of unfair

26  prejudice outweighs the testimony's probative value because Defendants admit that

27  the testimony has zero probative value. *Supra* at 6.  Therefore, the Court can grant

28  Plaintiff's motion based on Rule 403 too.

1

## <u>CONCLUSION</u>

2

The Court should grant Plaintiff's Motion in Limine No. 4.

3

4 DATED:  June 17, 2022

QUINN EMANUEL URQUHART
& SULLIVAN, LLP

5

6

7

By /s/ Robert M. Schwartz

8

Alex Spiro (*pro hac vice*)
Robert M. Schwartz
Cory D. Struble
Dylan C. Bonfigli
*Attorneys for Plaintiff*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF DYLAN C. BONFIGLI

I, Dylan C. Bonfigli, declare as follows:

1. I am an attorney admitted to practice before this Court. I am associated with Quinn Emanuel Urquhart & Sullivan, LLP, counsel of record for Plaintiff Shawn Carter, professionally known as Jay-Z. I make this declaration in support of Plaintiff's Motion in Limine No. 4. I make this declaration on personal, firsthand knowledge, and if called and sworn as a witness, I could and would testify competently to the facts set forth below.

2. Plaintiff's Motion in Limine No. 4 seeks to exclude all evidence regarding Jonathan Mannion's claimed belief that his sale of prints and other products depicting persons, including Plaintiff, was lawful.

3. The subject matter of Plaintiff's Motion in Limine No. 4 has been discussed with opposing counsel, and opposing counsel has indicated that such matter may be mentioned or displayed in the presence of the jury before it is admitted in evidence and has refused to stipulate that such matter will not be mentioned or displayed in the presence of the jury unless and until it is admitted in evidence.

4. Plaintiff will be prejudiced if the Plaintiff's Motion in Limine No. 4 is not granted because evidence regarding Mannion's claimed belief that his sale of prints and other products depicting persons, including Plaintiff, was lawful is not relevant and, if presented, it will likely cause unfair prejudice to Plaintiff, confuse the issues, mislead the jury, and waste trial time. As stated in Plaintiff's Motion in Limine No. 4, Mannion's testimony that he believed his actions were lawful may mislead the factfinder into incorrectly believing that Plaintiff is required to show that Mannion knew his actions were unlawful or that Mannion's belief that his actions were lawful is a valid defense.

5. Attached as **Exhibit A** is a true and correct copy of excerpts from the deposition of Jonathan Mannion taken on March 13, 2022.

6.      Attached as **Exhibit B** is a true and correct copy of an email chain between counsel for the parties.  In a March 23, 2022 email, defense counsel states, "We have made clear that Defendants have not asserted an advice of counsel defense and will not otherwise rely on evidence about privileged communications." When the parties met and conferred on May 20, 2022, defense counsel again said that Mannion would not testify about advice he received from counsel.  But defense counsel stated that Mannion intended to testify that he believed his actions were lawful.

7.      On June 10, 2022, I informed defense counsel via email that Plaintiff withdrew Joint Exhibit Nos. 209, 210, 221, and 231.

8.      On June 11, 2022, I informed defense counsel via email that Plaintiff withdrew Joint Exhibit Nos. 53 and 92.

9.      On June 17, 2022, I informed defense counsel via email that Plaintiff withdrew Joint Exhibit No. 220.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on June 17, 2022, at Los Angeles, California.


By   _/s/ Dylan C. Bonfigli_
      Dylan C. Bonfigli

## **ATTESTATION STATEMENT**

I, Robert M. Schwartz, the filer of this Joint Motion in Limine, attest pursuant to Civil L.R. 5-4.3.4(a)(2) that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

DATED:  June 17, 2022

QUINN EMANUEL URQUHART
& SULLIVAN, LLP

By /s/ Robert M. Schwartz
Robert M. Schwartz
*Attorneys for Plaintiff*

# Exhibit A

Excerpts from the March 13, 2022
Deposition of Jonathan Mannion

CONFIDENTIAL UNDER THE TERMS OF PROTECTIVE ORDER

```
1    **CONFIDENTIAL UNDER THE TERMS OF PROTECTIVE ORDER**

2                   UNITED STATES DISTRICT COURT

3                  FOR THE DISTRICT OF CALIFORNIA

4

5

6    _____
                            )
7    SHAWN CARTER, also known )
     as JAY-Z,                )
8                             )
              Plaintiff,      )
9                             )
        vs.                   ) Civil Action No.
10                            ) 2:21-cv-04848-PA-KS
     JONATHAN MANNION,        )
11   et al.,                  )
                              )
12            Defendants.     )
     _____)

13

14

15

16        VIDEOTAPED DEPOSITION OF JONATHAN MANNION

17                 Jersey City, New Jersey

18                 Sunday, March 13, 2022

19                      Volume I

20

21

22   Reported by:
     LORI M. BARKLEY
23   CSR No. 6426
24   Job No. 5131261
25   PAGES 1 - 300

                                          Page 1
```

CONFIDENTIAL UNDER THE TERMS OF PROTECTIVE ORDER

```
 1    that day.                                           08:36:26
 2        Q.   So that means therefore that not only is   08:36:26
 3    there no signed contract by Mr. Carter authorizing  08:36:28
 4    you to sell copies of the photographs you took during 08:36:31
 5    the Reasonable Doubt photo shoot, there's no contract 08:36:34
 6    that authorizes you to spell any merchandise that   08:36:38
 7    incorporates any of the images you took during that 08:36:40
 8    photo shoot, correct?                               08:36:43
 9        A.   Well, sort of going back to my point, by   08:36:50
10    nature of me creating these images that copyright   08:36:52
11    would belong to me and those agreements wouldn't be 08:36:54
12    applicable.   The agreements would have further     08:36:58
13    clarified the usage that -- that would be controlled, 08:37:00
14    had there been language, but there was no contract to 08:37:05
15    be --                                               08:37:10
16        Q.   I want to make sure I understand what you're 08:37:10
17    telling me.   You're talking -- in your answer you're 08:37:13
18    talking about something, you used the term          08:37:15
19    "copyright."                                        08:37:19
20        A.   Um-hmm.                                    08:37:19
21        Q.   Correct?                                   08:37:20
22        A.   Yeah.   The images would belong to me.     08:37:21
23        Q.   Okay.                                      08:37:25
24        A.   He --                                      
25             (Speaking simultaneously.)                 
```

Page 61

CONFIDENTIAL UNDER THE TERMS OF PROTECTIVE ORDER

| | | |
|---|---|---|
| 1 | gave you his permission to sell any of the Jay-Z | 09:28:06 |
| 2 | items, correct? | 09:28:09 |
| 3 | A.   There was no direct conversation that he had | 09:28:14 |
| 4 | that gave me that permission. | 09:28:17 |
| 5 | Q.   Was there some indirect or less than direct | 09:28:20 |
| 6 | conversation you had with Mr. Carter in which he gave | 09:28:24 |
| 7 | you his permission to sell any of the Jay-Z items? | 09:28:28 |
| 8 | A.   I mean, the only thing I would say is that | 09:28:33 |
| 9 | the images were out there and well-known.  Nothing | 09:28:34 |
| 10 | was sort of being hidden from plain sight.  And | 09:28:37 |
| 11 | again, I thought that I had the right to do it, but | 09:28:42 |
| 12 | they were -- they were certainly known and out there | 09:28:47 |
| 13 | for all to see and witness. | 09:28:49 |
| 14 | So I don't know whether that gives any kind | 09:28:52 |
| 15 | of, like, there was no issue that came from it, but | 09:28:54 |
| 16 | no, there was no direct conversation with him. | 09:29:00 |
| 17 | Q.   So just to be clear, Mr. Carter never gave | 09:29:03 |
| 18 | you his permission to sell any of the Jay-Z items, | 09:29:06 |
| 19 | correct? | 09:29:09 |
| 20 | A.   There was no permission given. | 09:29:10 |
| 21 | Q.   And you've said that you thought that you | 09:29:12 |
| 22 | had the right to sell the Jay-Z items; is that | 09:29:22 |
| 23 | correct? | 09:29:32 |
| 24 | A.   Yeah.  The prints for sure.  You know, fine | 09:29:32 |
| 25 | art prints, it's within a photographer's right to be | 09:29:36 |

Page 97

CONFIDENTIAL UNDER THE TERMS OF PROTECTIVE ORDER

| | | |
|---|---|---|
| 1 | able to sell fine art prints.  So it's sort of why I | 09:29:38 |
| 2 | guess I asked before for that distinction. | 09:29:42 |
| 3 | And then the other four items that I believe | 09:29:46 |
| 4 | you brought to my attention, I do feel fall within, | 09:29:48 |
| 5 | you know, a range of items that commemorated a moment | 09:29:53 |
| 6 | that was a fine art kind of celebration.  So -- so | 09:30:01 |
| 7 | again, for -- and forgive me if I forgot the origin | 09:30:06 |
| 8 | of the question, but you know, that was really the | 09:30:10 |
| 9 | reason why I didn't bring them to his attention. | 09:30:12 |
| 10 | Q.   The reason being you thought you had the | 09:30:21 |
| 11 | right to do it? | 09:30:22 |
| 12 | A.   Correct. | 09:30:23 |
| 13 | Q.   All right.  What was the source of your | 09:30:24 |
| 14 | understanding that you had the right as the | 09:30:25 |
| 15 | photographer of photographs of Mr. Carter to sell | 09:30:28 |
| 16 | prints of those photographs without getting his | 09:30:34 |
| 17 | permission? | 09:30:37 |
| 18 | A.   Just by nature of being the copyright | 09:30:38 |
| 19 | holder. | 09:30:40 |
| 20 | Q.   Did you have a discussion with an attorney | 09:30:41 |
| 21 | who told you that by virtue of being the copyright | 09:30:45 |
| 22 | holder of the photographs you took of Mr. Carter, you | 09:30:51 |
| 23 | did not need Mr. Carter's permission to sell prints | 09:30:54 |
| 24 | of those photographs? | 09:30:58 |
| 25 | A.   I did. | 09:30:59 |

