1  QUINN EMANUEL URQUHART
      & SULLIVAN, LLP
2  Alex Spiro (*pro hac vice*)
      alexspiro@quinnemanuel.com
3  Cory D. Struble (*pro hac vice*)
      corystruble@quinnemanuel.com
4  51 Madison Avenue, 22nd Floor
   New York, New York 10010
5  Telephone:   (212) 849-7000
   Facsimile:   (212) 849-7100
6
   Robert M. Schwartz (Bar No. 117166)
7     robertschwartz@quinnemanuel.com
   Dylan C. Bonfigli (Bar No. 317185)
8     dylanbonfigli@quinnemanuel.com
   865 South Figueroa Street, 10th Floor
9  Los Angeles, California 90017-2543
   Telephone:   (213) 443-3000
10 Facsimile:   (213) 443-3100

11 *Attorneys for Plaintiff*

12

13                **UNITED STATES DISTRICT COURT**

14      **CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION**

15

16 SHAWN CARTER, also known as          Case No. 2:21-cv-04848-SSS-KS
   JAY-Z, an individual,
                                        **JOINT STATEMENT**
17            Plaintiff,
                                        The Honorable Sunshine Suzanne Sykes
18       v.
                                        Trial Date:   TBD
19 JONATHAN MANNION, an
   individual, and JONATHAN
20 MANNION PHOTOGRAPHY LLC, a
   New York limited liability company,
21
              Defendants.
22

23

24

25

26

27

28

**JOINT STATEMENT**

Pursuant to the Court's June 25, 2022 Reassignment Order, ECF No. 185, the parties submit the following Joint Statement:

**I.   DATE OF FILING**

This case was filed on June 15, 2021.  ECF No. 1.

**II.   PARTIES**

The parties are Plaintiff Shawn Carter, p/k/a Jay-Z, and Defendants Jonathan Mannion and Jonathan Mannion Photography LLC.

**III.   SUMMARY OF CLAIMS**

Mr. Carter asserts two claims for relief: (1) violation of section 3344 of the California Civil Code, and (2) violation of California's common-law right of publicity.  ECF No. 15 at 11-12.  Mr. Carter's claims are based on allegations that Defendants have used his name, image, and likeness on products and merchandise, and for purposes of advertising, without Mr. Carter's permission.  *See, e.g.*, ECF No. 15 at 6-11.  Mr. Carter's claims are based on Defendants' uses of eight photographs: (1) Jay-Z Print, (2) Jay-Z "Beyond a Reasonable Doubt" Print, (3) Jay-Z "New Blue Yankee" Print, (4) Jay-Z "Chess Not Checkers" Print, (5) Roc-A-Fella "Last Laugh" Print, (6) "Got You All In Check" Busta Rhymes, Notorious B.I.G., Jay-Z Print, (7) another photograph of Plaintiff taken during the photoshoot for the *Reasonable Doubt* album and imprinted on a slipmat, and (8) the "Fame Wall" photograph. ECF 142 § V ¶¶ 1-2.  The statute of limitations for Mr. Carter's right of publicity claims is two years.  There are no counterclaims.

**IV.   UNDERLYING EVENTS**

**Plaintiff's Statement:**  Mr. Carter is a well-known recording artist, producer, and entrepreneur.  Defendant Jonathan Mannion is an established professional photographer specializing in hip-hop culture.

In 1996, when Mr. Carter and Mr. Mannion were starting their careers, Mr. Carter and his record company commissioned Mr. Mannion to take photos of

1

1   Mr. Carter to be used for Mr. Carter's debut album titled *Reasonable Doubt*.

2   Mr. Carter and his record companies commissioned Mr. Mannion to take

3   photographs for seven additional albums and for magazine covers and other

4   promotional purposes.

5          Mr. Mannion has used photos of Mr. Carter to create and sell products in the

6   form of souvenir pins, magnets, slipmats (for playing vinyl records), and reprints of

7   the photos.  Mr. Mannion sells shirts bearing Mr. Carter's name.  Mr. Mannion also

8   displays a photo of Mr. Carter on the landing page of his website and online store.

9          Defendants' assertion below that they have "sold for over two decades … fine

10  art prints of their photographs, including photographs that include Mr. Carter's

11  image" is misleading.  As Mr. Mannion testified, it was "during the pandemic,"

12  "probably in the last two years," that he began to focus on selling "prints of …

13  photographs of [Mr. Carter]."  Mannion Dep. 77:11-78:9.  And Mr. Carter learned

14  of Mr. Mannion's website in May 2021 and filed suit one month later.  Notably,

15  Defendants have even abandoned their laches defense.  ECF No. 148 ¶ 8.

16         Defendants' suggestion below that they had Mr. Carter's consent to exploit

17  his name, image, and likeness for commercial purposes because he never sent a

18  "cease-and-desist letter asking Defendants to stop" is meritless.  Mr. Mannion

19  conceded that "[t]here was no permission given."  Mannion Dep. 97:7-20.  That is

20  dispositive as to the question whether Mr. Carter consented to Defendants' conduct.