Page 98

CONFIDENTIAL UNDER THE TERMS OF PROTECTIVE ORDER

| | | |
|---|---|---|
| 1 | copyright holder, and I think even at that time we | 09:32:26 |
| 2 | registered the copyright through Loeb & Loeb at that | 09:32:28 |
| 3 | time. | 09:32:30 |
| 4 | So during that discussion there was a | 09:32:30 |
| 5 | general engaging of what I was able to do still | 09:32:32 |
| 6 | without -- still not really having the intention, | 09:32:37 |
| 7 | like, I'm a photographer that wants to make work. | 09:32:40 |
| 8 | I'm not in, like, the merch business or the | 09:32:42 |
| 9 | merchandise business, if we give it its full name. | 09:32:48 |
| 10 | I just wanted to know what the rights were | 09:32:51 |
| 11 | and these are -- you know, I'm constantly trying to | 09:32:53 |
| 12 | understand the nuances of the law to -- to play fair | 09:32:55 |
| 13 | with everybody.  I mean, there's a lot to move with | 09:33:01 |
| 14 | integrity and I think I've lasted this long because | 09:33:05 |
| 15 | of that reason. | 09:33:07 |
| 16 | Q.   What year did Steve Saltzman of Loeb & Loeb | 09:33:14 |
| 17 | advise you that you did not need Mr. Carter's | 09:33:17 |
| 18 | permission to sell prints of photographs of him? | 09:33:20 |
| 19 | A.   It wasn't specifically about -- about Jay-Z. | 09:33:23 |
| 20 | You know, it was a general as the copyright holder | 09:33:25 |
| 21 | you are able to sell and do the following things. | 09:33:28 |
| 22 | Right.  It wasn't specifically about Jay, it | 09:33:34 |
| 23 | was just about the general ability to sell prints, | 09:33:37 |
| 24 | when you create them and you own the copyright, | 09:33:40 |
| 25 | you're able to sell fine art print. | 09:33:42 |

Page 100

CONFIDENTIAL UNDER THE TERMS OF PROTECTIVE ORDER

| | | |
|---|---|---|
| 1 | And that was an understanding that's being | 09:33:45 |
| 2 | reinforced with a number of different attorneys along | 09:33:46 |
| 3 | the way, just as I know laws continue to kind of | 09:33:48 |
| 4 | move, and always want to be -- to make sure that I'm | 09:33:52 |
| 5 | doing it -- doing it respectfully. | 09:33:55 |
| 6 | Q.    Okay.   In what year did Mr. Steve Saltzman | 09:34:01 |
| 7 | give you the advice that you did not need permission | 09:34:03 |
| 8 | from the subjects of your photographs to sell prints | 09:34:07 |
| 9 | of those photos? | 09:34:08 |
| 10 | A.    I believe that it was registered in 2012. | 09:34:13 |
| 11 | Again, there's probably documentation to support, so | 09:34:16 |
| 12 | around -- in or around that time. | 09:34:18 |
| 13 | Q.    And you said other lawyers, if I'm hearing | 09:34:23 |
| 14 | you correctly, have told you since 2012 besides | 09:34:27 |
| 15 | Mr. Steve Saltzman that you did not need permission | 09:34:30 |
| 16 | from the people you were photographing in order to | 09:34:36 |
| 17 | sell copies of photographs depicting them. | 09:34:39 |
| 18 | Were there other lawyers who have told you | 09:34:41 |
| 19 | that? | 09:34:43 |
| 20 | A.    Yeah.   There's been informal conversations, | 09:34:43 |
| 21 | you know, along the way, like, you're allowed to do | 09:34:48 |
| 22 | that.   As a copyright holder you can sell fine art | 09:34:50 |
| 23 | prints and -- | 09:34:53 |
| 24 | Q.    And you've acted in reliance -- you've acted | 09:34:54 |
| 25 | in selling the photographs of Mr. Carter on your | 09:34:57 |

Page 101

CONFIDENTIAL UNDER THE TERMS OF PROTECTIVE ORDER

| | | |
|---|---|---|
| 1 | website and elsewhere, you've acted in reliance on | 09:35:01 |
| 2 | that advice from Mr. Saltzman and others, correct? | 09:35:03 |
| 3 | A.   Yeah.   I certainly would trust what they're | 09:35:08 |
| 4 | telling me, you know. | 09:35:11 |
| 5 | Q.   And can you identify for us by name any of | 09:35:14 |
| 6 | the other lawyers who have given you this advice? | 09:35:16 |
| 7 | A.   Not offhand.   Not offhand, only because I've | 09:35:29 |
| 8 | forgotten his first name, but Greenberg was an | 09:35:32 |
| 9 | attorney that I was discussing.   But I'm sorry, I | 09:35:35 |
| 10 | don't have his first name right now. | 09:35:38 |
| 11 | Q.   Has Sarah given you that advice? | 09:35:39 |
| 12 | A.   I assume you're referring to my sort of | 09:35:49 |
| 13 | day-to-day counsel who is on this call? | 09:35:50 |
| 14 | Yes.   I believe that she has offered me that | 09:35:52 |
| 15 | same perspective. | 09:35:56 |
| 16 | Q.   Okay.   Whether -- now, have any of the | 09:36:03 |
| 17 | lawyers that you've spoken with to get advice on | 09:36:06 |
| 18 | whether -- on the uses to which you could -- let me | 09:36:08 |
| 19 | start again. | 09:36:12 |
| 20 | Have any of the lawyers you've spoken with | 09:36:12 |
| 21 | about the commercial uses or other uses you can make | 09:36:14 |
| 22 | of photographs you've taken without getting | 09:36:19 |
| 23 | permission from the people depicted in those | 09:36:22 |
| 24 | photographs extended beyond just selling prints of | 09:36:26 |
| 25 | those photographs, but to selling merchandise based | 09:36:29 |

Page 102

CONFIDENTIAL UNDER THE TERMS OF PROTECTIVE ORDER

| | | |
|---|---|---|
| 1 | on those photographs? | 09:36:32 |
| 2 | A.   I think there was an understanding that | 09:36:40 |
| 3 | moving into merch brings up another layer of | 09:36:41 |
| 4 | conversation that should be had, right, and it was a | 09:36:44 |
| 5 | general comment versus anything specific to | 09:36:49 |
| 6 | Mr. Carter. | 09:36:54 |
| 7 | Q.   I understand that we're talking outside of | 09:36:55 |
| 8 | Mr. Carter specifically. | 09:36:58 |
| 9 | A.   Okay. | 09:36:59 |
| 10 | Q.   Right.  I understand from your answers to | 09:37:00 |
| 11 | that. | 09:37:02 |
| 12 | But my question is -- well, let me make sure | 09:37:02 |
| 13 | I understand your answer. | 09:37:07 |
| 14 | You've said I think there was an | 09:37:08 |
| 15 | understanding that moving into merch, merchandise, | 09:37:09 |
| 16 | brings up another layer of conversation that should | 09:37:13 |
| 17 | be had.  And I just want to make sure I understand or | 09:37:16 |
| 18 | somebody reading this will understand what you meant | 09:37:22 |
| 19 | by that. | 09:37:24 |
| 20 | A.   Sure. | 09:37:25 |
| 21 | Q.   What did you mean by "brings up another | 09:37:25 |
| 22 | layer of conversation that should be had"? | 09:37:27 |
| 23 | A.   Well, look, you know, I'm not a lawyer which | 09:37:33 |
| 24 | is why I rely on people to kind of give me that | 09:37:35 |
| 25 | information, but, you know, for me I don't want to do | 09:37:38 |

Page 103

CONFIDENTIAL UNDER THE TERMS OF PROTECTIVE ORDER

| | | |
|---|---|---|
| 1 | anything outside of what an artist would want.  So in | 09:37:43 |
| 2 | the case of moving -- sorry, of selling items in sort | 09:37:47 |
| 3 | of massive quantity, moving into like the intention | 09:37:56 |
| 4 | of making a number of say garments with a person's | 09:37:59 |
| 5 | face on, I would contact the artist just out of like | 09:38:03 |
| 6 | best practice. | 09:38:10 |
| 7 | You know, because merch, merchandise for | 09:38:11 |
| 8 | sale, like if you were selling it at Target or Urban | 09:38:15 |
| 9 | Outfitters or something, that's a different | 09:38:20 |
| 10 | conversation to be had. | 09:38:22 |
| 11 | You know, the ways that I have utilized, | 09:38:25 |
| 12 | using specifically with Jay-Z or his name, have been | 09:38:31 |
| 13 | in conjunction with what I understand to be within | 09:38:36 |
| 14 | sort of my rights to do, but also not with the | 09:38:40 |
| 15 | intention of like mass producing these things. | 09:38:44 |
| 16 | I mean, these were items, you know, less | 09:38:49 |
| 17 | than 30 pieces created, you know, so incredibly small | 09:38:51 |
| 18 | quantity in conjunction with a fine art execution. | 09:38:57 |
| 19 | So but moving into, you know, certainly I | 09:39:01 |
| 20 | know the merchandise business, if you're moving into, | 09:39:03 |
| 21 | you know, tons of units and big buys would require a | 09:39:07 |
| 22 | different approval from the artist or the -- as the | 09:39:14 |
| 23 | case may be. | 09:39:21 |
| 24 | Q.   So is it correct, then, that you've | 09:39:23 |
| 25 | understood since you've taken the photographs of | 09:39:25 |

Page 104

CONFIDENTIAL UNDER THE TERMS OF PROTECTIVE ORDER

| | | |
|---|---|---|
| 1 | Q.   All right.  Let's go back to the Reasonable | 12:12:15 |
| 2 | Doubt.  That was in 1996, correct? | 12:12:18 |
| 3 | A.   That's correct. | 12:12:20 |
| 4 | Q.   And at that point you were -- that was your | 12:12:20 |
| 5 | first photo shoot for purposes of making a cover of a | 12:12:25 |
| 6 | record album, right? | 12:12:27 |
| 7 | A.   A specific album cover, yes.  There were | 12:12:30 |
| 8 | covers of like singles and that and magazine covers | 12:12:34 |
| 9 | prior, but that was the first album cover. | 12:12:37 |
| 10 | Q.   When you were hired to -- for the Reasonable | 12:12:40 |
| 11 | Doubt photo shoot, is it correct that you understood | 12:12:44 |
| 12 | that the photos you would be taking would be used to | 12:12:46 |
| 13 | promote Mr. Carter, Jay-Z and his music? | 12:12:51 |
| 14 | A.   For Reasonable Doubt at that time was what I | 12:12:58 |
| 15 | understood the usage to be. | 12:13:00 |
| 16 | Q.   So in other words, the answer is yes, you | 12:13:01 |
| 17 | understood at the time you took the Reasonable Doubt | 12:13:03 |
| 18 | photo shoot that the photos were going to be used to | 12:13:06 |
| 19 | promote the Reasonable Doubt album by Mr. Carter? | 12:13:09 |
| 20 | A.   Yes.  I -- I understood that.  Sorry to talk | 12:13:14 |
| 21 | over you. | 12:13:17 |
| 22 | MR. SCHWARTZ:  And let's, Dylan, I'd like to | 12:13:19 |
| 23 | mark what, Dylan, you may have in the folder as 71A | 12:13:31 |
| 24 | and B.  I'm not sure why it's an "A" and a "B." | 12:13:36 |
| 25 | Q.   But I want to show you a portion of a video | 12:13:39 |