21  And Defendants obviously know now that Mr. Carter objects to their use of his

22  name, image, and likeness, yet Defendants have not stopped their unlawful conduct.

23         **Defendants' Statement:**  From 1995 to 2006, Mr. Mannion took thousands

24  of photographs of Mr. Carter, sometimes at the request of record companies and

25  sometimes for magazines or other non-album purposes. No written contract was

26  signed between the parties concerning that *Reasonable Doubt* photoshoot or the

27  photographs that resulted from the shoot. Mr. Mannion subsequently obtained a

28  copyright registration for the photographs that resulted from the *Reasonable Doubt*

1    shoot. There are no contracts transferring the ownership or restricting Defendants'

2    uses of any of the photographs at issue in this litigation, and Mr. Mannion owns the

3    copyright in all of them.

4          Defendants have licensed and sold prints of certain of Mr. Mannion's

5    photographs of Mr. Carter since the late 1990s. The licenses have included ones to

6    permit Mr. Carter and his companies to use Defendants' photographs in advertising,

7    tour merchandise, and Mr. Carter's memoir.

8          In 2015, Defendants caused to be created thirty (30) slipmats (round pieces of

9    felt used on DJ turntables), imprinted with one of two photographs of Mr. Carter, for

10   a DJ convention. Defendants used these slipmats, along with others imprinted with

11   photographs of other musical artists, to create an artistic installation for the

12   convention. Defendants gave away many of the slipmats and sold off remaining

13   inventory through their online store, ending in January 2021.

14         In 2016, three of Mr. Carter's companies sponsored and provided financial

15   assistance for Mr. Mannion to stage a gallery show featuring photographs from the

16   *Reasonable Doubt* shoot and derivative artworks based on those photographs, which

17   photo prints and artworks were offered for sale. In connection with the show,

18   Defendants caused to be created a small print run of magnets and souvenir pins that

19   included Mr. Carter's image, many of which were given away. Defendants sold off

20   remaining inventory through their online store: any magnets sold were sold before

21   the statutory limitations period (*i.e.*, before June 15, 2019), and eleven pins bearing

22   an image of Mr. Carter's hands were sold between June and December 2019.

23         In 2016, Mr. Carter attended a pop-up store event, at which prints of

24   photographs from the *Reasonable Doubt* shoot were on display and t-shirts

25   imprinted with *Reasonable Doubt* photographs were on sale.

26         Defendants have sold for over two decades, and currently sell, fine art prints

27   of their photographs, including photographs that include Mr. Carter's image.

28   Defendants also sell shirts bearing a photograph of a stack of archival boxes labeled

with ten hip hop artists' names, including Mr. Carter's, as a way of visually conveying the breadth and significance of Mr. Mannion's work. Defendants display a photo of Mr. Carter on the landing page of their website and online store, among other photographs from Mr. Mannion's career.

In May 2021, Plaintiff's representatives approached Defendants' representatives seeking a licensing arrangement for one or more of Defendants' photographs. The parties negotiated first about a licensing arrangement, and then about a potential "buy-out" of Defendants' copyright in the *Reasonable Doubt* cover photograph. The negotiations were ultimately unsuccessful. Plaintiff then sued.

At no time did Plaintiff or his representatives send a cease-and-desist letter asking Defendants to stop any of their uses of their photographs of Plaintiff. There is no admissible evidence that Plaintiff or his representatives ever objected to Defendants' uses of their photographs prior to the filing of this lawsuit.

## V.    RELIEF SOUGHT

Mr. Carter seeks an injunction "requiring Mannion and his agents, servants, and employees, and all other persons with whom he is acting in concert, to refrain from using JAY-Z's name, likeness, identity, or persona."  ECF No. 15 at 12.