Page 166

CONFIDENTIAL UNDER THE TERMS OF PROTECTIVE ORDER

| | | |
|---|---|---|
| 1 | Do you see that? | 14:16:43 |
| 2 | A.   Yes, I do see that. | 14:16:47 |
| 3 | Q.   And was that a true statement or were those | 14:16:49 |
| 4 | true statements when you wrote those? | 14:16:51 |
| 5 | A.   I think I underestimated.  I think there | 14:16:52 |
| 6 | were more images closer to 17,000 for Jay-Z projects. | 14:16:54 |
| 7 | Q.   Okay.  Other than the fact that you believe | 14:17:02 |
| 8 | maybe the 10,000 is closer to 17,000 photos, are the | 14:17:09 |
| 9 | rest of the statements in the portion of this text | 14:17:13 |
| 10 | that I read to you correct? | 14:17:15 |
| 11 | A.   Yes.  It -- the top choices would have also | 14:17:20 |
| 12 | increased, I think it was just a rough number, but | 14:17:23 |
| 13 | everything else is correct. | 14:17:27 |
| 14 | Q.   All right.  And okay -- all right.  Let's | 14:17:32 |
| 15 | move on. | 14:17:40 |
| 16 | Now, as you sit here today, do you | 14:17:41 |
| 17 | understand that Jay-Z wants you to stop selling | 14:17:43 |
| 18 | prints of the photos you took of him? | 14:17:47 |
| 19 | A.   You know, I don't know what he wants. | 14:17:50 |
| 20 | Because he's never made that entirely clear.  I | 14:17:52 |
| 21 | think -- I've been told that -- I've been told a | 14:17:59 |
| 22 | number of things.  And we've offered a number of | 14:18:05 |
| 23 | things in response, but I don't know what he wants to | 14:18:09 |
| 24 | be honest. | 14:18:11 |
| 25 | Q.   Well, I could show you if it would be | 14:18:11 |

Page 243

CONFIDENTIAL UNDER THE TERMS OF PROTECTIVE ORDER

1          I declare under penalty of

2       perjury under the laws of the State

3       of California that the foregoing is

4       true and correct.

5         Executed on _____, 2022, at

6     _____, _____.

7

8

9

10     _____

11         SIGNATURE OF WITNESS

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 296

CONFIDENTIAL UNDER THE TERMS OF PROTECTIVE ORDER

1    STATE OF CALIFORNIA        ) ss.

2    COUNTY OF LOS ANGELES      )

3

4            I, Lori M. Barkley, CSR No. 6426, do hereby

5    certify:

6            That the foregoing deposition testimony

7    taken before me at the time and place therein set

8    forth and at which time the witness was administered

9    the oath;

10           That the testimony of the witness and all

11   objections made by counsel at the time of the

12   examination were recorded stenographically by me, and

13   were thereafter transcribed under my direction and

14   supervision, and that the foregoing pages contain a

15   full, true and accurate record of all proceedings and

16   testimony to the best of my skill and ability.

17           I further certify that I am neither counsel

18   for any party to said action, nor am I related to any

19   party to said action, nor am I in any way interested

20   in the outcome thereof.

21           IN WITNESS WHEREOF, I have subscribed my

22   name this 15th day of March, 2022.

23

24

25           LORI M. BARKLEY, CSR No. 6426

                                        Page 297

# Exhibit B

March 23, 2022 Email from
Defense Counsel to Bonfigli

## Dylan Bonfigli

| | |
|---|---|
| **From:** | Kirby Hsu <khsu@willenken.com> |
| **Sent:** | Wednesday, March 23, 2022 7:47 PM |
| **To:** | Dylan Bonfigli; Kenneth Trujillo-Jamison; Paul Loh; Lika C. Miyake; stevenmarenberg@paulhastings.com; kiauraclark@paulhastings.com; Sarah Hsia |
| **Cc:** | Alex Spiro; Robert Schwartz; Cory Struble |
| **Subject:** | RE: [EXTERNAL] Shawn Carter v. Jonathan Mannion et al, C.D. Cal., 2:21-cv-04848-PA-KS |

[EXTERNAL EMAIL from khsu@willenken.com]

Cory, Dylan,

Thank you for meeting and conferring with us this afternoon. As discussed, we are responding in writing to your March 21 email.

We will not produce any privileged material that Mr. Mannion did not disclose at deposition. As pointed out during our call, FRE 502(a) and cases about the rule make clear that a broad subject matter waiver covering undisclosed privileged material is the exception. It occurs only when the disclosing party intends to use privilege as both a sword and a shield by selectively presenting evidence of protected materials. *See Dynetix Design Sols. Inc. v. Synopsys Inc.*, 2013 WL 3584994, at *2 (N.D. Cal. July 11, 2013). We have made clear that Defendants have not asserted an advice of counsel defense and will not otherwise rely on evidence about privileged communications. Thus, the waiver here is limited to what Mr. Mannion disclosed.

We also will not produce any material protected by the work product doctrine, which are outside of Mr. Mannion's disclosure. Indeed, your March 16 email rightly pointed out that he "was specific" in disclosing that, beginning in 2012, he received legal advice orally from three attorneys about whether he could sell prints of or merchandise with photographs to which he holds the copyrights (i.e., photographs that he took), without permission from photographed individuals. The disclosed communications necessarily were made before Mr. Mannion decided to sell anything with the photographs at issue and before the dispute that led to this lawsuit arose.

While Mr. Mannion disclosed only oral communications, we are willing to search his emails for communications with the domains in column A (from our March 18 email), plus the terms in column B and most of the terms that you propose adding. The terms we will not use are "Saltzman," "Hsia," or "Greenberg," which necessarily would cover all communications involving those attorneys.

We will produce documents collected from the search to the extent those documents: (a) fall within the scope of the limited privilege waiver, (b) are responsive to Plaintiff's document requests, and (c) were made between Jan. 1, 2012, and June 14, 2021. If there are documents outside of the search results that Defendants are aware of and that fit these criteria, we will produce them too. Given the broad additional terms that you have proposed and that we will use, we anticipate producing these documents by April 8.

Kirby

---

**From:** Dylan Bonfigli <dylanbonfigli@quinnemanuel.com>
**Sent:** Tuesday, March 22, 2022 3:09 PM
**To:** Kirby Hsu <khsu@willenken.com>; Kenneth Trujillo-Jamison <ktrujillo-jamison@willenken.com>; Paul Loh <ploh@willenken.com>; Lika C. Miyake <lmiyake@willenken.com>; stevenmarenberg@paulhastings.com; kiauraclark@paulhastings.com; Sarah Hsia <sarah@rockstonelegal.com>

**Cc:** Alex Spiro <alexspiro@quinnemanuel.com>; Robert Schwartz <robertschwartz@quinnemanuel.com>; Cory Struble <corystruble@quinnemanuel.com>
**Subject:** RE: [EXTERNAL] Shawn Carter v. Jonathan Mannion et al, C.D. Cal., 2:21-cv-04848-PA-KS

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Hi Kirby, we are available at 2:30 pm PT tomorrow.

**Dylan Bonfigli**
*Associate*
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
443-370-6747 Cell
213-443-3610 Direct
213-443-3000 Main Office Number
213-443-3100 Fax
dylanbonfigli@quinnemanuel.com
www.quinnemanuel.com

---

**From:** Kirby Hsu <khsu@willenken.com>
**Sent:** Tuesday, March 22, 2022 2:57 PM
**To:** Dylan Bonfigli <dylanbonfigli@quinnemanuel.com>; Kenneth Trujillo-Jamison <ktrujillo-jamison@willenken.com>; Paul Loh <ploh@willenken.com>; Lika C. Miyake <lmiyake@willenken.com>; stevenmarenberg@paulhastings.com; kiauraclark@paulhastings.com; Sarah Hsia <sarah@rockstonelegal.com>
**Cc:** Alex Spiro <alexspiro@quinnemanuel.com>; Robert Schwartz <robertschwartz@quinnemanuel.com>; Cory Struble <corystruble@quinnemanuel.com>
**Subject:** RE: [EXTERNAL] Shawn Carter v. Jonathan Mannion et al, C.D. Cal., 2:21-cv-04848-PA-KS

[EXTERNAL EMAIL from khsu@willenken.com]

---

Dylan, we request a call to meet and confer on this issue. Please let us know when you are available tomorrow or Thursday to discuss.

Kirby

---

**From:** Dylan Bonfigli <dylanbonfigli@quinnemanuel.com>
**Sent:** Monday, March 21, 2022 3:01 PM
**To:** Kirby Hsu <khsu@willenken.com>; Kenneth Trujillo-Jamison <ktrujillo-jamison@willenken.com>; Paul Loh <ploh@willenken.com>; Lika C. Miyake <lmiyake@willenken.com>; stevenmarenberg@paulhastings.com; kiauraclark@paulhastings.com; Sarah Hsia <sarah@rockstonelegal.com>
**Cc:** Alex Spiro <alexspiro@quinnemanuel.com>; Robert Schwartz <robertschwartz@quinnemanuel.com>; Cory Struble <corystruble@quinnemanuel.com>
**Subject:** [EXTERNAL] Shawn Carter v. Jonathan Mannion et al, C.D. Cal., 2:21-cv-04848-PA-KS

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Kirby, thank you for your email.