In addition to injunctive relief, Mr. Carter seeks damages in the form of (1) "the fair market value of the right to use [Mr. Carter's] name or likeness in the manner in which it was used by [Defendants]," *Clark v. Am. Online Inc.*, 2000 WL 33535712, at *8 (C.D. Cal. Nov. 30, 2000), and (2) any profits from Defendants' use of Mr. Carter's name, image, and likeness that "are not taken into account in computing" the first category of damages.  Cal. Civ. Code § 3344(a); *see* ECF No. 15 at 11-12.  Mr. Carter's damages expert, Jon Albert, has computed the first category of damages "by using a willing licensor-willing licensee framework." *Ferriss v. All. Publ'g, Inc.*, 2016 WL 7116110, at *10 (N.D. Cal. Dec. 6, 2016); *see* ECF No. 138-1 (Expert Witness Report of Jon Albert).

4

1       Mr. Carter also seeks costs and attorneys' fees as allowed by law, including

2 section 3344(a) of the California Civil Code.  Mr. Carter waived his right to seek

3 punitive damages or damages for mental distress. ECF No. 142 at 3.

4 **VI.   DISCOVERY**

5       Discovery has ended.  The discovery cut-off date was May 9, 2022.  ECF No.

6 52 at 1.

7 **VII.  PROCEDURAL HISTORY**

8       On August 5, 2021, Defendants filed a Motion to Dismiss and/or Strike the

9 First Amended Complaint.  ECF No. 26.  Defendants' motion did not comply with

10 Local Rule 7-3 because Defendants did not meet and confer before filing it.

11       On August 6, 2021, the Court noted Defendants' failure to comply with Local

12 Rule 7-3 and ordered the parties to "discuss very carefully and explicitly a potential

13 resolution of the issues raised in Defendants' Motions."  ECF No. 28 at 1.  The

14 Court warned that "[f]uture violations … may result in the imposition of sanctions."

15       On September 8, 2021, after the parties met and conferred, the Court denied

16 the motion.  ECF No. 39.  The Court ruled that "Defendants' First Amendment

17 transformative use defense and copyright preemption arguments d[id] not, as a

18 matter of law, prevent Jay-Z from alleging sufficient facts to state plausible claims

19 for relief or establishing a sufficient probability that he will prevail."  *Id.* at 9-10.

20       On October 25, 2021, the parties filed a Joint Rule 26(f) Report, in which they

21 estimated that trial in this matter would require three court days.  ECF No. 48.

22       On January 5, 2022, the parties participated in a mediation before the

23 Honorable Terry Friedman (Ret.).  ECF No. 59 at 1.  The parties were unable to

24 reach an agreement to resolve the case.  *Id.*

25       On April 6, 2022, Defendants filed a Motion for Summary Judgment.  ECF

26 No. 82.  Defendants' motion did not comply with Local Rule 7-3 because

27 Defendants did not meet and confer before filing it.

28

1    On May 6, 2022, the Court struck Defendants' Motion for Summary

2  Judgment based on Defendants' failure to meet and confer before filing the motion,

3  as required by Local Rule 7-3.  ECF No. 106.  The Court explained that "[d]espite

4  [its] warnings, Defendants' counsel repeated the same violations of the Local

5  Rules," showing they were "either unwilling or unable to comply with the Local

6  Rules of th[e] Court."  *Id.*  Thus, the Court struck Defendants' motion.

7    On May 9, 2022, Defendants' counsel conducted a meet-and-confer

8  teleconference with Plaintiff's counsel, pursuant to Local Rule 7-3. ECF No. 107-1

9  ¶¶ 4-5. On the same day, Defendants filed an Ex Parte Application to continue the

10  motion hearing cut-off date from May 16, 2022, to June 13, 2022, to permit the re-

11  filing of Defendants' Motion for Summary Judgment.  ECF No. 107.

12    On May 12, 2022, the Court denied Defendants' Ex Parte Application.  ECF

13  No. 109.

14    On June 3, 2022, the parties filed various pre-trial documents. ECF 110-122.

15    On June 6, 2022, the Court ordered the parties to submit Confidential

16  Settlement Conference Statements.  ECF No. 124.  The Court stated that the

17  Statements would be provided to a judicial officer to determine the probability of

18  settlement and whether the Court should require the parties to attend an additional

19  settlement conference.  *Id.*  On June 13, 2022, the parties submitted the required

20  Confidential Settlement Conference Statements.  The Court has not ruled on

21  whether to order the parties to attend an additional settlement conference.

22    On June 17, 2022, the parties filed eight Motions in Limine, four each, in

23  connection with the upcoming trial.  ECF Nos. 157-60, 166, 168, 169, 171.  (The

24  Court's Civil Trial Scheduling Order imposes a limit of four (4) motions in limine

25  for each side.  ECF No. 52 at 8.)  The Court has not ruled on the motions.