First, we do not agree with Defendants attempt to limit the scope of their search to documents "with legal advice" and that address "photographs to which Mannion holds the copyrights."  To be clear, we expect Mr. Mannion to search for and produce all documents and communications, without date limitation, that

constitute, refer, or relate to any advice that Mr. Mannion has received from any attorney, including, without limitation, Ms. Hsia, Stephen Saltzman, Joel L. Hecker, Edward Greenberg, and Damali Peterman, regarding his rights, or lack thereof, to sell prints of, or merchandise bearing, any photograph that is in his possession custody or control, irrespective whether he holds the copyright to such photograph (the "Responsive Documents").  Please confirm that Defendants will carry out a search for and produce any Responsive Documents.

Second, your email states that "there is no need for additional custodians."  Please confirm that Mr. Mannion has copies of any and all Responsive Documents.  Otherwise, Mr. Mannion is obligated to obtain the Responsive Documents from his attorneys.

Third, your email states that Mr. Mannion "received the legal advice from three attorneys" and then identifies search terms that Defendants propose using to "collect documents."  To be clear, to the extent Defendants are aware of Responsive Documents that are in Mr. Mannion's (or his attorneys') possession, custody, or control, those documents must be produced whether or not they are responsive to any search terms.  Please confirm that Defendants will produce all Responsive Documents of which they are aware, whether or not they are responsive to search terms.

As to the proposed search terms, your email states that Defendants will "collect documents by running searches using combinations of columns A and B."  Please clarify how Defendants intend to use the search terms in columns A and B, and as to which custodians' documents those search terms will be used.  For example, do Defendants intend to search Mr. Mannion's emails to or from the domains in column A by using the search terms in column B?

Also, we do not believe that the search terms below are sufficient and propose that Defendants run the following search terms against Mr. Mannion's communications with the email domains in column A (assuming that the email domains in column A include the email domains for all attorneys with whom Mr. Mannion communicated regarding the topics on which he's waived privilege):
- right* w/3 publicity
- right* w/3 privacy
- "model release"
- "right of publicity"
- "right of privacy"
- "name and likeness"
- "name, image, and likeness"
- "3344"
- artist* w/3 permission or consent or authorization or approval
- celeb* w/3 permission or consent or authorization or approval
- merch* w/5 permission or consent or authorization or approval
- saltzman
- hsia
- greenberg

Finally, your email states that Defendants will not "produce materials prepared in anticipation of or during this lawsuit, which are subject to the work product doctrine."  We are not aware of any authority providing that a party can waive attorney-client privilege as to a topic while preserving work-product protection on that same topic—particularly when the attorney responsible for the work product is the same attorney that would have provided the legal advice as to which privilege has been waived (as would be the case for Ms. Hsia and, potentially, Mr. Saltzman).  If you have such authority, we'll consider it.  Otherwise, please confirm by March 23 that Defendants will produce documents on the topics as to which Mr. Mannion has waived privilege,

without date limitation and including communications with Ms. Hsia and Mr. Saltzman that may have been prepared in anticipation of or during this lawsuit.

All rights are reserved.

Best,

**Dylan Bonfigli**
*Associate*
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
443-370-6747 Cell
213-443-3610 Direct
213-443-3000 Main Office Number
213-443-3100 Fax
dylanbonfigli@quinnemanuel.com
www.quinnemanuel.com

---

**From:** Kirby Hsu <khsu@willenken.com>
**Sent:** Friday, March 18, 2022 7:13 PM
**To:** Dylan Bonfigli <dylanbonfigli@quinnemanuel.com>; Kenneth Trujillo-Jamison <ktrujillo-jamison@willenken.com>; Paul Loh <ploh@willenken.com>; Lika C. Miyake <lmiyake@willenken.com>; stevenmarenberg@paulhastings.com; kiauraclark@paulhastings.com; Sarah Hsia <sarah@rockstonelegal.com>
**Cc:** Alex Spiro <alexspiro@quinnemanuel.com>; Robert Schwartz <robertschwartz@quinnemanuel.com>; Cory Struble <corystruble@quinnemanuel.com>
**Subject:** RE: [EXTERNAL] Shawn Carter v. Jonathan Mannion et al, C.D. Cal., 2:21-cv-04848-PA-KS

**[EXTERNAL EMAIL from khsu@willenken.com]**

---

Dylan,

First, we want to be clear on the scope of what Defendants are willing to search for and produce: documents with legal advice about whether Defendants can sell prints or merchandise on which photographs to which Mr. Mannion holds the copyrights are printed. Plaintiff is not entitled to other privileged matters, such as communications with attorneys concerning licensing negotiations or the enforcement of Mr. Mannion's copyrights.

Second, your email is incorrect that Defendants have not produced any documents in response to the portions of Plaintiff's RFP Nos. 45, 54, and 55 that you quote.

Third, there is no need for additional custodians. Mr. Mannion, one of our original custodians, is the relevant custodian for any "documents and communications … Mr. Mannion has received" with the legal advice described above.

Fourth, Mr. Mannion received the legal advice from three attorneys: Stephen Saltzman, Sarah Hsia, and Edward Greenberg. We will collect documents by running searches using combinations of columns A and B:

| Column A | Column B |
| --- | --- |
| ssaltzman@loeb.com | print* w/5 "sell" |
| stephensaltzman@paulhastings.com | print* w/5 sale* |
| stephen.saltzman@fieldfisher.com | merch* w/5 "sell" |
| sarah@rockstonelegal.com | merch* w/5 sale* |
| ecglaw@gmail.com | |

If there are any documents with the legal advice described above, we will produce them by March 25. We will not, however, produce materials prepared in anticipation of or during this lawsuit, which are subject to the work product doctrine.

Kirby

---

**From:** Dylan Bonfigli <dylanbonfigli@quinnemanuel.com>
**Sent:** Wednesday, March 16, 2022 9:13 AM
**To:** Kenneth Trujillo-Jamison <ktrujillo-jamison@willenken.com>; Paul Loh <ploh@willenken.com>; Lika C. Miyake <lmiyake@willenken.com>; Kirby Hsu <khsu@willenken.com>; stevenmarenberg@paulhastings.com; kiauraclark@paulhastings.com; Sarah Hsia <sarah@rockstonelegal.com>
**Cc:** Alex Spiro <alexspiro@quinnemanuel.com>; Robert Schwartz <robertschwartz@quinnemanuel.com>; Cory Struble <corystruble@quinnemanuel.com>
**Subject:** [EXTERNAL] Shawn Carter v. Jonathan Mannion et al, C.D. Cal., 2:21-cv-04848-PA-KS

**CAUTION**: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Counsel,

During his March 13 deposition, Mr. Mannion testified about legal advice he has received regarding the legality of selling prints of photographs and merchandize bearing the image and likeness of celebrities. He was specific. He said that, around 2012, Steve Saltzman of Loeb & Loeb advised him that "when you … own the copyright you're able to sell fine art print[s] and that was an understanding … reinforced with a number of different attorneys along the way." Mannion Rough Tr. at 84. Mr. Mannion also testified that, based on conversations with attorneys over the years, "moving into merch brings up another layer of conversations that should be had." Mannion Rough Tr. at 85. Mr. Mannion also testified that Ms. Hsia offered him "the same perspective." Mannion Rough Tr. at 85. This is the first time that Defendants have disclosed this advice of counsel.

That disclosure carries additional discovery consequences. We served requests for production on Defendants seeking, among other things, all documents and communications that refer or relate to (1) "the licensing or granting of rights to use photographs containing JAY-Z's name, image, or likeness," RFP No. 45, "any licenses, contracts, or other agreements that REFER or RELATE to the JAY-Z PHOTOGRAPHS," RFP No. 54, and (3) Mr. Mannion's "rights to make use of or exploit the JAY-Z PHOTOGRAPHS or any other photograph depicting JAY-Z," RFP No. 55.

Defendants have not produced any communications or other documents related to these matters. Defendants must produce all documents and communications, without date limitation, that constitute, refer, or relate to any advice that Mr. Mannion has received from any attorney, including, without limitation, Ms. Hsia, Stephen Saltzman, Joel L. Hecker, and Damali Peterman, regarding his rights, or lack thereof, to make use of or otherwise exploit any photograph in his possession, custody, or control. Such documents relate to, among other things, Mr. Mannion's "rights to make use of or exploit the JAY-Z PHOTOGRAPHS or any other photograph depicting JAY-Z," RFP No. 55, and are now subject to discovery in light of Mr. Mannion's testimony.

Additionally, because we could not have previously anticipated that Defendants would be relying on their advice of counsel, new search terms may well be in order as it was not previously contemplated that such documents would be produced. Please inform us immediately of the additional search terms you propose using and the custodians and data sources against which you intend to run such search terms so that we may counter-propose any other that may be necessary.

Please confirm before March 18 that you will produce these documents before March 25.  The foregoing is without waiver of any rights and remedies, all of which are expressly reserved.

Thank you,

**Dylan Bonfigli**
*Associate*
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
443-370-6747 Cell
213-443-3610 Direct
213-443-3000 Main Office Number
213-443-3100 Fax
dylanbonfigli@quinnemanuel.com
www.quinnemanuel.com

---

**From:** Dylan Bonfigli
**Sent:** Saturday, March 12, 2022 4:17 PM
**To:** 'Kenneth Trujillo-Jamison' <ktrujillo-jamison@willenken.com>
**Cc:** Robert Schwartz <robertschwartz@quinnemanuel.com>; 'Paul Loh' <ploh@willenken.com>; 'Lika C. Miyake' <lmiyake@willenken.com>; 'Kirby Hsu' <khsu@willenken.com>; 'Julie Contreras' <jcontreras@willenken.com>; 'Lisa Gibbons' <lgibbons@willenken.com>; Alex Spiro <alexspiro@quinnemanuel.com>; Cory Struble <corystruble@quinnemanuel.com>; 'stevenmarenberg@paulhastings.com' <stevenmarenberg@paulhastings.com>; 'kiauraclark@paulhastings.com' <kiauraclark@paulhastings.com>; 'Sarah Hsia' <sarah@rockstonelegal.com>
**Subject:** RE: [EXTERNAL] RE: Shawn Carter v. Jonathan Mannion et al, C.D. Cal., 2:21-cv-04848-PA-KS

Hi all – for Mr. Mannion's deposition tomorrow, just a reminder that daylight savings time is tonight, so we are losing an hour (or springing forward an hour).