26  **VIII.  OTHER DEADLINES**

27    There are no deadlines that remain in effect under the Reassignment Order.

28

**Defendants' Request:**  Defendants seek leave to request a hearing at which Defendants' Motion for Summary Judgment may be heard.  That Motion was struck on procedural grounds (failure to comply with the pre-filing meet-and-confer requirement under Local Rule 7-3) that Defendants have since remedied. ECF No. 107-1 ¶¶ 4-5. Because the Court has vacated the previously scheduled trial date, there is ample time for Defendants' Motion to be heard.  More importantly, resolving the issues in Defendants' Motion will facilitate trial management by potentially narrowing the scope of the trial or even resolving the matter entirely, ensuring the best use of this Court's time and resources. The legal issues posed in Defendants' Motion have not been considered in a motion that permits the partial dismissal of claims, such as a motion for summary judgment. Fed. R. Civ. Proc. 56(a). Thus, even if the Court decides not to grant summary judgment in full, considering Defendants' motion may remove issues that need to be tried by, for example, eliminating the parts of Plaintiff's claims that are barred by the statute of limitations (*inter alia,* items printed in 2015 and 2016 and subject to the single-publication rule), copyright preemption (all of Plaintiff's claims but particularly parts challenging the distribution of photographic prints and the display of photographs), or other defenses. Considering legal issues to ensure a streamlined and orderly trial is good cause to hear Defendants' Motion. Further, Defendants would stipulate to having their Motion heard based on the documents already filed, obviating the need for Plaintiff's counsel (or *amici* parties) to do any new work.

Defendants also request that the Court set a deadline for the parties to conduct an additional settlement conference, and for an order requiring the parties to participate in another mediation, before a neutral agreed to by both parties, to facilitate ongoing settlement discussions. Defendants also request that this Court order the parties to personally attend the mediation. While Jonathan Mannion, on behalf of himself and Defendant Jonathan Mannion Photography LLC, attended the parties' earlier mediation in its entirety, Plaintiff did not. ECF No. 100 ¶¶ 2-3.

7

1   Defendants believe that Plaintiff's personal participation in a settlement conference

2   is likely to increase the chances that a resolution can be reached.

3        **Plaintiff's Response:**  The Court should deny Defendants' request that the

4   Court consider their stricken Motion for Summary Judgment, even though the

5   motion cut-off date has passed.  Defendants already asked the Court to extend the

6   motion cut-off date to allow them to re-file their stricken Motion for Summary

7   Judgment.  ECF No. 107.  The Court denied that request, ruling that Defendants

8   "failed to establish good cause for any modification of the Civil Trial Scheduling

9   Order."  ECF No. 109 at 2 & n.1.

10       Defendants do not even attempt to argue that the requirements for

11  reconsidering that ruling, such as a "manifest showing of a failure to consider

12  material facts," L.R. 7-18, are present here.  Nor could they.  The Court was well

13  aware of Defendants' excuses for repeatedly violating the Local Rules and found

14  those excuses unavailing.  *See* ECF No. 109 at 2.  And the Court explained that

15  "Defendants' assertion of 'prejudice'" was "relatively weak" to the extent

16  Defendants' Motion for Summary Judgment sought to re-raise the arguments the

17  Court rejected in connection with their Motion to Dismiss and/or Strike—namely,

18  that their conduct was protected by a "transformative use" defense and that

19  Plaintiff's claims are preempted by the Copyright Act.  *Id.* at 2 n.1.  The Court

20  should reject Defendants' request that the Court revisit and reverse interlocutory

21  rulings that did not come out in Defendants' favor.

22       Plaintiff does not oppose extending the deadline for the parties to conduct a

23  settlement conference or participating in another mediation before a neutral agreed

24  to by both parties, so long as the parties complete any mediation in advance of the

25  final pre-trial conference.  Plaintiff does, however, oppose Defendants' request that

26  the Court order Plaintiff personally to attend the mediation.  The Local Rules

27  provide that parties "shall appear at [a] settlement proceeding in person or by a

28  representative with final authority to settle the case."  L.R. 16-15.5.  There is no

8

1  reason for this Court to depart from the Local Rules.

2  **IX.   PROPOSED DATES**

3       Plaintiff requests that the Court set the following schedule:

4  • Final Pre-Trial Conf.: October 21, 2022.

5  • Trial: November 7, 2022.[1]

6       Lead defense trial counsel has five trials set between October and January,

7  including one set for November 7, 2022, and two trials in January. A stipulation has

8  been filed, and is pending the judge's approval, for a trial in a sixth case to start on

9  December 5, 2022. All six of these other cases were filed before this one. The

10  following dates are the earliest defense counsel is available for trial in this matter.