Best,

**Dylan Bonfigli**
*Associate*
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
443-370-6747 Cell
213-443-3610 Direct
213-443-3000 Main Office Number
213-443-3100 Fax
dylanbonfigli@quinnemanuel.com
www.quinnemanuel.com

---

**From:** Dylan Bonfigli
**Sent:** Friday, March 11, 2022 7:17 AM
**To:** Kenneth Trujillo-Jamison <ktrujillo-jamison@willenken.com>
**Cc:** Robert Schwartz <robertschwartz@quinnemanuel.com>; Paul Loh <ploh@willenken.com>; Lika C. Miyake <lmiyake@willenken.com>; Kirby Hsu <khsu@willenken.com>; Julie Contreras <jcontreras@willenken.com>; Lisa Gibbons <lgibbons@willenken.com>; Alex Spiro <alexspiro@quinnemanuel.com>; Cory Struble <corystruble@quinnemanuel.com>; stevenmarenberg@paulhastings.com; kiauraclark@paulhastings.com; Sarah Hsia <sarah@rockstonelegal.com>
**Subject:** RE: [EXTERNAL] RE: Shawn Carter v. Jonathan Mannion et al, C.D. Cal., 2:21-cv-04848-PA-KS

Kenneth,

We confirm that we'll start Mr. Mannion's deposition at 7 am PT on March 13 and Ms. Perez's at 7 am PT on March 14.

Thank you,

**Dylan Bonfigli**
*Associate*
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
443-370-6747 Cell
213-443-3610 Direct
213-443-3000 Main Office Number
213-443-3100 Fax
dylanbonfigli@quinnemanuel.com
www.quinnemanuel.com

---

**From:** Kenneth Trujillo-Jamison <ktrujillo-jamison@willenken.com>
**Sent:** Thursday, March 10, 2022 1:32 PM
**To:** Dylan Bonfigli <dylanbonfigli@quinnemanuel.com>
**Cc:** Robert Schwartz <robertschwartz@quinnemanuel.com>; Paul Loh <ploh@willenken.com>; Lika C. Miyake <lmiyake@willenken.com>; Kirby Hsu <khsu@willenken.com>; Julie Contreras <jcontreras@willenken.com>; Lisa Gibbons <lgibbons@willenken.com>; Alex Spiro <alexspiro@quinnemanuel.com>; Cory Struble <corystruble@quinnemanuel.com>; stevenmarenberg@paulhastings.com; kiauraclark@paulhastings.com; Sarah Hsia <sarah@rockstonelegal.com>
**Subject:** RE: [EXTERNAL] RE: Shawn Carter v. Jonathan Mannion et al, C.D. Cal., 2:21-cv-04848-PA-KS

==**[EXTERNAL EMAIL from ktrujillo-jamison@willenken.com]**==

---

Thanks Dylan for confirming the parties' agreement on the changes to the deadline for expert reports and the summary judgment filing date.

The proposed order looks fine to us. We proposed a couple minor edits to the stipulation to comply with Section I.E. of the Scheduling Order. If you are ok with those edits, you have our authorization to e-sign on our behalf.

As for depositions, we can start Ms. Perez's deposition on March 14 to start at 7 am, provided that you agree to accommodate a start time of 7 am for Mr. Mannion's deposition on March 13 to accommodate his schedule.

Regards,

Gibbons <lgibbons@willenken.com>; Alex Spiro <alexspiro@quinnemanuel.com>; Cory Struble <corystruble@quinnemanuel.com>; stevenmarenberg@paulhastings.com; kiauraclark@paulhastings.com; Sarah Hsia <sarah@rockstonelegal.com>
**Subject:** RE: [EXTERNAL] RE: Shawn Carter v. Jonathan Mannion et al, C.D. Cal., 2:21-cv-04848-PA-KS

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Kenneth, thank you for your email.

Because the deadline for designating experts and providing expert reports is set by the civil trial scheduling order (ECF No. 52), we believe that the parties should file a stipulation to extend that deadline out of an abundance of caution.  A draft stipulation and proposed order are attached.

Please let us know if you have any proposed changes or if we may proceed to file.  Assuming the stipulation is approved, we agree to extend the deadline for filing motions for summary judgment or partial summary judgment from April 4 to April 6 (along with the other deadlines in my email below).

**Dylan Bonfigli**
*Associate*
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
443-370-6747 Cell
213-443-3610 Direct
213-443-3000 Main Office Number
213-443-3100 Fax
dylanbonfigli@quinnemanuel.com
www.quinnemanuel.com

---

**From:** Kenneth Trujillo-Jamison <ktrujillo-jamison@willenken.com>
**Sent:** Wednesday, March 9, 2022 8:09 PM
**To:** Dylan Bonfigli <dylanbonfigli@quinnemanuel.com>
**Cc:** Robert Schwartz <robertschwartz@quinnemanuel.com>; Paul Loh <ploh@willenken.com>; Lika C. Miyake <lmiyake@willenken.com>; Kirby Hsu <khsu@willenken.com>; Julie Contreras <jcontreras@willenken.com>; Lisa Gibbons <lgibbons@willenken.com>; Alex Spiro <alexspiro@quinnemanuel.com>; Cory Struble <corystruble@quinnemanuel.com>; stevenmarenberg@paulhastings.com; kiauraclark@paulhastings.com; Sarah Hsia <sarah@rockstonelegal.com>
**Subject:** Re: [EXTERNAL] RE: Shawn Carter v. Jonathan Mannion et al, C.D. Cal., 2:21-cv-04848-PA-KS

Dylan,

Thanks for confirming March 13th for Mr. Mannion's deposition.

We are amenable to your proposed revisions to the expert deadlines, provided that Plaintiff agrees to extend the deadline for filing motions for summary judgment or partial summary judgment from April 4 to April 6.

Regards,

Kenneth Trujillo-Jamison

Get Outlook for iOS

**From:** Dylan Bonfigli <dylanbonfigli@quinnemanuel.com>
**Sent:** Wednesday, March 9, 2022 7:06 AM
**To:** Kenneth Trujillo-Jamison
**Cc:** Robert Schwartz; Paul Loh; Lika C. Miyake; Kirby Hsu; Julie Contreras; Lisa Gibbons; Alex Spiro; Cory Struble; stevenmarenberg@paulhastings.com; kiauraclark@paulhastings.com; Sarah Hsia
**Subject:** Re: [EXTERNAL] RE: Shawn Carter v. Jonathan Mannion et al, C.D. Cal., 2:21-cv-04848-PA-KS

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Kenneth,

We confirm that we're available for Mr. Mannion's on March 13.

Because that date is one day before the deadline for designating and disclosing experts, we propose that the parties agree to extend that deadline by four days, from March 14 to March 18. To that end, we also propose that the parties agree to extend the deadline for designating rebuttal experts and serving expert reports from March 21 to March 28 and the deadline for expert discovery from March 28 to April 1.

Please let us know if Defendants are amenable to this approach.

Thank you,
Dylan

> On Mar 8, 2022, at 11:43, Kenneth Trujillo-Jamison <ktrujillo-jamison@willenken.com> wrote:
>
> **[EXTERNAL EMAIL from ktrujillo-jamison@willenken.com]**
>
> ---
>
> Dylan,
>
> Mr. Mannion is available on March 13. Also, we can confirm we have already produced Mr. Davidov's responsive, non-privileged documents that are responsive to Plaintiff's document requests, based on the agreed-upon search terms.
>
> Regards,

**To:** Kenneth Trujillo-Jamison <ktrujillo-jamison@willenken.com>
**Cc:** Robert Schwartz <robertschwartz@quinnemanuel.com>; Paul Loh <ploh@willenken.com>; Lika C. Miyake <lmiyake@willenken.com>; Kirby Hsu <khsu@willenken.com>; Julie Contreras <jcontreras@willenken.com>; Lisa Gibbons <lgibbons@willenken.com>; Alex Spiro <alexspiro@quinnemanuel.com>; Cory Struble <corystruble@quinnemanuel.com>; stevenmarenberg@paulhastings.com; kiauraclark@paulhastings.com; Sarah Hsia <sarah@rockstonelegal.com>
**Subject:** RE: [EXTERNAL] RE: Shawn Carter v. Jonathan Mannion et al, C.D. Cal., 2:21-cv-04848-PA-KS

**CAUTION**: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Counsel, please see attached.

Please also confirm by the close of business of Tuesday, March 8, that Defendants have produced Mr. Davidov's electronic documents that are responsive to Plaintiff's First, Second, and Third Sets of Requests for Production, based on the agreed-upon search terms.

Thank you,

**Dylan Bonfigli**
*Associate*
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
443-370-6747 Cell
213-443-3610 Direct
213-443-3000 Main Office Number
213-443-3100 Fax
dylanbonfigli@quinnemanuel.com
www.quinnemanuel.com

---

**From:** Dylan Bonfigli
**Sent:** Monday, March 7, 2022 12:51 PM
**To:** Kenneth Trujillo-Jamison <ktrujillo-jamison@willenken.com>
**Cc:** Robert Schwartz <robertschwartz@quinnemanuel.com>; Paul Loh <ploh@willenken.com>; Lika C. Miyake <lmiyake@willenken.com>; Kirby Hsu <khsu@willenken.com>; Julie Contreras <jcontreras@willenken.com>; Lisa Gibbons <lgibbons@willenken.com>; Alex Spiro <alexspiro@quinnemanuel.com>; Cory Struble <corystruble@quinnemanuel.com>; stevenmarenberg@paulhastings.com; kiauraclark@paulhastings.com; Sarah Hsia <sarah@rockstonelegal.com>
**Subject:** RE: [EXTERNAL] RE: Shawn Carter v. Jonathan Mannion et al, C.D. Cal., 2:21-cv-04848-PA-KS

Kenneth, thank you for your email.  We are not available on March 16.  Is Mr. Mannion available on March 12 or 13?