11  • Final Pre-Trial Conference: February 6, 2023.

12  • Trial: March 13, 2023.

13  **X.   MAGISTRATE JUDGE**

14       The parties do not consent to a magistrate judge for trial.

15  **XI.   CASE MANAGEMENT CONFERENCE**

16       **Plaintiff's Position:**  Plaintiff does not oppose setting a case management

17  conference at a time convenient for the Court to (1) set a trial date, (2) set a date for

18  the final pre-trial conference, and (3) set a date for a hearing on the parties' motions

19  in limine and disputed jury instructions, if necessary.  The parties filed all of the pre-

20  trial documents required by the Court's Civil Trial Scheduling Order, including

21  motions in limine.  All that is left to do is for the Court to hold the final pre-trial

22  conference, rule on the issues raised in the parties' pre-trial documents, and

23  commence trial.  The Court should reject Defendants' request below to further delay

24  trial so that the Court can revisit prior rulings and orders and address arguments that

25  Defendants failed to properly raise at summary judgment.

26  ─────────────────

27     [1]  Plaintiff can be available on the dates proposed by Defendants but does not
believe there is good cause to set a trial date for over 6 months after the original July
28  19, 2022 trial date.

1  **Defendants' Position:** There is an immediate need for a case management

2  conference to discuss the best way to proceed in this matter, given the numerous

3  open legal and procedural issues that could bear on the scope and scheduling of the

4  final pre-trial conference and trial.  These include legal issues such as: (a) whether

5  Plaintiff's claims are preempted, in whole or in part, by the Copyright Act (*see* ECF

6  No. 139 at 17-25); (b) the legal meaning of consent with respect to one of the

7  essential elements of Plaintiff's claims (*see id.* at 15-16); (c) what constitutes harm

8  with respect to one of the essential elements of Plaintiff's claims (*see id.* at 16); and

9  (d) for purposes of the statute of limitations, whether the single-publication rule

10  applies to bar claims based on single publication runs of physical items that

11  occurred before the statutory period (*see id.* at 31-32). If not heard and resolved

12  before trial, Defendants intend to raise these legal issues (and potentially others) in a

13  Motion for Judgment as a Matter of Law.

14  Procedural questions include (a) whether the Court will extend the motion

15  cut-off deadline so that Defendant's Motion for Summary Judgment may be heard;

16  (b) whether the Court will order the parties to conduct an additional settlement

17  conference; (c) the anticipated length of trial; (d) the number of motions in limine

18  the Court will permit; and (e) how and when the Court wishes to resolve disputes

19  concerning jury instructions, deposition designations, and exhibits.

20  **XII.   CASE SCHEDULE**

21  As noted above, Defendants seek consideration of and a hearing for their

22  Motion for Summary Judgment, a settlement conference, and a case management

23  conference.

24  The parties jointly seek new dates for the trial, the final pre-trial conference,

25  and a hearing date for motions in limine and, if separate from the pre-trial

26  conference, a hearing date concerning the parties' disputed jury instructions,

27  deposition designations, and exhibits.

28

1  DATED:  July 11, 2022    QUINN EMANUEL URQUHART
2                                          & SULLIVAN, LLP
3
4                                    By  /s/ Robert M. Schwartz
                                            Alex Spiro (*pro hac vice*)
5                                            Robert M. Schwartz
                                            Cory D. Struble (*pro hac vice*)
6                                            Dylan C. Bonfigli
7                                            *Attorneys for Plaintiff*
8
9  DATED:  July 11, 2022    WILLENKEN LLP
10
11                                  By  /s/ Lika C. Miyake
                                            Paul J. Loh
12                                            Lika C. Miyake
                                            Kenneth M. Trujillo-Jamison
13
14                                          ROCKSTONE LEGAL
15                                          Sarah Hsia (*pro hac vice*)
16                                          PAUL HASTINGS LLP
17                                          Steven A. Marenberg
                                            *Attorneys for Defendants*
18
19
20
21
22
23
24
25
26
27
28

11

1

## **ATTESTATION STATEMENT**

2      I, Robert M. Schwartz, the filer of this Joint Statement, attest pursuant to Civil

3   L.R. 5-4.3.4(a)(2) that all other signatories listed, and on whose behalf the filing is

4   submitted, concur in the filing's content and have authorized the filing.

5

6   DATED:  July 11, 2022          QUINN EMANUEL URQUHART
                                       & SULLIVAN, LLP
7

8
                                  By  /s/ Robert M. Schwartz
9                                    _____
                                     Robert M. Schwartz
10                                    *Attorneys for Plaintiff*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12