Best,

**Dylan Bonfigli**
*Associate*
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
443-370-6747 Cell
213-443-3610 Direct
213-443-3000 Main Office Number
213-443-3100 Fax

dylanbonfigli@quinnemanuel.com
www.quinnemanuel.com

---

**From:** Kenneth Trujillo-Jamison <ktrujillo-jamison@willenken.com>
**Sent:** Monday, March 7, 2022 12:22 PM
**To:** Dylan Bonfigli <dylanbonfigli@quinnemanuel.com>
**Cc:** Robert Schwartz <robertschwartz@quinnemanuel.com>; Paul Loh <ploh@willenken.com>; Lika C. Miyake <lmiyake@willenken.com>; Kirby Hsu <khsu@willenken.com>; Julie Contreras <jcontreras@willenken.com>; Lisa Gibbons <lgibbons@willenken.com>; Alex Spiro <alexspiro@quinnemanuel.com>; Cory Struble <corystruble@quinnemanuel.com>; stevenmarenberg@paulhastings.com; kiauraclark@paulhastings.com; Sarah Hsia <sarah@rockstonelegal.com>
**Subject:** RE: [EXTERNAL] RE: Shawn Carter v. Jonathan Mannion et al, C.D. Cal., 2:21-cv-04848-PA-KS

**[EXTERNAL EMAIL from ktrujillo-jamison@willenken.com]**

---

Dylan,

Mr. Mannion is available for deposition on March 16. Please confirm that date works for your side.

Regards,

We will continue Mr. Burke's deposition at 9 am PT on Monday, March 7.

Relatedly, please let us know of Mr. Davidov's availability on the alternative dates we proposed before the close of business today.

Thank you,

**Dylan Bonfigli**
*Associate*
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
443-370-6747 Cell
213-443-3610 Direct
213-443-3000 Main Office Number
213-443-3100 Fax
dylanbonfigli@quinnemanuel.com
www.quinnemanuel.com

---

**From:** Robert Schwartz <robertschwartz@quinnemanuel.com>
**Sent:** Thursday, March 3, 2022 6:19 PM
**To:** Kenneth Trujillo-Jamison <ktrujillo-jamison@willenken.com>
**Cc:** Paul Loh <ploh@willenken.com>; Lika C. Miyake <lmiyake@willenken.com>; Kirby Hsu <khsu@willenken.com>; Julie Contreras <jcontreras@willenken.com>; Lisa Gibbons <lgibbons@willenken.com>; Alex Spiro <alexspiro@quinnemanuel.com>; Cory Struble <corystruble@quinnemanuel.com>; Dylan Bonfigli <dylanbonfigli@quinnemanuel.com>; stevenmarenberg@paulhastings.com; kiauraclark@paulhastings.com; Sarah Hsia <sarah@rockstonelegal.com>
**Subject:** RE: [EXTERNAL] RE: Shawn Carter v. Jonathan Mannion et al, C.D. Cal., 2:21-cv-04848-PA-KS

Kenneth,

I'm addressing first the issue of my jury service and the deposition of your client, which was scheduled for today (Thursday).

My jury service appearance date was this Monday. Based on years of experience, I believed that I would be done on that day or the next. In fact, on Sunday night, I checked the website and was told there was no need to come in on Monday. On Monday night, the website said the same thing about Tuesday. On Tuesday night, I was told to report on Wednesday. When I did, I told the judge that I had a deposition on Thursday and requested a deferral of my jury service to a later day. These are routinely granted. The judge declined my request.

We promptly relayed this situation to you yesterday afternoon, right after I returned from court. You and I discussed by phone the possibility of proceeding with Mr. Mannion's deposition on Friday or even Saturday. I told you that I would keep you informed.

At the end of the proceeding today, I was empaneled as a juror. The judge said that the opening statements would not begin until Monday. Given that, we quickly told you that I could proceed with Mr. Mannion's deposition tomorrow.

You've responded by saying that Mr. Mannion is no longer available tomorrow and that you will provide alternative dates. That's his and your decision. But in the meantime, let's maintain a professional approach to dealing with these issues.

As to your question about Mr. Burke's deposition, Dylan's email from Wednesday states, "We intend to continue Mr. Burke's deposition on March 7; we'll reach out to Mr. Burke's counsel to confirm a start time and will revert back once we have one." We're working on firming up a start time with Mr. Burke's counsel.

As to your question about Mr. Davidov's deposition, Dylan's email from Wednesday states, "To avoid double-booking, we propose moving Mr. Davidov's deposition to March 10, 11, or 15, and we are able to start the deposition at 7 am PT on those dates. Please let us know if any of those dates work for Mr. Davidov." Again, please let us know if any of those alternative dates work for Mr. Davidov, so we can decide whether to release the March 7 date.

Bobby

**From:** Kenneth Trujillo-Jamison <ktrujillo-jamison@willenken.com>
**Sent:** Thursday, March 3, 2022 5:36 PM
**To:** Dylan Bonfigli <dylanbonfigli@quinnemanuel.com>
**Cc:** Paul Loh <ploh@willenken.com>; Lika C. Miyake <lmiyake@willenken.com>; Kirby Hsu <khsu@willenken.com>; Robert Schwartz <robertschwartz@quinnemanuel.com>; Julie Contreras <jcontreras@willenken.com>; Lisa Gibbons <lgibbons@willenken.com>; Alex Spiro <alexspiro@quinnemanuel.com>; Cory Struble <corystruble@quinnemanuel.com>; stevenmarenberg@paulhastings.com; kiauraclark@paulhastings.com; Sarah Hsia <sarah@rockstonelegal.com>
**Subject:** RE: [EXTERNAL] RE: Shawn Carter v. Jonathan Mannion et al, C.D. Cal., 2:21-cv-04848-PA-KS

**[EXTERNAL EMAIL from ktrujillo-jamison@willenken.com]**

Dylan,

Mr. Mannion is no longer available tomorrow. You told us at 8:22 pm ET last night that you needed to adjourn his deposition today because Bobby had jury duty this week, which he surely had known about for weeks if not months. You also told us yesterday that you could not take Ms. Matute's deposition tomorrow. But after nearly an entire day, you told us at 6:47 pm ET this evening that you are now prepared to go forward with Mr. Mannion's deposition tomorrow. We and Mr. Mannion cannot accommodate yet another last-minute request. We will get back to you with an alternate date that is convenient for Mr. Mannion.

Separately, we are still waiting for your confirmation whether, and at what time, you intend to resume Kareem Burke's deposition on March 7. Please do so as soon as possible so that my team can set their schedule accordingly.

Relatedly, please let us know as soon as possible if Mr. Davidov is formally released from the March 7 date. He has to take off from work to appear for deposition. We want to be respectful of Mr. Davidov's time and allow him to re-arrange his schedule if necessary.

14

Thanks,

<sarah@rockstonelegal.com>
**Subject:** RE: [EXTERNAL] RE: Shawn Carter v. Jonathan Mannion et al, C.D. Cal., 2:21-cv-04848-PA-KS

Thank you, Kenneth

**Dylan Bonfigli**
*Associate*
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
443-370-6747 Cell
213-443-3610 Direct
213-443-3000 Main Office Number
213-443-3100 Fax
dylanbonfigli@quinnemanuel.com
www.quinnemanuel.com

---

**From:** Kenneth Trujillo-Jamison <ktrujillo-jamison@willenken.com>
**Sent:** Thursday, March 3, 2022 10:00 AM
**To:** Dylan Bonfigli <dylanbonfigli@quinnemanuel.com>
**Cc:** Paul Loh <ploh@willenken.com>; Lika C. Miyake <lmiyake@willenken.com>; Kirby Hsu
<khsu@willenken.com>; Robert Schwartz <robertschwartz@quinnemanuel.com>; Julie Contreras
<jcontreras@willenken.com>; Lisa Gibbons <lgibbons@willenken.com>; Alex Spiro
<alexspiro@quinnemanuel.com>; Cory Struble <corystruble@quinnemanuel.com>;
stevenmarenberg@paulhastings.com; kiauraclark@paulhastings.com; Sarah Hsia
<sarah@rockstonelegal.com>
**Subject:** RE: [EXTERNAL] RE: Shawn Carter v. Jonathan Mannion et al, C.D. Cal., 2:21-cv-04848-PA-KS

**[EXTERNAL EMAIL from ktrujillo-jamison@willenken.com]**

---

Dylan,

We can accommodate that start time for Mr. Carter's deposition. We will revert in a separate email on
the remaining outstanding items.

Regards,

<khsu@willenken.com>; Robert Schwartz <robertschwartz@quinnemanuel.com>; Julie Contreras <jcontreras@willenken.com>; Lisa Gibbons <lgibbons@willenken.com>; Alex Spiro <alexspiro@quinnemanuel.com>; Cory Struble <corystruble@quinnemanuel.com>; stevenmarenberg@paulhastings.com; kiauraclark@paulhastings.com; Sarah Hsia <sarah@rockstonelegal.com>
**Subject:** RE: [EXTERNAL] RE: Shawn Carter v. Jonathan Mannion et al, C.D. Cal., 2:21-cv-04848-PA-KS

**CAUTION**: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Kenneth, we would like to proceed with Mr. Carter's deposition tomorrow at 10 am ET.

Please confirm that this works for your side.

Thank you,

**Dylan Bonfigli**
*Associate*
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
443-370-6747 Cell
213-443-3610 Direct
213-443-3000 Main Office Number
213-443-3100 Fax
dylanbonfigli@quinnemanuel.com
www.quinnemanuel.com

---

**From:** Dylan Bonfigli
**Sent:** Wednesday, March 2, 2022 7:02 PM
**To:** Kenneth Trujillo-Jamison <ktrujillo-jamison@willenken.com>
**Cc:** Paul Loh <ploh@willenken.com>; Lika C. Miyake <lmiyake@willenken.com>; Kirby Hsu <khsu@willenken.com>; Robert Schwartz <robertschwartz@quinnemanuel.com>; Julie Contreras <jcontreras@willenken.com>; Lisa Gibbons <lgibbons@willenken.com>; Alex Spiro <alexspiro@quinnemanuel.com>; Cory Struble <corystruble@quinnemanuel.com>; stevenmarenberg@paulhastings.com; kiauraclark@paulhastings.com; Sarah Hsia <sarah@rockstonelegal.com>
**Subject:** RE: [EXTERNAL] RE: Shawn Carter v. Jonathan Mannion et al, C.D. Cal., 2:21-cv-04848-PA-KS

Kenneth,

We're not able to change the date for the Matute deposition.  We'll proceed with her deposition on March 5 at 7 am PT, as agreed.

We'll keep you posted on the other fronts.

We do not agree that defendants are entitled to reimbursement of expenses.

Thank you,

**Dylan Bonfigli**
*Associate*
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
443-370-6747 Cell

213-443-3610 Direct
213-443-3000 Main Office Number
213-443-3100 Fax
dylanbonfigli@quinnemanuel.com
www.quinnemanuel.com

---

**From:** Kenneth Trujillo-Jamison <ktrujillo-jamison@willenken.com>
**Sent:** Wednesday, March 2, 2022 6:26 PM
**To:** Dylan Bonfigli <dylanbonfigli@quinnemanuel.com>; Robert Schwartz <robertschwartz@quinnemanuel.com>
**Cc:** Paul Loh <ploh@willenken.com>; Lika C. Miyake <lmiyake@willenken.com>; Kirby Hsu <khsu@willenken.com>; Julie Contreras <jcontreras@willenken.com>; Lisa Gibbons <lgibbons@willenken.com>; Alex Spiro <alexspiro@quinnemanuel.com>; Cory Struble <corystruble@quinnemanuel.com>; stevenmarenberg@paulhastings.com; kiauraclark@paulhastings.com; Sarah Hsia <sarah@rockstonelegal.com>
**Subject:** RE: [EXTERNAL] RE: Shawn Carter v. Jonathan Mannion et al, C.D. Cal., 2:21-cv-04848-PA-KS

[EXTERNAL EMAIL from ktrujillo-jamison@willenken.com]

---

Bobby and Dylan,

Thanks for the call this evening. While we understand that Bobby has to serve his jury duty, this situation was within your control given that defendants' depositions were scheduled weeks in advance.

Please advise whether you all can take Ms. Matute's deposition tomorrow, to start at 1pm Eastern/10 am Pacific. Please also advise if you all can take Mr. Mannion's deposition on Friday. (I misstated his availability on the call. He is not available on Saturday. He is available on Friday, but is leaving Friday evening for an international trip.) If your side cannot take Mr. Mannion's deposition on Friday, we will be seeking reimbursement for the costs we have incurred in travel and accommodations for his deposition. In reliance upon the schedule the parties agreed to, my colleague Paul Loh travelled to New York to defend Mr. Mannion's deposition, and is there now.

In any event, Defendants will be taking Plaintiff's deposition on Friday.

Regards,

**To:** Kenneth Trujillo-Jamison <ktrujillo-jamison@willenken.com>
**Cc:** Paul Loh <ploh@willenken.com>; Lika C. Miyake <lmiyake@willenken.com>; Kirby Hsu <khsu@willenken.com>; Julie Contreras <jcontreras@willenken.com>; Lisa Gibbons <lgibbons@willenken.com>; Robert Schwartz <robertschwartz@quinnemanuel.com>; Alex Spiro <alexspiro@quinnemanuel.com>; Cory Struble <corystruble@quinnemanuel.com>; stevenmarenberg@paulhastings.com; kiauraclark@paulhastings.com; Sarah Hsia <sarah@rockstonelegal.com>
**Subject:** RE: [EXTERNAL] RE: Shawn Carter v. Jonathan Mannion et al, C.D. Cal., 2:21-cv-04848-PA-KS

**CAUTION**: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Kenneth,

Due to an emergency that arose this afternoon, we need to adjourn Mr. Mannion's deposition.  Please let us know some alternative dates that Mr. Mannion will be available.

Thank you,

**Dylan Bonfigli**
*Associate*
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
443-370-6747 Cell
213-443-3610 Direct
213-443-3000 Main Office Number
213-443-3100 Fax
dylanbonfigli@quinnemanuel.com
www.quinnemanuel.com

---

**From:** Dylan Bonfigli <dylanbonfigli@quinnemanuel.com>
**Sent:** Wednesday, March 2, 2022 3:54 PM
**To:** Kenneth Trujillo-Jamison <ktrujillo-jamison@willenken.com>
**Cc:** Paul Loh <ploh@willenken.com>; Lika C. Miyake <lmiyake@willenken.com>; Kirby Hsu <khsu@willenken.com>; Julie Contreras <jcontreras@willenken.com>; Lisa Gibbons <lgibbons@willenken.com>; Robert Schwartz <robertschwartz@quinnemanuel.com>; Alex Spiro <alexspiro@quinnemanuel.com>; Cory Struble <corystruble@quinnemanuel.com>; stevenmarenberg@paulhastings.com; kiauraclark@paulhastings.com; Sarah Hsia <sarah@rockstonelegal.com>
**Subject:** RE: [EXTERNAL] RE: Shawn Carter v. Jonathan Mannion et al, C.D. Cal., 2:21-cv-04848-PA-KS

Kenneth,

Thank you for your email.  We intend to continue Mr. Burke's deposition on March 7; we'll reach out to Mr. Burke's counsel to confirm a start time and will revert back once we have one.  To avoid double-booking, we propose moving Mr. Davidov's deposition to March 10, 11, or 15, and we are able to start the deposition at 7 am PT on those dates.  Please let us know if any of those dates work for Mr. Davidov.

Also, please let us know if it is possible to start Ms. Perez's deposition on March 14 at 7 am PT to accommodate the fact that she is based on the East Coast.

Thank you,

**Dylan Bonfigli**
*Associate*
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
443-370-6747 Cell
213-443-3610 Direct
213-443-3000 Main Office Number
213-443-3100 Fax
dylanbonfigli@quinnemanuel.com
www.quinnemanuel.com

**From:** Kenneth Trujillo-Jamison <ktrujillo-jamison@willenken.com>
**Sent:** Wednesday, March 2, 2022 8:46 AM
**To:** Dylan Bonfigli <dylanbonfigli@quinnemanuel.com>
**Cc:** Paul Loh <ploh@willenken.com>; Lika C. Miyake <lmiyake@willenken.com>; Kirby Hsu
<khsu@willenken.com>; Julie Contreras <jcontreras@willenken.com>; Lisa Gibbons
<lgibbons@willenken.com>; Robert Schwartz <robertschwartz@quinnemanuel.com>; Alex Spiro
<alexspiro@quinnemanuel.com>; Cory Struble <corystruble@quinnemanuel.com>;
stevenmarenberg@paulhastings.com; kiauraclark@paulhastings.com; Sarah Hsia
<sarah@rockstonelegal.com>
**Subject:** RE: [EXTERNAL] RE: Shawn Carter v. Jonathan Mannion et al, C.D. Cal., 2:21-cv-04848-PA-KS

**[EXTERNAL EMAIL from ktrujillo-jamison@willenken.com]**

Dylan,

Thanks for your email. Ms. Matute prefers March 5. Thanks for accommodating the start times for her,
Mr. Davidov's, and Mr. Mannion's depositions. We are agreeable to the times you've outlined. We will
await word from your side on Mr. Burke's deposition.

Regards,

<alexspiro@quinnemanuel.com>; Cory Struble <corystruble@quinnemanuel.com>;
stevenmarenberg@paulhastings.com; kiauraclark@paulhastings.com; Sarah Hsia
<sarah@rockstonelegal.com>
**Subject:** RE: [EXTERNAL] RE: Shawn Carter v. Jonathan Mannion et al, C.D. Cal., 2:21-cv-04848-PA-KS

**CAUTION**: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Kenneth,

Thank you for your email.

We're not able to move Ms. Matute's deposition from March 5 to March 4 because Mr. Carter's deposition is that same day, but we are willing to move her deposition to Thursday, March 10.  We are also willing to start her deposition at 7 am Pacific Time on March 5 or March 10.  And we agree that Ms. Matute's deposition will not be videotaped given that she will be testifying in both an individual and representative capacity.  Please let us know if Ms. Matute prefers March 5 or March 10.

We are willing to start Mr. Davidov's deposition at 7 am Pacific Time on March 7.

We are willing to start Mr. Mannion's deposition at 8 am Pacific Time on March 3.

We are confirmed for Ms. Perez's deposition on Monday, March 14.

Finally, we will revert back on Wednesday regarding Mr. Burke's deposition.

Thank you,

**Dylan Bonfigli**
*Associate*
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
443-370-6747 Cell
213-443-3610 Direct
213-443-3000 Main Office Number
213-443-3100 Fax
dylanbonfigli@quinnemanuel.com
www.quinnemanuel.com

---

**From:** Kenneth Trujillo-Jamison <ktrujillo-jamison@willenken.com>
**Sent:** Monday, February 28, 2022 10:30 PM
**To:** Dylan Bonfigli <dylanbonfigli@quinnemanuel.com>
**Cc:** Paul Loh <ploh@willenken.com>; Lika C. Miyake <lmiyake@willenken.com>; Kirby Hsu
<khsu@willenken.com>; Julie Contreras <jcontreras@willenken.com>; Lisa Gibbons
<lgibbons@willenken.com>; Robert Schwartz <robertschwartz@quinnemanuel.com>; Alex Spiro
<alexspiro@quinnemanuel.com>; Cory Struble <corystruble@quinnemanuel.com>;
stevenmarenberg@paulhastings.com; kiauraclark@paulhastings.com; Sarah Hsia
<sarah@rockstonelegal.com>
**Subject:** RE: [EXTERNAL] RE: Shawn Carter v. Jonathan Mannion et al, C.D. Cal., 2:21-cv-04848-PA-KS

**[EXTERNAL EMAIL from ktrujillo-jamison@willenken.com]**

Dylan,

We are in agreement as to how the depositions of Ms. Perez, S. Carter Enterprises, and the 5 Roc Nation Entities will be counted for the deposition limit. We confirm that we are willing to consolidate Mr. Mannion's, Ms. Matute's, and Ms. Perez's respective individual and representative depositions to a single day each. Under this agreement, March 4 is no longer needed for JMP's 30(b)(6) deposition. Ms. Matute is available that day, and to accommodate her schedule and to avoid a deposition on Saturday, we propose that her deposition proceed on that date. Also, per the parties' agreement, the depositions of Mr. Mannion and JMP LLC will not be videorecorded. Ms. Matute will also be testifying as a representative witness, and plaintiff has agreed that her individual deposition will be conducted concurrently. Accordingly, please serve amended deposition notices/subpoenas for Mr. Mannion, Ms. Matute and JMP LLC providing that their depositions will not be videorecorded.

For Ms. Perez's deposition, we are available on March 14.

We are surprised at your refusal to accommodate the East Coast witnesses' schedule to start the depositions in the morning for them. As you are aware from our many emails trying to secure deposition dates, we have been more than willing to accommodate the schedules of Plaintiff, Ms. Perez, and Ms. Fleishman. And unlike Mr. Patrick and Mr. Kempler, whose depositions concluded well before the close of business on the East Coast, we expect that the depositions of Mr. Mannion and Ms. Matute—who, as you know, are designated as witnesses in both their individual and representative capacities—will extend considerably longer, potentially well into the evening for them. As for Mr. Davidov, we would expect that you would accommodate the schedule of a non-party witness, as we did for Mr. Burke. We reiterate our request to accommodate their schedules and start the depositions in the morning East Coast time.

Thanks for your clarification about Plaintiff's position on Mr. Schwartz's deposition.

Finally, with respect to Mr. Burke's deposition, please let us know no later than this Wednesday whether you intend to resume his deposition on March 7. If so, we will need to discuss the timing of his and Mr. Davidov's deposition to avoid double tracking.

Regards,

<khsu@willenken.com>; Julie Contreras <jcontreras@willenken.com>; Lisa Gibbons
<lgibbons@willenken.com>; Robert Schwartz <robertschwartz@quinnemanuel.com>; Alex Spiro
<alexspiro@quinnemanuel.com>; Cory Struble <corystruble@quinnemanuel.com>;
stevenmarenberg@paulhastings.com; kiauraclark@paulhastings.com; Sarah Hsia
<sarah@rockstonelegal.com>
**Subject:** RE: [EXTERNAL] RE: Shawn Carter v. Jonathan Mannion et al, C.D. Cal., 2:21-cv-04848-PA-KS

**CAUTION**: This email originated from outside of the organization. Do not click links or open attachments
unless you recognize the sender and know the content is safe.

Kenneth,

Thank you for that clarification.  For the sake of compromise only and without waiver of any
objections, for purposes of the deposition limit we are willing to agree that the depositions of Ms.
Perez, S. Carter Enterprises, and the 5 Roc Nation entities will count as 2 depositions.  We of
course reserve the right to oppose any application to exceed the deposition limit.

Based on that, please confirm that Defendants are willing to agree to consolidate Mr. Mannion's
individual and representative depositions to a single day, March 3; to consolidate Ms. Matute's
individual and representative depositions to a single day, March 5; and to consolidate Ms.
Perez's individual and representative depositions to a single day on a date to be determined.

As to Ms. Perez's depositions, March 10 or 11 does not work for us; March 14 and 15 are being
held on Ms. Perez's calendar.  Can you please propose alternative dates if March 14 or 15 still
does not work.

Also, we are not able to move the noticed depositions to start at 7:00 a.m. Pacific Time.  This
case and many of the attorneys are based in California, and there have already been two
depositions of witnesses based on the East Coast (Mr. Patrick and Mr. Kempler) that started at
10:00 a.m. Pacific Time / 1:00 p.m. Eastern Time—an hour later than the time we noticed for the
depositions of Mr. Mannion, Ms. Matute, and Mr. Davidov.

Finally, to be clear, we never agreed that Defendants are "entitled to Mr. Schwartz's deposition
should Plaintiff decide to offer testimony or evidence about the May 25, 2021 call at trial or
summary judgment."  We agreed that Defendants could depose Mr. Schwartz if Plaintiff offered
evidence **from Mr. Schwartz** regarding the May 25, 2021 call.  But Defendants would not be
entitled to depose Mr. Schwartz if, for example, Plaintiff offered evidence from Mr. Davidov or
Mr. Mannion about that call.

Regards,

**Dylan Bonfigli**
*Associate*
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
443-370-6747 Cell
213-443-3610 Direct
213-443-3000 Main Office Number
213-443-3100 Fax
dylanbonfigli@quinnemanuel.com
www.quinnemanuel.com

**From:** Kenneth Trujillo-Jamison <ktrujillo-jamison@willenken.com>
**Sent:** Friday, February 25, 2022 3:27 PM
**To:** Dylan Bonfigli <dylanbonfigli@quinnemanuel.com>
**Cc:** Paul Loh <ploh@willenken.com>; Lika C. Miyake <lmiyake@willenken.com>; Kirby Hsu
<khsu@willenken.com>; Julie Contreras <jcontreras@willenken.com>; Lisa Gibbons
<lgibbons@willenken.com>; Robert Schwartz <robertschwartz@quinnemanuel.com>; Alex Spiro
<alexspiro@quinnemanuel.com>; Cory Struble <corystruble@quinnemanuel.com>;
stevenmarenberg@paulhastings.com; kiauraclark@paulhastings.com; Sarah Hsia
<sarah@rockstonelegal.com>
**Subject:** RE: [EXTERNAL] RE: Shawn Carter v. Jonathan Mannion et al, C.D. Cal., 2:21-cv-04848-PA-KS

**[EXTERNAL EMAIL from ktrujillo-jamison@willenken.com]**

Dylan,

Thanks for your email. Defendants do not currently intend on taking any fact depositions other than those listed in my February 11 email, except that Defendants are, under the parties' previous agreement, entitled to Mr. Schwartz's deposition should Plaintiff decide to offer testimony or evidence about the May 25, 2021 call at trial or summary judgment. Defendants would also reserve the right to seek leave of court to conduct depositions not listed in our February 11 email.

Regards,

Kenneth,

We will respond to your email in full as soon as we can, but we respond now on your proposal regarding treating the depositions of Ms. Perez and six non-parties as one single deposition.  On February 25, we followed up on your request to exceed the ten-deposition limit.  We asked you to confirm that the list of depositions contained in your February 11 email were all the depositions you intended to take.  We need an answer to that question to consider your proposal regarding treating multiple depositions as one.

Thank you,

**Dylan Bonfigli**
*Associate*
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
443-370-6747 Cell
213-443-3610 Direct
213-443-3000 Main Office Number
213-443-3100 Fax
dylanbonfigli@quinnemanuel.com
www.quinnemanuel.com

On Feb 25, 2022, at 10:58, Kenneth Trujillo-Jamison <ktrujillo-jamison@willenken.com> wrote:

**[EXTERNAL EMAIL from ktrujillo-jamison@willenken.com]**

Dylan,

We are writing about several outstanding issues related to depositions.

First, Defendants are willing to consolidate Mr. Mannion's individual and 30(b)(6) depositions, and would also be willing to consolidate Ms. Matute's and Ms. Perez's individual and 30(b)(6) depositions to each occur on one day, respectively, on the condition that Plaintiff agrees that Ms. Perez's deposition and the 6 entities she will represent will count as only 1 deposition for purposes of the 10-deposition limit set forth in FRCP 30. Please let us know if Plaintiff agrees to this proposal.

Second, the dates you have proposed for Ms. Perez's deposition do not work for our side. And Defendants have not agreed to conduct depositions after the week of March 7. We are available on March 10 and 11. Assuming you will agree with our proposal above, we would need to reserve only one of those days for her deposition.

Third, the deposition notices or subpoenas for the depositions of Mr. Mannion, Ms. Matute, JMP, and Mr. Davidov all list 9 am Pacific as the start time. Each of these witnesses are located on the east coast. To accommodate the witnesses' and counsel's schedules, we would propose that all of these depositions begin at 10 am Eastern/7 am Pacific. Assuming you will agree, please serve amended subpoenas and notices reflecting that start time.

Regards,

**To:** Kenneth Trujillo-Jamison <ktrujillo-jamison@willenken.com>
**Cc:** Paul Loh <ploh@willenken.com>; Lika C. Miyake <lmiyake@willenken.com>; Kirby
Hsu <khsu@willenken.com>; Julie Contreras <jcontreras@willenken.com>; Lisa Gibbons
<lgibbons@willenken.com>; Robert Schwartz <robertschwartz@quinnemanuel.com>;
Alex Spiro <alexspiro@quinnemanuel.com>; Cory Struble
<corystruble@quinnemanuel.com>; stevenmarenberg@paulhastings.com;
kiauraclark@paulhastings.com; Sarah Hsia <sarah@rockstonelegal.com>
**Subject:** [EXTERNAL] RE: Shawn Carter v. Jonathan Mannion et al, C.D. Cal., 2:21-cv-
04848-PA-KS

**CAUTION**: This email originated from outside of the organization. Do not click links or
open attachments unless you recognize the sender and know the content is safe.

Kenneth,

We noticed that JMP's objections to the 30(b)(6) deposition notice designate
"Marjorie Matute" to testify as to certain topics.  Please confirm that "Marjorie
Matute" also goes by "Marjoriet Matute" and "Marjoriet Gueche," and if so,
please let us know how she would prefer to be addressed at deposition.

Also, we think it would be a waste of Mr. Mannion's time, and everyone else's, to
require him to sit through a 30(b)(6) deposition on the topics for which he's being
designated, after sitting through his 30(b)(1) deposition and propose that we agree
to consolidate his March 3 deposition for both purposes.

Thank you,

**Dylan Bonfigli**
*Associate*
Quinn Emanuel Urquhart & Sullivan, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
443-370-6747 Cell
213-443-3610 Direct
213-443-3000 Main Office Number
213-443-3100 Fax
dylanbonfigli@quinnemanuel.com
www.quinnemanuel.com

---

**From:** Lisa Gibbons <lgibbons@willenken.com>
**Sent:** Tuesday, February 22, 2022 5:00 PM
**To:** Dylan Bonfigli <dylanbonfigli@quinnemanuel.com>; Robert Schwartz
<robertschwartz@quinnemanuel.com>; Alex Spiro <alexspiro@quinnemanuel.com>;
Cory Struble <corystruble@quinnemanuel.com>; stevenmarenberg@paulhastings.com;
kiauraclark@paulhastings.com; Sarah Hsia <sarah@rockstonelegal.com>
**Cc:** Paul Loh <ploh@willenken.com>; Lika C. Miyake <lmiyake@willenken.com>;
Kenneth Trujillo-Jamison <ktrujillo-jamison@willenken.com>; Kirby Hsu
<khsu@willenken.com>; Julie Contreras <jcontreras@willenken.com>
**Subject:** Shawn Carter v. Jonathan Mannion et al, C.D. Cal., 2:21-cv-04848-PA-KS

**[EXTERNAL EMAIL from lgibbons@willenken.com]**

Counsel,

Please see attached for Defendant Jonathan Mannion Photography LLC's Objection to Plaintiff's Notice of Deposition Pursuant to F.R.C.P. 30(b)(6) in connection with the above-referenced case.

Thank you.